# ORIGINAL

1
2  ALVERSON, TAYLOR, MORTENSEN,
   NELSON & SANDERS
   ERIC TAYLOR, ESQ., NV Bar No. 2275
3  STACY R. SMITH, ESQ., NV Bar No. 7919
   SARAH A. SMEGAL, ESQ., NV Bar No. 8669
4  7401 West Charleston Boulevard
   Las Vegas, NV 89117-1401
5  Attorneys for Brandywine Health Services
   of Mississippi, Inc. and Jeffrey A. Morse

6                    UNITED STATES DISTRICT COURT

7                     CLARK COUNTY, NEVADA

8  MCC SPECIAL PURPOSE CORPORATION VIII,          CV-S-04-1296-KJD-PAL
9  a Nevada corporation,

10              Plaintiff,

11 vs.

12 BRANDYWINE HEALTH SERVICES OF MISSISSIPPI,      **NOTICE OF REMOVAL**
   INC., aka Choctaw County Medical Center, a Mississippi   **TO FEDERAL COURT**
13 corporation, JEFFREY A. MORSE, an individual, and
   DOES 1-10,
14
15              Defendants.

16 BRANDYWINE HEALTH SERVICES OF
   MISSISSIPPI, INC., aka Choctaw County Medical
17 Center, a Mississippi corporation, JEFFREY A.
   MORSE, an individual, and DOES 1-10,
18
              Counter-claimants,

19 vs.

20 MCC SPECIAL PURPOSE CORPORATION VIII,
   a Nevada corporation,
21
              Counter-defendant.
22

23 TO:    THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

24        Defendants BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC., aka Choctaw

25 County Medical Center, a Mississippi Corporation, and JEFFREY A. MORSE, an individual

26 (collectively, "Defendants"), file this NOTICE OF REMOVAL from the District Court of the State

27 of Nevada, in and for the County of Clark, Case No. A490478 ("State Court Action"), to the United

28 States District Court for the District of Nevada pursuant to 28 U.S.C. §§ 1441, and 1446. This Court

   has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. In

   support thereof, Defendants state as follows:

**FILED SEPARATELY**

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

**Claims & Parties**

1.      Plaintiff MCC Special Purpose Corporation VIII ("Plaintiff") initiated the State Court Action by filing a Complaint against Defendants seeking money damages and declaratory relief based upon claims of breach of contract, breach of guaranty, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud, intentional interference with prospective economic advantage, conversion, and declaratory judgment, on or about August 16, 2004. A true and correct copy of the Summons and Complaint served upon Defendants is attached as **Exhibit 1**.

2.      The Summons and Complaint were served upon Defendant Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation ("Brandywine Health") on August 19, 2004, and upon Defendant Jeffrey A. Morse, an individual, on August 23, 2004. At the time of filing this Notice of Removal, Defendants only have a copy of the Affidavit of Service for Brandywine Health, a true and correct copy of which is attached as **Exhibit 2**.

3.      Defendants filed an Answer and Counter-claim in the State Court Action on September 13, 2004, a true and correct copy of which is attached as **Exhibit 3**.

4.      At the time the Complaint was filed, Plaintiff is and was a corporation duly organized and existing under the laws of the state of Nevada with its principal place of business located in Las Vegas, Nevada.

5.      At the time the Complaint was filed, Defendant Brandywine Health is and was a corporation duly organized and existing under the laws of the state of Mississippi with its principal place of business located in Ackerman, Mississippi.

6.      At the time the Complaint was filed, Defendant Jeffrey Morse is and was a resident of the state of Maryland, and his domicile is and was in the state of Maryland.

**Jurisdiction**

7.      Removal of this action is proper under 28 U.S.C. § 1441(a) because this is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1332(a)(1). In paragraph 32 of the Complaint, Plaintiff alleges that Defendants owe Plaintiff the amount of $318,957.38, plus interest.

2

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

8.     Removal to this District is proper under 28 U.S.C. § 1441(a) because the United States District Court for the District of Nevada is the district embracing the place where the State Court Action is pending.

**Compliance with Statutory Requirements**

9.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders received by Defendants in this action are attached.  See Exhibits 1, 2, 3.

10.     Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed within 30 days of the receipt by Defendants of the pleading setting forth the claims for relief upon which the action is based.

11.     Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly provide written notice of the removal of this action to Plaintiff and the Clerk of the Eighth Judicial District Court, Clark County, Nevada.

Therefore, Defendants Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation, and Jeffrey A. Morse, an individual, remove this action from the District Court of the State of Nevada, in and for the County of Clark, to this Honorable Court.

DATED this ____ day of September, 2004.

ALVERSON, TAYLOR, MORTENSEN,
NELSON & SANDERS

ERIC TAYLOR, ESQ., NV Bar No. 2275
STACY R. SMITH, ESQ., NV Bar No. 7919
SARAH A. SMEGAL, ESQ., NV Bar No. 8669
7401 West Charleston Boulevard
Las Vegas, NV  89117-1401
Attorneys for Brandywine Health Services
of Mississippi, Inc. and Jeffrey A. Morse

///
///
///

3

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on the _16th_ day of September, 2004, pursuant to the amendment to the

3    Eighth Judicial District Court Rule 7.26, service of the foregoing *NOTICE OF REMOVAL TO*

4    *FEDERAL COURT* was mailed, via First Class U.S. mail, postage prepaid, addressed as follows:

5    Ike Lawrence Epstein, Esq.
     Eric D. Hone, Esq.
6    Beckley Singleton, Chartered
     530 Las Vegas Boulevard South
7    Las Vegas, NV 89101

8

9                                                    An employee of ALVERSON, TAYLOR,
                                                     MORTENSEN, NELSON & SANDERS
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

SERVICE
COPIES

1   **SUMM**
IKE LAWRENCE EPSTEIN, ESQ.
2   Nevada Bar No. 4594
ERIC D. HONE, ESQ.
3   Nevada Bar No. 8499
BECKLEY SINGLETON, CHARTERED
4   530 Las Vegas Blvd. South
Las Vegas, Nevada 89101
5   Telephone:  (702) 385-3373
Facsimile:  (702) 385-9447
6

7   Attorneys for Plaintiff MCC Special Purpose Corporation VIII

8

9                    **DISTRICT COURT**

10                **CLARK COUNTY, NEVADA**

11

12   MCC SPECIAL PURPOSE CORPORATION        )
VIII, a Nevada corporation,                )
13                                          )   Case No.: **A490478**
                                           )
14          Plaintiff,                      )
                                           )   Dept. No.: **IV**
15   v.                                     )
                                           )
16                                          )
BRANDYWINE HEALTH SERVICES OF              )
17   MISSISIPPI, INC., aka Choctaw County   )
Medical Center, a Mississippi corporation, )
18   JEFFREY A. MORSE, an individual, and   )
DOES 1-10,                                 )
19                                          )
                                           )
20          Defendants;                     )
                                           )
21   ────────────────────────────────────  )

22

23                    **SUMMONS**

24
**NOTICE! YOU HAVE BEEN SUED.   THE COURT MAY DECIDE AGAINST YOU**
25   **WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE**
**INFORMATION BELOW.**
26

27   . . .
. . .
28   . . .

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 39101

1   **TO THE DEFENDANT:**  A civil Complaint has been filed by the plaintiff against you for the relief

2   set forth in the Complaint.

3

4                    BRANDYWINE HEALTH SYSTEMS OF MISSISSIPPI, INC.
5                    aka Choctaw County Medical Center, a Mississippi corporation

6       1.       If you intend to defend this lawsuit, within 20 days after this Summons is served on you

7   exclusive of the day of service, you must do the following:

8                    a. File with the Clerk of this Court, whose address is shown below, a formal written

9
    response to the Complaint in accordance with the rules of the Court.
10

11                   b. Serve a copy of your response upon the attorney whose name and address is shown

12   below.

13      2.       Unless you respond, your default will be entered upon application of the plaintiff and

14   this Court may enter a judgment against you for the relief demanded in the Complaint, which could

15
    result in the taking of money or property or other relief requested in the Complaint.
16

17      3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so

18   that your response may be filed on time.

19                               SHIRLEY B. PARRAGUIRRE, CLERK OF COURT

20

21

22

23   BY: _____

24       Deputy Clerk            Date _____

25

26

27

28


BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101

1     Issued at direction of:

2

3

    BY: _____

4     IKE LAWRENCE EPSTEIN, ESQ.
    Nevada Bar No. 4694

5     ERIC D. HONE, ESQ.

6     Nevada Bar No. 8499
    BECKLEY SINGLETON, CHARTERED

7     530 Las Vegas Blvd. South

8     Las Vegas, Nevada 89101
    Telephone: (702) 385-3373

9     Facsimile: (702) 385-9447

10     Attorneys for Plaintiff MCC Special Purpose Corporation VIII

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



BECKLEY
SINGLETON CHTD

ATTORNEYS AT LAW

530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

**ORIGINAL**

| | | | |
|---|---|---|---|
| 1 | AFFT  DISTRICT COURT | CLARK COUNTY, | STATE OF NEVADA |
| 2 | CASE NO.: A490478  DEPT NO.: IV | DOCKET NO.: 01455-0163 | |
| 3 | Beckley Singleton, Chtd.  ATTORNEYS FOR: Plaintiff | | |
| 4 | Ike Lawrence Epstein Esq  STATE BAR NO.: 4594 | | |
| 5 | 530 Las Vegas Blvd. South | | |
| 6 | Las Vegas, NV 89101 | | |
| 7 | *MCC Special Purpose Corporation VIII* | *Plaintiff* | Date: |
| 8 | *vs* | | Time: |
| 9 | *Brandywine Health Services of Mississippi, Inc., et al* | *Defendant* | AFFIDAVIT OF SERVICE |

10

11  Vaenell Warren _____, being duly sworn deposes and says: That at all times herein affiant was

12  and is a citizen of the United States, over 18 years of age and not a party to or interested in the proceeding in which this

13  affidavit is made. The affiant received __1__ copy(ies) of the

14  Summons & Complaint

15

16

17

18

19  on the _19th_ day of _August_, _2004_ and served the same on the _19th_ day of _August_, _2004_

20  at _10:00 am_ by:

21  1. delivering and leaving a copy with the defendant, _Richard / Barry_

22  at _5087 / Constitution Avel / Meridian / MW / 139-302_

23  2. serving the defendant, _____ by personally delivering and leaving a copy

24  with _____, a person of suitable age and discretion residing at the defendant's usual

25  place of abode located at _____

26  3. serving the defendant _Brandywine Health Services of_ Mississippi, Inc., a/d/a Choctaw County by personally delivering and leaving a copy  Medical Center

27  at _505 Constitution Avenue, Meridian, MS 39302-2009_

28  a. with _____ as _____ an agent lawfully designated

29  by statute to accept service of process;

30  b. with _Resident Agent, Richard Barry_, pursuant to NRS 14.020 as a person of suitable age and

31  and discretion at the above address, which address is the address of the resident agent as shown on the current

32  certificate of designation filed with the Secretary of State.

33  SUBSCRIBED AND SWORN to before me on this

34  _19_ day of _Aug_, _2004_

35

36

Notary Public

_Vaenell Warren_
Affiant

**Legal Process Service**
626 S. Eighth Street
Las Vegas, Nevada 89101

Work Order No. 0408650

AMANDA RAE KEITH, JONES COUNTY, MS
NOTARY
My Commission Expires
February 17 2006
PUBLIC

1   | **COMP**
2   | IKE LAWRENCE EPSTEIN, ESQ.
    | Nevada Bar No. 4594
3   | ERIC D. HONE, ESQ.
    | Nevada Bar No. 8499
4   | BECKLEY SINGLETON, CHARTERED
    | 530 Las Vegas Blvd. South
5   | Las Vegas, Nevada 89101
    | Telephone: (702) 385-3373
6   | Facsimile: (702) 385-9447

**FILED**

AUG 16   4 02 PM '04

*Shirley E. Parraguirre*
CLERK

Attorneys for Plaintiff MCC Special Purpose Corporation VIII

## DISTRICT COURT

## CLARK COUNTY, NEVADA

MCC SPECIAL PURPOSE CORPORATION ) Case No.: **A 4 9 0 4 7 8**
VIII, a Nevada corporation, )
) Dept. No.: **IV**
                    Plaintiff, )
) **(Business Court Requested)**
vs. )
)
BRANDYWINE HEALTH SERVICES OF ) **COMPLAINT**
MISSISIPPI, INC., aka Choctaw County Medical )
Center, a Mississippi corporation, JEFFREY A. ) **ARBITRATION EXEMPT:**
MORSE, an individual, and DOES 1-10, ) **Amount in Excess of $40,000;**
) **Declaratory Relief Requested**
                    Defendants. )
_____ )

Plaintiff MCC Special Purpose Corporation VIII, alleges as follows:

## JURISDICTION AND VENUE

1.      Plaintiff, MCC Special Purpose Corporation VIII, ("Plaintiff") is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Nevada with its principal offices located in Las Vegas, Nevada.

2.      Medical Capital Corporation, (hereinafter referred to as "MedCap") is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Nevada with its principal offices located in Las Vegas, Nevada.

///

{00132375;}                                    1

3.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Brandywine Health Services of Mississippi, aka Choctaw County Medical Center ("Brandywine Health") is, and at all times mentioned was, a corporation duly organized and existing under the laws of the State of Mississippi, with its principal place of business located in Ackerman, Mississippi.

4.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Jeffrey A. Morse is, and at all times herein mentioned was, an individual residing in the State of Mississippi and is an Officer, Director and Shareholder of Brandywine Health.

5.    Plaintiff is ignorant of the true names and capacities of Defendants Does 1 through 10, inclusive, and therefore, sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when the same are ascertained. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named Defendants is responsible in some manner for the damages herein alleged.

6.    This Court has jurisdiction as Plaintiff has suffered damages in an amount, which exceeds Ten Thousand Dollars ($10,000.00).

7.    Venue is proper in this district pursuant to the express terms of the Purchase Agreement between the parties which provides, in Section 8.9:

> Provider hereby irrevocably submits itself to the exclusive jurisdiction of the State and Federal Courts sitting in the State of Nevada and agrees and consents that service of process may be made upon it in any legal proceeding relating to this Agreement, the purchase of accounts or any other relationship between provider and Buyer by any means allowed under Nevada or Federal law. Any legal proceeding arising out of or in any way related to this Agreement, the Purchase of Accounts or any other relationship between Provider and Buyer shall be brought and litigated exclusively in any one of the United States District Courts sitting in the State of Nevada to the extent it has subject matter jurisdiction, and otherwise in any court of the State of Nevada having jurisdiction. The parties hereto hereby waive and agree not to assert, by way of motion, as a defense or otherwise, that any such proceeding is brought in an inconvenient forum or that the venue thereof is improper.

///
///
///
///

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

{00132375;}

2

## FACTS COMMON TO ALL CLAIMS

8.      Plaintiff repeats and realleges its allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

9.      Plaintiff is informed and believes, and on that basis alleges, that in performing each of the acts herein alleged, each Defendant was the agent, employee and/or servant of each of the other Defendant and was acting within the scope and course of such relationship.

10.     On or about August 10, 2004, Plaintiff and Brandywine Health entered into a written Purchase Agreement, a true and correct copy of which is attached hereto as Exhibit A and is incorporated herein.  Under the terms of the Purchase Agreement, Brandywine Health agreed to sell to Plaintiff certain accrued accounts receivable which had yet to be collected.

11.     Under the terms of the Purchase Agreement, MedCap was appointed the Administrator and was authorized to enforce the terms of the Agreement on behalf of Plaintiff.

12.     To secure performance under the terms of the Purchase Agreement, a UCC-1 Financing Statement was filed with the Secretary of State of the State of Mississippi on August 10, 2004, bearing file number 20040148685K, securing all of Plaintiff's rights and interests in and to any medical accounts receivable, *inter alia*, then existing or thereafter arising.

13.     On or about August 10, 2004, as a contemporaneous part of the Purchase Agreement, and as a material inducement to Plaintiff to enter into the Purchase Agreement, Defendant Jeffrey A. Morse ("Morse") executed and delivered to Plaintiff a Guaranty whereby he guaranteed payment of any sums due and owing by Brandywine Health on account of the Purchase Agreement.  A true and correct copy of the Guaranty is found at page 20 of the Purchase Agreement, attached hereto as Exhibit A.

14.     Pursuant to the terms of the written Purchase Agreement, Plaintiff paid Brandywine Health $255,165.90 (the "advance rate amount") in return for certain accounts receivable Brandywine Health was to convey to Plaintiff.  The subject accounts receivable had an aggregate face value of $559, 461.62, and a contractually agreed upon value of $318,957.38 (the "aggregate adjusted value").

///

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

15.     The Purchase Agreement provides that, should Defendants breach their obligations under the agreement, they shall be obligated to pay to Plaintiff the entire aggregate adjusted value of the accounts receivable, minus any collections already received by Plaintiff, or, should Plaintiff be unable to collect at least the aggregate adjusted value of the accounts receivable, Defendants shall pay to Plaintiff the deficiency between the amounts collected and the aggregate adjusted value.

16.     On August 12, 2004, almost immediately after receiving payment of the contractually agreed upon purchase price/advance rate amount of $255,165.90, Defendants breached the Purchase Agreement by, among other things, sending a written letter to Plaintiff purporting to unilaterally terminate the agreement and expressly stating their intention to interfere with Plaintiff's contractual right to collect on the purchased accounts receivable.

17.     Because of the Defendants' immediate breach of the Purchase Agreement and Guaranty, Plaintiff has collected no monies from the accounts receivable nor any amount due from Defendants, leaving a balance due and owing of $318,957.38, plus interest at the contractual rate.

18.     Section 8.14 of the Purchase Agreement states: "Provider agrees to reimburse Buyer upon demand for all attorney's fees, court costs and other expenses incurred by Buyer in enforcing this Agreement and protecting or enforcing its interest in the Accounts or the Assets, in collecting the Accounts or the assets, or in the representation of Buyer in connection with any bankruptcy case or insolvency proceeding involving Provider, the Assets, any Payor, or any Account."

**FIRST CAUSE OF ACTION**
**(Breach of Contract Against All Defendants)**

19.     Plaintiff repeats and realleges its allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

20.     Plaintiff and Brandywine Health are parties to the Purchase Agreement.

21.     Pursuant to the express terms of the Guaranty, Morse guarantied the performance of Brandywine Health under the Purchase Agreement.

22.     Pursuant to the terms of the Purchase Agreement, Plaintiff paid the sum of $255,165.90 to the Defendants for the accounts receivable Plaintiff purchased from Defendants

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SO., 7TH
LAS VEGAS, NEVADA 89101

which accounts receivable had an aggregate face value of $559,461.62 and a contractually agreed upon or aggregated adjusted value of $318,957.38.

23. Defendants promised and guaranteed that that Plaintiff would receive the aggregate adjusted value of the accounts receivable, i.e., $318,957.38.

24. Plaintiff has performed all conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the Purchase Agreement.

25. Defendants breached the Purchase Agreement by, among other things, attempting to unilaterally terminate the agreement and expressly stating their intentions to interfere with Plaintiff's contractual right to collect on the purchased accounts receivable.

26. As a result of the Defendants' breach of the Purchase Agreement, Plaintiff has collected none of the balance due and owing from Defendants to Plaintiff, an amount equal to $318,957.38, plus interest at the contractual rate.

27. Pursuant to Section 8.14 of the written Purchase Agreement, Defendants agreed to pay all attorneys' fees, court costs and other expenses incurred by Plaintiff in connection with enforcement of its rights under the Purchase Agreement.

28. As a direct, proximate and foreseeable result of Defendants' breaches, Plaintiff has been damaged in an amount to be determined at trial but which exceeds $10,000.00.

29. Plaintiff has been required to retain the services of an attorney to prosecute this claim and is entitled to an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Breach of Guaranty Against Jeffrey A. Morse)

30. Plaintiff repeats and realleges its allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

31. The Guaranty executed by Morse provided that:

The undersigned hereby personally, absolutely and unconditionally guarantee(s), jointly and severally, the payment and performance of Provider's representations, warranties and covenants under this Agreement and any Purchase Supplement, and agree(s) to pay Buyer upon demand all losses, damages and expenses of Buyer resulting from and/or incurred in connection with any breach by Provider thereof. The undersigned shall be primarily liable for such obligations and Buyer may invoke the benefits of this guaranty without pursuing any remedies against Provider, without the

1          necessity of joining all guarantors in any action hereon, and without proceeding against any collateral for such obligation.

2

3          32.    Morse has breached the Guaranty by failing and refusing to pay the sums due, owing

4  and unpaid by Brandywine Health to Plaintiff in the amount of $318,957.38, plus interest at the

5  contractual rate.

6          33.    As a direct, proximate and foreseeable result of the Morse's breach, Plaintiff has been

7  damaged in an amount to be determined at trial but which exceeds $10,000.00.

8          34.    Plaintiff has been required to retain the services of an attorney to prosecute this claim

9  and is entitled to an award of attorneys' fees and costs.

10

11  **THIRD CAUSE OF ACTION**<br>**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants)**

12          35.    Plaintiff repeats and realleges its allegations contained in the paragraphs above and

13  incorporates the same by reference as though fully set forth herein.

14          36.    Plaintiff and Defendants are parties to contracts including the Purchase Agreement

15  and the Guaranty.

16          37.    A covenant of good faith and fair dealing was and is implied into the contractual

17  relationships of the parties.

18          38.    Defendants have breached the covenant of good faith and fair dealing by performing,

19  or failing to perform, in a manner that was unfaithful to the purpose of the Purchase Agreement and

20  the Guaranties.

21          39.    Plaintiff's justified expectations were thus wrongfully denied.

22          40.    As a direct, proximate and foreseeable result of Defendants' breaches of the covenant

23  of good faith and fair dealing, Plaintiff has been damaged in an amount to be determined at trial but

24  which exceeds $10,000.00.

25          41.    Plaintiff has been required to retain the services of an attorney to prosecute this claim

26  and is entitled to an award of attorneys' fees and costs.

27  ///

28  ///

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against All Defendants)

42.     Plaintiff repeats and realleges its allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

43.     Defendants owed Plaintiff a fiduciary duty pursuant to their dealings, the Purchase Agreement and the Guaranties, to deliver to Plaintiff any amounts collected on the accounts receivable sold to Plaintiff and to assist Plaintiff in collecting on the accounts receivable.

44.     Defendants have breached the fiduciary duty owed to Plaintiff by attempting to unilaterally terminate the agreement and expressly stating their intentions to interfere with Plaintiff's contractual right to collect on the purchased accounts receivable.

45.     As a direct, proximate and foreseeable result of Defendants' breaches of their fiduciary duties, Plaintiff has been damaged in an amount to be determined at trial but which exceeds $10,000.00.

46.     Plaintiff has been required to retain the services of an attorney to prosecute this claim and is entitled to an award of attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Fraud Against All Defendants)

47.     Plaintiff repeats and realleges its allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

48.     Defendants represented to Plaintiff that, upon receipt of the purchase price for the accounts receivable, the would convey the accounts receivable to Plaintiff, would assist Plaintiff in collecting on those accounts receivable and would pay over to Plaintiff any monies they received in payment of the accounts receivable.

49.     In truth and fact, Defendants did not intend to meet their obligations under the Purchase Agreement and the Guarantee.  Defendants knew when they made these representations and promises to Plaintiff that they were false and intended to induce Plaintiff to pay to it the purchase price of $255,165.90 without any intention of fulfilling their corresponding obligations.

50.     Plaintiff, in reasonable and justifiable reliance upon Defendants' said promises and

1  representations, and believing them to be true, paid Defendants $255,165.90 for the accounts

2  receivable.

3      51.    In doing each and all of the acts hereinabove alleged, Defendants acted willfully,

4  maliciously, fraudulently and with the deliberate attempt to injure and damage Plaintiff.

5      52.    As a direct, proximate and foreseeable result of said fraud and deceit, Plaintiff has

6  been damaged in an amount to be determined at trial but which exceeds $10,000.00.

7      53.    Plaintiff has been required to retain the services of an attorney to prosecute this claim

8  and is entitled to an award of attorneys' fees and costs.

9                              **SIXTH CAUSE OF ACTION**
                    **(Intentional Interference With Prospective Economic Advantage**
10                              **Against All Defendants)**

11      54.    Plaintiff repeats and realleges its allegations contained in the paragraphs above and

12  incorporates the same by reference as though fully set forth herein.

13      55.    A prospective contractual relationship was created by Defendants' agreement to sell

14  and covey to Plaintiff certain accounts receivable, transferring to Plaintiff its rights therein.  By way

15  of that conveyance and sale, a relationship was to be created between Plaintiff and those parties

16  obligated to pay the amounts due and owing on the accounts receivable.

17      56.    Defendants knew of the creation and existence of the relationship between Plaintiff

18  and those parties obligated to pay amounts due and owing on the accounts receivable.

19      57.    Defendants intended to harm Plaintiff by interfering with and preventing Plaintiff

20  from obtaining the benefits of the conveyance and sale of the accounts receivable and by interfering

21  and preventing Plaintiff from collecting on the accounts receivable.  Defendants have done so by

22  expressly advising the parties obligated to pay on the subject accounts receivable not to direct

23  payment to Plaintiff for amounts due and owing on the subject accounts.

24      58.    Defendants had no privilege, right or justification for interfering with and preventing

25  Plaintiff from collecting on the subject accounts receivable.

26      59.    As a direct, proximate and foreseeable result of Defendants' intentional interference

27  with Plaintiff's rights in and to the subject accounts receivable, Plaintiff has been damaged in an

28  amount to be determined at trial but which exceeds $10,000.00.

1    60.    Plaintiff has been required to retain the services of an attorney to prosecute this claim

2    and is entitled to an award of attorneys' fees and costs.

3

4                            **SEVENTH CAUSE OF ACTION**
                             **(Conversion Against All Defendants)**

5    61.    Plaintiff repeats and realleges its allegations contained in the paragraphs above and

6    incorporates the same by reference as though fully set forth herein.

7    62.    At all times herein mentioned, Plaintiff was and still is the lawful owner of the

8    accounts receivable purchased pursuant to the Purchase Agreement, and was and still is entitled to

9    possession of all monies received in payment on the accounts receivable.

10    63.    Defendants have directed payments on the accounts receivable to themselves, thereby

11    collecting on the accounts receivable owned by Plaintiff and failing and refusing to pay over the

12    amount of the receivables to Plaintiff.

13    64.    Plaintiff has demanded the immediate payment of the accounts receivable which

14    Defendants have wrongfully collected and continue to collect.

15    65.    Defendants have failed and refused, and continue to fail and refuse, to pay over the

16    monies collected from Plaintiff's accounts receivable and to direct payment of the accounts to

17    Plaintiff.

18    66.    Defendants have wrongfully exerted an act of domain over Plaintiff's accounts

19    receivable.

20    67.    Defendants' acts are in contravention of Plaintiff's rights in the accounts receivable,

21    for which there is no justification or excuse.

22    68.    As a direct, proximate and foreseeable result of Defendants' acts of conversion,

23    Plaintiff has been damaged in an amount to be determined at trial but which exceeds $10,000.00.

24    69.    Plaintiff has been required to retain the services of an attorney to prosecute this claim

25    and is entitled to an award of attorneys' fees and costs.

26    ///

27    ///

28    ///

BECKLEY
SINGLETON
ATTORNEYS AT LAW

(00132375:)                                    9

## EIGHTH CAUSE OF ACTION
### (Declaratory Judgment)

70.   Plaintiff repeats and realleges its allegations contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

71.   A dispute has arisen and an actual controversy exists between the parties hereto in that Plaintiff claims that the Purchase Agreement and Guaranty required Defendants to convey to Plaintiff certain accounts receivable; to assist Plaintiff in collecting on those accounts receivable; to pay to Plaintiff the deficiency between the agreed upon aggregate adjusted value of the accounts and the amounts actually collected; and to pay the entire aggregate adjusted value of the accounts receivable, less collections made by Plaintiff, in the event of a breach by Defendants.

72.   Plaintiff is informed and believes, and on that basis alleges, that Defendants claim that the Purchase Agreement and Guaranty do not bind them to the obligations set forth in the preceding paragraph.

73.   A declaration of rights, responsibilities and obligations of Plaintiff and Defendants is essential to determine the respective rights and obligations of the parties hereto.

74.   Plaintiff has no other adequate or speedy remedy at law.

75.   Plaintiff has been required to retain the services of an attorney to prosecute this claim and is entitled to an award of attorneys' fees and costs.

///
///
///
///
///
///
///
///
///
///

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH

{00132375;}

10

1      WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as

2  follows:

3      1.      For actual and compensatory damages against Defendants in excess of $10,000.00,

4  together with interest, penalties and costs;

5      2.      For a declaration of the Parties' rights and obligations under the Purchase Agreement

6  and Guaranty;

7      3.      For court costs and reasonable attorneys' fees;

8      4.      For such other and further relief as the Court may deem just and proper.

9      DATED this _16th_ day of August, 2004.

10                              BECKLEY SINGLETON, CHARTERED

11

12                              By _____

13                                 IKE LAWRENCE EPSTEIN, ESQ.
                                   Nevada Bar No. 4594
14                                 ERIC D. HONE, ESQ.
                                   Nevada Bar No. 8499
15                                 530 Las Vegas Blvd. South
                                   Las Vegas, Nevada 89101
16                                 Telephone:  (702) 385-3373
                                   Facsimile:  (702) 385-9447
17

18                                 Attorneys for Plaintiff MCC Special Purpose
                                   Corporation VIII
19

20

21

22

23

24

25

26

27

28

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SO. 7TH

{00132375;}                              11

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (the "Agreement") is made and entered into as ___10^th___ day of ___August___, 2004 by and between MCC Special Purpose Corporation VIII, (the "Buyer"), a Nevada corporation its address being 3770 Howard Hughes Parkway, Suite 301, Las Vegas, NV 89109 Medical Capital Corporation (the "Administrator"), a Nevada Corporation its office address being 2100 South State College Blvd, Anaheim, CA 92806 and Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation, ( the "Provider" ), its Federal I.D. number being 82-0543869 and its address being 148 West Cherry St., Ackerman, MS 39735 and its telecopy number being 662-285-2516.

## RECITALS

WHEREAS, the Provider is engaged in the business of providing medical services in Mississippi.

WHEREAS, Buyer desires to purchase from the Provider, and the Provider desires to sell to Buyer from time to time, the accounts receivable of the Provider described in Exhibit A attached hereto. and with respect to purchases subsequent to the Closing Date (as defined in Section 1.3 hereof) the accounts receivable described in Schedule 1 to the applicable Purchase Supplement, (being amounts due for each individual procedure, treatment, medical service or supply coded as a line item appearing on a billing form such as the HCFA 1500 or the UB 92) (collectively the "Accounts" and individually an "Account"), on the terms and subject to the conditions hereinafter set forth; and

WHEREAS, those capitalized terms which are not defined in any other provision hereof shall have the meaning given them in Section 9 of this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing premises and of the mutual covenants contained herein, and other good and valuable consideration, the parties hereto agree as follows:

1.    **Agreement to Sell and Agreement to Purchase.**

1.1    **Assets to be Conveyed.**  On the terms and subject to the conditions set forth in this Agreement, effective upon the Closing (as hereinafter defined), the Provider hereby conveys, transfers, assigns, sells and delivers to Buyer and Buyer hereby acquires, accepts and purchases from the Provider, all of the following (collectively, the "Assets"):

(a)    the Accounts; and

(b)    all tangible evidence of each Account, reconciliations, reports and any and all other documentation of any kind relating to such Accounts in the possession of or under the control of the Provider (collectively, the "Account Records").  Provider will, prior to closing, transmit electronically to Buyer the Account billing, in the face amount of the bill ("Billing Forms") sent to each patient and third party payor in connection with each Account, in such computer form and format as requested by Buyer.

1.2    **Further Assurances.**  From time to time on and after the Closing (as hereinafter defined), the Provider shall immediately execute and deliver to Buyer such instruments of sale, transfer, conveyance, assignment and delivery  consents, assurances, powers of attorney and other instruments as may be requested by Buyer in order to vest in Buyer all right, title and interest of the Provider in and to the Assets and otherwise in order to carry out the purpose and intent of this Agreement.

1



      **1.3**     **Closing.**  Each closing for the purchase and sale of the Accounts and other Assets hereunder, including, without limitation, any subsequent purchases pursuant to Section 1.4 hereof (each a "Purchase" and collectively the "Purchases") shall take place at the offices of Medical Capital Corporation, being 2100 South State College Blvd, Anaheim, CA 92806, with an initial closing at 10:00 A.M. local time, on ___8 - 10 - 04___, or at such other time and place as the parties hereto shall mutually agree (each a "Closing" or a "Closing Date"). The Accounts to be initially sold and purchased hereunder are as identified in Exhibit A attached hereto, and the Accounts to be sold and purchased from time to time after the initial Closing Date shall be as identified in Schedule 1 to Purchase Supplements attached hereto. In addition, Provider shall deliver to Buyer the documents set forth in Section 7.2(d) of this Agreement with respect to such additional Accounts.

      **1.4**     **Additional Purchase of Accounts.**  Buyer intends to acquire additional Accounts from Provider after the initial Closing Date. Provider agrees to sell to Buyer Accounts for a period of one year after the initial Closing Date. Such sales of Accounts to Buyer shall be governed by the terms of this Agreement and the Purchase Price therefor shall be calculated and paid in the manner set forth in Section 2.1 of this Agreement. The Provider agrees to sell and the Buyer intends to purchase Accounts on a weekly basis.

      **1.5**     **The Reserve Account.**  The Administrator will establish a reserve account. This reserve account will be owned, maintained, managed, and under the control of the Administrator. During the collection process, the reserve account will be credited with the deferred purchase price of the Accounts. The Administrator may make withdrawals from the reserve account to offset any monies which the Provider owes to the Buyer, or may owe to the Buyer in the future, as a result of the Buyers' purchase of Accounts from the Provider.

      (a)     The Administrator will furnish the Provider regular accounting of the reserve account. Such accounting will be delivered to the provider no later than the 15th day of each month, for the preceding monthly period, beginning no later than 90 days following the initial purchase date.

      (b)     If the Provider is not in default of any provisions of the Purchase Agreement, the Administrator will pay the Provider as additional payment for the accounts, an amount equal to all funds in the reserve account exceeding 25 per cent of the outstanding balance of the adjusted rate amount of the Accounts. This payment will be made no later than the 15th day of each month, for the preceding monthly period, beginning no later than 90 days following the initial purchase date.

      (c)     At such time as all additional purchases have been completed, all accounts collected, and the Provider is not in default of any provision of the purchase agreement, any amounts remaining in the reserve account will be paid to the Provider.

      (d)     Any default of Section 5.5 B, or any other section(s) herein this Agreement will result in an immediate surrender of all funds in the reserve account and applied to the benefit of the Administrator.

      **2.**     **Consideration to be Paid by Buyer.**

      **2.1**     **Purchase Price for the Assets.**  Subject to Section 2.2 below, the purchase price for each Purchase (the "Purchase Price") shall be calculated and paid as follows:

      (a)     On the Closing Date for each Purchase, a percentage (the "Advance Rate Amount" ) equal to of the Adjusted Value of each of the Accounts included in such Purchase as set forth in Exhibit A hereto for the initial Purchase and in Schedule 1 to the applicable Purchase Supplement for subsequent Purchases.

(b)      In addition to the Advance Rate Amount payable as of the Closing Date for each Purchase, subject to Sections 2.1(c), (d) and (e) hereof, Buyer shall deposit a deferred purchase price in the reserve account (the "Deferred Purchase Price") with respect to each of the Accounts included in any related Purchase in an amount equal to a percentage of the Adjusted Value of such Account, as set forth in Exhibit A hereto for the initial Purchase and in Schedule 1 to the applicable Purchase Supplement for subsequent Purchases.

(c)      The Deferred Purchase Price with respect to an Account shall be deposited in the reserve account by Buyer after allocations to the reserve account and on the earlier of (i) the date on which Buyer shall have received aggregate collections in respect of all Accounts included in any Purchase hereunder in excess of an amount equal to the aggregate Adjusted Value of such Accounts less the aggregate amount of the Deferred Purchase Price for such Accounts or (ii) each of the Accounts included in the related Purchase has been collected in full by Buyer or otherwise settled by Buyer with the related Payor in full conformity with Provider's covenants, representations and warranties set forth herein.  Buyer shall remit to the reserve account on the 15th day of each month after the month in which the Deferred Purchase Price becomes payable (the "Payment Date") in payment of such Deferred Purchase Price, the portion of such excess amount, if any, collected during the calendar month preceding such Payment Date until the earlier of (i) the date such Deferred Purchase Price shall have been paid in full and (ii) the date all such related Accounts have been collected by Buyer in full or written-off Buyer's books as uncollectible. Notwithstanding the above, Buyer, may, at its option, pay the Deferred Purchase Price by transferring and assigning the Accounts with respect to which the Deferred Purchase Price is payable to the Provider, in which case the Provider shall bear all costs and risks of collection of such Accounts.  Buyer shall automatically deduct from the Deferred Purchase Price otherwise payable with respect to the Accounts included in any Purchase, the Adjusted Value of any Account included in any Purchase on the date it becomes classified, by Buyer, as uncollectible and any other amounts payable by Provider to Buyer hereunder.

(d)      Notwithstanding the provisions set forth in Sections 2.1(b) and 2.1(c) hereof, in the event Buyer determines that a breach of any covenant, representation or warranty of the Provider hereunder has occurred with respect to an Account (an "Ineligible Account") and the Provider fails to substitute such Ineligible Account with a "Substitute Account" (as defined in and pursuant to Section 2.2 hereof), or the Provider fails to pay the deficiency amounts payable to Buyer pursuant to Section 2.2 hereof, then the Buyer shall offset the amount of the Deferred Purchase Price otherwise payable on the Accounts to the Provider by the amount of the related shortfall in the collections of the Adjusted Value on such Ineligible Accounts, and by all other amounts payable to Buyer hereunder.

(e)      Notwithstanding the provisions set forth in Sections 2.1(b) and 2.1(c) hereof, in the event the Buyer determines that the Provider has breached any of its representations, warranties or covenants set forth herein, until Provider has cured such breach to Buyer's satisfaction, Buyer shall have no obligation to apply to the reserve account the Deferred Purchase Price.

(f)      In the event that Buyer determines Provider has breached any of its representations, warranties or covenants contained in this Agreement, the Provider shall, upon demand by Buyer, repurchase from Buyer all of the Accounts for a price equal to the Adjusted Face Value of such Accounts, less collections actually received by Buyer on such Accounts, plus all other amounts payable to Buyer hereunder.

(g)      Buyer will send on or before the 15th day of each month a collection activity report, as prepared by its collection agent, with regard to the Accounts for the preceding month's collection activities which shall reflect the collection status of the Accounts, a status report on the amount of the accrued reserve account and any adjustments made thereto on account of Ineligible Accounts.

**2.2     Repurchase Obligation; Substitution of Accounts; Security Interest; Purchase Price Adjustment.**

(a)      If (i) any recapture or set-off by any person, entity or governmental payor against any Account occurs after the Closing Date, or (ii) Provider breaches any representation or warranty or covenant with respect to

3

any Account set forth in this Agreement or in any Exhibit hereto, or in any Purchase Supplement or any document delivered in connection herewith (A) the Provider shall give written notice of such dispute, denial, refusal, notice of set-off or recapture or other claim affecting the Account or Accounts or breach of such representation, warranty or covenant to the Buyer along with copies of any correspondence in connection therewith, immediately, but in no event later than three (3) days following the date Provider learns of the dispute, denial, refusal, notice of set-off or recapture or other claim affecting the Accounts or a breach of such representation or warranty or covenant and (B) such Account, together with the Account Records relating thereto (collectively, the "Excluded Assets") shall, immediately upon demand by Buyer, be repurchased by Provider at a repurchase price equal to the Gross Face Value of such Accounts less any amount actually collected by Buyer with respect to such Excluded Assets or, at Buyer's option, substituted with another Eligible Account (a "Substitute Account") as provided herein.  If any Excluded Assets are required to be substituted pursuant to this Section 2.2, additional current (i.e., not older than 30 days from the Billing Date) accounts receivable (collectively, the "Substitute Accounts"), together with all Account Records relating to such additional accounts receivable (collectively, the "Substitute Assets"), shall be substituted promptly by the Provider for such Excluded Assets until the Gross Face Value and Adjusted Value of such Substitute Assets is at least equal to the Gross Face Value and Adjusted Value of the Excluded Assets; provided, however, that all Substitute Assets must be approved in writing by the Buyer prior to the substitution and acceptance of such Assets by the Buyer hereunder.  Any proposed Substitute Assets not approved by the Buyer shall be retained by the Provider, and the Provider shall offer to the Buyer additional proposed Substitute Assets until the Gross Face Value and Adjusted Value of the Substitute Assets accepted by the Buyer is at least equal to the Gross Face Value and Adjusted Value of the Excluded Assets.

(b)     Should the amount collected (within 120 days of the Billing Date) on any Account (including Substitute Assets) purchased by Buyer be less than the amount of its Adjusted Value, then (whether or not Provider has delivered Substitute Accounts for such delinquent Accounts), unless such nonpayment is due to the bankruptcy, insolvency or financial inability of the Payor to pay such Account as demonstrated by the Provider to the satisfaction of Buyer, Provider shall remit to Buyer the amount of such difference between the Adjusted Value of the Account and the amount actually collected on such Account by Buyer as the repurchase price of such Accounts.  The amount of said repurchase price shall be paid within four (4) business days of Provider's receipt of notice from Purchaser notifying Provider of said deficiency.  The amount of said repurchase price shall be paid by delivery of a certified or bank check or, at Buyer's option, by the delivery of the repurchase price in Substitute Assets approved by the Buyer.  In addition, in the event that any Accounts are not paid in full within 120 days of their respective Billing Dates and the Provider fails to repurchase such Accounts, the Buyer shall deduct, from the Advance Rate Amount and the Deferred Purchase Price otherwise payable for all Accounts with respect to any Purchase, an amount equal to the Adjusted Value of such uncollected Account less the Deferred Purchase Price thereof.

(c)     The Provider shall pay or reimburse Buyer, upon demand, for all costs and expenses paid or incurred by Buyer in connection with its review and approval of Substitute Assets pursuant to this Section 2.2.

(d)     It is the express intent of the parties that the transfer of the Accounts by the Provider to Buyer hereunder and pursuant to any Purchase Supplement be treated, and the parties hereby agree to so treat such transfers, as a sale of such Accounts, and not as a secured financing, between the Provider and Buyer for tax, accounting and all other purposes.  However, in the alternative, in the event that any court of competent jurisdiction over the matter should determine that any Purchase is deemed to be a financing and not a true sale notwithstanding the express intent of the parties hereto that it be deemed a true sale, the Provider shall be obligated to pay Buyer an amount equal to the Adjusted Value of each Account on the 120th day following the respective date or service (i.e. the date the services or product was rendered).of such Account and the Provider hereby expressly grants to the Buyer a first lien upon and perfected security interest in all of the Accounts and other Assets described in Exhibit A hereto and in Schedule 1 to each Purchase Supplement, both presently and hereafter acquired by purchase or as Substitute Accounts, including all proceeds therefrom, and all funds due to the Provider from any other source whatsoever, relating to such Accounts or Substitute Accounts to secure performance of the Provider's obligations pursuant to this Agreement, including without limitation Provider's obligation to provide Substitute Assets and pay Buyer cash in lieu of Substitute Assets as provided in the first paragraph of this Section 2.2.  Provider shall execute

4

such financing statements and other documentation as Buyer may request from time to time in order to perfect and protect Buyer's security interest in the Accounts and other Assets.

(e)     All Substitute Accounts and Substitute Assets approved by the Buyer in accordance with this Section 2.2 shall, without further action by the parties hereto, be deemed "Accounts" and "Assets", respectively and as such shall be subject to all of the terms and conditions of this Agreement including, without limitation, all Provider's representations, warranties and covenants and Buyer's security interest therein. Notwithstanding anything herein to the contrary, if, for any reason, the Adjusted Value of the Substitute Assets is not at least equal to the Adjusted Value of the Excluded Assets, the Purchase Price shall be subject to post-Closing downward adjustment to compensate for such discrepancy. The amount of such adjustment shall be paid by the Provider to the Buyer by delivery of a certified or bank check or other form of cash equivalent requested by the Buyer within five (5) business days following such request.

2.3     **Payment of Purchase Price**. On the Closing Date for each Purchase, Buyer shall pay to the Provider the Advance Rate Amount by wire transfer in immediately available funds into an account designated by Provider in writing or by certified check.

2.4     **Additional Security**. As additional security for the Provider's performance of its representations, warranties, covenants and agreements set forth in this Agreement, the Provider hereby grants to the Buyer a first lien upon and perfected security interest in all accounts receivable of the Provider (other than the Accounts) both presently existing and hereafter created, including all proceeds therefrom, and all funds due to the Provider from any other source whatsoever relating to such accounts. Provider shall execute such financing statements and other documentation as Buyer may request from time to time in order to perfect and protect Buyer's security interest in such accounts. Upon the breach by Provider of any of its representations, warranties or covenants hereunder as determined by Buyer, Provider hereby (I) authorizes Buyer to instruct the Payors to make payment on such accounts directly to the Buyer and (ii) consents to the appointment of a receiver to take control of and to collect and liquidate for the benefit of Buyer all collateral pledged hereunder.

3.     **Liabilities Not Assumed by Buyer**. Provider covenants, represents and warrants that the Buyer shall not be deemed by anything contained in this Agreement to have assumed liabilities relating to, or arising out of, the Assets, including, without limitation, the following (hereinafter collectively referred to as "Retained Liabilities"):

(a)     Any liability of the Provider to any person or entity, the existence of which constitutes a breach of any covenant, agreement, representation or warranty of the Provider contained in this Agreement;

(b)     Any liability of the Provider for any federal, state, municipal, local or foreign taxes, assessments, additions to tax, interest, penalties, deficiencies, duties, fees and other government charges or impositions of each and every kind or description, whether measured by properties, assets, wages, payroll, purchases, value added, payments, sales, use, business, capital stock, surplus or income with respect to ownership of the Assets up to and including the related Closing Date with respect to such Assets;

(c)     Any liability or obligation (contingent or otherwise) of the Provider to any person or entity arising out of any litigation, claim, arbitration or other proceeding;

(d)     Any liabilities or obligations of any kind whatsoever relating to any action or inaction by any person or entity, including, without limitation, any of the Provider's officers, directors, shareholders, employees, agents, representatives or independent contractors (collectively, "Agents"), relating in any way to the services rendered by any of them in connection with the Accounts or the servicing of any of the Accounts in the case of such servicing up to and including the Closing Date;

(e)     Any liability or obligation (contingent or otherwise) of the Provider arising out of defects in or mislabeling of, or damages to persons or property arising out of defects or mislabeling of, products (including, without limitation, prescription medications) manufactured, sold, or prescribed by the Provider in connection with any of the Accounts;

(f)     Any liability or obligation of the Provider to compensate any person or entity, including, without limitation, any agent, licensor, supplier, distributor or customer of the Provider, in respect of any services rendered or products manufactured, sold or prescribed in connection with the Accounts; and

(g)     Any recapture, set-off, or other claim made by any third party payor against the Accounts.

**4.     Representations and Warranties of the Provider.** The Provider represents and warrants to Buyer as follows:

**4.1     Organization and Good Standing.** The Provider is a corporation or a professional association duly organized, validly existing and in good standing under the laws of the state of its incorporation or organization, with full power to carry on its business as it is now operated and to own the Assets and convey good and marketable title and ownership of the Assets to Buyer. The Provider is qualified to do business and is in good standing in each jurisdiction in which the nature of its business or the character of its properties makes such qualification necessary.

**4.2     Proper Authority.** The Provider has all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereby. This Agreement and all other Agreements and instruments to be executed by the Provider in connection herewith have been (or upon execution will have been) duly executed and delivered by the Provider, have been effectively authorized by all necessary action, corporate or otherwise, and constitute (or upon execution will constitute) legal, valid and binding obligations of the Provider in accordance with their respective terms.

**4.3     Ownership of Assets.** The Provider is the lawful owner of each of the Assets, and all Assets are free and clear of all liens, mortgages, pledges, security interests, restrictions, prior assignments, encumbrances and claims of any kind or nature whatsoever (collectively, "Liens"). The execution and delivery to Buyer of this Agreement and, if applicable, the instruments of transfer of ownership contemplated by this Agreement will vest good and marketable title to the Assets in Buyer free and clear of all Liens and shall constitute a true sale of the Accounts under applicable law (including for tax and accounting purposes) and not a secured financing. Without limiting the generality of the forgoing, none of the Assets is subject to any contract, agreement or understanding (other than this Agreement), whether oral or written, or any indenture or other instrument to which the Provider is a party or by which it is bound (collectively, "Contracts") which subjects the Assets to any Lien or conveyance of any interest therein.

**4.4     Agreement Not In Breach of Other Instruments.** The execution and delivery of this Agreement by the Provider and the consummation of the transactions contemplated hereby will not result in a breach of any of the terms and provisions of, or constitute a default under, or conflict with, any Contract, the Articles or Certificate of Incorporation or Bylaws of the Provider, any judgment, decree, order or award of any court, governmental body or arbitrator or any federal, state, municipal, local or foreign laws, statute, ordinance, rule or regulation (collectively, "Laws") applicable to the Provider.

**4.5     Litigation.** There are no claims, disputes, actions, proceedings or investigations of any nature pending or, to the best knowledge of the Provider, threatened, against or involving the Provider or any of its Agents that relate in any way to any of the Assets or to the services rendered in connection therewith (the "Services"). Further, there are no injunctions, writs, restraining orders or other orders of any nature against Provider that adversely affect Provider's performance of the agreements and transactions contemplated in this Agreement, and there are no proceedings or investigations pending or threatened which adversely affect the payment or enforceability of the Accounts.

6

**4.6     Regulatory Approvals.**  All consents, approvals, authorizations and other requirements prescribed by any law, rule or regulation which must be obtained or satisfied by the Provider and which are necessary for the execution, delivery and performance by the Provider of this Agreement, the documents to be executed and delivered by the Provider in connection herewith and for the rendering of the Services by the Provider have been obtained and satisfied.

**4.7     Compliance With Law.**  With respect to the Assets and the Services, neither the Provider nor any of its agents has violated, and on the date hereof does not violate, in any respect, any law, rule or regulation.  Neither the Provider nor any of its agents has received any notice of any such violation.

(a)     The Provider shall maintain compliance, in the context of this Purchase Agreement, with the laws governing the sale and assignment of Medicare and Medicaid claims under the Medicare program pursuant to 42 U.S.C. &1395 et seq., and regulations adopted under the authority thereof and the Medicaid program adopted by any state pursuant to 42 U.S.C. &1396 et seq., and regulations adopted under the authority thereof, and every intermediary, carrier and administrator of any such programs.

**4.8     Disclosure.**  The information provided and to be provided by the Provider to the Buyer under or in connection with this Agreement, each Purchase Supplement and in any Exhibit or Schedule hereto and thereto, or in any other writing hereto does not and will not contain any untrue statement of a material fact or omits or will omit to state a material fact required to be stated herein or therein or necessary to make the statements and facts contained herein or therein, in light of the circumstances in which they are made not false or misleading.  Copies of all documents heretofore or hereafter delivered or made available to Buyer pursuant hereto were or will be complete and accurate records of such documents.

**4.9     No Prior Collections on Accounts.**  No monies have been collected to date in respect of any Account by or on behalf of the Provider or any other person or entity, or, if any monies have been collected with respect to the Accounts, such funds have been turned over to Buyer.  The Provider, after due investigation, knows of no reason why each Account should not be collected in full within 120 days of its Billing Date in the ordinary course of business by or on behalf of Buyer or its assignee.  No other person or entity participated in the rendering of such Services or is entitled to any payment whatsoever in respect of such Services.  All Services were rendered in full in the ordinary course of business, in accordance with the prevailing standards of the practice of medicine in the County in which the Provider operates, and the amounts charged for such Services as set forth in the Accounts represent the standard amounts billed by the Provider for the same or similar services in the ordinary course of business at the date on which such Services were rendered.  All Services were rendered and all paperwork in respect of the Accounts was completed in accordance with all applicable Laws, including, without limitation and to the extent applicable, all Laws governing the Medicare programs and all rules of the relevant insurance companies who are the respective Payors of the Accounts.  Each Account is the legal, valid and binding obligation of the respective Payor enforceable in accordance with its terms and is not subject to any dispute, offset, counterclaim or encumbrance of any kind.

**4.10     Sale of Accounts Conveys Valid Enforceable Claims Against Payors.**  Each and every step has been taken by Provider pursuant to the terms of this Agreement or otherwise to assign to Buyer, Provider's rights to collect and enforce payment of the Account payable by the Payor and the assignment thereof shall transfer fully enforceable rights to Buyer against each Payor of the respective Account to collect the full amount of each of the Accounts from such Payor.  Each Account is in accordance with and does not contravene any laws, rules or regulations applicable thereto, or contract between the Provider and the Payor applicable thereto, and no party to an Account or related contract is in violation of any such law, rule or regulation.

**4.11     Solvency.**  Provider is not insolvent and will not be rendered insolvent as a result of the sale and transfer of the Assets pursuant to this Agreement or as a result of the transaction contemplated by this Agreement. For purposes hereof, the Provider's tangible assets are in excess of the total amount of its liabilities; (i) including for

purposes of this definition all liabilities, whether or not reflected on a balance sheet prepared in accordance with generally accepted accounting principles, and whether direct or indirect, fixed or contingent, secured or unsecured, disputed or undisputed; (ii) Provider is able to pay its debts and obligations in the ordinary course as they mature; and (iii) Provider has sufficient funding to carry on its business as presently conducted by it.

4.12   **Representations, Warranties and Covenants of Provider Relating to the Purchase of Accounts from Provider.** In addition to the other representations, warranties and covenants of Provider set forth herein, Provider does hereby represent, warrant, and covenant with regard to each of the Accounts identified in Exhibit A attached hereto and in Schedule 1 to any Purchase Supplement delivered pursuant to Section 1.4 hereof that, with regard to each of the Accounts identified therein:

(a)     the services stated in the Accounts were actually provided;

(b)     the health care fees charged are customary, reasonable and are payable at such rate under the terms of the related patient's health care insurance coverage with an approved Payor;

(c)     the private medical insurance coverage by the responsible Payor was effective at the time of treatment;

(d)     the Provider has pre-verified insurance coverage by the Payor prior to admittance of a patient;

(e)     the claim for payment has been submitted to the responsible Payor within the last 90 days and has been acknowledged by such Payor;

(f)     all supporting documentation necessary to verify a claim have been submitted to the Payor by the Provider;

(g)     that the contracted patient co-payment amounts on the Accounts and their related Adjusted Value are as stated in Exhibit A or Schedule 1 to the Purchase Supplement to this Agreement; and

(h)     the Provider acknowledges that in the event of insolvency of the Payor of any of the Accounts hereunder, that the Provider hereby covenants and agrees to repurchase such Accounts, up to a maximum of ten percent (10%) by Adjusted Value of the subject Accounts, pursuant to and in full compliance with Section 2.2 of this Purchase Agreement.

(i)     the accounts are free of fraud and are considered collectible from third parties, other than the patient or their guarantor.

(j)     the accounts contain accurate billing and are free of errors.

4.13   **Sale of Accounts to be Reflected on Provider's Books and Records.** Provider will reflect on all of its books, records, tax filings and financial statements, and in all its dealings with the Payors of such Accounts, that it has sold the Accounts and related Assets to Buyer and shall treat and characterize all Purchases as sales of the Accounts and related Assets for accounting and tax purposes. The Provider hereby affirms that it has valid business reasons for selling the Accounts to the Buyer as contemplated by this Agreement rather than obtaining a loan with the Accounts being utilized as collateral therefor.

4.14   **Receivables are Accounts.** Each of the Accounts complies with the definition of "Eligible Account" as set forth in Section 9.1 hereof.

4.15   **Provider's Tax Returns.** Provider has filed on a timely basis all federal, state and local tax returns required in the conduct of its operations.

8

**4.16**     **Provider's Pension and Profit Sharing Plans**.  All Provider (and any of Provider's consolidated subsidiaries) pension or profit sharing plans have been fully funded in accordance with Provider's applicable obligations.

**4.17**     **Provider's Principal Place of Business**.   Provider's principal place of business and chief executive office are located at the address set forth in the first paragraph of this Agreement, and have been located at such address for the past four months.  Except as otherwise disclosed to Buyer in writing on or prior to the date of this Agreement, Provider conducts business only in the County set forth in the recitals to this Agreement.

**4.18**     **Identity of Provider**.  The full and correct legal name of the Provider is as set forth in the first paragraph of this Agreement, Provider has not changed its name in the last six years, and Provider does not have any trade names, fictitious names, assumed names or "doing business as" names except as have previously been disclosed in writing to the Buyer.

**4.19**     **No Adverse Change**.  No event has occurred which adversely affects Provider's operations, including its ability to perform the transactions contemplated by this Agreement.

**4.20**     **Financing Statements**.   There are no financing statements now on file in any public office governing any property of any kind, real or personal, in which Provider is named in or has signed as the debtor, except the financing statement or statements filed or to be filed in respect of this Agreement or those statements now on file that have been disclosed in writing by Provider to Buyer.  Provider will not execute any financing statement in favor of any other person or entity, excepting Buyer, for the term of this Agreement.

**4.21**     **No Set-Offs**.  There are no set-offs, allowances, discounts, deductions, counterclaims, or disputes with respect to any Account, either at the time it is accepted by Buyer for purchase or any time prior to the date it is to be paid.  "Dispute," as used in the last preceding sentence, shall mean any claim by Payor against Provider, of any kind whatsoever, valid or invalid, that is asserted by the Payor as a basis for refusing to pay an Account either in whole or in part.

**4.22**     **No Change of Address**.  Provider shall not change its mailing address, chief executive office, principal place of business or place where such records are maintained without 30 days prior written notice to Buyer.

**4.23**     **No Other Pledges**.  Provider will not transfer, pledge or give a security interest in any of the Accounts to anyone other than Buyer.

**5.**     **Certain Understandings and Agreements of the Parties**.

**5.1**     **Access and Cooperation**.  From and after the date hereof (i) Buyer  and any other authorized agents and appointed representatives of Buyer including its Servicer shall have reasonable access during normal business hours to all Account records and any and all other documentation relating to the Accounts, including, without limitation, patient records and information, and (ii) the Provider shall promptly furnish or cause to be furnished to Buyer all information (including turning over originals or copies of such information) requested by Buyer or any of its agents relating to the Assets.  Upon a breach by Provider of any of its representations, warranties or covenants hereunder, all costs, fees and expenses incurred by Buyer in conducting any such review or audit shall be paid by Provider to Buyer, upon demand.  After the Closing Date for each Purchase the Provider shall continue to cooperate fully with Buyer and Buyer's agents in any and all matters related to any Assets, including, without limitation, matters relating to the collection of any Account.  It is further understood and agreed that Buyer and its agents shall have the right at any time to communicate with and seek the assistance of Payors, patients and relatives or guardians of patients of the Provider for the purpose of facilitating the servicing and collection of the Accounts.

9

5.2    **Handling of Accounts**. From and after the date hereof the Assets shall be handled by or on behalf of the Provider in the ordinary course of the business, and no act shall be done or omitted to be done by or on behalf of the Provider, which act or omission could jeopardize collection of payment on any Account by Buyer; provided, however, that no Accounts shall re-billed by or on behalf of the Provider or any other person or entity without the prior written consent of Buyer and the Provider shall make all appropriate entries in its computer or other billing system for billing or re-billing of Accounts which require that all payments be forwarded directly from the Payors of such Accounts to Buyer's Lock-Box Account described in Section 5.5(b) hereof. Provider (or its agents) shall be responsible for billing, re-billing, and collecting all amounts with respect to the Accounts following the Closing Date for a Purchase related thereto and Buyer shall refer all inquiries concerning the Accounts from the Buyer of such Accounts to Provider.

5.3    **Future Encumbrances**. It is understood and agreed that the Provider shall not, at any time, for any reason or under any circumstances, cause or permit any of the Assets to become subject to any Liens other than the lien of Buyer or its assigns in the Accounts. It is further understood and agreed that, as of the Closing Date for each Purchase, the Provider shall have no right, title or interest in or to the Assets related thereto, and shall not, at any time, for any reason or under any circumstances, hold itself out to third parties as having any right, title or interest in or to such Assets. Without limiting the generality of the foregoing, the Provider shall not, at any time, for any reason or under any circumstances, bill any person or entity, including, without limitation, any governmental agency, in connection with the collection, in whole or in part, of any Account, except pursuant to the written request of the Buyer.

5.4    **Cooperation in Litigation**. Provider shall fully cooperate with Buyer in the defense or prosecution of any litigation or proceeding which may be instituted hereafter against Buyer or Buyer's assigns on account of enforcement of Buyer's ownership of the Assets and the enforcement of payment from the related Payor thereof, and Provider shall indemnify Buyer or their respective agents or assigns for any loss or expense including their reasonable attorneys fees incurred by such parties relating to or arising out of the Provider's billing, administration or handling of the Assets prior to or after the Closing Date related thereto.

5.5    **Power of Attorney and Pay-Over of Receivables**.

(a)    The Provider hereby authorizes Buyer and its collection agent to open any and all mail or other correspondence in respect of any of the Assets addressed to the Provider or to any agent of the Provider (if delivered to Buyer if received on or after the Closing Date for the related Purchase thereof), and hereby grants to Buyer and its collection agent a power of attorney which is irrevocable and coupled with an interest to do any and all of the following:

(i)    to endorse and cash any checks or instruments in respect of any of the Assets ("Funds") made payable or endorsed to the Provider or its order, whether received by Buyer or received by any other party and delivered over to Buyer pursuant to Section 5.5(b) below;

(ii)    receive, open and dispose of any mail addressed to Provider and put Buyer's address on any statements mailed to Payors;

(iii)    pay, settle, compromise, prosecute or defend any action, claim, conditional waiver and release, or proceeding relating to Accounts;

(iv)    upon the occurrence of a default, notify in the name of Provider the U.S. Post Office to change the address for delivery of mail addressed to Provider to such address as Buyer may designate. Buyer shall turn over to Provider all such mail not relating to the Accounts;

(v)    execute and file on behalf of Provider any financing statement deemed necessary or appropriate by Buyer to protect its interest in and to the Accounts or Assets, or under any provision of this Agreement; and

(vi)    to do all things necessary and proper in order to carry out this Agreement.

(b)    The Provider agrees that it will (i) hold in trust for the sole and exclusive benefit of Buyer, (ii) segregate from other funds of Provider, (iii) forward within one business day of receipt thereof to the lock box account of the Buyer maintained by it with City National Bank (the "Lock Box Account") and (iv) cause its agents to forward immediately to Buyer's Lock Box Account at the address stated herein, any Funds received by the Provider or its agents after the date hereof in payment or partial payment of any Accounts (including any Medicare payments with regard to Medicare Accounts, if any, which the Provider will continue to receive notwithstanding their sale and assignment to Buyer). The Provider further agrees that, at Buyer's or its collection agent's request, the Provider shall render to such party a full and complete accounting of all Funds received in payment or partial payment of any Accounts by or on behalf of the Provider or any other person or entity other than Buyer, of which the Provider, after due investigation, is aware. Unless otherwise notified in writing by Buyer, Buyer's Lock Box Account is:

Brandywine Health Services of Mississippi, aka Choctaw County Medical Center
P.O. Box 54297
Los Angeles, CA 90051-0297

With each remittance of Funds to the Lock Box Account, the Provider shall include a report identifying the related Account and the related Payor.

(c)    Buyer and Provider each acknowledge that the Payor(s) of the Accounts may in the normal course of business prior to receiving official notification, by the Buyer's Servicer (Medical Tracking Services, Inc.), of Buyer's purchase of the Accounts, forward to the Provider payment or partial payment on the Accounts.

(d)    Buyer and Provider also each acknowledge that the Payor(s) of the Accounts may inadvertently, even after receiving official notification of Buyer's purchase of the Accounts, forward to the Provider payment or partial payment on the Accounts. Provider agrees to provide Buyer with a daily accounting of all Funds received on all accounts receivable of Provider including the Accounts, during the period commencing the date of the execution of this Agreement and to forward all payments received to the buyers lock box within one day following receipt of such payments.

(e)    Provider agrees that in connection with the purchase of the Accounts by Buyer, the Provider shall indicate in its computer files that the Accounts have been sold to the Buyer and will be identified by account number, patient name, Payor name and the unpaid balance of each Account as of such date.

(f)    Provider shall cause in house to continue to bill and service all Accounts in accordance with procedures outlined in the Servicing Contract and as follows:

(i)    Payors are initially billed by electronic submission;

(ii)    Within 60 days, either the payment or EOB (Explanation of Benefits) status is received on the Accounts. Those accounts not paid, or where there is no EOB status report within 60 days, will be rebilled by in-house. If Provider/ billing party receives a status report on an account requesting additional information, Provider will provide such information immediately. Subsequently, if an Account is not paid or status for claim is not received within an additional thirty day period, the Account will be billed by in-house a final time;

(iii)    During the billing and rebilling period, Provider will provide Buyer with a weekly status report on all Accounts outstanding; and

11

(iv)     All bills shall indicate conspicuously on their face and in BOX 33 of HCFA 1500 forms that the Accounts represented thereby have been transferred to Buyer and should be paid directly to the Buyer's Lock Box Account.

5.6     **Confidentiality**.  The Provider hereby covenants and agrees that it shall not disclose any information or materials communicated to or obtained by it with respect to any of the Accounts, whether or not that information is or has been directly or indirectly communicated or obtained, including, without limitation, the terms of this Agreement (including the exhibits and any schedules hereto) (the "Confidential Materials"), to any third party, unless specifically authorized in writing by Buyer to do so; provided, however, that the Provider may disclose certain Confidential Materials to its officers, directors and employees as is reasonably necessary for compliance with the terms of this Agreement.  If Buyer gives the Provider written authorization to make any disclosures of Confidential Materials, the Provider shall do so only within the limits and to the extent of that authorization. Furthermore, the Provider shall take all actions necessary to prevent disclosure of any Confidential Materials to any third party.  In the event that the Provider, or anyone whom the Provider supplies any information contained in such Confidential Materials under the terms of a subpoena, order, civil investigation demand or similar process issued by a court of competent jurisdiction or by a governmental body, the Provider agrees to (a) notify Buyer immediately of the existence, terms and circumstances surrounding such request, (b) consult with Buyer on the advisability of taking legally available steps to resist or narrow such request, and (c) if disclosure of such information is required, furnish only that portion of the Confidential Materials which, in the opinion of the disclosing party's counsel, such disclosing party is legally compelled to disclose and advise Buyer as far in advance of such disclosure as is possible so that Buyer may seek an appropriate protective order or other reliable assurance that confidential treatment will be accorded such Confidential Materials.  Without limiting the generality of the foregoing, the Provider shall not oppose actions by Buyer or Medical Capital Corporation to obtain an appropriate protective order or other reliable assurance that confidential treatment would be accorded such Confidential Materials.

5.7     **No Proceedings.**  Provider hereby agrees that it will not institute against Buyer or join any other person or entity in instituting against Buyer, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceeding, or other proceeding under any federal or state bankruptcy or similar law.

**6.     Indemnification and Claims**.

6.1     **Indemnification by the Provider**.  The Provider shall forthwith on demand indemnify and hold harmless Buyer and its officers, directors, shareholders, assigns and agents (each an "Indemnified Party") from and against any and all claims, losses, damages, liabilities and expenses (including, without limitation, settlement costs and any legal, accounting and other expenses for enforcing Buyer's rights and remedies hereunder, or for investigating, prosecuting or defending any actions or threatened actions) awarded or incurred by any of them arising out of or relating to this Agreement or the transactions contemplated hereby or the use of proceeds therefrom, together with interest on cash disbursements in connection therewith at the rate of eighteen percent (18%) per annum from the date cash disbursements were made or incurred by any Indemnified Party until paid in full by the Provider, including without limitation relating to each and all of the following:

(a)     Any breach or alleged of any representation or warranty made by the Provider in this Agreement or any Exhibit to this Agreement, in any Purchase Supplement or in any document delivered in connection herewith;

(b)     Any breach or alleged breach of any covenant, agreement or obligation of the Provider contained in this Agreement, any Purchase Supplement, any Exhibit to this Agreement or document provided in connection herewith, or any other instrument contemplated by this Agreement;

12

(c)   Any misrepresentation or alleged misrepresentation contained in any statement or certificate furnished by the Provider pursuant to this Agreement, or any Purchase Supplement or in connection with the transactions contemplated by this Agreement;

(d)   Any Retained Liabilities or other claims against, or liabilities or obligations of, the Provider not specifically assumed by Buyer pursuant to this Agreement; and

(e)   The failure to obtain the protections afforded by compliance with the notification requirements of the Bulk Sales Laws in force in the jurisdictions contemplated by this Agreement.

6.2   **Claims for Indemnification**.  Whenever any claim shall arise for indemnification hereunder, the Buyer shall promptly notify Provider of the claim and, when known, the facts constituting the basis for such claim. In the event of any claim for indemnification hereunder resulting from or in connection with any claim or legal proceedings by a third party, the notice to the Provider shall specify, if known, the amount or an estimate of the amount of the liability arising therefrom.  The Buyer shall not settle or compromise any claim by a third party for which it is entitled to indemnification hereunder, without the prior written consent of the Provider (which shall not be unreasonably withheld) unless the Provider shall have failed to pay indemnification obligations as they accrue or in the event that suit shall have been instituted against it and the indemnifying party shall not have taken control of such suit after notification thereof as provided in Section 6.3 of this Agreement.

6.3   **Defense by Indemnifying Party**.   In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any claim or legal proceeding by a person who is not a party to this Agreement against the Buyer, the Provider at its sole cost and expense may, upon written notice to the Buyer, assume the defense of any such claim or legal proceeding if it acknowledges to the Buyer in writing its obligations to indemnify the Buyer or any other Indemnified Party with respect to all elements of such claim.  The Buyer shall be entitled to participate in the defense of any such action, with its counsel and at its own expense.  If the Provider does not assume the defense of any such claim or litigation resulting therefrom, (a) the Buyer or such Indemnified Party, as the case may be, may defend against such claim or litigation, in such manner as it may deem appropriate, including but not limited to, settling such claim or litigation, after giving notice of the same to the Provider, on such terms as the Buyer or such Indemnified Party, as the case may be, may deem appropriate, and (b) the Provider shall be entitled to participate in (but not control) the defense of such action, with its counsel and at its own expense.  If the Buyer or such Indemnified Party defended such third party claim or the amount or nature of any such settlement, the Provider shall have the burden to prove by a preponderance of the evidence that the Buyer did not defend or settle such third party claim in a reasonably prudent manner.

6.4   **Manner of Indemnification**.  All indemnification hereunder by the Provider shall be effected by payment of cash or delivery of a certified or official bank check in the amount of the indemnification liability and shall be payable upon demand by the Indemnified Party.

7.   **Conditions to Closing**.

7.1   **Conditions to Obligations of Each Party**.  The obligation of each party hereto to consummate each Purchase contemplated hereby shall be subject to the fulfillment, at or prior to the Closing Date for such Purchase, of the following conditions:

(a)   **No Action or Proceedings**.  No claim, action, suit, investigation, or other proceeding shall be pending or threatened before any court or governmental agency which presents a substantial risk of the restraint or prohibition of the transactions contemplated by this Agreement or the obtaining of material damages or other relief in connection therewith.

13

(b) **Compliance with Law**. There shall have been obtained all permits, approvals, and consents of all governmental bodies or agencies which counsel for either party hereto may reasonably deem necessary or appropriate so that consummation of the transactions contemplated by this Agreement will be in compliance with applicable laws.

7.2 **Conditions to Obligations of Buyer**. The obligations of Buyer to consummate any Purchase contemplated hereby shall be subject to the fulfillment, at or prior to the Closing Date for such Purchase, of the following additional conditions:

(a) **Representations and Warranties True**. The information set forth in Exhibit A or, as applicable, any Purchase Supplement and all schedules and exhibits attached thereto is true and accurate in all material respects as it relates to the Accounts. The representations and warranties of the Provider contained in this Agreement, or in any other document of such party delivered pursuant hereto shall be true and correct in all material respects on the Closing Date for such Purchase, and on such Closing Date the Provider shall have delivered to Buyer a certificate to such effect signed by the President or any Vice President and the Secretary or any Assistant Secretary of the Provider.

(b) **Performance of the Provider**. Each of the obligations of the Provider to be performed by it on or before the Closing Date for any Purchase pursuant to the terms of this Agreement shall have been duly performed in all material respects on or before such Closing Date, and at the Closing related thereto, the Provider shall have delivered to Buyer a certificate to such effect signed by the President or any Vice President and the Secretary or any Assistant Secretary of the Provider.

(c) **Authority**. All actions required to be taken by, or on the part of, the Provider to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby shall have been duly and validly taken by the Board of Directors of the Provider.

(d) **Delivery of Documentation.** Buyer shall have received the following documentation:

(1)   in the case of the initial Closing Date, copies, certified by the Secretary or any Assistant Secretary of the Provider, of resolutions of the Board of Directors of the Provider or the Executive Committee thereof and the resolutions of the shareholders of such party (if required) authorizing the execution, delivery and performance of this Agreement and all other Agreements, documents and instruments relating hereto and the consummation of the transactions contemplated hereby; in the form as attached hereto as "Exhibit B",

(2)   in the case of the initial Closing Date, Form UCC-1 financing statement(s) executed by the Provider, evidencing the security interest in all accounts receivable of the Provider (other than the Accounts being purchased) as provided in Section 2.4 hereof, in form and substance satisfactory to Buyer and duly filed with the appropriate governmental authority;

(3)   in the case of each Purchase, Form UCC-1 financing statement(s) executed by the Provider, evidencing the sale of the Accounts from the Provider to the Buyer as provided in Section 2.2 hereof, in form and substance satisfactory to counsel for Buyer and duly filed with the appropriate governmental authority;

(4)   bill of sale and assignment in the form as attached hereto as "Exhibit C", and powers of attorney, in form and substance attached hereto as "Exhibit D" or reasonably satisfactory to counsel for Buyer, with respect to the Assets to be purchased on such Closing Date;

(5)   such further instruments of sale, transfer, conveyance, assignment or delivery covering the Assets or any portion thereof as Buyer may require to assure the full and effective sale, transfer, conveyance, assignment or delivery of the Assets to Buyer;

14

(6)     a receipt evidencing the Provider's receipt of the Purchase Price for such Purchase in the form attached hereto as "Exhibit "E" defined in Section 2.1 hereof;

(7)     evidence that each Payor of the Accounts has received written notice from the Provider to the effect that the Accounts have been transferred to Buyer and all payments on the Accounts are to be sent directly to Buyer's Lock-Box Account; and

(8)     a Certificate of Custodian of Records for the Accounts, naming the Buyer or Buyer's Administrator as custodian of the medical records related to the Accounts in a form attached hereto as "Exhibit F";

(9)     such other closing documents as Buyer may reasonably request.

(e)     **No Adverse Changes**.  Since the date of this Agreement and the Closing Date for such Purchase there shall not have occurred any damage, destruction or loss with respect to any of the related Assets, whether or not covered by insurance, nor shall there have occurred any other event or condition which has made or which reasonably may be expected to have a material and adverse effect on the value of such Assets.

## 8.     Miscellaneous.

**8.1     Notices**.  All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed given (i) if delivered personally or (ii) three (3) days after mailed by certified or registered mail, postage prepaid, return receipt requested, or (iii) upon receipt if sent by prepaid telegram, telex or telecopy, in each case to the parties, their successors in interest or their assignees at the following addresses or telecopy numbers, or at such other addresses or telecopy numbers as the parties may designate by written notice in the manner aforesaid:

If to Buyer to:     MCC Special Purpose Corporation VIII
                            3770 Howard Hughes Parkway, Suite 301, Las Vegas, NV 89109
                            Fax no: (775) 825-5313

and; Buyer's Administrator:
                            Medical Capital Corporation
                            2100 South State College Blvd, Anaheim, CA 92806
                            Fax No.:  (714) 935-3114

If to the Provider, to the address or telecopy number set forth in the first paragraph of this Agreement.

**8.2     Assignability and Parties in Interest**.  The parties hereto acknowledge and agree that this Agreement, including all rights and obligations contained herein, may be sold, assigned or otherwise transferred, in whole or in part, by Buyer in its sole and absolute discretion without the consent of the Provider.  This Agreement is not assignable by the Provider.  This Agreement shall inure to the benefit of and be binding upon Buyer and the Provider, and their respective permitted successors and assigns.  This Agreement shall not benefit or create any right or cause of action in any or on behalf of any person or entity other than the parties hereto and their respective permitted successors and assigns, assignable by the Provider.  This Agreement shall not benefit or create any right or cause of action in any or on behalf of any person or entity other than the parties hereto and their respective permitted successors and assigns.

**8.3     Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one and the same Agreement.

**8.4     Severability**.  Any provision of this Agreement which is invalid, illegal, or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality, or unenforceability,

15

without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal, or unenforceable in any other jurisdiction.

8.5     **Due Diligence Investigation.**  All representations and warranties contained herein which are made to the best knowledge of a party shall require that such party make reasonable investigation and inquiry with respect thereto to ascertain the correctness and validity thereof.  No investigation or inquiry made by or on behalf of Buyer shall in any way affect or lessen the representations, warranties and covenants made and entered into by the Provider hereunder.

8.6     **Origination Fee; Expenses of Transaction and Enforcement.**  The Provider shall pay to Buyer, on each Closing Date, an origination fee (the "Origination Fee") specified in Exhibit A hereto and, if applicable, Schedule 1 to any Purchase Supplement.  The Provider shall be responsible for paying all sales and transfer taxes, together with all other transfer or recordation fees and expenses including any legal fees and costs associated therewith, arising out of the transfer of the Assets to Buyer pursuant to the terms of this Agreement.

8.7     **Construction.**  This Agreement shall, in all cases, be construed simply, according to its fair meaning, and not strictly for or against either party.  Any section and paragraph headings contained in this Agreement are for convenience of the reference only and shall not affect the construction or interpretation of this Agreement.

8.8     **Survival of Representations and Warranties.**  All representations, warranties, covenants and indemnities made by the parties in this Agreement or in any instrument or document furnished in connection herewith shall survive the initial Closing and any subsequent Closing for the sale of Accounts to Buyer.

8.9     **Governing Law; Submission to Process.**  PROVIDER HEREBY IRREVOCABLY SUBMITS ITSELF TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS SITTING IN THE STATE OF NEVADA AND AGREES AND CONSENTS THAT SERVICE OF PROCESS MAY BE MADE UPON IT IN ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE PURCHASE OF ACCOUNTS OR ANY OTHER RELATIONSHIP BETWEEN PROVIDER AND BUYER BY ANY MEANS ALLOWED UNDER NEVADA OR FEDERAL LAW.  ANY LEGAL PROCEEDING ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, THE PURCHASE OF ACCOUNTS OR ANY OTHER RELATIONSHIP BETWEEN PROVIDER AND BUYER SHALL BE BROUGHT AND LITIGATED EXCLUSIVELY IN ANY ONE OF THE UNITED STATES DISTRICT COURTS SITTING IN THE STATE OF NEVADA TO THE EXTENT IT HAS SUBJECT MATTER JURISDICTION, AND OTHERWISE IN ANY COURT OF THE STATE OF NEVADA HAVING JURISDICTION.  NOTWITHSTANDING THE FOREGOING, BUYER RESERVES THE RIGHT, IN ITS SOLE AND ABSOLUTE DISCRETION, TO COMMENCE LEGAL ACTION AGAINST THE PROVIDER AND /OR  GUARANTOR IN ANY OTHER JURISDICTION IN WHICH THE PROVIDER AND/OR GUARANTOR ARE DOING BUSINESS.  THE PARTIES HERETO HEREBY WAIVE AND AGREE NOT TO ASSERT, BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, THAT ANY SUCH PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR THAT THE VENUE THEREOF IS IMPROPER."

Initials of Provider

8.10     **Waiver of Jury Trial, Punitive and Consequential Damages, etc.**  EACH OF PROVIDER AND BUYER HEREBY (A) IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY OR ASSOCIATED HEREWITH; (B) IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR DAMAGES OTHER THAN, OR IN ADDITION TO,

16

ACTUAL DAMAGES; (c) CERTIFIES THAT NO PARTY HERETO NOR ANY REPRESENTATIVE OR AGENT OR COUNSEL FOR ANY PARTY HERETO HAS REPRESENTED, EXPRESSLY OR OTHERWISE, OR IMPLIED THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENTER THE FOREGOING WAIVERS; AND (D) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY, AMONG OTHER THINGS, BY THE MUTUAL WAIVERS AND CERTIFICATIONS CONTAINED IN THIS SECTION 8.10. PROVIDER AUTHORIZES ANY ATTORNEY TO APPEAR FOR PROVIDER, IN ANY COURT OF RECORD, WITHOUT PRIOR NOTICE OR DEMAND FOR PAYMENT, TO WAIVE THE ISSUANCE AND SERVICE OF PROCESS, AND TO CONFESS JUDGMENT AGAINST PROVIDER IN FAVOR OF BUYER, OR ANY OTHER PARTY THEN ENTITLED TO ENFORCE THE TERMS OF THIS AGREEMENT FOR SUCH AMOUNT, INCLUDING PRINCIPAL, INTEREST, REASONABLE ATTORNEYS' FEES, AND COSTS, AS PROVIDER MAY BE LIABLE TO BUYER BY REASON OF THIS AGREEMENT.

Initials of Provider

**8.11   Complete Agreement.**  THIS AGREEMENT, ANY PURCHASE SUPPLEMENT, THE EXHIBITS AND SCHEDULES HERETO AND THE DOCUMENTS DELIVERED OR TO BE DELIVERED PURSUANT TO THIS AGREEMENT SET FORTH THE ENTIRE UNDERSTANDING AND AGREEMENT OF THE PARTIES HERETO WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. NO MODIFICATION OR AMENDMENT OF OR SUPPLEMENT TO THIS AGREEMENT OR SUCH OTHER DOCUMENTS SHALL BE VALID OR EFFECTIVE UNLESS THE SAME IS IN WRITING AND SIGNED BY THE PARTY AGAINST WHOM IT IS SOUGHT TO BE ENFORCED.

**8.12   Equitable Relief.**  In the event Provider commits any act or omission which (i) prevents or unreasonably interferes with:  (a) Buyer's exercise of the rights and privileges arising under the power of attorney granted in Section 5.5 of this Agreement; or (b) Buyer's perfection of or levy upon the ownership or security interest granted in the Accounts, including any seizure of any Account, or (ii) constitutes a breach of any of its representations, warranties or covenants hereunder, such conduct will cause immediate, severe, incalculable and irreparable harm and injury, and shall constitute sufficient grounds to entitle Buyer to an injunction, writ of possession, or other applicable relief in equity, and to make such application for such relief in any court of competent jurisdiction, without any prior notice to Provider.

**8.13   Cumulative Rights.**  All rights, remedies and powers granted to Buyer in this Agreement, or in any other instrument or agreement given by Provider to Buyer, are cumulative and may be exercised singularly or concurrently with such other rights as Buyer may have. These rights may be exercised from time to time as to all or any part of the Accounts purchased hereunder as Buyer in its discretion may determine. Buyer may not waive its rights and remedies unless the waiver is in writing and signed by Buyer. A waiver by Buyer of a right or remedy under this Agreement on one occasion is not a waiver of the right or remedy on any subsequent occasion.

**8.14   Attorney's Fees.**  Provider agrees to reimburse Buyer upon demand for all attorney's fees, court costs and other expenses incurred by Buyer in enforcing this Agreement and protecting or enforcing its interest in the Accounts or the Assets, in collecting the Accounts or the Assets, or in the representation of Buyer in connection with any bankruptcy case or insolvency proceeding involving Provider, the Assets, any Payor, or any Account. At the time this Agreement is executed, Provider will reimburse Buyer for all of its attorneys fees and disbursements, Adjustments, and out-of-pocket expenses incurred in connection with the negotiation, preparation and execution of this Agreement.

**8.15   Interest.**  If any obligation of the Provider hereunder is not paid when due, such obligation shall bear interest at a per annum rate equal to 18 percent until the earlier of (i) payment in full of such obligation to Buyer or (ii) entry of a final judgment therefor, at which time the principal amount of any money judgment

17

remaining unsatisfied shall accrue interest at the highest rate allowed by applicable law. Provider and Buyer intend to contract in strict compliance with applicable usury law from time to time in effect. In furtherance thereof such parties stipulate and agree that none of the terms and provisions contained in this Agreement shall ever be construed to provide for interest in excess of the maximum amount of interest permitted to be charged by applicable law from time to time in effect. Neither Provider nor any present or future guarantors, endorsers, or other persons hereafter becoming liable for payment of any obligation hereunder shall ever be liable for unearned interest thereon or shall ever be required to pay interest thereon in excess of the maximum amount that may be lawfully charged under applicable law from time to time in effect and the provisions of this Section 8.15 shall control over all other.

9.      **Definitions.** When used herein, the following terms shall have the meanings set forth below:

9.1      "Eligible Account" means:

(a)      the obligor of which is a United States resident.

(b)      that is a valid and binding obligation of the obligor thereof enforceable against such obligor in accordance with its terms and is not subject to any dispute, offset, counterclaim or defense whatsoever;

(c)      that is denominated and payable in U.S. dollars in the United States;

(d)      that constitutes an "account" as defined in the Uniform Commercial Code as in effect in the jurisdiction governing the perfection of Buyer's ownership interest, or in the alternative, security interest therein;

(e)      as to which Buyer's security interest therein will be perfected as a valid ownership interest free and clear of all adverse claims or, in the alternative, as a first priority security interest under the applicable law upon consummation of the Purchase thereof by Buyer;

(f)      the payment of which is a direct obligation of a Payor;

(g)      with regard to which each of the representations and warranties of Provider set forth in Section 4.12 hereof is true and correct; and

(h)      the claim for payment has been submitted to the responsible Payor within 90 days prior to the applicable Closing Date and has been acknowledged by such Payor and is due and payable within 120 days of its Billing Date.

9.2      "Adjusted Value" means the Gross Face Value of an Account minus contractual adjustments, if any, and minus the contracted amount of the Patient Co-Payment, if any, as certified by the Provider prior to its acquisition from the Provider.

9.3      "Billing Date" means the day on which Provider submitted a claim or bill to a Payor for payment and collection of an Account.

9.4      "Gross Face Value" means the total billing amount of each Account inclusive of the amount of the Patient Co-Payment and the amount payable by a Payor.

9.5      "Patient Co-Payment" means the amount payable by the patient for the services provided by Provider and not payable by a Payor with regard to each Account.

9.6      "Payor" means Medicare, Medicaid, Champus, any other division of a state or the federal government, an insurance company, Health Maintenance Organization, Accredited Hospital, Skilled Nursing Facility, or Fortune 500 company. All of the preceding entities must be acceptable to the buyer's financial criteria.

18

9.7    "Payment Period" means that period commencing on the 1st day of each month through the last day of that month.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

Provider:                                                          Corporate Seal
Brandywine Health Services of Mississippi,
Inc., aka Choctaw County Medical Center

By: _____
Jeffrey A. Morse
President

Notary statement: This person appeared before this _2nd_ day of _Aug_, 2004 and signed this document as above in the county of _Wosoloss_, State of _Mon Jorck_ My Notary Public stamp is affixed below.

_____
Notary Public Stamp & Authority
Commission Expires 8/1/08

Buyer:                                                   Buyer's Administrator:
MCC Special Purpose Corporation VIII                     Medical Capital Corporation

By: _____            By: _____
Joseph J. Lampariello                                Joseph J. Lampariello
Chief Operating Officer                              Special Agent

19

9.7 "Payment Period" means that period commencing on the 1st day of each month through the last day of that month.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

Corporate Seal

Provider:
Brandywine Health Services of Mississippi,
Inc., aka Choctaw County Medical Center

By: _____
Jeffrey A. Morse
President

Notary statement:This person appeared before this _____2nd_____ day of _____Aug._____, 2004 and signed this document as above  in the county of __Worcester__, State of __Maryland__. My Notary Public stamp is affixed below.

_____
Notary Public Stamp & Authority
Commission Expires 8/1/08

Buyer:                                          Buyer's Administrator:
MCC Special Purpose Corporation VIII            Medical Capital Corporation

By: _____                  By: _____
   Joseph J. Lampariello                           Joseph J. Lampariello
   Chief Operating Officer                         Special Agent

19

Aug 04 04 10:16a        Jeffrey A. Morse              410-208-9792              P.3

9.7    "Payment Period" means that period commencing on the 1st day of each month through the last day of that month.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**Provider:**                                           Corporate Seal
**Brandywine Health Services of Mississippi,**
**Inc., aka Choctaw County Medical Center**

By: _____
    Jeffrey A. Morse
    President

Notary statement: This person appeared before this _____ day of _____, 2004 and signed this document as above, in the county of _____, State of _____. My Notary Public stamp is affixed below.

Notary Public Stamp & Authority

**Buyer:**                                    **Buyer's Administrator:**
**MCC Special Purpose Corporation VIII**       **Medical Capital Corporation**

By: _____                  By: _____
    Joseph J. Lampariello                         Joseph J. Lampariello
    Chief Operating Officer                       Special Agent

19

## GUARANTY

The undersigned hereby personally, absolutely and unconditionally guarantee(s), jointly and severally, the payment and performance of Provider's representations, warranties and covenants under this Agreement and any Purchase Supplement, and agree(s) to pay to Buyer upon demand all losses, damages and expenses of Buyer resulting from and/or incurred in connection with any breach by Provider thereof.  The undersigned shall be primarily liable for such obligations and Buyer may invoke the benefits of this guaranty without pursuing any remedies against Provider, without the necessity of joining all guarantors in any action hereon, and without proceeding against any collateral for such obligation.

SIGNED:

Jeffrey A. Morse

F:\DATA\FUNDING\PROVIDER\PURCHASE\PURCHASE.FRM

# EXHIBIT A

## INITIAL ACCOUNTS RECEIVABLE

See "Schedule 1" attached hereto and made a part hereof

| | | |
|---|---|---|
| Aggregate Gross Face Value........... | $559,461.62 | |
| Aggregate Adjusted Value............. | $318,957.38 | |
| Advance Rate Amount................. | $255,165.90 | 80 % |
| Deferred Purchase Price............. | $46,503.99 | 14.58 % |
| Discount to Buyer.................. | $17,287.49 | 5.42 % |
| Origination Fee.................... | $9,568.72 | 3 % |

Jeffrey A. Morse
President

Exhibit A
**Schedule 1**
**List of Accounts Receivable**

Exhibit B

## SECRETARY'S CERTIFICATE

**I, the undersigned,** as Secretary of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi corporation, ("Corporation"), hereby certifies that:

(1)     Attached hereto as Item 1 (one)  is a true, correct and complete copy of the Articles of Incorporation of the Corporation as the same exist as of the date hereof; and

(2)     Attached hereto as Item 2 (two)  is a true, correct and complete copy of the By-Laws of the Corporation and all amendments thereto as the same exist as of the date hereof; and

(3)     The named person(s) set forth in Item 3 (three)  attached hereto are duly elected, qualified and acting Authorized Persons of the Corporation, holding the respective offices set forth opposite their names, and signatures set forth opposite their names are true, correct and authentic and genuine signatures of such person(s) on the date hereof; and

(4)     Attached hereto as Item 4 (four)  is a true, correct and complete copy of resolutions duly and validly adopted by the Board of Directors of the Corporation and such resolutions have not been amended, modified or revoked in any respect and are in full force and effect on the date hereof.

The described Corporation is used in this Certificate and Items attached hereto, as the Provider as described in the Purchase Agreement of which this Secretary's Certificate is an exhibit.

**In witness whereof,** the undersigned has executed this Secretary's Certificate as of this 2nd day of August , 2004.

_Janet B. Morse_

Print Name: JANET B. Morse

23

**Exhibit B, Item 1.**

**Articles of Incorporation**

24

07/07/2004   14:07   601693.226                           BOURDEAUX AND JONES          PAGE 02/15

5/15

## F0001 – Page 1 of 2

# OFFICE OF THE MISSISSIPPI SECRETARY OF STATE
### P.O. BOX 136, JACKSON, MS 39205-0136    (601) 359-1333
### Articles of Incorporation

The undersigned, pursuant to Section 79-4-2.02 (if a profit corporation) or Section 79-11-137 (if a nonprofit corporation) of the Mississippi Code of 1972, hereby executes the following document and sets forth:

**1. Type of Corporation**

[X] Profit     [ ] Nonprofit

**2. Name of the Corporation**

Brandywine Health Services of Mississippi, Inc.

**3. The future effective date is
(Complete if applicable)**

FILED
05/15/2002
ERIC CLARK
Secretary of State
State of Mississippi

**4. FOR NONPROFITS ONLY:** The period of duration is [ ] years or [X] perpetual

**5. FOR PROFITS ONLY:** The Number (and Classes) if any of shares the corporation is authorized to issue is (are) as follows:

| Classes | # of Shares Authorized | If more than one (1) class of shares is authorized, the preferences, limitations, and relative rights of each class are as follows: |
|---------|------------------------|-------------|
| 1 | 10,000 | (See Attached) |
| | | |

**6. Name and Street Address of the Registered Agent and Registered Office is**

| | |
|---|---|
| Name | Tadd Parsons |
| Physical Address | 324 East Cavers Avenue |
| P.O. Box | Post Office Drawer 6 |
| City, State, ZIP5, ZIP4 | Wiggins    MS    39577 |

**7. The name and complete address of each Incorporator are as follows**

| | |
|---|---|
| Name | Danny J. Spreitler |
| Street | 416 Howard Street |

Rev. 01/96

**F0001 - Page 2 of 2**                    **OFFICE OF THE MISSISSIPPI SECRETARY OF STATE**
                                            P.O. BOX 136, JACKSON, MS 39205-0136    (601) 359-1333
                                                        **Articles of Incorporation**

| City, State, ZIP5, ZIP4 | Wiggins | MS | 39577 |
|---|---|---|---|

| Name | |
|---|---|

| Street | |
|---|---|

| City, State, ZIP5, ZIP4 | | | |
|---|---|---|---|

| Name | |
|---|---|

| Street | |
|---|---|

| City, State, ZIP5, ZIP4 | | | |
|---|---|---|---|

| Name | |
|---|---|

| Street | |
|---|---|

| City, State, ZIP5, ZIP4 | | | |
|---|---|---|---|

**8. Other Provisions**  [ ]  See Attached

**9. Incorporators' Signatures (please keep writing within blocks)**

Rev. 01/96

**Exhibit B, Item 2.**

**By-Laws of the Corporation**

25

**Exhibit B, Item 3.**

**Authorized Officers**
**SAMPLES OF SIGNATURES**

| TITLE | NAME | SIGNATURE |
|---|---|---|
| President | Jeffrey A. Morse | *Jeffrey A. Morse* |
| Vice-President | | |
| Treasurer | | |
| Secretary | | |

26

Exhibit B, Item 4.

## RESOLUTIONS OF THE BOARD OF DIRECTORS
## OF
## Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center

RESOLVED, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center (the "Provider") is authorized to execute, enter into, and deliver and perform according to the terms there of the following documents (the "Transaction Documents"):

1.     Purchase Agreement by and between MCC Special Purpose Corporation VIII (the "Buyer") and Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center (as the "Provider" therein) evidencing the sale of certain accounts from the Provider to the Buyer.

2.     The Bill of Sale to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(4) of the aforedescribed Purchase Agreement.

3.     The Assignment to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(4) of the aforedescribed Purchase Agreement.

4.     The Blanket Form UCC-1 financing statement to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(2) of the aforedescribed Purchase Agreement.

5.     The Form UCC-1 financing statement to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(3) of the aforedescribed Purchase Agreement.

RESOLVED, that the President or any Senior Vice President or any Vice President or Secretary or any Assistant Secretary of the Provider and each of them be, and they each hereby are, authorized, for and on behalf of the Provider, to execute and deliver the above identified documents substantially in the form identified above, which are hereby approved, with such changes therein, additions thereto and deletions therefrom as the officer of the Provider executing such documents may approve, and the execution and delivery of such documents by such officer of the Provider shall constitute conclusive evidence of such officer's approval therefor.

RESOLVED, that the officers of the Provider be, and each hereby is authorized, for and on behalf of the Provider, to execute and deliver such other documents, agreements or instruments and to take such other action as they, or any of them, may deem necessary or advisable to carry out the purpose of the foregoing resolutions.

I, Janet B. Morse  Secretary of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, do hereby certify that:

(1)     The foregoing is a true and correct copy of resolutions adopted by the Board of Directors of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, on August 2, 2004.

(2)     The resolutions adopted by the Board of Directors have not been amended or rescinded and the same are, on the date of this Certificate, in full force and effect.

IN WITNESS WHEREOF, the undersigned has executed this Certificate and affixed the seal of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, on August 2, 2004.

By: Janet B. Morse
Print Name: Janet B. Morse
Its: Secretary

Corporate Seal

27

**Exhibit B, Item 4.**

## RESOLUTIONS OF THE BOARD OF DIRECTORS
## OF

### Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center

RESOLVED, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center (the "Provider") is authorized to execute, enter into, and deliver and perform according to the terms there of the following documents (the "Transaction Documents"):

1. Purchase Agreement by and between MCC Special Purpose Corporation VIII (the "Buyer") and Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center (as the "Provider" therein) evidencing the sale of certain accounts from the Provider to the Buyer.

2. The Bill of Sale to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(4) of the aforedescribed Purchase Agreement.

3. The Assignment to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(4) of the aforedescribed Purchase Agreement.

4. The Blanket Form UCC-1 financing statement to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(2) of the aforedescribed Purchase Agreement.

5. The Form UCC-1 financing statement to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(3) of the aforedescribed Purchase Agreement.

RESOLVED, that the President or any Senior Vice President or any Vice President or Secretary or any Assistant Secretary of the Provider and each of them be, and they each hereby are, authorized, for and on behalf of the Provider, to execute and deliver the above identified documents substantially in the form identified above, which are hereby approved, with such changes therein, additions thereto and deletions therefrom as the officer of the Provider executing such documents may approve, and the execution and delivery of such documents by such officer of the Provider shall constitute conclusive evidence of such officer's approval therefor.

RESOLVED, that the officers of the Provider be, and each hereby is, authorized, for and on behalf of the Provider, to execute and deliver such other documents, agreements or instruments and to take such other action as they, or any of them, may deem necessary or advisable to carry out the purpose of the foregoing resolutions.

I, Janet B. Morse, Secretary of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, do hereby certify that:

(1) The foregoing is a true and correct copy of resolutions adopted by the Board of Directors of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, on August 3, 2004.

(2) The resolutions adopted by the Board of Directors have not been amended or rescinded and the same are, on the date of this Certificate, in full force and effect.

IN WITNESS WHEREOF, the undersigned has executed this Certificate and affixed the seal of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, on _____, 2004.

By: _____
Print Name: Janet B. Morse
Its: Secretary

Corporate Seal

27

**Exhibit C**

## ASSIGNMENT OF RECEIVABLES

For value received, the undersigned, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation, ("Assignor"), hereby assigns, transfers, and conveys without recourse to MCC Special Purpose Corporation VIII ("Assignee") all of its right, title and interest, whether now held or hereafter obtained, in and to the medical accounts receivable described in Exhibit "A" of the Purchase Agreement dated the _____ of _____, 2004 and hereby incorporated by reference and any substitutions thereof pursuant to Section 2.2 of the Purchase Agreement (the "Receivables"), and Assignor hereby warrants and represents that;

1. Assignor is the sole owner of the Receivables listed in Exhibit "A, Schedule 1", attached thereto" to the Purchase Agreement and is entitled to receive from such Receivable and has good right to sell, assign, transfer and set over the same and to grant to, and confer upon, Assignee the rights, interests, powers and authorities herein granted and conferred.

2. Assignor has not made any assignment other than this Assignment of the rights of Assignor with respect to said Receivables.

3. Borrower has neither performed and act or omitted to perform any act which might prevent the Assignee from, or limit Assignee in acting under any of the provisions of this Assignment.

4. All Receivables currently provide for all proceeds thereof to be paid directly to the Assignor.

5. To the best of the knowledge of Assignor, there exists no circumstances under which other persons or entities may have any claim against said Receivables.

6. This Assignment includes any and all tapes, claim forms, claim documentation, computer runs, servicing reports, printouts, and any and all medical records of any kind relating to the Receivables, including a guaranty of access by Assignor, with respect to the Receivables, to such additional medical records and information as may be necessary or appropriate to process and collect the Receivables.

7. This Assignment also includes any collateral collections accounts, trust accounts, and lock box accounts, and any funds contained therein, relating to the Receivables.

8. This Assignment includes any other document or instrument representing security for payment of the Receivables, or any guaranty of payment of performance relating to the Receivables, which documents or instruments were assigned or transferred to Assignor in connection with the Receivables.

The Assignor further covenants and represents that it has not taken any action, and to the best of its knowledge no event has occurred which would result in (a) the creation of any security interests, liens, encumbrances, or claims against any of the Receivables or any defect in Assignor's title to any of the Receivables, (b) the creation of any defense, counterclaim, or off set available to any party obligated on any of the Receivables, (c) any compromise, discount, waiver, or other agreement on the part of Assignor that would affect the amount, maturity, interest rate, or any other material term or condition of any of the Receivables, or (d) Assignor having any reason to believe that any party obligated on the Receivables is unable or unwilling to pay any portion thereof, as such amount becomes due.

This assignment is effective immediately upon faxed confirmation from MCC Special Purpose Corporation VIII bank that the funds said receivables has been received and credited to Assignor's account.

IN WITNESS WHEREOF, the Assignor has executed this _____ day of _____, 2004.

BY: _____
    Jeffrey A. Morse
    President

28

Exhibit D                                        **BILL OF SALE**

**STATE OF:**    Mississippi
**COUNTY OF:**   Choctaw

**KNOW ALL MEN BY THESE PRESENT:**

That for $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation, hereinafter referred to as (Assignor) does hereby assign, grant, bargain, deliver, transfer, sell and convey unto MCC Special Purpose Corporation VIII, a Nevada Corporation (Assignee) all its rights, title and interest in and to those certain medical accounts receivable and claims identified in Exhibit "A", of the Purchase Agreement which is attached hereto and incorporated herein by this reference.

In connection with this assignment, Assignor warrants as follows:

1. That it is the owner of such medical accounts receivable and claims and that such accounts and claims have not previously been sold, assigned, transferred, pledged, encumbered to or in favor of any other person or entity.

2. That none of the accounts receivable or claims listed on Exhibit "A" hereto are the subject to any asserted defense or right, and that Assignor does not know of any facts or circumstances which would give right to, or form the basis of, any defense of payment of offset.

3. The Health Care Service which forms the basis of the medical accounts receivable and claims, Exhibit "A", were actually rendered to a patient as set forth in the information furnished by Assignor to Assignee. With respect to the medical accounts receivable and claims, Exhibit "A", the amounts of each claim are recently due and payable by the Patients insurance carrier to Assignor.

Signed on this _____ day of _____, 2004.

Assignee                                Assignor
MCC Special Purpose Corporation VIII    Brandywine Health Services of Mississippi, Inc.,
                                        aka Choctaw County Medical Center

by _____           by _____
Joseph J. Lampariello                   Jeffrey A. Morse
Chief Operating Officer                 President

29

Exhibit D

**BILL OF SALE**

STATE OF:      Mississippi
COUNTY OF:   Choctaw

KNOW ALL MEN BY THESE PRESENT:

That for $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation, hereinafter referred to as (Assignor) does hereby assign, grant, bargain, deliver, transfer, sell and convey unto MCC Special Purpose Corporation VIII, a Nevada Corporation (Assignee) all its rights, title and interest in and to those certain medical accounts receivable and claims identified in Exhibit "A", of the Purchase Agreement which is attached hereto and incorporated herein by this reference.

In connection with this assignment, Assignor warrants as follows:

1. That it is the owner of such medical accounts receivable and claims and that such accounts and claims have not previously been sold, assigned, transferred, pledged, encumbered to or in favor of any other person or entity.

2. That none of the accounts receivable or claims listed on Exhibit "A" hereto are the subject to any asserted defense or right, and that Assignor does not know of any facts or circumstances which would give right to, or form the basis of, any defense of payment of offset.

3. The Health Care Service which forms the basis of the medical accounts receivable and claims, Exhibit "A", were actually rendered to a patient as set forth in the information furnished by Assignor to Assignee. With respect to the medical accounts receivable and claims, Exhibit "A", the amounts of each claim are recently due and payable by the Patients insurance carrier to Assignor.

Signed on this _____ day of _____, 2004.

Assignee                                                  Assignor
MCC Special Purpose Corporation VIII          Brandywine Health Services of Mississippi, Inc.,
                                                         aka Choctaw County Medical Center

by: _____          by: _____
   Joseph J. Lampariello                            Jeffrey A. Morse
   Chief Operating Officer                          President

29

**Exhibit E**
**SPECIFIC POWER OF ATTORNEY**

*Know all men by these presents:* That Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center (Provider) hereby makes, constitutes and appoints Medical Capital Corporation, and its agent(s) as true and lawful attorney for me and in my name, place and stead and for my use and benefit in transaction of the following activities:

(a)  Accept delivery of, and inspect all mail and correspondence relating to and pursuant to the collection of all funds and payments due to me pursuant to our agreements;

(b)  To deposit all checks and payments made payable to me, for professional services rendered in the course of our agreement, into a trust account established for that purpose;

(c)  To take all steps necessary, including but not limited to, signing insurance claim forms on my behalf, in order to effectively submit and process all insurance claims accruing to me due to professional services rendered in the course of our agreement;

Provider grants to said attorney full power and authority to do and perform each and every act necessary or appropriate for the above purposes as fully as the undersigned might or could do if personally present, and the undersigned does hereby ratify all actions of said attorney which said attorney shall lawfully do or cause to be done by virtue of this *Specific Power of Attorney.*

My said attorney is empowered hereby to determine, in his sole discretion, the time when, the manner and purpose for which any power herein conferred upon him shall be exercised as well as the conditions, provisions, and covenants of any instruments or documents which may be executed by him pursuant thereto.

Executed this 2nd day of Aug , 2004.

Provider
Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center

Jeffrey A. Morse
Vice President

Notary statement: This person appeared before this 2nd day of Aug , 2004 and signed this document as above in the county of Washoe , State of Maryland . My Notary Public stamp is affixed below.

Witnesseth

Commission Expires 8/1/08

30

**Exhibit F**
**Instructions for Disbursement of Purchase Price**

MCC Special Purpose Corporation VIII is hereby instructed on _____ , to deliver the sum of _____ (_____ Dollars),

$ _____ (

in the form of wire transfer of funds to:

Brandywine Health Services of Mississippi', Inc.
aka Choctaw County Medical Center
*Actual Account Name*

In the care of the following bank:

Bank Name: Union Planters Bank

Bank Branch Address: 111 Main St
*Street Address*

Ackerman        MS        39735
*City*        *State*        *Zip Code*

Bank Branch Phone Number: 662-285-6278

ABA: 084000084

Account Number: 9001034519

Name of Bank Officer to contact: Kenny Clark - VP

Telephone number of Bank Officer 662-285-6278

Provider
Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center

Jeffrey A. Morse
President

31

**Exhibit G**
## DECLARATION OF CUSTODIAN OF RECORDS

I, Jeffrey A. Morse,   have appointed Medical Capital Corporation, and or its agents, as Custodian of Records, in regard to the medical and patient files as attached hereto relating to the Purchase Agreement by and between Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center  and MCC Special Purpose Corporation VIII as identified in the Purchase Agreement.

Medical Capital Corporation and or its agent(s), shall keep in its possession, safeguard, maintain and present upon demand to authorized parties, individuals, physicians or other parties authorized by and upon written permission of the patient, or in the case of a minor, upon written permission of the minor's guardian, parent, or upon court order, each individual medical file, records, notes and other documentation relating to the files and accounts as described in the Purchase agreement as attached hereto.

Medical Capital Corporation, or its agent(s) shall safeguard said patient files and records in respect to each patient's confidentiality and regard to those applicable laws and professional codes.


_____
Jeffrey A. Morse


**Medical Capital Corporation**


By: _____
Joseph J. Lampariello
**Special Agent**



WITNESSETH:

_____

name:

32

**Exhibit G**
## DECLARATION OF CUSTODIAN OF RECORDS

I, Jeffrey A. Morse,  have appointed Medical Capital Corporation, and or its agents, as Custodian of Records, in regard to the medical and patient files as attached hereto relating to the Purchase Agreement by and between Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center  and MCC Special Purpose Corporation VIII as identified in the Purchase Agreement.

Medical Capital Corporation and or its agent(s), shall keep in its possession, safeguard, maintain and present upon demand to authorized parties, individuals, physicians or other parties authorized by and upon written permission of the patient, or in the case of a minor, upon written permission of the minor's guardian, parent, or upon court order, each individual medical file, records, notes and other documentation relating to the files and accounts as described in the Purchase agreement as attached hereto.

Medical Capital Corporation, or its agent(s) shall safeguard said patient files and records in respect to each patient's confidentiality and regard to those applicable laws and professional codes.


Jeffrey A. Morse

**Medical Capital Corporation**


By: _____
    **Joseph J. Lampariello**
    **Special Agent**


WITNESSETH:


_____

name: _____


32



# *Medical Capital*

August 10, 2004

Brandywine Health Services of Mississippi dba
Choctaw County Medical Center
148 West Cherry Street
Ackerman, MS  39735

Dear Mr. Morse,

**Effective immediately, all claims and invoices submitted for purchase must bear the address of the lock box as the "pay to" address.**

**At this time, in accordance with the Purchase Agreement, you are hereby notified that you must make the necessary changes in your billing system.**

**All invoices, statements and health insurance claim forms must reflect the following address for payment:**

> **Brandywine Health Services of Mississippi dba**
> **Choctaw County Medical Center**
> **P.O. Box 54297**
> **Los Angeles, CA  90054**

Failure to do so may place you in default of the Purchase Agreement.  Should you have any questions, please contact me immediately.

Sincerely,

Carmen Boatman
Client Services Supervisor



# Medical Capital

August 10, 2004

Brandywine Health Services of Mississippi dba
Choctaw County Medical Center
148 West Cherry Street
Ackerman, MS  39735

Dear Mr. Morse,

We have prepared a client manual regarding your account.  We ask that you review the manual and contact our office if you have any questions.  If you become aware of any outstanding issues regarding billing, claim / invoice submission or reimbursement, please notify us in writing on company letterhead immediately.

Upon receipt of this package we urge you to begin implementation of the following changes:

**Please note for the first 3 (three) weeks, please forward all Remittance Advice and Checks to our location until your Post Office Box has been opened.**

> **Medical Capital Corporation**
> **2100 South State College Blvd.**
> **Anaheim, CA  92806**

**On a daily basis, forward all Remittance Advice and Checks received by your office pertaining to all accounts purchased to:**

> **Brandywine Health Services of Mississippi dba**
> **Choctaw County Medical Center**
> **P.O. Box 54297**
> **Los Angeles, CA  90054**

**In addition, complete the "Compliance Verification Statement" form enclosed.  This form must be completed, signed and sent via facsimile on a daily basis.**

Our office will be sending you a copy of the Wire Documents sent to the Trust and a copy of the Purchase Report after your funds have been released.  If you have any questions regarding the status of you funding wire, contact:   Nora Arvayo Funding Supervisor

You may contact Joy Dominguez, Client Receivables Manager or myself for all questions pertaining to your account, status and funding.

Sincerely,

Carmen Boatman
Client Services Supervisor

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____

Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____   Or;   _____

Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____   Or;   _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

### Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____    Or;    _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

Or;

_____                _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____

Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____

Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____

Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____  Or;  _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center**, officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____   Or;   _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____   Or;   _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____        Or;        _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____      Or;      _____

Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____        Or;        _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____   Or;   _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____

Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____      Or;      _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____     Or;     _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____   Or;   _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____          Or;          _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____   Or;   _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____        Or;        _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____   Or;   _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.

_____   Or;   _____
Jeffrey A. Morse, President

# Brandywine Health Services of MS dba Choctaw County Medical Center

Date: _____

Fax to: 714-935-3114

Attn: Roxanna

## Compliance Verification Statement

The following list of payments represents all payments (except patient co-pays, deductibles, patient responsible payment) that have come into the possession of **Brandywine Health Services of MS, dba Choctaw County Medical Center,** officers, agents, and assigns on the date as indicated herein below.

**The payment(s) will be forwarded today along with all EOB's "Explanation of Benefits" received to the lock box address.**

| Payor | Amount of Payment | Date of Service | Date Received |
|-------|-------------------|-----------------|---------------|
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |
|       |                   |                 |               |

I declare under penalty of perjury under the laws of **Mississippi** that the foregoing is true and correct on this _____ day of _____, 2004, by the undersigned.


_____   Or;   _____
Jeffrey A. Morse, President

# Welcome
## to
## Medical Capital's Accounts Receivable Management Program



## Prepared for:

## Brandywine Health Services of Mississippi dba
## Choctaw County Medical Center

You have been approved for the purchase of your medical accounts receivable (referred to as "claims" in this document) by a Medical Capital affiliate purchasing company.

This manual will help you through the claims purchasing process on an ongoing basis as well as help to familiarize you with Medical Capital.

You'll find this manual to be extremely helpful in understanding the procedures at Medical Capital as well as to help you understand what we can do for you.



**Joy Dominguez**
Client Receivables Manager

**Medical Capital**

2100 South State College Blvd, Anaheim, California 92806
(800) 824-3700 ♦ (714) 935-3100 ♦ Fax: (714) 935-3114
E-mail: JoyD@medicalcapital.com



**Carmen Boatman**
Client Services Supervisor

**Medical Capital**

2100 South State College Blvd, Anaheim, California 92806
(800) 824-3700 ♦ (714) 935-3100 ♦ Fax: (714) 935-3114
E-mail: CarmenB@medicalcapital.com



**Nora Arvayo**
Funding Supervisor

**Medical Capital**

2100 South State College Blvd, Anaheim, California 92806
(800) 824-3700 ♦ (714) 935-3100 ♦ Fax: (714) 935-3114
E-mail: NoraA@medicalcapital.com

## Basic information about your Purchase Agreement with Medical Capital:

Your determined **ENR** (Expected Net Receivable) is **: 46%**

Your **Advance Rate** is: **80%** of the ENR

Your **Deferred Purchase Rate** (or Reserve) is: **14.58%** of the ENR.

Medical Capital's **Discount Rate** is: **5.42%** of the ENR.

Your purchases of claims will occur every **Tuesday**

Your assigned day to submit claims to MediTrak for purchase is every **Thursday**

Your assigned Funding Associate is: **Nora Arvayo**



*PLEASE NOTE:*
*If there are any discrepancies with the above, please contact our office immediately.*

**800 824-3700**

# THE PROCESS



## 1.    SUBMITTING CLAIMS

Your claims are to be submitted to Medical Tracking Services, Inc. (MediTrak) in Las Vegas, Nevada.

The claims you generated since the first batch are to be sent to MediTrak electronically using a previously approved method of delivery. The claims must be complete (*example: the HCFA-1500 claim form should have all 33 fields filled*). You are required to notify Medical Capital of any changes that might affect the format of the file being submitted. Changes, even minor ones can affect how the claims are imported into the system and can cause to delay your regularly scheduled funding.

**NOTE:  You should only submit new claims, not those submitted prior for funding, nor should you submit re-billings for co-insurance or supplemental insurance.**

That's all you need to do for now, MediTrak will do the next step…

## 2.    PROCESSING CLAIMS in the MediTrak *accounts tracking system*:

MediTrak will "unwrap" your claims into its Accounts Tracking System. It will compare all the claims submitted to those already purchased as well as edit the claims for missing or invalid fields.

MediTrak sends an *Appraisal Report* to Medical Capital's Funding Associate.

**Important Contact information:**

MediTrak
Medical Tracking Services, Inc.
3770 Howard Hughes Parkway, Ste.#301
Las Vegas, NV 89109
Manager : Juan Roncal

(800) 818-1102 Telephone
(702) 735-3739 Facsimile

E-mail: medclaims@Meditrakservices.com

The Funding Dept completes the next step…

## 3.   CLAIMS ANALYSIS

The Funding Dept. examines the claims Appraisal Report and compares it with critical information such as payor ratings, payor concentration, as well as certain information as verified by the Accounts Control Department.

**NOTE: The Accounts Control Department actively monitors your claims collection progress, monitors lock boxes, verifies random samples of your claims as well as closes aged batches of purchased claims. They report their findings to the Funding Dept daily.**

Once analyzed, an edited version of the Appraisal Report is sent back to MediTrak, your claims are re-organized into a ***Purchase Report***. The Purchase Report contains the final amounts of the funds to be advanced (Advance Amount) to you, as well as the Deferred Purchase Price (Reserve) and the Discount to Medical Capital.

## 4.   FUNDING PROCESS

**Bill of Sale**

Your Funding Associate then creates a **Bill of Sale** for your batch of claims.  The Bill of Sale is faxed to you for your signature.  The signed Bill of Sale must be faxed back to the Funding Associate prior to wiring your funds.

If you would like to allow a staff member to sign the **Bill of Sale,** you must submit the authorization in writing.

**NOTE: The Bill of Sale clearly states Gross Charges submitted and the ENR amount.  In addition, the Bill of Sale has Advance Amount to be wired to you, the Deferred Purchase Price, and the Discount to Medical Capital.  If there is any discrepancy, you must contact your Funding Associate immediately for any questions, clarifications or corrections.**

**Wire Orders**

Your Funding Associate must obtain signatures from the Accounts Receivable Manager as well as a Medical Capital Officer for your wire.  The wire order is sent to our Trustee for verification of documents, then the Trustee actually sends the wire funds.

**NOTE: Medical Capital does not handle any actual funds.  A Trustee handles all funds for the purchase of claims, as well as all funds in your assigned lock box.**

**Funding Department:**

Medical Capital
2100 S. State College Blvd
Anaheim, CA 92806
(800) 824-3700 telephone
(714) 935-3114 facsimile

**Your Funding Associate is:**
 **Nora Arvayo, Funding Supervisor**
**E-mail address:**
   Funding@medicalcapital.com

# COLLECTIONS



## THE LOCK BOX

You are assigned a specific lock box.  The lock box is specific for your collections, no other funds are combined or mingled with yours.  The lock box address specifically assigned to you is:

**P.O. Box 54297**
**Los Angeles CA 90054**

## MediTrak

MediTrak posts all collections as reported from the lock box.  All EOBs and Remittance Advices are forwarded to MediTrak for posting by the lock box department at the bank.

MediTrak will forward all check copies, EOBs and Remittance Advises to you within 24 hours of their receipt from the lock box.

**NOTE:  All payments in the lock box are automatically swept to our Trustee, MediTrak only receives copies of the checks.**

## YOUR RESPONSIBILITIES

## Billing Address:

**All claims must bear the address of the lock box as the "pay to" address.  There are no exceptions.  For the HCFA-1500 form, box 33 is the "pay to" address.**

**NOTE:  MediTrak automatically rejects Claims not bearing the lock box address for purchase.**

## Forwarding Payments:

Should you receive payments directly to your office or old billing address, you must forward that payment and any related EOB or remittance advice to your assigned lock box within 24 hours.  There are NO exceptions to this rule.

**NOTE:  Should you not forward payments directly to your assigned lock box, it may affect future purchases or it could result in a default of your purchase agreement.**

## Compliance Reports:

We require that the Compliance Verification Statements be completed and faxed to your Accounts Control representative daily.  As we gain history on your accounts and office methods, we have the option to suspend the Compliance Statements in the future.

Your Accounts Control representative(s) is/are:

**Joy Dominguez, Client Receivables Manager**
**Carmen Boatman, Client Services Supervisor**

## OUR RESPONSIBILITIES

## Change of Address Notices

We will send each and every insurance carrier a Change of Address Notice within one day of our first purchase of your claims.  This will be followed up with additional notices on a quarterly basis.

## Random Claims Sampling

We verify your claims on a random sample basis (at least 5% of each batch of your claims).  We contact the insurance carrier for you, in your name  and verify the status of the claims. Your Accounts Control Representative will share findings of those samples with you.

## Batch Tracking

After a batch of purchased claims ages to 120 days, the batch is "closed" by your Accounts Control Representative.  At that time, any reserve is accounted for.

## Batch Close-out

Once a batch is closed-out a number of goals must be met.  The collections for the claims purchased 120 days ago must reach (collect to) the ENR.  Any amounts collected above the Advance Amount for that batch of claims is applied as follows:
1.      The Advance Amount is collected, then;
2.      The Discount Amount is collected, then;
3.      The Deferred Purchase Price (reserve) is collected.

**Shortfall of Collections:**

If the collections fall short of the ENR, you must make up the difference between the actual collections and the ENR. This can be accomplished by debiting the Reserve Account or withholding amounts from your next funding.

**Over Collections:**

Any amount over the ENR is applied to the Reserve Account. The same holds true for any payment that is not identified as part of a purchased batch of claims.

**Reserve Account:**

A Reserve Account will be established and funded by collection proceeds in excess of the advance amount plus discount fee of each batch of Receivables purchased. The Reserve Account will build to 25% of the Seller's outstanding ENR balance for all batches not fully collected. Other funds applied to the Reserve Account include (but are not limited to) payments for Receivables over 120 days, payments for Receivables rejected for purchase, not advanced against, and/or payments for Receivables that are not Eligible for purchase.



**We hope to have answered many of the questions you may have regarding working with Medical Capital. Should you have any more questions, please contact us.**

**800-824-3700**

# MCC SPECIAL PURPOSE CORPORATION VIII

**2100 South State College Blvd. ❖ Anaheim, CA 92806 ❖ (714) 935-3100 ❖ Fax (714) 935-3114**

August 6, 2004

Wells Fargo Bank, National Association
Attn: Joe Nardi
MAC N9311-161
Sixth Street & Marquette Ave
Minneapolis, MN 55479

      Via Facsimile (612) 667-3539

RE:    Purchase of Receivables from **Brandywine Health Services of Mississippi, Inc.**

Dear Mr. Nardi:

      The following is a list of Receivables that are being acquired from Brandywine Health Services of Mississippi, Inc. as more fully identified in the attached schedule and related purchase documents. We hereby authorize and request you to wire funds on August 9, 2004 per the following instructions:

| Face Amount of Receivables | Expected Net Receivable Amount | Advance Amount | Amount to be Wired at Closing |
|---|---|---|---|
| $ 559,461.62 | $ 318,957.38 | $ 255,165.90 | $ 255,165.90 |

Wire Instructions:

    Brandywine Health Services of Mississippi, Inc.       $ 245,597.18
    Union Planters Bank (Ackerman, MS)
    Account # 9001034519
    ABA # 084000084

    **Origination Fee:**       $ 9,568.72
    Medical Capital Corporation
    Bank of America (Carson City, NV)
    Account# 669905853
    ABA# 026009593

I trust that this will meet with your requirements.

Sincerely,

*[signature]*

Joseph J. Lampariello
Chief Operating Officer
MCC Special Purpose Corporation VIII

*[handwritten notes:]*

No provision for
Nursing Home     251,000
Pro Fee        56,000
Swing Bed       77,000
             384,000

No Contractuals on NH.

Advance 266%

## RECEIVABLE ACQUISITION CERTIFICATE

This Receivable Acquisition Certificate is submitted pursuant to the provisions of Section 3.05(k) of the Note Issuance and Security Agreement, dated as of April 21, 2004, (the "Agreement"), between MCC Special Purpose Corporation VIII, a Nevada corporation (the "Debtor") and Wells Fargo Bank, National Association, as Custodian (the "Custodian"). All capitalized terms used in this Certificate and not otherwise defined herein shall have the same meanings given to such terms in the Agreement. In your capacity as Custodian, you are hereby authorized and requested to disburse to the Debtor the sum of $ 255,165.90 for the acquisition of Eligible Receivables. With respect to the Eligible Receivables so to be acquired, the Debtor hereby certifies as follows:

1.     The receivables to be acquired are Eligible Receivables, and the wiring instructions and related information are specified in Schedule A attached hereto (the "Acquired Eligible Receivables") and the information therein is true and correct.

2.     If applicable, the requirements of Section 3.04 of the Agreement will be met upon the acquisition of the Acquired Eligible Receivables.

3.     Each Acquired Eligible Receivable is an Eligible Receivable authorized so to be acquired by the Agreement.

4.     You have been previously, or are herewith, provided with the following items:

(a)     a copy of the Purchase Documents between the Debtor and the seller of the Acquired Eligible Receivables (the "Seller") with respect to the Acquired Eligible Receivables (original copy maintained on file with the Debtor on behalf of the Custodian); and

(b)     instruments assigning the Acquired Eligible Receivables to the Custodian pursuant to the Note Agreement.

A complete list of documents previously provided or provided herewith that describes the documents in detail is attached hereto as Schedule B.

5.     The Debtor is not, on the date hereof, in default under the Agreement or in the performance of any of its covenants and agreements made in the Purchase Documents relating to the Acquired Eligible Receivables, and, to the best knowledge of the Debtor, the Seller is not in default in the performance of any of its covenants and agreements made in the Purchase Documents applicable to the Acquired Eligible Receivables, and the Agreement and the covenants and agreements made in the Purchase Documents are enforceable in accordance with their terms, except as enforce ability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter effect affecting the enforcement of creditors' rights general and except as such enforce ability may be limited by general principles of equity (whether considered in a proceeding at law or in equity).

6.     All of the conditions specified in the Purchase Agreement applicable to the Acquired Eligible Receivables and the Agreement for the acquisition of the Acquired Eligible Receivables and the disbursement hereby authorized and requested have been satisfied.

8.      The proposed use of moneys in the Concentration Account as directed by the Debtor to acquire the Acquired Eligible Receivables is in compliance with the provisions of the Agreement.

9.      The Administrator has conducted such UCC searches as it has deemed prudent with respect to such Acquired Eligible Receivables, and such searches indicate that such Acquired Eligible Receivables are free and clear of all liens and security interests. The Debtor or the Administrator on your behalf is retaining such UCC searches.

10.      The Debtor will use the funds disbursed pursuant to this Certificate solely in connection with the acquisition and pledge of the Acquired Eligible Receivables pursuant to the Agreement.

The undersigned is authorized to sign and deliver this Certificate on behalf of the Debtor.

WITNESS my hand this August 9, 2004.

MCC SPECIAL PURPOSE CORPORATION VIII

Joseph J. Lampariello
Chief Operating Officer for
Medical Capital Corporation, Administrator

EXHIBIT A

ACCOUNTS RECEIVABLE
Supplement to Schedule 1

| | | |
|---|---|---|
| Aggregate Gross Face Value: | $ 559,461.62 | |
| Aggregate Adjusted Value: | $ 318,957.38 | |
| Advance Rate Amount: | $ 255,165.90 | 80% |
| Deferred Purchase Price: | $ 46,503.99 | 14.58% |
| Discount to MCC Special Purpose Corporation VIII: | $ 17,287.49 | 5.42% |
| Origination Fee: | $ 9,568.72 | 3% |

EXHIBIT B

List of Documents Provided to Custodian
and attached hereto

1. Initial Purchase Agreement (first & signature pages via facsimile)
2. Initial Sale & Assignment by Seller
3. Payor Summary pages via facsimile

Aug-05-04 03:34P b    ess office                                P.02
    Aug 05 04 02:06p    Jeffrey A. Morse        410-208-9792        p.2

## EXHIBIT A

### INITIAL ACCOUNTS RECEIVABLE

See "Schedule 1" attached hereto and made a part hereof

| | | |
|---|---|---|
| Aggregate Gross Face Value............................ | $559,461.62 | |
| Aggregate Adjusted Value............................ | $318,957.38 | |
| Advance Rate Amount............................ | $255,165.90 | 80 % |
| Deferred Purchase Price............................ | $46,503.99 | 14.58 % |
| Discount to Buyer............................ | $17,287.49 | 5.42 % |
| Origination Fee............................ | $9,568.72 | 3 % |

_Jeffrey A. Morse_
Jeffrey A. Morse
President

**Exhibit F**
**Instructions for Disbursement of Purchase Price**


MCC Special Purpose Corporation VIII is hereby instructed on _____, to deliver the sum of $_____ (_____Dollars), in the form of wire transfer of funds to:

Brandywine Health Services of Mississippi, Inc.
aka Choctaw County Medical Center
Actual Account Name

**In the care of the following bank:**

Bank Name: Union Planters Bank

Bank Branch Address: 111 Main St
Street Address

Ackerman MS 39735
City    State    Zip Code

Bank Branch Phone Number: 662-285-6278

ABA: 084000084

Account Number: 9001034519

Name of Bank Officer to contact: Kenny Clark - VP Kay

Telephone number of Bank Officer 662-285-6278


Provider
Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center

Jeffrey A. Morse
President

ate: 08/04/04        ACS Host System              Time: 14:54
ser Name: CHO817447              User Number: *********

ile Number  Payor  Frmt Type  Claims  Batches  Tot. Charges  Status  Msg

8040076 908  77032  WA3  837I  47  1  198598.62  Prod  001

lessages
01 - WINASAP 2003 V 5.03 is now available. Please go to WWW.ACS-GCRO.COM

Total claims billed to Medicaid : 47
Total Charges billed to Medicaid : $198,598.62
Total 3rd party payment expected
               $20,413.49
Total Medicaid payment expected
               $178,185.13

Report ID: WINASAP-CL

Payer: MISSISSIPPI MEDICAID

Claim Type(s) Chosen:  Dental, Institutional, Professional

# WINASAP2003
# Claim Status Listing

Date: 08/04/2004    Time: 01:59 pm

Page: 1

Claim Status: Billed

| User Btch | User Clm # | Patient ID # | Begin DOS | Claim Amount | Status Date | Patient Account # | Patient Name |
|---|---|---|---|---|---|---|---|
| 0600 | 00000055 | 721183130 | 07/01/2004 | $4272.42 | 08/04/2004 | 1043 | Smith, Louise |
| 0600 | 00000024 | 721575144 | 07/01/2004 | $4272.42 | 08/04/2004 | 1031 | Lucas, Lewis |
| 600 | | 721636500 | 07/01/2004 | $4272.42 | 08/04/2004 | 1032 | Martin, Delois |
| 600 | 00000010 | 721288838 | 07/01/2004 | $4272.42 | 08/04/2004 | 1033 | Martin, Judy |
| 0600 | 00000011 | 602251217 | 07/01/2004 | $4272.42 | 08/04/2004 | 1035 | Miller, Anjanette |
| 0600 | 00000027 | 600624547 | 07/01/2004 | $4272.42 | 08/04/2004 | 076 | Nowell, Aaron |
| 0600 | 00000150 | 11049734 | 07/01/2004 | $4272.42 | 08/04/2004 | 1039 | Pope, Jackie |
| 0600 | 00000031 | 720890453 | 07/01/2004 | $4272.42 | 08/04/2004 | 1040 | Ray, Mattie |
| 0600 | 00000033 | 600413341 | 07/01/2004 | $4272.42 | 08/04/2004 | 1041 | Ray, Vonnie |
| 0600 | 00000034 | 721349438 | 07/01/2004 | $4272.42 | 08/04/2004 | 1042 | Ray, Howard |
| 0600 | 00000150 | 601511304 | 07/01/2004 | $4272.42 | 08/04/2004 | 70 | Shelton, Maggie |
| 0600 | 00000021 | 721534812 | 07/01/2004 | $4272.42 | 08/04/2004 | 1029 | Livingston, Bura |
| 0600 | 00000023 | 721626423 | 07/01/2004 | $4272.42 | 08/04/2004 | 119 | Starnes, Barbara |
| 0800 | 00000001 | 601171816 | 07/01/2004 | $4272.42 | 08/04/2004 | 1044 | Stevenson, Leon |
| 0600 | 00000055 | 720234963 | 07/01/2004 | $4272.42 | 08/04/2004 | 1046 | Taylor, Whitney |
| 0600 | 00000069 | 602462382 | 07/01/2004 | $4272.42 | 08/04/2004 | 600 | Vaughn, Clifford |
| 0600 | 00000630 | 721514927 | 07/01/2004 | $4272.42 | 08/04/2004 | 1047 | Vaughn, James |
| 0600 | 00000300 | 721542246 | 07/01/2004 | $4272.42 | 08/04/2004 | 1048 | Weed, Bobbie |
| 0600 | 00000070 | 721212114 | 07/01/2004 | $4272.42 | 08/04/2004 | 1049 | Wood, Edith |
| 600 | 00000071 | 602845419 | 07/01/2004 | $4272.42 | 08/04/2004 | 601 | Woodward, Robert |
| 0600 | 00000072 | 721296290 | 07/01/2004 | $4272.42 | 08/04/2004 | 1050 | Worrell, Verna |
| 0600 | 00000630 | 115150189 | 07/01/2004 | $4272.42 | 08/04/2004 | 1015 | Evans, Keith |
| 0600 | 00000020 | 600036645 | 07/01/2004 | $4272.42 | 08/04/2004 | 103 | Patterson, Onna |
| 0600 | 00000001 | 114524891 | 07/01/2004 | $2067.30 | 08/04/2004 | 250 | Atterberry, W |
| 0600 | 00000500 | 721399214 | 07/01/2004 | $4272.42 | 08/04/2004 | 1009 | Earving, Mary |
| 0600 | 00000000 | 602608271 | 07/01/2004 | $4272.42 | 08/04/2004 | 1000 | Ballard, Mary |
| 0600 | 00000002 | 108174927 | 07/01/2004 | $4272.42 | 08/04/2004 | 1001 | Breland, Nellie |
| 0600 | 00000002 | 100924293 | 07/01/2004 | $4272.42 | 08/04/2004 | 1002 | Brooks, Betty |
| 0600 | 00000100 | 602498158 | 07/01/2004 | $4272.42 | 08/04/2004 | 1003 | Brown, Swaney |
| 0600 | 00000003 | 100924420 | 07/01/2004 | $4272.42 | 08/04/2004 | 1004 | Carter, Lillie |

Report ID: WINASAP-CL

Date: 08/04/2004    Time: 01:59 pm

# WINASAP2003
# Claim Status Listing

Page: 2

Payer: MISSISSIPPI MEDICAID

Claim Type(s) Chosen: Dental, Institutional, Professional

Claim Status: Billed

| User tch | User Clm # | Patient ID # | Begin DOS | Claim Amount | Status Date | Patient Account # | Patient Name |
|---|---|---|---|---|---|---|---|
| 0600 | 00000003 | 721050726 | 07/01/2004 | $4272.42 | 08/04/2004 | 077 | Coleman, Lizzie |
| 0600 | 00000005 | 109424927 | 07/01/2004 | $4272.42 | 08/04/2004 | 1006 | Cork, Mattie |
| 0600 | 00000006 | 721256537 | 07/01/2004 | $4272.42 | 08/04/2004 | 1007 | Dean, Hester |
| 00 | 00000001 | 301850492 | 07/01/2004 | $4272.42 | 08/04/2004 | 26 | Dubose, Mary |
| 0600 | 00000007 | 600940058 | 07/01/2004 | $4272.42 | 08/04/2004 | 1008 | Durham, Beulah |
| 0600 | 00000052 | 721807380 | 07/01/2004 | $4272.42 | 08/04/2004 | 1027 | Kilpatrick, Rosa |
| 0600 | 00000014 | 110509170 | 07/01/2004 | $4272.42 | 08/04/2004 | 1010 | Edwards, Excell |
| 0600 | 00000015 | 721263770 | 07/01/2004 | $4272.42 | 08/04/2004 | 1011 | Edwards, Willie |
| 3600 | 00000012 | 720014866 | 07/01/2004 | $4272.42 | 08/04/2004 | 1014 | Emerson, Teresa |
| 3600 | 00000021 | 720395177 | 07/01/2004 | $4272.42 | 08/04/2004 | 1016 | Everett, Maggie |
| 3600 | 00000021 | 720608479 | 07/01/2004 | $4272.42 | 08/04/2004 | 1017 | Fulgham, Cora |
| 0600 | 00000001 | 721572790 | 07/01/2004 | $4272.42 | 08/04/2004 | 1019 | Fulgham, Lawrence |
| 0600 | 00000012 | 600617451 | 07/01/2004 | $4272.42 | 08/04/2004 | 1020 | Fulgham, Noah |
| 0600 | 00000023 | 721776050 | 07/01/2004 | $4272.42 | 08/04/2004 | 602 | Fuller, Oma |
| 0600 | 00000060 | 721659100 | 07/01/2004 | $4272.42 | 08/04/2004 | 1022 | Guess, Margaret |
| 0600 | 00000009 | 602079430 | 07/01/2004 | $4272.42 | 08/04/2004 | 1023 | Guinn, Ruby |
| 0600 | 00000001 | 600025775 | 07/01/2004 | $4272.42 | 08/04/2004 | 201 | Junkin, Nancy |

*** End of Report ***

08/05/04  08:10:36 am                         MEDICAL TRACKING SERVICES, INC.                          PAGE  23
REPORT P180                                     CLAIMS APPRAISAL REPORT                               V 3.5NX 12/93
                                                    AS OF 08/05/04
                            PAYOR SUMMARY FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.

|             |                                |              | Gross Claim |          |          |
| Payor ID    | Payor Name                     | # of Claims  | Amount      | ENR      | Advance  |
| ----------- | ------------------------------ | ------------ | ----------- | -------- | -------- |
| 88330       | SOUTHWIRE COMPANY              | 1            | 65.00       | 0.00     | 0.00     |
| 88340       | TAYLOR MACHINE WORKS           | 1            | 285.00      | 131.10   | 104.88   |
| 88350       | UNION NATIONAL                 | 1            | 416.00      | 0.00     | 0.00     |
| 88360       | MEADOWBROOK INS GROUP          | 1            | 893.10      | 410.83   | 328.66   |
| 88370       | HARTFORD INS CO                | 1            | 447.50      | 205.85   | 164.68   |
| 88380       | MICS CLAIMS                    | 2            | 494.00      | 0.00     | 0.00     |
| 88390       | INSUREX BENEFITS ADM INC       | 1            | 50.00       | 69.00    | 55.20    |
| 93500       | BLUE CROSS OF ILLINOIS         | 30           | 5685.80     | 1948.93  | 1559.14  |
| 94520       | CORESOURCE                     | 1            | 280.00      | 0.00     | 0.00     |
|             |                                | ===========  | =========== | ======== | ======== |
|             | TOTALS:                        | 1006         | 559461.62   | 318957.38| 255165.90|

```
08/05/04  08:10:36 am                    MEDICAL TRACKING SERVICES, INC.                          PAGE  22
REPORT P180                               CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                               AS OF 08/05/04
                        PAYOR SUMMARY FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
```

|  | | Gross Claim | | |
|---|---|---|---|---|
| Payor ID | Payor Name | # of Claims | Amount | ENR | Advance |
|---|---|---|---|---|
| 1010 | ACORDIA NATIONAL | 2 | 625.00 | 287.50 | 230.00 |
| 1030 | AETNA | 1 | 442.00 | 203.32 | 162.66 |
| 1570 | CIGNA HEALTHCARE | 1 | 543.47 | 250.00 | 200.00 |
| 2740 | MEDICAID | 273 | 53711.55 | 21052.39 | 16841.91 |
| 2770 | MEDICARE | 353 | 213230.93 | 92164.19 | 73731.35 |
| 3380 | PHYSICIAN MUTUAL | 1 | 190.00 | 87.40 | 69.92 |
| 3520 | PRIVATE HEALTH CARE SYSTEM | 1 | 439.00 | 201.94 | 161.55 |
| 3930 | TRICARE | 12 | 4206.00 | 1603.56 | 1282.85 |
| 3990 | UNITED AMERICAN INSURANCE CO. | 1 | 1289.60 | 593.22 | 474.58 |
| 4320 | GOLDEN RULE | 1 | 150.00 | 69.00 | 55.20 |
| 5210 | BLUE CROSS OF CALIFORNIA | 5 | 2022.00 | 916.32 | 733.06 |
| 8840 | GEHA | 1 | 1074.00 | 494.00 | 395.23 |
| 16910 | HEALTH COMP INS | 7 | 884.00 | 310.04 | 248.03 |
| 40360 | BENEFIT PLANNER INC. | 2 | 1458.50 | 197.80 | 158.24 |
| 41630 | AMERICAN FIDELITY | 1 | 480.00 | 220.80 | 176.64 |
| 46360 | BLUE CROSS OF KANSAS | 2 | 3161.90 | 1367.07 | 1093.66 |
| 48450 | WAUSAU BENEFITS | 1 | 265.00 | 121.90 | 97.52 |
| 48850 | UNITED HEALTHCARE | 6 | 1111.00 | 474.26 | 379.41 |
| 54390 | TOTAL BENEFIT SERVICES | 3 | 817.00 | 375.82 | 300.66 |
| 55410 | TRUSTMARK INSURANCE | 1 | 379.30 | 174.48 | 139.58 |
| 62720 | GREAT WEST HEALTHCARE | 1 | 349.00 | 160.54 | 128.43 |
| 63800 | NPPN | 5 | 457.00 | 118.22 | 94.58 |
| 68540 | ANTHEM BLUE CROSS | 1 | 284.00 | 130.64 | 104.51 |
| 70290 | AMERICAN LIFECARE | 3 | 692.00 | 318.32 | 254.66 |
| 72800 | CONNECTICUT GENERAL LIFE | 1 | 493.50 | 227.01 | 181.61 |
| 79990 | MEDICAID-SNF | 47 | 198598.62 | 168808.97 | 135047.18 |
| 81470 | GREAT WEST CARE HEALTH PLAN | 1 | 90.00 | 41.40 | 33.12 |
| 83820 | BENESCRIPT | 1 | 569.50 | 261.97 | 209.58 |
| 84600 | COLONIAL | 1 | 652.15 | 299.99 | 239.99 |
| 85600 | HARRINGTON BENEFIT SERVICE | 10 | 1180.50 | 375.13 | 300.10 |
| 88110 | ACCLAIM | 1 | 192.70 | 88.64 | 70.91 |
| 88120 | LIFE OF AMERICA | 1 | 214.00 | 98.44 | 78.75 |
| 88130 | MISSISSIPPI HEATLH PARTNE | 1 | 441.50 | 203.09 | 162.47 |
| 88150 | BLUE CROSS 230 | 157 | 46794.35 | 18783.36 | 15026.69 |
| 88160 | BLUE CROSS OF NEW YORK | 3 | 924.00 | 395.14 | 316.11 |
| 88170 | BLUE CROSS OF N. DAKO | 11 | 1480.00 | 588.80 | 471.04 |
| 88180 | BLUE CROSS OF TENN | 6 | 1102.00 | 474.72 | 379.78 |
| 88190 | CAREMARK, INC | 1 | 40.00 | 0.00 | 0.00 |
| 88200 | FLEXSTEEL INDS | 2 | 80.00 | 0.00 | 0.00 |
| 88210 | FOX EVERETT INC | 2 | 100.00 | 0.00 | 0.00 |
| 88220 | MS BAND OF CHOCTAW INDIAN | 4 | 798.00 | 80.50 | 64.40 |
| 88230 | PROFESSIONAL BENEFIT ADM | 3 | 220.00 | 50.60 | 40.48 |
| 88240 | STATE OF MS | 14 | 4556.00 | 1943.96 | 1555.17 |
| 88250 | HILL BROTHERS CONSTRUCTION | 1 | 50.00 | 0.00 | 0.00 |
| 88260 | MS PUBLIC ENTITY EMPLOYEE | 2 | 100.00 | 0.00 | 0.00 |
| 88280 | BLUE CROSS 230 CHIPS | 8 | 2161.15 | 820.48 | 656.38 |
| 88290 | GARAN/UNITED OF OMAHA | 1 | 338.00 | 155.48 | 124.38 |
| 88300 | HEARTLAND HEALTH PLAN | 1 | 470.00 | 216.20 | 172.96 |
| 88310 | STARBRIDGE | 1 | 287.00 | 132.02 | 105.62 |
| 88320 | ST PAUL MERCURY INSURANCE | 1 | 550.00 | 253.00 | 202.40 |

```
08/05/04  03:09:35 am                        MEDICAL TRACKING SERVICES, INC.                               PAGE   1
REPORT P18C                                  CLAIMS APPRAISAL REPORT                                   V 3.5NX 12/93
                                                  AS OF 08/05/04
                              FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim  ID    Provider ID Payor ID    Patient Name    Message
------------ ----------- ------------ ---------------- --------------------------------------------------------------
   1528412     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      S BAGWELL        IMPORTED ON 07/30/04 AS CLAIM # 1528545
   1528415     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      O BABER          IMPORTED ON 07/30/04 AS CLAIM # 1528420
   1528416     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      O BABER          IMPORTED ON 07/30/04 AS CLAIM # 1528419
   1528418     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      O BABER          IMPORTED ON 07/30/04 AS CLAIM # 1528417
   1528419     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      O BABER          IMPORTED ON 07/30/04 AS CLAIM # 1528416
   1528420     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      O BABER          IMPORTED ON 07/30/04 AS CLAIM # 1528415
   1528421     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      O BABER          IMPORTED ON 07/30/04 AS CLAIM # 1528414
   1528424     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      M BATES          IMPORTED ON 07/30/04 AS CLAIM # 1528422
   1528425     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      M BATES          IMPORTED ON 07/30/04 AS CLAIM # 1528423
   1528427     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      M BATES          IMPORTED ON 07/30/04 AS CLAIM # 1528426
   1528428     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      B BLACK          IMPORTED ON 07/30/04 AS CLAIM # 1528431
   1528429     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      B BLACK          IMPORTED ON 07/30/04 AS CLAIM # 1528430
   1528430     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      B BLACK          IMPORTED ON 07/30/04 AS CLAIM # 1528429
   1528431     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      B BLACK          IMPORTED ON 07/30/04 AS CLAIM # 1528428
   1528432     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C BIXLER         IMPORTED ON 07/30/04 AS CLAIM # 1528434
   1528434     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C BIXLER         IMPORTED ON 07/30/04 AS CLAIM # 1528432
   1528435     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C BIXLER         IMPORTED ON 07/30/04 AS CLAIM # 1528433
   1528436     27600      2770 B BISHOP   DATE OF SERVICE TOO OLD
   1528437     27600      2770 B BISHOP   ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528438     27600      2770 B BISHOP   DATE OF SERVICE TOO OLD
   1528439     27600      2770 B BISHOP   ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528440     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      M BENNETT        IMPORTED ON 07/30/04 AS CLAIM # 1528548
   1528442     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      G BLACK          IMPORTED ON 07/30/04 AS CLAIM # 1528549
   1528443     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C BLAINE         IMPORTED ON 07/30/04 AS CLAIM # 1528508
   1528444     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      W BLACKWOOD      IMPORTED ON 07/30/04 AS CLAIM # 1528551
   1528448     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      B BLACKBOURN     IMPORTED ON 07/30/04 AS CLAIM # 1528447
   1528449     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      B BLACKBOURN     IMPORTED ON 07/30/04 AS CLAIM # 1528446
   1528450     27600      2770                        ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
```

```
08/05/04  03:09:37 am                    MEDICAL TRACKING SERVICES, INC.                      PAGE   2
REPORT P180                               CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                              AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


 Claim  ID   Provider ID Payor ID    Patient Name    Message
 ----------- ----------- -----------  --------------- ------------------------------------------------------
                                      T BOWIE        IMPORTED ON 07/30/04 AS CLAIM # 1528510
   1528451      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      G BOWIE        IMPORTED ON 07/30/04 AS CLAIM # 1528453
   1528452      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      G BOWIE        IMPORTED ON 07/30/04 AS CLAIM # 1528454
   1528453      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      G BOWIE        IMPORTED ON 07/30/04 AS CLAIM # 1528451
   1528454      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      G BOWIE        IMPORTED ON 07/30/04 AS CLAIM # 1528452
   1528455      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      G BOWIE        IMPORTED ON 07/30/04 AS CLAIM # 1528509
   1528457      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      M ASHFORD      IMPORTED ON 07/30/04 AS CLAIM # 1528456
   1528460      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      M ASHFORD      IMPORTED ON 07/30/04 AS CLAIM # 1528458
   1528461      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      M ASHFORD      IMPORTED ON 07/30/04 AS CLAIM # 1528459
   1528462      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      S BUELL        IMPORTED ON 07/30/04 AS CLAIM # 1528511
   1528463      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      S BURGESS      IMPORTED ON 07/30/04 AS CLAIM # 1528512
   1528464      27600       2770  L BUSKIRK          DATE OF SERVICE TOO OLD
   1528465      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      D CARTER       IMPORTED ON 07/30/04 AS CLAIM # 1528514
   1528469      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      . CHEATON      IMPORTED ON 07/30/04 AS CLAIM # 1528467
   1528470      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      V CHEATON      IMPORTED ON 07/30/04 AS CLAIM # 1528534
   1528471      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      V CHEATON      IMPORTED ON 07/30/04 AS CLAIM # 1528468
   1528472      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      H COLEMAN .    IMPORTED ON 07/30/04 AS CLAIM # 1528475
   1528473      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      H COLEMAN      IMPORTED ON 07/30/04 AS CLAIM # 1528474
   1528474      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      H COLEMAN      IMPORTED ON 07/30/04 AS CLAIM # 1528473
   1528475      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      H COLEMAN      IMPORTED ON 07/30/04 AS CLAIM # 1528472
   1528477      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      D COLEMAN      IMPORTED ON 07/30/04 AS CLAIM # 1528478
   1528478      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      D COLEMAN      IMPORTED ON 07/30/04 AS CLAIM # 1528477
   1528479      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      D COLEMAN      IMPORTED ON 07/30/04 AS CLAIM # 1528476
   1528480      27600       2770  M COLE             DATE OF SERVICE TOO OLD
   1528481      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C COBB         IMPORTED ON 07/30/04 AS CLAIM # 1528486
   1528482      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C COBB         IMPORTED ON 07/30/04 AS CLAIM # 1528485
   1528483      27600       2770                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C COBB         IMPORTED ON 07/30/04 AS CLAIM # 1528484
```

```
08/05/04  08:09:38 am                    MEDICAL TRACKING SERVICES, INC.                         PAGE   3
REPORT P180                              CLAIMS APPRAISAL REPORT                                 V 3.5NX 12/93
                                             AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim  ID    Provider ID Payor ID    Patient Name    Message
-----------  ----------- ----------  --------------  ----------------------------------------------------------
  1528484       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C COBB          IMPORTED ON 07/30/04 AS CLAIM # 1528483
  1528485       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C COBB          IMPORTED ON 07/30/04 AS CLAIM # 1528482
  1528486       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C COBB          IMPORTED ON 07/30/04 AS CLAIM # 1528481
  1528487       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      B COLTER        IMPORTED ON 07/30/04 AS CLAIM # 1528490
  1528488       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      J COOPER        IMPORTED ON 07/30/04 AS CLAIM # 1528491
  1528489       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      E CORK          IMPORTED ON 07/30/04 AS CLAIM # 1528492
  1528490       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      B COLTER        IMPORTED ON 07/30/04 AS CLAIM # 1528487
  1528491       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      J COOPER        IMPORTED ON 07/30/04 AS CLAIM # 1528488
  1528492       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      E CORK          IMPORTED ON 07/30/04 AS CLAIM # 1528489
  1528493       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      V CORK          IMPORTED ON 07/30/04 AS CLAIM # 1528497
  1528494       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      V CORK          IMPORTED ON 07/30/04 AS CLAIM # 1528498
  1528496       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      F COTTINGHAM    IMPORTED ON 07/30/04 AS CLAIM # 1528495
  1528497       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      V CORK          IMPORTED ON 07/30/04 AS CLAIM # 1528493
  1528498       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      V CORK          IMPORTED ON 07/30/04 AS CLAIM # 1528494
  1528499       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C CRENSHAW      IMPORTED ON 07/30/04 AS CLAIM # 1528500
  1528500       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C CRENSHAW      IMPORTED ON 07/30/04 AS CLAIM # 1528499
  1528503       27600      2770  B DEDMOND            ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528504       27600      2770  J DEES               ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528505       27600      2770  J DEES               ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528508       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      C BLAINE        IMPORTED ON 07/30/04 AS CLAIM # 1528443
  1528509       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      G BOWIE         IMPORTED ON 07/30/04 AS CLAIM # 1528455
  1528510       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      T BOWIE         IMPORTED ON 07/30/04 AS CLAIM # 1528450
  1528511       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      S BUELL         IMPORTED ON 07/30/04 AS CLAIM # 1528462
  1528512       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      S BURGESS       IMPORTED ON 07/30/04 AS CLAIM # 1528463
  1528513       27600      2770  L BUSKIRK            DATE OF SERVICE TOO OLD
  1528514       27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                      D CARTER        IMPORTED ON 07/30/04 AS CLAIM # 1528465
  1528515       27600      2770  M DOTSON             DATE OF SERVICE TOO OLD
  1528516       27600      2770  L DOWNING            ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528517       27600      2770  T DUETT              ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
```

```
08/05/04  08:09:39 am                    MEDICAL TRACKING SERVICES, INC.                          PAGE   4
REPORT P180                                CLAIMS APPRAISAL REPORT                               V 3.5NX 12/93
                                              AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim  ID   Provider ID Payor ID    Patient Name    Message
----------- ----------- ----------- -------------   -----------------------------------------------------------
  1528519     27600      2770 E EDWARDS      DATE OF SERVICE TOO OLD
  1528520     27600      2770 G DUFF         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528521     27600      2770 F FAIR         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528522     27600      2770 H FAIR         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528523     27600      2770 H FAIR         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528527     27600      2770 J FOX          ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528528     27600      2770 J FOX          ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528530     27600      2770 M FULGHAM      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528531     27600      2770 J FULGHAM      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528533     27600      2770 F FULGHAM      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528534     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               V CHEATON     IMPORTED ON 07/30/04 AS CLAIM # 1528470
  1528535     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               A ASHFORD     IMPORTED ON 07/30/04 AS CLAIM # 1528538
  1528536     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               A ASHFORD     IMPORTED ON 07/30/04 AS CLAIM # 1528540
  1528537     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               A ASHFORD     IMPORTED ON 07/30/04 AS CLAIM # 1528539
  1528538     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               A ASHFORD     IMPORTED ON 07/30/04 AS CLAIM # 1528535
  1528539     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               A ASHFORD     IMPORTED ON 07/30/04 AS CLAIM # 1528537
  1528540     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               A ASHFORD     IMPORTED ON 07/30/04 AS CLAIM # 1528536
  1528541     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               M BENNETT     IMPORTED ON 07/30/04 AS CLAIM # 1528441
  1528542     27600      2770 L ASHFORD      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528543     27600      2770 L ASHFORD      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528544     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               H BAGWELL     IMPORTED ON 07/30/04 AS CLAIM # 1528413
  1528545     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               S BAGWELL ·   IMPORTED ON 07/30/04 AS CLAIM # 1528412
  1528546     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               O BALENTINE   IMPORTED ON 07/30/04 AS CLAIM # 1528559
  1528547     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               L BALLARD     IMPORTED ON 07/30/04 AS CLAIM # 1528560
  1528548     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               M BENNETT     IMPORTED ON 07/30/04 AS CLAIM # 1528440
  1528549     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               G BLACK       IMPORTED ON 07/30/04 AS CLAIM # 1528442
  1528550     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               J BLACKBOURN  IMPORTED ON 07/30/04 AS CLAIM # 1528445
  1528551     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               W BLACKWOOD   IMPORTED ON 07/30/04 AS CLAIM # 1528444
  1528552     27600      2770 K DEAN         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528556     27600      2770 C FULGHAM      DATE OF SERVICE TOO OLD
  1528557     27600      2770 C FULGHAM      DATE OF SERVICE TOO OLD
  1528558     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               O CARTER      IMPORTED ON 07/30/04 AS CLAIM # 1528466
  1528559     27600      2770              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                               O BALENTINE   IMPORTED ON 07/30/04 AS CLAIM # 1528546
```

```
08/05/04  08:09:40 am                    MEDICAL TRACKING SERVICES, INC.                        PAGE   5
REPORT P180                                CLAIMS APPRAISAL REPORT                            V 3.5NX 12/93
                                              AS OF 08/05/04
                      FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim  ID    Provider ID Payor ID    Patient Name    Message
------------ ----------- ----------- --------------- ----------------------------------------------------------
   1528560      27600      2770                       ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     L BALLARD        IMPORTED ON 07/30/04 AS CLAIM # 1528547
   1528561      27600      2770 V COLEMAN    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528563      27600      2770 F FULGHAM    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528566      27600      2770 R KILPATRICK ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528569      27600      2770 S MCCRARY    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528574      27600      2770 M RHODES     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528575      27600      2770 G SYKES      DATE OF SERVICE TOO OLD
   1528578      27600      2770 W ARMSTRONG  ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528580      27600      2770 C BIXLER     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528581      27600      2770 J BLAKE      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528590      27600      2770 B COLTER     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528592      27600      2770 M CORK       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528596      27600      2770 F FULGHAM    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528601      27600      2770 O MCGAUGH    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528603      27600      2770 M MILES      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528605      27600      2770 O PATTERSON  ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528606      27600      2770 I PERRY      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528608      27600      2770 C POTTS      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528610      27600      2770 W POWER      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528622      27600      2770 V WORRELL    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528639      27600      2740 P KENNEDY    DATE OF SERVICE TOO OLD
   1528642      27600      2740 V ASHFORD    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528656      27600      2740 B JOHNSON    DATE OF SERVICE TOO OLD
   1528673      27600      2740 K SANDERS    DATE OF SERVICE TOO OLD
   1528676      27600      2740 P THOMAS     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528680      27600      2740 J TUCKER     DATE OF SERVICE TOO OLD
   1528687      27600      2740 T EMERSON    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528694      27600      2740 B COX        ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528696      27600      2740 J COOPER     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528698      27600      2740 T CARTER     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528707      27600      2740 D YEATMAN    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528721      27600      2770 M CORK       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528725      27600      2770 N FULGHAM    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528729      27600      2770 L COLEMAN    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528740      27600      2770 G BOYD       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528743      27600      2770 M WOMACK     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528752      27600      2770 B WEED       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528789      27600      2770 T LOLLAR     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528793      27600      2770 B BLACK      DATE OF SERVICE TOO OLD
   1528797      27600      2770 B BELL       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528799      27600      2770 O BABER      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528811      27600      2770 P JENKINS    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528812      27600      2770 P JENKINS    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528813      27600      2770 I JAMES      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528816      27600      2770 O HUNT       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528817      27600      2770 J HOFFMAN    DATE OF SERVICE TOO OLD
   1528818      27600      2770 J HENDERSON  ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528820      27600      2770 M GUESS      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528833      27600      2770 E BASWELL    DATE OF SERVICE TOO OLD
   1528839      27600      2770 E BASWELL    DATE OF SERVICE TOO OLD
```

```
08/05/04  C3:09:53 am                    MEDICAL TRACKING SERVICES, INC.                      PAGE   6
REPORT P18C                              CLAIMS APPRAISAL REPORT                             V 3.5NX 12/93
                                            AS OF 08/05/04
                         FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim  ID   Provider ID Payor ID    Patient Name   Message
----------  ----------- ---------   ------------   -------------------------------------------------------
  1528841      27600      2770 O BABER        ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528843      27600      2770 L SMITH        DATE OF SERVICE TOO OLD
  1528846      27600      2770 J NUNN         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528847      27600      2770 J NELLONS      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528848      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              B CHUNN          IMPORTED ON 07/30/04 AS CLAIM # 1528934
  1528849      27600      2740 M COLE         DATE OF SERVICE TOO OLD
  1528850      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              C COLLINS        IMPORTED ON 07/30/04 AS CLAIM # 1528933
  1528851      27600      2740 A CORK         DATE OF SERVICE TOO OLD
  1528852      27600      2740 L CORK         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1528853      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              P CRAWFORD       IMPORTED ON 07/30/04 AS CLAIM # 1528930
  1528854      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              B ADAMS          IMPORTED ON 07/30/04 AS CLAIM # 1528883
  1528856      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              B ADAMS          IMPORTED ON 07/30/04 AS CLAIM # 1528881
  1528857      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              C ARD            IMPORTED ON 07/30/04 AS CLAIM # 1528884
  1528858      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              E ARTERBERRY     IMPORTED ON 07/30/04 AS CLAIM # 1528903
  1528861      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              C BABER          IMPORTED ON 07/30/04 AS CLAIM # 1528886
  1528862      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              D BABER          IMPORTED ON 07/30/04 AS CLAIM # 1528885
  1528865      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              W BAXTER         IMPORTED ON 07/30/04 AS CLAIM # 1528888
  1528866      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              J BEAN           IMPORTED ON 07/30/04 AS CLAIM # 1528889
  1528867      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              S BOLEY          IMPORTED ON 07/30/04 AS CLAIM # 1528890
  1528868      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              P BOLEYN         IMPORTED ON 07/30/04 AS CLAIM # 1528892
  1528869      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              P BOLEYN         IMPORTED ON 07/30/04 AS CLAIM # 1528891
  1528870      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              S BOLEYN         IMPORTED ON 07/30/04 AS CLAIM # 1528893
  1528871      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              B BROWN          IMPORTED ON 07/30/04 AS CLAIM # 1528894
  1528872      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              J BROWN          IMPORTED ON 07/30/04 AS CLAIM # 1528895
  1528873      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              A BRUCE          IMPORTED ON 07/30/04 AS CLAIM # 1528896
  1528875      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              A CARTER         IMPORTED ON 07/30/04 AS CLAIM # 1528898
  1528876      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              A CARTER         IMPORTED ON 07/30/04 AS CLAIM # 1528899
  1528879      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              A CARTER         IMPORTED ON 07/30/04 AS CLAIM # 1528935
  1528880      27600      2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              T CARTER         IMPORTED ON 07/30/04 AS CLAIM # 1528901
```

```
08/05/04  08:09:55 am                    MEDICAL TRACKING SERVICES, INC.                        PAGE  7
REPORT P180                                CLAIMS APPRAISAL REPORT                            V 3.5NX 12/93
                                              AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
```

| Claim  ID | Provider ID | Payor ID | Patient Name | Message |
|-----------|-------------|----------|--------------|---------|
| 1528881 | 27600 | 2740 | B ADAMS | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528856 |
| 1528882 | 27600 | 2740 | B ADAMS | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528855 |
| 1528883 | 27600 | 2740 | B ADAMS | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528854 |
| 1528884 | 27600 | 2740 | C ARD | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528857 |
| 1528885 | 27600 | 2740 | D BABER | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528862 |
| 1528886 | 27600 | 2740 | C BABER | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528861 |
| 1528887 | 27600 | 2740 | V ASHFORD | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528860 |
| 1528888 | 27600 | 2740 | W BAXTER | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528865 |
| 1528889 | 27600 | 2740 | J BEAN | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528866 |
| 1528890 | 27600 | 2740 | S BOLEY | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528867 |
| 1528891 | 27600 | 2740 | P BOLEYN | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528869 |
| 1528892 | 27600 | 2740 | P BOLEYN | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528868 |
| 1528893 | 27600 | 2740 | S BOLEYN | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528870 |
| 1528894 | 27600 | 2740 | B BROWN | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528871 |
| 1528895 | 27600 | 2740 | J BROWN | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528872 |
| 1528896 | 27600 | 2740 | A BRUCE | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528873 |
| 1528897 | 27600 | 2740 | C BRYANT | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528874 |
| 1528898 | 27600 | 2740 | A CARTER | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528875 |
| 1528899 | 27600 | 2740 | A CARTER | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528876 |
| 1528900 | 27600 | 2740 | A CARTER | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528877 |
| 1528901 | 27600 | 2740 | T CARTER | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528880 |
| 1528902 | 27600 | 2740 | E ARTERBERRY | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528859 |
| 1528903 | 27600 | 2740 | E ARTERBERRY | ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, & IMPORTED ON 07/30/04 AS CLAIM # 1528858 |
| 1528904 | 27600 | 2740 | C FAIR | ADVANCE AMT WOULD BE LESS THAN THE MINIMUM |
| 1528905 | 27600 | 2740 | F FAIR | ADVANCE AMT WOULD BE LESS THAN THE MINIMUM |
| 1528903 | 27600 | 2740 | M FULGHAM | ADVANCE AMT WOULD BE LESS THAN THE MINIMUM |
| 1528909 | 27600 | 2740 | O FULLER | ADVANCE AMT WOULD BE LESS THAN THE MINIMUM |
| 1528910 | 27600 | 2740 | A ELLIS | ADVANCE AMT WOULD BE LESS THAN THE MINIMUM |

```
08/05/04  08:09:56 am                     MEDICAL TRACKING SERVICES, INC.                        PAGE   8
REPORT P180                                CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                               AS OF 08/05/04
                           FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim  ID   Provider ID Payor ID    Patient Name    Message
----------- ----------- ----------- --------------- ------------------------------------------------------------
   1528912     27600       2740 N ESTERS       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528914     27600       2740 N DOBBS        ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528915     27600       2740 M DOTSON       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528916     27600       2740 T EVANS        ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528917     27600       2740 T ESTERS       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528919     27600       2740 M DEAN         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528920     27600       2740 M DEAN         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528921     27600       2740 E DOBBS        ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528922     27600       2740 N DOBBS        ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528923     27600       2740 C GAZAWAY      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528925     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 S BALDWIN      IMPORTED ON 07/30/04 AS CLAIM # 1528863
   1528926     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 S BALDWIN      IMPORTED ON 07/30/04 AS CLAIM # 1528864
   1528927     27600       2740 " DAWSON       CLAIM MARKED INELIGIBLE: PAID CLAIM
   1528928     27600       2740 A DAVENPORT    CLAIM MARKED INELIGIBLE: PAID CLAIM
   1528929     27600       2740 D CULLUM       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528930     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 P CRAWFORD     IMPORTED ON 07/30/04 AS CLAIM # 1528853
   1528931     27600       2740 A CORK         DATE OF SERVICE TOO OLD
   1528932     27600       2740 L CORK         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528933     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 C COLLINS      IMPORTED ON 07/30/04 AS CLAIM # 1528850
   1528934     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 B CHUNN        IMPORTED ON 07/30/04 AS CLAIM # 1528848
   1528935     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 A CARTER       IMPORTED ON 07/30/04 AS CLAIM # 1528879
   1528936     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 A CARTER       IMPORTED ON 07/30/04 AS CLAIM # 1528878
   1528943     27600       2740 K HOOD         FUTURE DATE OF SERVICE
   1528945     27600       2740 L HULL         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM  · ·
   1528957     27600       2740 B ADAMS        ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1528959     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 P BOLEYN       IMPORTED ON 07/30/04 AS CLAIM # 1528970
   1528960     27600       2740 J CARTER       DATE OF SERVICE TOO OLD
   1528961     27600       2740 R ABBOTT       DATE OF SERVICE TOO OLD
   1528970     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 P BOLEYN       IMPORTED ON 07/30/04 AS CLAIM # 1528959
   1528999     27600       2740 T MACON        DATE OF SERVICE TOO OLD
   1529000     27600       2740 D MAYS         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529012     27600       2740               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 V ROBINSON     IMPORTED ON 07/30/04 AS CLAIM # 1529011
   1529021     27600      88330 R KELLEY       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529028     27600      88260               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 T BROOKS       IMPORTED ON 07/30/04 AS CLAIM # 1529029
   1529029     27600      88260               ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 T BROOKS       IMPORTED ON 07/30/04 AS CLAIM # 1529028
   1529036     27600      88350 D MITCHELL     DATE OF SERVICE TOO OLD
   1529040     27600       3930 J WILROY       DATE OF SERVICE TOO OLD
   1529051     27600      88200 M HAYNES       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529052     27600      94520 S PEACOCK      DATE OF SERVICE TOO OLD
```

```
08/05/04  08:10:03 am                  MEDICAL TRACKING SERVICES, INC.                    PAGE   9
REPORT P180                              CLAIMS APPRAISAL REPORT                         V 3.5NX 12/93
                                            AS OF 08/05/04
                     FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim ID   Provider ID Payor ID    Patient Name    Message
---------- ----------- ----------  -------------   ----------------------------------------------------------
  1529081     27600       2740 P POWER       CLAIM MARKED INELIGIBLE: PAID CLAIM
  1529083     27600       2740 C PEPPER      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529084     27600       2740 D NIX         CLAIM MARKED INELIGIBLE: PAID CLAIM
  1529086     27600       2740 J MOORE       CLAIM MARKED INELIGIBLE: PAID CLAIM
  1529087     27600       2740 D MITCHELL    DATE OF SERVICE TOO OLD
  1529088     27600       2740 B MITCHEEL    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529089     27600      88250 J WEBB        ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529090     27600      16910              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              C ANDERSON    IMPORTED ON 07/30/04 AS CLAIM # 1529093
  1529091     27600      16910              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              C ANDERSON    IMPORTED ON 07/30/04 AS CLAIM # 1529092
  1529092     27600      16910              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              D ANDERSON    IMPORTED ON 07/30/04 AS CLAIM # 1529091
  1529093     27600      16910              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              D ANDERSON    IMPORTED ON 07/30/04 AS CLAIM # 1529090
  1529095     27600      85600              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              A COMPTON     IMPORTED ON 07/30/04 AS CLAIM # 1529100
  1529096     27600      85600              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              P CALDERON    IMPORTED ON 07/30/04 AS CLAIM # 1529098
  1529097     27600      85600 M FLEMING     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529098     27600      85600              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              P CALDERON    IMPORTED ON 07/30/04 AS CLAIM # 1529096
  1529099     27600      85600              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              A COMPTON     IMPORTED ON 07/30/04 AS CLAIM # 1529094
  1529100     27600      85600              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              A COMPTON     IMPORTED ON 07/30/04 AS CLAIM # 1529095
  1529101     27600      85600 N LANDON      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529102     27600      48850              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              G BLACK       IMPORTED ON 07/30/04 AS CLAIM # 1529103
  1529103     27600      48850              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              G BLACK       IMPORTED ON 07/30/04 AS CLAIM # 1529102
  1529105     27600      63800              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              M CHAMBERS    IMPORTED ON 07/30/04 AS CLAIM # 1529107
  1529106     27600      63800              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              M CHAMBERS    IMPORTED ON 07/30/04 AS CLAIM # 1529108
  1529107     27600      63800              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              M CHAMBERS    IMPORTED ON 07/30/04 AS CLAIM # 1529105
  1529108     27600      63800              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              M CHAMBERS    IMPORTED ON 07/30/04 AS CLAIM # 1529106
  1529109     27600      88230              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              L ABBOTT      IMPORTED ON 07/30/04 AS CLAIM # 1529110
  1529110     27600      88230              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              L ABBOTT      IMPORTED ON 07/30/04 AS CLAIM # 1529109
  1529112     27600       3930              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              G ANDERSON    IMPORTED ON 07/30/04 AS CLAIM # 1529115
  1529113     27600       3930 A DOBBS       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529114     27600       3930 A DOBBS       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529115     27600       3930              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              G ANDERSON    IMPORTED ON 07/30/04 AS CLAIM # 1529112
  1529116     27600       3930              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                              G ANDERSON    IMPORTED ON 07/30/04 AS CLAIM # 1529111
```

```
08/05/04  08:10:05 am                     MEDICAL TRACKING SERVICES, INC.                         PAGE  10
REPORT P180                                CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                               AS OF 08/05/04
                           FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim ID   Provider ID Payor ID   Patient Name    Message
----------- ----------- -----------  ---------------  -----------------------------------------------------------
  1529118     27600       88210                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     D BEARD          IMPORTED ON 07/30/04 AS CLAIM # 1529119
  1529119     27600       88210                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     D BEARD          IMPORTED ON 07/30/04 AS CLAIM # 1529118
  1529120     27600       88200  R CARSON            ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529121     27600       88240  W GAMILL            ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529122     27600       88240                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     D BLAKE          IMPORTED ON 07/30/04 AS CLAIM # 1529125
  1529123     27600       88240                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     R BROOKS         IMPORTED ON 07/30/04 AS CLAIM # 1529124
  1529124     27600       88240                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     R BROOKS         IMPORTED ON 07/30/04 AS CLAIM # 1529123
  1529125     27600       88240                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     D BLAKE          IMPORTED ON 07/30/04 AS CLAIM # 1529122
  1529128     27600       88240  F BLACK             ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529129     27600       88240  V SWINDLE           DATE OF SERVICE TOO OLD
  1529132     27600       88190  J FRANKS            ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529133     27600       88180  P ASHFORD-SMITH     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529135     27600       88170                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     J COLLIER        IMPORTED ON 07/30/04 AS CLAIM # 1529136
  1529136     27600       88170                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     J COLLIER        IMPORTED ON 07/30/04 AS CLAIM # 1529135
  1529137     27600       88170                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     B BAXTER         IMPORTED ON 07/30/04 AS CLAIM # 1529138
  1529138     27600       88170                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     B BAXTER         IMPORTED ON 07/30/04 AS CLAIM # 1529137
  1529141     27600       46360  R PEARSON           DATE OF SERVICE TOO OLD
  1529142     27600       93500                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     R MOSLEY         IMPORTED ON 07/30/04 AS CLAIM # 1529150
  1529143     27600       93500  A SMITH             DATE OF SERVICE TOO OLD
  1529144     27600       93500  S SMITH             DATE OF SERVICE TOO OLD
  1529146     27600       93500  Z EAKIN             ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529147     27600       93500  G GATTI             ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529150     27600       93500                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     R MOSLEY         IMPORTED ON 07/30/04 AS CLAIM # 1529142
  1529152     27600       93500                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     L BRADLEY        IMPORTED ON 07/30/04 AS CLAIM # 1529153
  1529153     27600       93500                      ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                     L BRADLEY        IMPORTED ON 07/30/04 AS CLAIM # 1529152
  1529155     27600        5210  J PARISH            ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529156     27600       88220  J JORDAN            ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529157     27600       88220  L DOSS              ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529158     27600       88150  S SMITH             DATE OF SERVICE TOO OLD
  1529161     27600       88150  S SMITH             DATE OF SERVICE TOO OLD
  1529162     27600       88150  J CARTER            DATE OF SERVICE TOO OLD
  1529169     27600       88150  D BRADLEY           ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529170     27600       88150  A SMITH             DATE OF SERVICE TOO OLD
  1529171     27600       88150  E CHANDLER          ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529172     27600       88150  V CARLISLE          ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529173     27600       88150  T BUSBY             ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529174     27600       88150  J BUSBY             DATE OF SERVICE TOO OLD
```

```
08/05/04  05:10:07 am                  MEDICAL TRACKING SERVICES, INC.                    PAGE  11
REPORT P180                              CLAIMS APPRAISAL REPORT                        V 3.5NX 12/93
                                            AS OF 08/05/04
                        FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim  ID   Provider ID Payor ID    Patient Name    Message
----------- ----------- -----------  --------------  ----------------------------------------------------
   1529181      27600      88150 C FORRESTER    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529182      27600      88150 D FANCHER      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529183      27600      88150 D FANCHER      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529186      27600      88150 R HUNT         DATE OF SERVICE TOO OLD
   1529190      27600      88150 J MCDANIEL     DATE OF SERVICE TOO OLD
   1529191      27600      88150 T LEE          DATE OF SERVICE TOO OLD
   1529197      27600      88150 P MCMINN       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529198      27600      88150 C MCINTIRE     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529203      27600      88150 G ROBINSON     DATE OF SERVICE TOO OLD
   1529204      27600      88150 G ROBINSON     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529205      27600      88150 M RHODES       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529206      27600      88150 T COLEMAN      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529208      27600      88150 B WOODARD      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529210      27600      88150 J WILLIAMS     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529211      27600      88150 S WHITTINGTON  DATE OF SERVICE TOO OLD
   1529212      27600      88150 C FORRESTER    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529213      27600      88150              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 W CORK       IMPORTED ON 07/30/04 AS CLAIM # 1529219
   1529214      27600      88150 T COLEMAN      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529215      27600      88150              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 V CARLISLE   IMPORTED ON 07/30/04 AS CLAIM # 1529217
   1529216      27600      88150              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 E BARKSDALE  IMPORTED ON 07/30/04 AS CLAIM # 1529218
   1529217      27600      88150              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 V CARLISLE   IMPORTED ON 07/30/04 AS CLAIM # 1529215
   1529218      27600      88150              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 E BARKSDALE  IMPORTED ON 07/30/04 AS CLAIM # 1529216
   1529219      27600      88150              ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                 W CORK       IMPORTED ON 07/30/04 AS CLAIM # 1529213
   1529221      27600      88380 L JONES        CLAIM MARKED INELIGIBLE: UNACCEPTABLE PAYOR
   1529222      27600      88380 L PRUITT       CLAIM MARKED INELIGIBLE: UNACCEPTABLE PAYOR
   1529225      27600      88220 A LANE         DATE OF SERVICE TOO OLD
   1529247      27600      88150 J BUSBY        DATE OF SERVICE TOO OLD
   1529253      27600      88150 A WORKS        DATE OF SERVICE TOO OLD
   1529261      27600      88150 S WHITTINGTON  DATE OF SERVICE TOO OLD
   1529268      27600      88150 A WHITE        ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529270      27600      88150 G ROBINSON     DATE OF SERVICE TOO OLD
   1529287      27600      88150 T LEE          DATE OF SERVICE TOO OLD
   1529294      27600      88150 L CARTER       DATE OF SERVICE TOO OLD
   1529300      27600      88150 B WORTHY       DATE OF SERVICE TOO OLD
   1529303      27600      88150 M HAYNES       DATE OF SERVICE TOO OLD
   1529304      27600      88150 M HAYNES       DATE OF SERVICE TOO OLD
   1529305      27600      88150 M HAYNES       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529307      27600      88150 M HAYNES       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529309      27600      88150 M HAYNES       ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529310      27600      88150 R HUNT         DATE OF SERVICE TOO OLD
   1529317      27600      88150 R BARKSDALE    DATE OF SERVICE TOO OLD
   1529324      27600      88280 P WOODARD      ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529327      27600      88280 J PATTERSON    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
   1529328      27600      88280 J MCDANIEL     DATE OF SERVICE TOO OLD
   1529330      27600      88180 M GOSS         ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
```

```
08/05/04  08:10:13 am                    MEDICAL TRACKING SERVICES, INC.                          PAGE  12
REPORT P180                                CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                               AS OF 08/05/04
                           FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.


Claim  ID   Provider ID Payor ID     Patient Name    Message
----------- ----------- -----------  --------------  --------------------------------------------------------
  1529339      27600      88160 B VOWELL     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529342      27600      93500            ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                A SMITH    IMPORTED ON 07/30/04 AS CLAIM # 1529352
  1529345      27600      93500 J MOSLEY    ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529347      27600      93500 J KILGORE   ADVANCE AMT WOULD BE LESS THAN THE MINIMUM
  1529352      27600      93500            ANOTHER UNPURCHASED CLAIM FOR THIS PROVIDER HAS THE SAME PATIENT NAME, DOS, &
                                A SMITH    IMPORTED ON 07/30/04 AS CLAIM # 1529342
  1529353      27600      93500 S SMITH     DATE OF SERVICE TOO OLD
  1529355      27600      93500 F GLASS     DATE OF SERVICE TOO OLD
  1529364      27600      40360 A NOWELL    DATE OF SERVICE TOO OLD
  1533917      27600       2770 T BUSBY     ADVANCE AMT WOULD BE LESS THAN THE MINIMUM


        ATTEMPTED APPRAISAL OF 1006 CLAIM(S).

        CLAIMS APPRAISED THIS TIME:              622
        CLAIMS SKIPPED, PREVIOUSLY APPRAISED:      0
        TOTAL CLAIMS NOW APPRAISED:              622



      384 CLAIM(S) NOT APPRAISED DUE TO THE FOLLOWING REASONS:

        384 CLAIM(S) HAD ERRORS WHICH WILL CAUSE REJECTION DURING MERGE IF NOT CORRECTED.
```

```
08/05/04  08:10:18 am                 MEDICAL TRACKING SERVICES, INC.                           PAGE   1
REPORT P180                            CLAIMS APPRAISAL REPORT                                V 3.5NX 12/93
                                           AS OF 08/05/04
                         FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                              DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                    Provider ID: 27600
ACKERMAN, MS 39735
```

|  | | | Date of | | | Gross Claim | | |
|---|---|---|---|---|---|---|---|---|
| Claim No | Type | Patient Name | Service | Payor ID | Payor | Amount | ENR | Advance |
| 1529073 | | MULLINS, DONNIE | 05/31/04 | 1010 | ACORDIA NATIONAL | 455.00 | 209.30 | 167.44 |
| 1529074 | | YOUNG, HENRY | 06/08/04 | 1010 | ACORDIA NATIONAL | 170.00 | 78.20 | 62.56 |
| 1529072 | | MULLEN, JULIE | 06/06/04 | 1030 | AETNA | 442.00 | 203.32 | 162.66 |
| 1529065 | | JOBE, ROY | 05/29/04 | 1570 | CIGNA HEALTHCARE | 543.47 | 250.00 | 200.00 |
| 1528956 | | ABBOTT, KEITH | 07/11/04 | 2740 | MEDICAID | 206.00 | 94.76 | 75.81 |
| 1528967 | | ABBOTT, RANDALL | 03/31/03 | 2740 | MEDICAID | 120.00 | 0.00 | 0.00 |
| 1528649 | | ADAMS, REBECCA | 07/06/04 | 2740 | MEDICAID | 178.00 | 81.88 | 65.50 |
| 1528650 | | ADAMS, BRENDA | 07/03/04 | 2740 | MEDICAID | 313.50 | 144.21 | 115.37 |
| 1528854 | | ADAMS, BRENDA | 06/16/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528855 | | ADAMS, BRENDA | 06/21/04 | 2740 | MEDICAID | 75.00 | 34.50 | 27.60 |
| 1528856 | | ADAMS, BRENDA | 07/05/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528881 | | ADAMS, BRENDA | 07/05/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528882 | | ADAMS, BRENDA | 06/21/04 | 2740 | MEDICAID | 75.00 | 0.00 | 0.00 |
| 1528883 | | ADAMS, BRENDA | 06/16/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528957 | | ADAMS, BRENDA | 07/14/04 | 2740 | MEDICAID | 25.00 | 0.00 | 0.00 |
| 1528962 | | ADAMS, BRENDA | 07/03/04 | 2740 | MEDICAID | 118.50 | 54.51 | 43.61 |
| 1528963 | | ADAMS, REBECCA | 07/06/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528648 | | ARD, CHRISTI | 05/06/04 | 2740 | MEDICAID | 179.00 | 82.34 | 65.87 |
| 1528857 | | ARD, CRISTI | 05/06/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528884 | | ARD, CRISTI | 05/06/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528643 | | ARTERBERRY, EVERETT | 07/04/04 | 2740 | MEDICAID | 365.50 | 168.13 | 134.50 |
| 1528644 | | ARTERBERRY, EVERETT | 05/20/04 | 2740 | MEDICAID | 170.00 | 78.20 | 62.56 |
| 1528645 | | ARTERBERRY, EVERETT | 05/15/04 | 2740 | MEDICAID | 223.50 | 102.81 | 82.25 |
| 1528646 | | ARTERBERRY, EVERETT | 04/28/04 | 2740 | MEDICAID | 264.00 | 121.44 | 97.15 |
| 1528647 | | ARTERBERRY, EVERETT | 04/09/04 | 2740 | MEDICAID | 400.00 | 184.00 | 147.20 |
| 1528858 | | ARTERBERRY, EVERETT | 06/03/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528859 | | ARTERBERRY, EVERETT | 05/27/04 | 2740 | MEDICAID | 325.00 | 149.50 | 119.60 |
| 1528902 | | ARTERBERRY, EVERETT | 05/27/04 | 2740 | MEDICAID | 325.00 | 0.00 | 0.00 |
| 1528903 | | ARTERBERRY, EVERETT | 06/03/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528964 | | ARTERBERRY, EVERETT | 04/09/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528965 | | ARTERBERRY, EVERETT | 04/28/04 | 2740 | MEDICAID | 156.00 | 71.76 | 57.41 |
| 1528966 | | ARTERBERRY, EVERETT | 05/15/04 | 2740 | MEDICAID | 118.50 | 54.51 | 43.61 |
| 1528967 | | ARTERBERRY, EVERETT | 05/20/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528968 | | ARTERBERRY, EVERETT | 07/04/04 | 2740 | MEDICAID | 133.50 | 61.41 | 49.13 |
| 1528642 | | ASHFORD, VALDO | 04/29/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528860 | | ASHFORD, VALDO | 06/22/04 | 2740 | MEDICAID | 90.00 | 41.40 | 33.12 |
| 1528887 | | ASHFORD, VALDO | 06/22/04 | 2740 | MEDICAID | 90.00 | 0.00 | 0.00 |
| 1528958 | | ASHFORD, TAMMY | 07/11/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528861 | | BABER, CARLET | 04/27/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528862 | | BABER, D'TYLER | 05/13/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528885 | | BABER, D'TYLER | 05/13/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528886 | | BABER, CARLET | 04/27/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528863 | | BALDWIN, STETSON | 04/12/04 | 2740 | MEDICAID | 325.00 | 149.50 | 119.60 |
| 1528864 | | BALDWIN, STETSON | 04/12/04 | 2740 | MEDICAID | 350.00 | 161.00 | 128.80 |
| 1528925 | | BALDWIN, STETSON | 04/12/04 | 2740 | MEDICAID | 325.00 | 0.00 | 0.00 |
| 1528926 | | BALDWIN, STETSON | 04/12/04 | 2740 | MEDICAID | 350.00 | 0.00 | 0.00 |
| 1528641 | | BATTS, TRINITA | 06/18/04 | 2740 | MEDICAID | 193.00 | 88.78 | 71.02 |
| 1528969 | | BATTS, TRINITA | 06/18/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528640 | | BAXTER, WAYNE | 04/23/04 | 2740 | MEDICAID | 379.00 | 174.34 | 139.47 |

```
08/05/04  08:10:19 am                MEDICAL TRACKING SERVICES, INC.                    PAGE  2
REPORT P180                          CLAIMS APPRAISAL REPORT                          V 3.5NX 12/93
                                        AS OF 08/05/04
                       FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                            DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                    Provider ID: 27600
ACKERMAN, MS 39735
```

|  |  |  | Date of |  |  | Gross Claim |  |  |
|---|---|---|---|---|---|---|---|---|
| Claim No | Type | Patient Name | Service | Payor ID | Payor | Amount | ENR | Advance |
| 1528865 |  | BAXTER, WAYNE | 05/06/04 | 2740 | MEDICAID | 29.00 | 0.00 | 0.00 |
| 1528888 |  | BAXTER, WAYNE | 05/06/04 | 2740 | MEDICAID | 29.00 | 0.00 | 0.00 |
| 1528866 |  | BEAN, JOYCE | 04/26/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528889 |  | BEAN, JOYCE | 04/26/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528867 |  | BOLEY, SAMANTHA | 06/21/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528890 |  | BOLEY, SAMANTHA | 06/21/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528868 |  | BOLEYN, PAMELA | 04/10/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528869 |  | BOLEYN, PAMELA | 05/17/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528870 |  | BOLEYN, SUMMER | 05/08/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528891 |  | BOLEYN, PAMELA | 05/17/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528892 |  | BOLEYN, PAMELA | 04/10/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528893 |  | BOLEYN, SUMMER | 05/08/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528959 |  | BOLEYN, PAMELA | 06/30/04 | 2740 | MEDICAID | 30.00 | 0.00 | 0.00 |
| 1528970 |  | BOLEYN, PAMELA | 06/30/04 | 2740 | MEDICAID | 30.00 | 0.00 | 0.00 |
| 1528706 |  | BOX, LINDAEY | 04/14/04 | 2740 | MEDICAID | 259.00 | 119.14 | 95.31 |
| 1528703 |  | BRADLEY, PAMELA | 07/04/04 | 2740 | MEDICAID | 313.50 | 144.21 | 115.37 |
| 1528971 |  | BRADLEY, PAMELA | 07/04/04 | 2740 | MEDICAID | 118.50 | 54.51 | 43.61 |
| 1528704 |  | BROWN, KAMREN | 05/16/04 | 2740 | MEDICAID | 172.00 | 79.12 | 63.30 |
| 1528871 |  | BROWN, BONNIE | 04/26/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528872 |  | BROWN, JONATHAN | 04/21/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528894 |  | BROWN, BONNIE | 04/26/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528895 |  | BROWN, JONATHAN | 04/21/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528972 |  | BROWN, KAMREN | 05/16/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528873 |  | BRUCE, ANGELA | 06/21/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528896 |  | BRUCE, ANGELA | 06/21/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528874 |  | BRYANT, CATHERINE | 05/23/04 | 2740 | MEDICAID | 305.00 | 140.30 | 112.24 |
| 1528897 |  | BRYANT, CATHERINE | 05/23/04 | 2740 | MEDICAID | 305.00 | 0.00 | 0.00 |
| 1528705 |  | BURRAGE-HOPSKINS, JAMES | 04/25/04 | 2740 | MEDICAID | 167.00 | 76.82 | 61.46 |
| 1528973 |  | BURRAGE-HOSPK, JAMES | 04/25/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528698 |  | CARTER, TYLAN | 04/26/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528699 |  | CARTER, PATRICIA | 06/29/04 | 2740 | MEDICAID | 379.00 | 174.34 | 139.47 |
| 1528700 |  | CARTER, LYDIA | 07/04/04 | 2740 | MEDICAID | 162.00 | 74.52 | 59.62 |
| 1528701 |  | CARTER, ANNETTE | 07/07/04 | 2740 | MEDICAID | 70.00 | 32.20 | 25.76 |
| 1528702 |  | CARTER, ANNETTE | 04/16/04 | 2740 | MEDICAID | 674.00 | 310.04 | 248.03 |
| 1528875 |  | CARTER, ANNETTE | 04/23/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528876 |  | CARTER, ANNETTE | 04/30/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528877 |  | CARTER, ANNETTE | 04/16/04 | 2740 | MEDICAID | 295.00 | 135.70 | 108.56 |
| 1528878 |  | CARTER, ANNETTE | 05/14/04 | 2740 | MEDICAID | 100.00 | 46.00 | 36.80 |
| 1528879 |  | CARTER, ANNETTE | 06/18/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528880 |  | CARTER, TYLAN | 04/26/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528898 |  | CARTER, ANNETTE | 04/23/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528899 |  | CARTER, ANNETTE | 04/30/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528900 |  | CARTER, ANNETTE | 04/16/04 | 2740 | MEDICAID | 295.00 | 0.00 | 0.00 |
| 1528901 |  | CARTER, TYLAN | 04/26/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528935 |  | CARTER, ANNETTE | 06/18/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528936 |  | CARTER, ANNETTE | 05/14/04 | 2740 | MEDICAID | 100.00 | 0.00 | 0.00 |
| 1528960 |  | CARTER, JOEL | 08/28/03 | 2740 | MEDICAID | 360.00 | 0.00 | 0.00 |
| 1528974 |  | CARTER, LYDIA | 07/04/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528848 |  | CHUNN, BARBARA | 07/01/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |

```
08/05/04  C8:10:20 am                    MEDICAL TRACKING SERVICES, INC.                         PAGE   3
REPORT P180                               CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                              AS OF 08/05/04
                           FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                  DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                           Provider ID: 27600
ACKERMAN, MS 39735
```

| Claim No | Type | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|---|---|---|---|---|---|---|---|---|
| 1528954 | | CHUNN, BARBARA | 07/01/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528697 | | CLARK, ELIZABETH | 07/05/04 | 2740 | MEDICAID | 708.00 | 325.68 | 260.54 |
| 1528975 | | CLARK, ELIZABETH | 07/05/04 | 2740 | MEDICAID | 150.00 | 69.00 | 55.20 |
| 1528849 | | COLE, MCKEVIN | 03/26/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528850 | | COLLINS, CAMERON | 04/26/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528953 | | COLLINS, CAMERON | 04/26/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528696 | | COOPER, JOE | 04/23/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528695 | | CORK, VIOLA | 04/25/04 | 2740 | MEDICAID | 2984.35 | 1326.80 | 1061.44 |
| 1528851 | | CORK, ALMA | 04/02/04 | 2740 | MEDICAID | 49.00 | 0.00 | 0.00 |
| 1528852 | | CORK, LAIANA S | 04/27/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528951 | | CORK, ALMA | 04/02/04 | 2740 | MEDICAID | 49.00 | 0.00 | 0.00 |
| 1528952 | | CORK, LAIANA | 04/27/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528976 | | CORK, VIOLA | 04/25/04 | 2740 | MEDICAID | 135.00 | 62.10 | 49.68 |
| 1528694 | | COX, BRITNEY | 04/08/04 | 2740 | MEDICAID | 30.00 | 0.00 | 0.00 |
| 1528853 | | CRAWFORD, PETER | 06/02/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528950 | | CRAWFORD, PETER | 06/02/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528929 | | CULLUM, DENISE | 04/08/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528928 | | DAVENPORT, ALUNDRA | 05/07/04 | 2740 | MEDICAID | 88.00 | 0.00 | 0.00 |
| 1528692 | | DAVIS, MADELINE | 06/26/04 | 2740 | MEDICAID | 400.00 *469* 184.00 *807* | | 147.20 |
| 1528693 | | DAVIS, KHRISTI | 05/18/04 | 2740 | MEDICAID | 285.00 | 131.10 | 104.88 |
| 1528977 | | DAVIS, MADELINE | 06/26/04 | 2740 | MEDICAID | 135.00 | 62.10 | 49.68 |
| 1528927 | | DAWSON, TINA | 05/30/04 | 2740 | MEDICAID | 205.00 | 0.00 | 0.00 |
| 1528918 | | DEAN, MELINDA | 04/15/04 | 2740 | MEDICAID | 85.00 | 39.10 | 31.28 |
| 1528919 | | DEAN, MELINDA | 06/23/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528920 | | DEAN, MELINDA | 06/28/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528914 | | DOBBS, NASHIEKA | 04/15/04 | 2740 | MEDICAID | 52.00 | 0.00 | 0.00 |
| 1528921 | | DOBBS, BETTY | 05/06/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528922 | | DOBBS, NASHIEKA | 04/23/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528691 | | DODD, CRISTER | 05/20/04 | 2740 | MEDICAID | 160.00 | 73.60 | 58.88 |
| 1528978 | | DODD, CRISTER | 05/20/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528915 | | DOTSON, MICHAEL | 04/26/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528938 | | DOTSON, QUANTERRIU | 07/10/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528690 | | EDWARDS, MARY | 06/04/04 | 2740 | MEDICAID | 337.50 | 155.25 | 124.20 |
| 1528911 | | EDWARDS, MARY | 07/06/04 | 2740 | MEDICAID | 100.00 | 46.00 | 36.80 |
| 1528937 | | EDWARDS, MARY | 06/29/04 | 2740 | MEDICAID | 265.00 | 121.90 | 97.52 |
| 1528979 | | EDWARDS, MARY | 06/04/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528689 | | ELLIS, ASHLEY | 06/21/04 | 2740 | MEDICAID | 389.00 | 178.94 | 143.15 |
| 1528910 | | ELLIS, ASHLEY | 06/21/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528939 | | ELLIS, ASHLEY | 06/22/04 | 2740 | MEDICAID | 96.00 | 44.16 | 35.33 |
| 1528687 | | EMERSON, TERESA | 07/10/04 | 2740 | MEDICAID | 35.00 | 0.00 | 0.00 |
| 1528688 | | EMERSON, TERESA | 04/22/04 | 2740 | MEDICAID | 75.00 | 34.50 | 27.60 |
| 1528912 | | ESTERS, NIKKI | 05/04/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528913 | | ESTERS, JAIDAJA | 06/23/04 | 2740 | MEDICAID | 85.00 | 39.10 | 31.28 |
| 1528917 | | ESTERS, THOMAS | 06/17/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528916 | | EVANS, TERRELL | 06/18/04 | 2740 | MEDICAID | 40.00 | 0.00 | 0.00 |
| 1528686 | | FAIR, FRANCIS | 06/22/04 | 2740 | MEDICAID | 1258.00 | 578.68 | 462.94 |
| 1528904 | | FAIR, CYNTHIA | 05/03/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528905 | | FAIR, FRANCIS | 06/23/04 | 2740 | MEDICAID | 50.00 | 0.00 | -0.00 |
| 1528907 | | FAIR, SHARON | 04/15/04 | 2740 | MEDICAID | 85.00 | 39.10 | 31.28 |

```
08/05/04  08:10:20 am                    MEDICAL TRACKING SERVICES, INC.                              PAGE   4
REPORT P180                               CLAIMS APPRAISAL REPORT                                 V 3.5NX 12/93
                                              AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                  DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                          Provider ID: 27600
ACKERMAN, MS 39735
```

| Claim No | Type | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|---|---|---|---|---|---|---|---|---|
| 1528940 | | FAIR, TATIANA | 07/12/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528980 | | FAIR, FRANCIS | 06/22/04 | 2740 | MEDICAID | 160.00 | 73.60 | 58.88 |
| 1528685 | | FERGUSON, JOHNNIE | 06/22/04 | 2740 | MEDICAID | 164.50 | 75.67 | 60.54 |
| 1528906 | | FERGUSON, JOHNNIE | 06/17/04 | 2740 | MEDICAID | 75.00 | 34.50 | 27.60 |
| 1528981 | | FERGUSON, JOHNNIE | 06/22/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528683 | | FRANKS, TERRY | 06/09/04 | 2740 | MEDICAID | 529.00 | 243.34 | 194.67 |
| 1528684 | | FRANKS, TERRY | 04/14/04 | 2740 | MEDICAID | 554.00 | 254.84 | 203.87 |
| 1528908 | | FULGHAM, MELANIE | 04/23/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528909 | | FULLER, OMA | 04/20/04 | 2740 | MEDICAID | 25.00 | 0.00 | 0.00 |
| 1528924 | | GATHERIGHT, DARYL | 04/21/04 | 2740 | MEDICAID | 71.00 | 32.66 | 26.13 |
| 1528923 | | GAZAWAY, CHRISTOPHE | 05/24/04 | 2740 | MEDICAID | 50.00 | 0.00 | 0.00 |
| 1528941 | | GIBBS, SHAWNTAY | 07/12/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528677 | | GRIFFIN, VALERIE | 06/24/04 | 2740 | MEDICAID | 185.00 | 85.10 | 68.08 |
| 1528679 | | HAMPTON, FRANCES | 06/21/04 | 2740 | MEDICAID | 3505.35 | 1612.46 | 1289.97 |
| 1528982 | | HAMPTON, FRANCES | 06/21/04 | 2740 | MEDICAID | 228.50 | 105.11 | 84.09 |
| 1528669 | | HANNAH, ORIES | 04/08/04 | 2740 | MEDICAID | 214.00 | 98.44 | 78.75 |
| 1528668 | | HARRIS, RACHEL | 07/06/04 | 2740 | MEDICAID | 160.00 | 73.60 | 58.88 |
| 1528983 | | HARRIS, RACHEL | 07/06/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528667 | | HENDERSON, MARGARET | 06/16/04 | 2740 | MEDICAID | 240.50 | 110.63 | 88.50 |
| 1528984 | | HENDERSON, MARGARET | 06/16/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528664 | | HINTON, DOROTHY | 06/19/04 | 2740 | MEDICAID | 297.00 | 136.62 | 109.30 |
| 1528665 | | HINTON, DOROTHY | 06/13/04 | 2740 | MEDICAID | 271.00 | 124.66 | 99.73 |
| 1528666 | | HINTON, DOROTHY | 04/09/04 | 2740 | MEDICAID | 348.50 | 160.31 | 128.25 |
| 1528942 | | HINTON, DOROTHY | 07/04/04 | 2740 | MEDICAID | 135.00 | 62.10 | 49.68 |
| 1528985 | | HINTON, DOROTHY | 04/09/04 | 2740 | MEDICAID | 118.50 | 54.51 | 43.61 |
| 1528986 | | HINTON, DOROTHY | 06/13/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528987 | | HINTON, DOROTHY | 06/19/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528663 | | HOLMAN, DWIGHT | 07/05/04 | 2740 | MEDICAID | 419.00 | 192.74 | 154.19 |
| 1528988 | | HOLMAN, DWIGHT | 07/05/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528943 | | HOOD, KATHERINE | 12/01/04 | 2740 | MEDICAID | 120.00 | 0.00 | 0.00 |
| 1528662 | | HORNE, WYATT | 07/09/04 | 2740 | MEDICAID | 166.00 | 76.36 | 61.09 |
| 1528989 | | HORNE, WYATT | 07/09/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528944 | | HOSKIN, ZACHARY | 07/11/04 | 2740 | MEDICAID | 160.00 | 73.60 | 58.88 |
| 1528661 | | HOWARD, JIMMY | 06/18/04 | 2740 | MEDICAID | 80.00 | 36.80 | 29.44 |
| 1528660 | | HUBBERT, WILLIE | 07/03/04 | 2740 | MEDICAID | 1573.05 | 723.60 | 578.88 |
| 1528990 | | HUBBERT, WILLIE | 07/03/04 | 2740 | MEDICAID | 257.00 | 118.22 | 94.58 |
| 1528659 | | HULL, LINDA | 04/13/04 | 2740 | MEDICAID | 95.00 | 43.70 | 34.96 |
| 1528945 | | HULL, LINDA | 07/12/04 | 2740 | MEDICAID | 30.00 | 0.00 | 0.00 |
| 1528658 | | JACKSON, NOEL | 05/19/04 | 2740 | MEDICAID | 309.00 | 142.14 | 113.71 |
| 1528657 | | JAMES, DIAMOND | 07/05/04 | 2740 | MEDICAID | 478.00 | 219.88 | 175.90 |
| 1528991 | | JAMES, DIAMOND | 07/05/04 | 2740 | MEDICAID | 206.00 | 94.76 | 75.81 |
| 1528655 | | JOHNSON, BRENDA | 04/13/04 | 2740 | MEDICAID | 495.50 | 227.93 | 182.34 |
| 1528656 | | JOHNSON, BEAUTY | 04/01/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528992 | | JOHNSON, BRENDA | 04/13/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528653 | | JONES, GUSSIE | 04/27/04 | 2740 | MEDICAID | 181.75 | 83.61 | 66.89 |
| 1528654 | | JONES, BRITTANY | 06/03/04 | 2740 | MEDICAID | 254.00 | 116.84 | 93.47 |
| 1528993 | | JONES, GUSSIE | 04/27/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528652 | | JORDAN, DAMION | 06/24/04 | 2740 | MEDICAID | 190.00 | 87.40 | 69.92 |
| 1528946 | | JORDAN, ANNIE | 07/14/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |

```
08/05/04  08:10:21 am                    MEDICAL TRACKING SERVICES, INC.                           PAGE   5
REPORT P180                              CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                             AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                 DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                        Provider ID: 27600
ACKERMAN, MS 39735
```

|          |      |                    | Date of |          |              | Gross Claim |        |         |
|----------|------|--------------------|---------|----------|--------------|-------------|--------|---------|
| Claim No | Type | Patient Name       | Service | Payor ID | Payor        | Amount      | ENR    | Advance |
| 1528639  |      | KENNEDY, PAMELA    | 03/31/04 | 2740    | MEDICAID     | 80.00       | 0.00   | 0.00    |
| 1528651  |      | KENNEDY, ANGELA    | 04/20/04 | 2740    | MEDICAID     | 240.00      | 110.40 | 88.32   |
| 1528638  |      | KING, KASEY        | 04/23/04 | 2740    | MEDICAID     | 95.00       | 43.70  | 34.96   |
| 1528947  |      | LANE, QUINTON      | 07/13/04 | 2740    | MEDICAID     | 150.00      | 69.00  | 55.20   |
| 1528634  |      | LIDDELL, ANGIE     | 06/19/04 | 2740    | MEDICAID     | 287.50      | 132.25 | 105.80  |
| 1528635  |      | LIDDELL, ANGIE     | 06/15/04 | 2740    | MEDICAID     | 228.00      | 104.88 | 83.90   |
| 1528636  |      | LIDDELL, ANGIE     | 04/28/04 | 2740    | MEDICAID     | 114.00      | 52.44  | 41.95   |
| 1528637  |      | LIDDELL, ANGIE     | 04/08/04 | 2740    | MEDICAID     | 226.00      | 103.96 | 83.17   |
| 1528948  |      | LIDDELL, ANGIE     | 07/11/04 | 2740    | MEDICAID     | 105.00      | 48.30  | 38.64   |
| 1528994  |      | LIDDELL, ANGIE     | 04/08/04 | 2740    | MEDICAID     | 120.00      | 55.20  | 44.16   |
| 1528995  |      | LIDDELL, ANGIE     | 04/28/04 | 2740    | MEDICAID     | 120.00      | 55.20  | 44.16   |
| 1528996  |      | LIDDELL, ANGIE     | 06/15/04 | 2740    | MEDICAID     | 120.00      | 55.20  | 44.16   |
| 1528997  |      | LIDDELL, ANGIE     | 06/19/04 | 2740    | MEDICAID     | 118.50      | 54.51  | 43.61   |
| 1528633  |      | LUCAS, JOHNNY      | 06/23/04 | 2740    | MEDICAID     | 3059.15     | 1407.21| 1125.77 |
| 1528998  |      | LUCAS, JOHNNY      | 06/23/04 | 2740    | MEDICAID     | 163.50      | 75.21  | 60.17   |
| 1528999  |      | MACON, TAYLOR      | 03/13/04 | 2740    | MEDICAID     | 120.00      | 0.00   | 0.00    |
| 1528631  |      | MARTIN, DELOIS     | 07/07/04 | 2740    | MEDICAID     | 145.00      | 66.70  | 53.36   |
| 1528632  |      | MARTIN, DELOIS     | 04/13/04 | 2740    | MEDICAID     | 110.00      | 50.60  | 40.48   |
| 1528630  |      | MAYS, DOROTHY      | 07/07/04 | 2740    | MEDICAID     | 120.00      | 55.20  | 44.16   |
| 1529000  |      | MAYS, DOROTHY      | 07/07/04 | 2740    | MEDICAID     | 30.00       | 0.00   | 0.00    |
| 1528629  |      | MCCLURE, CHRISTOPHE| 04/10/04 | 2740    | MEDICAID     | 427.50      | 196.65 | 157.32  |
| 1529001  |      | MCCLURE, CHRISTOPHE| 04/10/04 | 2740    | MEDICAID     | 172.00      | 79.12  | 63.30   |
| 1528628  |      | MCMULLEN, TONI     | 04/15/04 | 2740    | MEDICAID     | 110.00      | 50.60  | 40.48   |
| 1528625  |      | MERRITT, MARY      | 04/27/04 | 2740    | MEDICAID     | 309.00      | 142.14 | 113.71  |
| 1528626  |      | MERRITT, ANN       | 07/10/04 | 2740    | MEDICAID     | 503.75      | 231.73 | 185.38  |
| 1528627  |      | MERRITT, ANN       | 07/06/04 | 2740    | MEDICAID     | 424.00      | 195.04 | 156.03  |
| 1529002  |      | MERRITT, ANN       | 07/06/04 | 2740    | MEDICAID     | 120.00      | 55.20  | 44.16   |
| 1529003  |      | MERRITT, ANN       | 07/10/04 | 2740    | MEDICAID     | 133.50      | 61.41  | 49.13   |
| 1528623  |      | MILLER, SABRINA    | 05/15/04 | 2740    | MEDICAID     | 223.00      | 102.58 | 82.06   |
| 1528624  |      | MILLER, JOYCE      | 07/04/04 | 2740    | MEDICAID     | 111.00      | 51.06  | 40.85   |
| 1528949  |      | MILLER, ANGELA     | 07/11/04 | 2740    | MEDICAID     | 199.00      | 91.54  | 73.23   |
| 1529004  |      | MILLER, JOYCE      | 07/04/04 | 2740    | MEDICAID     | 105.00      | 48.30  | 38.64   |
| 1529005  |      | MILLER, SABRINA    | 05/15/04 | 2740    | MEDICAID     | 105.00      | 48.30  | 38.64   |
| 1529088  |      | MITCHEEL, BRIANNE  | 06/18/04 | 2740    | MEDICAID     | 65.00       | 0.00   | 0.00    |
| 1529087  |      | MITCHELL, DOROTHY  | 04/05/04 | 2740    | MEDICAID     | 190.00      | 0.00   | 0.00    |
| 1529086  |      | MOORE, JAMES       | 07/04/04 | 2740    | MEDICAID     | 105.00      | 48.30  | 38.64   |
| 1529086  |      | MOORE, JAMES       | 07/04/04 | 2740    | MEDICAID     | 172.00      | 0.00   | 0.00    |
| 1529007  |      | NIX, DEBORAH       | 06/20/04 | 2740    | MEDICAID     | 120.00      | 55.20  | 44.16   |
| 1529008  |      | NIX, DEBORAH       | 07/03/04 | 2740    | MEDICAID     | 118.50      | 54.51  | 43.61   |
| 1529084  |      | NIX, DEBORAH       | 07/03/04 | 2740    | MEDICAID     | 313.50      | 0.00   | 0.00    |
| 1529085  |      | NIX, DEBORAH       | 06/20/04 | 2740    | MEDICAID     | 548.00      | 252.08 | 201.66  |
| 1529083  |      | PEPPER, CHRISTOPHE | 04/23/04 | 2740    | MEDICAID     | 65.00       | 0.00   | 0.00    |
| 1529081  |      | POWER, PATRICIA    | 07/08/04 | 2740    | MEDICAID     | 110.00      | 0.00   | 0.00    |
| 1529082  |      | POWER, DIXIE       | 06/18/04 | 2740    | MEDICAID     | 404.00      | 185.84 | 148.67  |
| 1528950  |      | PRICE, BETTIE      | 07/11/04 | 2740    | MEDICAID     | 147.00      | 67.62  | 54.10   |
| 1529009  |      | PURNELL, DOUGLAS   | 06/12/04 | 2740    | MEDICAID     | 133.50      | 61.41  | 49.13   |
| 1529080  |      | PURNELL, DOUGLAS   | 06/12/04 | 2740    | MEDICAID     | 223.50      | 102.81 | 82.25   |
| 1528951  |      | ROBINSON, SHIRLEY  | 06/22/04 | 2740    | MEDICAID     | 96.00       | 44.16  | 35.33   |
| 1528952  |      | ROBINSON, SHIRLEY  | 07/11/04 | 2740    | MEDICAID     | 120.00      | 55.20  | 44.16   |

```
08/05/04  08:10:22 am                   MEDICAL TRACKING SERVICES, INC.                          PAGE   6
REPORT P180                              CLAIMS APPRAISAL REPORT                                  V 3.5NX 12/93
                                         AS OF 08/05/04
                       FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                        Provider ID: 27600
ACKERMAN, MS 39735
```

| Claim No | Type | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|---|---|---|---|---|---|---|---|---|
| 1529010 | | ROBINSON, SHAMONICA | 04/26/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1529011 | | ROBINSON, VERONICA | 05/16/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1529012 | | ROBINSON, VERONICA | 05/16/04 | 2740 | MEDICAID | 120.00 | 0.00 | 0.00 |
| 1529077 | | ROBINSON, VERONICA | 05/16/04 | 2740 | MEDICAID | 490.50 | 225.63 | 180.50 |
| 1529078 | | ROBINSON, VERONICA | 05/16/04 | 2740 | MEDICAID | 225.00 | 103.50 | 82.80 |
| 1529079 | | ROBINSON, SHAMONICA | 04/26/04 | 2740 | MEDICAID | 285.00 | 131.10 | 104.88 |
| 1528672 | | SANDERS, DAVID | 04/08/04 | 2740 | MEDICAID | 335.00 | 154.10 | 123.28 |
| 1528673 | | SANDERS, KAYLA | 03/31/04 | 2740 | MEDICAID | 299.00 | 0.00 | 0.00 |
| 1528674 | | SCOTT, MYESHA | 05/24/04 | 2740 | MEDICAID | 172.00 | 79.12 | 63.30 |
| 1529013 | | SCOTT, MYESHA | 05/24/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528953 | | SHUMAKER, BRYANDREA | 07/11/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528678 | | STEELE, JANICE | 07/03/04 | 2740 | MEDICAID | 266.00 | 122.36 | 97.89 |
| 1529014 | | STEELE, JANICE | 07/03/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528954 | | STEPHENSON, QUEZ | 07/12/04 | 2740 | MEDICAID | 231.00 | 106.26 | 85.01 |
| 1528677 | | STEWART, MALISSIE | 04/23/04 | 2740 | MEDICAID | 284.00 | 130.64 | 104.51 |
| 1528676 | | THOMAS, PRECIOUS | 04/16/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528675 | | TRIPLETT, APRIL | 07/10/04 | 2740 | MEDICAID | 100.00 | 46.00 | 36.80 |
| 1528955 | | TRIPLETT, REGINA | 07/12/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1529015 | | TRIPLETT, APRIL | 07/10/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528679 | | TRUSS, VALERIE | 06/14/04 | 2740 | MEDICAID | 300.00 | 138.00 | 110.40 |
| 1529016 | | TRUSS, VALERIE | 06/14/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528680 | | TUCKER, JAVONTERRI | 04/01/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528681 | | WARD, JOHNNIE | 06/24/04 | 2740 | MEDICAID | 220.00 | 101.20 | 80.96 |
| 1528682 | | WHITMORE, ISRAEL | 07/03/04 | 2740 | MEDICAID | 245.00 | 112.70 | 90.16 |
| 1529017 | | WHITMORE, ISREAL | 07/03/04 | 2740 | MEDICAID | 120.00 | 55.20 | 44.16 |
| 1528710 | | WILLIAMS, LAWANA | 05/15/04 | 2740 | MEDICAID | 161.00 | 74.06 | 59.25 |
| 1529018 | | WILLIAMS, LAWANA | 05/15/04 | 2740 | MEDICAID | 105.00 | 48.30 | 38.64 |
| 1528709 | | WOODS, KORDRIQUEZ | 07/05/04 | 2740 | MEDICAID | 214.65 | 98.74 | 78.99 |
| 1529019 | | WOODS, KORDRIQUEZ | 07/05/04 | 2740 | MEDICAID | 135.00 | 62.10 | 49.68 |
| 1528708 | | WRAGGS, ISRAEL | 07/10/04 | 2740 | MEDICAID | 325.00 | 149.50 | 119.60 |
| 1529020 | | WRAGGS, ISREAL | 07/10/04 | 2740 | MEDICAID | 170.00 | 78.20 | 62.56 |
| 1528707 | | YEATMAN, DALTON | 04/19/04 | 2740 | MEDICAID | 65.00 | 0.00 | 0.00 |
| 1528578 | | ARMSTRONG, WILLIAM | 06/25/04 | 2770 | MEDICARE | 30.00 | 0.00 | 0.00 |
| 1528804 | | ARMSTRONG, WILLIAM | 07/06/04 | 2770 | MEDICARE | 201.00 | 92.46 | 73.97 |
| 1528805 | | ARMSTRONG, WILLIAM | 06/25/04 | 2770 | MEDICARE | 429.00 | 197.34 | 157.87 |
| 1528456 | | ASHFORD, MUSETTA | 05/18/04 | 2770 | MEDICARE | 300.00 | 138.00 | 110.40 |
| 1528457 | | ASHFORD, MUSETTA | 05/18/04 | 2770 | MEDICARE | 300.00 | 0.00 | 0.00 |
| 1528458 | | ASHFORD, MUSETTA | 04/12/04 | 2770 | MEDICARE | 75.00 | 34.50 | 27.60 |
| 1528459 | | ASHFORD, MUSETTA | 04/29/04 | 2770 | MEDICARE | 75.00 | 34.50 | 27.60 |
| 1528460 | | ASHFORD, MUSETTA | 04/12/04 | 2770 | MEDICARE | 75.00 | 0.00 | 0.00 |
| 1528461 | | ASHFORD, MUSETTA | 04/29/04 | 2770 | MEDICARE | 75.00 | 0.00 | 0.00 |
| 1528535 | | ASHFORD, ANNIE | 04/12/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528536 | | ASHFORD, ANNIE | 04/24/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528537 | | ASHFORD, ANNIE | 06/23/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528538 | | ASHFORD, ANNIE | 04/12/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528539 | | ASHFORD, ANNIE | 06/23/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528540 | | ASHFORD, ANNIE | 04/24/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528542 | | ASHFORD, LUCILLE | 05/04/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528543 | | ASHFORD, LUCILLE | 05/04/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |

```
08/05/04  08:10:23 am                  MEDICAL TRACKING SERVICES, INC.                           PAGE   7
REPORT P180                              CLAIMS APPRAISAL REPORT                                  V 3.5NX 12/93
                                             AS OF 08/05/04
                         FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                  DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                       Provider ID: 27600
ACKERMAN, MS 39735
```

|  |  |  | Date of |  |  | Gross Claim |  |  |
|---|---|---|---|---|---|---|---|---|
| Claim No | Type | Patient Name | Service | Payor ID | Payor | Amount | ENR | Advance |
| 1528802 | | ASHFORD, MUSETTA | 07/02/04 | 2770 | MEDICARE | 95.00 | 43.70 | 34.96 |
| 1528803 | | ASHFORD, LUCILLE | 06/30/04 | 2770 | MEDICARE | 245.00 | 112.70 | 90.16 |
| 1533915 | | ASHFORD, LUCILLE | 05/21/04 | 2770 | MEDICARE | 21471.90 | 9877.07 | 7901.66 |
| 1528801 | | ATKINSON, WILLIAM | 07/02/04 | 2770 | MEDICARE | 150.00 | 69.00 | 55.20 |
| 1528414 | | BABER, OLA | 04/29/04 | 2770 | MEDICARE | 330.00 | 151.80 | 121.44 |
| 1528415 | | BABER, OLA | 06/01/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528416 | | BABER, OLA | 05/26/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528417 | | BABER, OLA | 05/04/04 | 2770 | MEDICARE | 75.00 | 34.50 | 27.60 |
| 1528418 | | BABER, OLA | 05/04/04 | 2770 | MEDICARE | 75.00 | 0.00 | 0.00 |
| 1528419 | | BABER, OLA | 05/26/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528420 | | BABER, OLA | 06/01/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528421 | | BABER, OLA | 04/29/04 | 2770 | MEDICARE | 330.00 | 0.00 | 0.00 |
| 1528579 | | BABER, OLA | 07/02/04 | 2770 | MEDICARE | 170.00 | 78.20 | 62.56 |
| 1528799 | | BABER, OLA | 07/08/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528800 | | BABER, OLA | 07/02/04 | 2770 | MEDICARE | 5609.80 | 2580.51 | 2064.41 |
| 1528841 | | BABER, OLA | 07/12/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528412 | | BAGWELL, SARAH | 05/17/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528413 | | BAGWELL, HAZEL | 05/17/04 | 2770 | MEDICARE | 285.00 | 131.10 | 104.88 |
| 1528544 | | BAGWELL, HAZEL | 05/17/04 | 2770 | MEDICARE | 285.00 | 0.00 | 0.00 |
| 1528545 | | BAGWELL, SARAH | 05/17/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528793 | | BAGWELL, HAZEL | 07/08/04 | 2770 | MEDICARE | 175.00 | 80.50 | 64.40 |
| 1528546 | | BALENTINE, ORA | 05/06/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528559 | | BALENTINE, ORA | 05/06/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528547 | | BALLARD, LAURA | 05/11/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528560 | | BALLARD, LAURA | 05/11/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528840 | | BARRENTINE, MAYFORD | 07/13/04 | 2770 | MEDICARE | 399.00 | 183.54 | 146.83 |
| 1528838 | | BASWELL, ELMO | 01/24/04 | 2770 | MEDICARE | 174.00 | 0.00 | 0.00 |
| 1528839 | | BASWELL, ELMO | 01/24/04 | 2770 | MEDICARE | 80.00 | 0.00 | 0.00 |
| 1528422 | | BATES, MAE | 04/29/04 | 2770 | MEDICARE | 305.00 | 140.30 | 112.24 |
| 1528423 | | BATES, MAE | 05/03/04 | 2770 | MEDICARE | 365.00 | 167.90 | 134.32 |
| 1528424 | | BATES, MAE | 04/29/04 | 2770 | MEDICARE | 305.00 | 0.00 | 0.00 |
| 1528425 | | BATES, MAE | 05/03/04 | 2770 | MEDICARE | 365.00 | 0.00 | 0.00 |
| 1528426 | | BATES, MAE | 05/24/04 | 2770 | MEDICARE | 90.00 | 41.40 | 33.12 |
| 1528427 | | BATES, MAE | 05/24/04 | 2770 | MEDICARE | 90.00 | 0.00 | 0.00 |
| 1528797 | | BELL, BEATRICE | 07/01/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528440 | | BENNETT, MARY | 05/20/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528441 | | BENNETT, MARY | 04/14/04 | 2770 | MEDICARE | 340.00 | 156.40 | 125.12 |
| 1528541 | | BENNETT, MARY | 04/14/04 | 2770 | MEDICARE | 340.00 | 0.00 | 0.00 |
| 1528548 | | BENNETT, MARY | 05/20/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528795 | | BENNETT, MARY | 07/02/04 | 2770 | MEDICARE | 149.00 | 68.54 | 54.83 |
| 1528796 | | BENNETT, MARY | 06/29/04 | 2770 | MEDICARE | 419.00 | 192.74 | 154.19 |
| 1528436 | | BISHOP, BOBBY | 04/06/04 | 2770 | MEDICARE | 205.00 | 0.00 | 0.00 |
| 1528437 | | BISHOP, BOBBY | 05/13/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528438 | | BISHOP, BOBBY | 04/06/04 | 2770 | MEDICARE | 205.00 | 0.00 | 0.00 |
| 1528439 | | BISHOP, BOBBY | 05/11/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528577 | | BISHOP, BOBBY | 07/13/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528432 | | BIXLER, CHARLES | 06/01/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528433 | | BIXLER, CHARLES | 05/11/04 | 2770 | MEDICARE | 249.00 | 114.54 | 91.63 |
| 1528434 | | BIXLER, CHARLES | 06/01/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |

```
.08/05/04  03:10:24 am                MEDICAL TRACKING SERVICES, INC.                         PAGE   8
REPORT P18C                            CLAIMS APPRAISAL REPORT                             V 3.5NX 12/93
                                           AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                              DETAIL
BRANDYWINE HEALTH SERVICES OF MISS, INC.                                 Provider ID: 27600
ACKERMAN, MS 39735
```

|  |  |  | Date of |  |  | Gross Claim |  |  |
|---|---|---|---|---|---|---|---|---|
| Claim No | Type | Patient Name | Service | Payor ID | Payor | Amount | ENR | Advance |
| 1528435 | | BIXLER, CHARLES | 05/11/04 | 2770 | MEDICARE | 249.00 | 0.00 | 0.00 |
| 1528580 | | BIXLER, CHARLES | 06/09/04 | 2770 | MEDICARE | 30.00 | 0.00 | 0.00 |
| 1528794 | | BIXLER, CHARLES | 06/09/04 | 2770 | MEDICARE | 1963.55 | 903.23 | 722.58 |
| 1528428 | | BLACK, BILLY | 06/15/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528429 | | BLACK, BILLY | 05/13/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528430 | | BLACK, BILLY | 05/13/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528431 | | BLACK, BILLY | 06/15/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528442 | | BLACK, GERALDINE | 06/22/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528549 | | BLACK, GERALDINE | 06/22/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528793 | | BLACK, BILLY | 03/30/04 | 2770 | MEDICARE | 384.00 | 0.00 | 0.00 |
| 1528445 | | BLACKBOURN, JOE | 05/18/04 | 2770 | MEDICARE | 95.00 | 43.70 | 34.96 |
| 1528446 | | BLACKBOURN, BETTY | 05/22/04 | 2770 | MEDICARE | 126.00 | 57.96 | 46.37 |
| 1528447 | | BLACKBOURN, BETTY | 05/18/04 | 2770 | MEDICARE | 160.00 | 73.50 | 58.88 |
| 1528448 | | BLACKBOURN, BETTY | 05/18/04 | 2770 | MEDICARE | 160.00 | 0.00 | 0.00 |
| 1528449 | | BLACKBOURN, BETTY | 05/22/04 | 2770 | MEDICARE | 126.00 | 0.00 | 0.00 |
| 1528550 | | BLACKBOURN, JOE | 05/18/04 | 2770 | MEDICARE | 95.00 | 0.00 | 0.00 |
| 1528444 | | BLACKWOOD, WILLIE | 05/27/04 | 2770 | MEDICARE | 34.00 | 0.00 | 0.00 |
| 1528551 | | BLACKWOOD, WILLIE | 05/27/04 | 2770 | MEDICARE | 34.00 | 0.00 | 0.00 |
| 1528443 | | BLAINE, CHARLES | 05/05/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528508 | | BLAINE, CHARLES | 05/05/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528581 | | BLAKE, JOE | 07/02/04 | 2770 | MEDICARE | 25.00 | 0.00 | 0.00 |
| 1528738 | | BLAKE, JOE | 07/02/04 | 2770 | MEDICARE | 125.00 | 57.50 | 46.00 |
| 1528450 | | BOWIE, TERRY | 05/06/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528451 | | BOWIE, GRACE | 04/19/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528452 | | BOWIE, GRACE | 05/26/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528453 | | BOWIE, GRACE | 04/19/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528454 | | BOWIE, GRACE | 05/26/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528455 | | BOWIE, GLEN | 05/04/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528509 | | BOWIE, GLEN | 05/04/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528510 | | BOWIE, TERRY | 05/06/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528739 | | BOWIE, TERRY | 07/01/04 | 2770 | MEDICARE | 149.00 | 68.54 | 54.83 |
| 1528837 | | BOWIE, RALPH | 07/14/04 | 2770 | MEDICARE | 214.00 | 98.44 | 78.75 |
| 1528740 | | BOYD, GLAZIER | 07/02/04 | 2770 | MEDICARE | 30.00 | 0.00 | 0.00 |
| 1528741 | | BRADBERRY, FRANCIS | 06/30/04 | 2770 | MEDICARE | 110.00 | 50.60 | 40.48 |
| 1528582 | | BRELAND, NELLIE | 07/06/04 | 2770 | MEDICARE | 155.00 | 71.30 | 57.04 |
| 1528737 | | BRELAND, NELLIE | 07/06/04 | 2770 | MEDICARE | 865.50 | 398.13 | 318.50 |
| 1528462 | | BUELL, STEPHEN | 05/20/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528511 | | BUELL, STEPHEN | 05/20/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528463 | | BURGESS, SHELBY | 05/24/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528512 | | BURGESS, SHELBY | 05/24/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528533 | | BUSBY, THOMAS | 05/07/04 | 2770 | MEDICARE | 295.00 | 135.70 | 108.56 |
| 1528742 | | BUSBY, THOMAS | 05/07/04 | 2770 | MEDICARE | 6982.55 | 3211.97 | 2569.58 |
| 1528836 | | BUSBY, EXA | 07/06/04 | 2770 | MEDICARE | 948.50 | 436.31 | 349.05 |
| 1533916 | | BUSBY, THOMAS | 05/13/04 | 2770 | MEDICARE | 9986.75 | 4593.91 | 3675.13 |
| 1533917 | | BUSBY, THOMAS | 05/18/04 | 2770 | MEDICARE | 60.00 | 0.00 | 0.00 |
| 1528464 | | BUSKIRK, LOIS | 04/06/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528513 | | BUSKIRK, LOIS | 04/06/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528584 | | CAIN, DAVID | 07/01/04 | 2770 | MEDICARE | 150.00 | 69.00 | -55.20 |
| 1528736 | | CAIN, DAVID | 07/01/04 | 2770 | MEDICARE | 304.75 | 140.19 | 112.15 |

```
08/05/04  C9:10:25 am                        MEDICAL TRACKING SERVICES, INC.                              PAGE   9
REPORT P130                                   CLAIMS APPRAISAL REPORT                               V 3.5NX 12/93
                                                   AS OF 08/05/04
                            FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                      DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                              Provider ID: 27600
ACKERMAN, MS 39735
```

|                |      |                   | Date of |          |               | Gross Claim |        |         |
|----------------|------|-------------------|---------|----------|---------------|-------------|--------|---------|
| Claim No       | Type | Patient Name      | Service | Payor ID | Payor         | Amount      | ENR    | Advance |
| 1528465        |      | CARTER, DORA      | 06/01/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528466        |      | CARTER, ODESSA    | 04/22/04 | 2770    | MEDICARE      | 225.00      | 103.50 | 82.80   |
| 1528514        |      | CARTER, DORA      | 06/01/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528558        |      | CARTER, ODESSA    | 04/22/04 | 2770    | MEDICARE      | 225.00      | 0.00   | 0.00    |
| 1528565        |      | CARTER, LEONARD   | 07/03/04 | 2770    | MEDICARE      | 120.00      | 55.20  | 44.16   |
| 1528566        |      | CARTER, LEONARD   | 07/07/04 | 2770    | MEDICARE      | 120.00      | 55.20  | 44.16   |
| 1528567        |      | CARTER, LEONARD   | 07/10/04 | 2770    | MEDICARE      | 120.00      | 55.20  | 44.16   |
| 1528568        |      | CARTER, LEONARD   | 07/04/04 | 2770    | MEDICARE      | 120.00      | 55.20  | 44.16   |
| 1528733        |      | CARTER, LEONARD   | 07/10/04 | 2770    | MEDICARE      | 502.50      | 231.15 | 184.92  |
| 1528734        |      | CARTER, LEONARD   | 07/03/04 | 2770    | MEDICARE      | 659.00      | 303.14 | 242.51  |
| 1528735        |      | CARTER, LEONARD   | 07/04/04 | 2770    | MEDICARE      | 2301.30     | 1058.60| 846.88  |
| 1528835        |      | CARTER, DIMPLE    | 07/12/04 | 2770    | MEDICARE      | 474.00      | 218.04 | 174.43  |
| 1528732        |      | CHANDLER, MILDRED | 06/30/04 | 2770    | MEDICARE      | 429.00      | 197.34 | 157.87  |
| 1528467        |      | CHEATON, JULIA    | 05/13/04 | 2770    | MEDICARE      | 120.00      | 55.20  | 44.16   |
| 1528468        |      | CHEATON, VIRGINIA | 04/24/04 | 2770    | MEDICARE      | 175.00      | 80.50  | 64.40   |
| 1528469        |      | CHEATON, JULIA    | 05/13/04 | 2770    | MEDICARE      | 120.00      | 0.00   | 0.00    |
| 1528470        |      | CHEATON, VIRGINIA | 05/21/04 | 2770    | MEDICARE      | 40.00       | 0.00   | 0.00    |
| 1528471        |      | CHEATON, VIRGINIA | 04/24/04 | 2770    | MEDICARE      | 175.00      | 0.00   | 0.00    |
| 1528534        |      | CHEATON, VIRGINIA | 05/21/04 | 2770    | MEDICARE      | 40.00       | 0.00   | 0.00    |
| 1528481        |      | COBB, CAROL       | 05/25/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528482        |      | COBB, CAROL       | 05/10/04 | 2770    | MEDICARE      | 62.00       | 0.00   | 0.00    |
| 1528483        |      | COBB, CAROL       | 05/03/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528484        |      | COBB, CAROL       | 05/03/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528485        |      | COBB, CAROL       | 05/10/04 | 2770    | MEDICARE      | 62.00       | 0.00   | 0.00    |
| 1528486        |      | COBB, CAROL       | 05/25/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528589        |      | COBB, CAROL       | 06/26/04 | 2770    | MEDICARE      | 133.50      | 61.41  | 49.13   |
| 1528731        |      | COBB, CAROL       | 06/26/04 | 2770    | MEDICARE      | 223.50      | 102.81 | 82.25   |
| 1528480        |      | COLE, MCKEVIN     | 03/26/04 | 2770    | MEDICARE      | 40.00       | 0.00   | 0.00    |
| 1528472        |      | COLEMAN, HAZEL    | 05/28/04 | 2770    | MEDICARE      | 34.00       | 0.00   | 0.00    |
| 1528473        |      | COLEMAN, HAZEL    | 05/03/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528474        |      | COLEMAN, HAZEL    | 05/03/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528475        |      | COLEMAN, HAZEL    | 05/28/04 | 2770    | MEDICARE      | 34.00       | 0.00   | 0.00    |
| 1528476        |      | COLEMAN, DORA     | 05/18/04 | 2770    | MEDICARE      | 285.00      | 131.10 | 104.88  |
| 1528477        |      | COLEMAN, DORA     | 05/25/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528478        |      | COLEMAN, DORA     | 05/25/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528479        |      | COLEMAN, DORA     | 05/18/04 | 2770    | MEDICARE      | 285.00      | 0.00   | 0.00    |
| 1528561        |      | COLEMAN, VIVIAN   | 07/14/04 | 2770    | MEDICARE      | 30.00       | 0.00   | 0.00    |
| 1528728        |      | COLEMAN, LIZZIE   | 07/02/04 | 2770    | MEDICARE      | 230.00      | 105.80 | 84.64   |
| 1528729        |      | COLEMAN, LIZZIE   | 06/25/04 | 2770    | MEDICARE      | 30.00       | 0.00   | 0.00    |
| 1528730        |      | COLEMAN, LIZZIE   | 05/06/04 | 2770    | MEDICARE      | 70.00       | 32.20  | 25.76   |
| 1528834        |      | COLEMAN, VIVAN    | 07/14/04 | 2770    | MEDICARE      | 334.00      | 153.64 | 122.91  |
| 1528487        |      | COLTER, BETTIE    | 04/23/04 | 2770    | MEDICARE      | 40.00       | 0.00   | 0.00    |
| 1528490        |      | COLTER, BETTIE    | 04/23/04 | 2770    | MEDICARE      | 40.00       | 0.00   | 0.00    |
| 1528590        |      | COLTER, BETTE     | 07/07/04 | 2770    | MEDICARE      | 30.00       | 0.00   | 0.00    |
| 1528727        |      | COLTER, BETTE     | 07/07/04 | 2770    | MEDICARE      | 120.00      | 55.20  | 44.16   |
| 1528488        |      | COOPER, JOE       | 05/27/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528491        |      | COOPER, JOE       | 05/27/04 | 2770    | MEDICARE      | 50.00       | 0.00   | 0.00    |
| 1528591        |      | COOPER, MARY      | 07/03/04 | 2770    | MEDICARE      | 195.00      | 89.70  | 71.76   |
| 1528726        |      | COOPER, MARY      | 07/03/04 | 2770    | MEDICARE      | 812.75      | 373.87 | 299.10  |

```
08/05/04  08:10:26 am                      MEDICAL TRACKING SERVICES, INC.                         PAGE  10
REPORT P180                                 CLAIMS APPRAISAL REPORT                               V 3.5NX 12/93
                                                AS OF 08/05/04
                                FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                    DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                            Provider ID: 27600
ACKERMAN, MS 39735
```

| Claim No | Type Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|---|---|---|---|---|---|---|---|
| 1528489 | CORK, EDD | 05/27/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528492 | CORK, EDD | 05/27/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528493 | CORK, VIOLA | 04/25/04 | 2770 | MEDICARE | 230.00 | 0.00 | 0.00 |
| 1528494 | CORK, VIOLA | 05/10/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528497 | CORK, VIOLA | 04/25/04 | 2770 | MEDICARE | 230.00 | 0.00 | 0.00 |
| 1528498 | CORK, VIOLA | 05/10/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528592 | CORK, MATTIE | 07/05/04 | 2770 | MEDICARE | 24.00 | 0.00 | 0.00 |
| 1528719 | CORK, FREEMAN | 07/01/04 | 2770 | MEDICARE | 280.00 | 128.80 | 103.04 |
| 1528720 | CORK, MATTIE | 05/17/04 | 2770 | MEDICARE | 155.00 | 71.30 | 57.04 |
| 1528721 | CORK, MATTIE | 06/03/04 | 2770 | MEDICARE | 25.00 | 0.00 | 0.00 |
| 1528722 | CORK, MATTIE | 07/05/04 | 2770 | MEDICARE | 95.00 | 43.70 | 34.96 |
| 1528495 | COTTINGHAM, PEARLINA | 05/03/04 | 2770 | MEDICARE | 455.00 | 209.30 | 167.44 |
| 1528496 | COTTINGHAM, PEARLINA | 05/03/04 | 2770 | MEDICARE | 455.00 | 0.00 | 0.00 |
| 1528718 | COTTINGHAM, PERLINA | 06/30/04 | 2770 | MEDICARE | 215.00 | 98.90 | 79.12 |
| 1528499 | CRENSHAW, CLOIS | 05/03/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528500 | CRENSHAW, CLOIS | 05/03/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528501 | CRENSHAW, CLOIS | 05/25/04 | 2770 | MEDICARE | 75.00 | 34.50 | 27.60 |
| 1528502 | CRENSHAW, CLOIS | 05/25/04 | 2770 | MEDICARE | 320.00 | 147.20 | 117.76 |
| 1528723 | CRENSHAW, CLOIS | 06/30/04 | 2770 | MEDICARE | 230.00 | 105.80 | 84.64 |
| 1528553 | DAWKINS, VERSIE | 05/23/04 | 2770 | MEDICARE | 255.00 | 117.30 | 93.84 |
| 1528552 | DEAN, KATHRYNE | 05/10/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528593 | DEAN, MELINDA | 06/20/04 | 2770 | MEDICARE | 165.00 | 75.90 | 60.72 |
| 1528717 | DEAN, MELINDA | 06/20/04 | 2770 | MEDICARE | 2256.65 | 1038.06 | 830.45 |
| 1528503 | DEDMOND, BERNICE | 05/18/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528504 | DEES, JIMMY | 05/05/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528505 | DEES, JIMMY | 05/19/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528506 | DEES, JIMMY | 05/08/04 | 2770 | MEDICARE | 395.00 | 181.70 | 145.36 |
| 1528507 | DOCHER, MOZELL | 05/12/04 | 2770 | MEDICARE | 80.00 | 36.80 | 29.44 |
| 1528594 | DOCHER, MOZELL | 07/01/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528716 | DOCHER, MOZELL | 07/01/04 | 2770 | MEDICARE | 451.80 | 207.83 | 166.26 |
| 1528515 | DOTSON, MAE | 04/03/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528595 | DOUGLAS, KENNETH | 07/03/04 | 2770 | MEDICARE | 118.50 | 54.51 | 43.61 |
| 1528715 | DOUGLAS, KENNETH | 07/03/04 | 2770 | MEDICARE | 313.50 | 144.21 | 115.37 |
| 1528516 | DOWNING, LUCILLE | 05/24/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528517 | DUETT, TOMMY | 05/19/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528518 | DUETT, THOMAS | 04/21/04 | 2770 | MEDICARE | 270.00 | 124.20 | 99.36 |
| 1528520 | DUFF, GENEVA | 04/22/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528724 | EARBY, EVIA | 07/09/04 | 2770 | MEDICARE | 241.00 | 110.86 | 88.69 |
| 1528519 | EDWARDS, ERCEL | 04/07/04 | 2770 | MEDICARE | 290.00 | 0.00 | 0.00 |
| 1528554 | ELLISON, ZENIE | 04/22/04 | 2770 | MEDICARE | 330.00 | 151.80 | 121.44 |
| 1528714 | EVANS, KEITH | 07/07/04 | 2770 | MEDICARE | 340.00 | 156.40 | 125.12 |
| 1528521 | FAIR, FAYTONIA | 05/18/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528522 | FAIR, HATTIE | 05/31/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528523 | FAIR, HATTIE | 05/03/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528524 | FAIR, HANNAH | 06/11/04 | 2770 | MEDICARE | 390.00 | 179.40 | 143.52 |
| 1528555 | FAIR, FAYTONIA | 04/25/04 | 2770 | MEDICARE | 300.00 | 138.00 | 110.40 |
| 1528552 | FAIR, MODENA | 07/04/04 | 2770 | MEDICARE | 175.00 | 80.50 | 64.40 |
| 1528833 | FAIR, MODENA | 07/04/04 | 2770 | MEDICARE | 3360.00 | 1545.60 | 1236.48 |
| 1528713 | FLOYD, LELA | 06/30/04 | 2770 | MEDICARE | 295.00 | 135.70 | 108.56 |

```
08/05/04  08:10:27 am                    MEDICAL TRACKING SERVICES, INC.                            PAGE  11
REPORT P180                               CLAIMS APPRAISAL REPORT                                V 3.5NX 12/93
                                              AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                 DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                          Provider ID: 27600
ACKERMAN, MS 39735
```

| Claim No | Type | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|----------|------|--------------|---------|----------|-------|--------|-----|---------|
| 1528525 | | FONDREN, WAYMON | 05/12/04 | 2770 | MEDICARE | 95.00 | 43.70 | 34.96 |
| 1528526 | | FONDREN, WAYMON | 05/07/04 | 2770 | MEDICARE | 355.00 | 163.30 | 130.64 |
| 1528527 | | FOX, JUNE | 05/12/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528528 | | FOX, J.T JR | 04/21/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528529 | | FULCE, NANNIE | 05/18/04 | 2770 | MEDICARE | 215.00 | 98.90 | 79.12 |
| 1528530 | | FULGHAM, MARTHA | 05/04/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528531 | | FULGHAM, JOSEPH | 05/24/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528532 | | FULGHAM, JOSEPH | 04/29/04 | 2770 | MEDICARE | 240.00 | 110.40 | 88.32 |
| 1528533 | | FULGHAM, FLOYD | 05/31/04 | 2770 | MEDICARE | 50.00 | 0.00 | 0.00 |
| 1528556 | | FULGHAM, CORA | 04/02/04 | 2770 | MEDICARE | 315.00 | 0.00 | 0.00 |
| 1528557 | | FULGHAM, CORA | 04/07/04 | 2770 | MEDICARE | 70.00 | 0.00 | 0.00 |
| 1528563 | | FULGHAM, FLOYD | 07/12/04 | 2770 | MEDICARE | 25.00 | 0.00 | 0.00 |
| 1528598 | | FULGHAM, HELEN | 06/28/04 | 2770 | MEDICARE | 25.00 | 0.00 | 0.00 |
| 1528712 | | FULGHAM, HELEN | 06/28/04 | 2770 | MEDICARE | 100.00 | 46.00 | 36.80 |
| 1528725 | | FULGHAM, NOAH | 07/08/04 | 2770 | MEDICARE | 65.00 | 0.00 | 0.00 |
| 1528831 | | FULGHAM, MARTHA | 07/13/04 | 2770 | MEDICARE | 244.00 | 112.24 | 89.79 |
| 1528832 | | FULGHAM, FLOYD | 07/12/04 | 2770 | MEDICARE | 100.00 | 46.00 | 36.80 |
| 1528711 | | FULLER, OMA | 06/30/04 | 2770 | MEDICARE | 105.00 | 48.30 | 38.64 |
| 1528830 | | GLADNEY, MAE | 06/22/04 | 2770 | MEDICARE | 285.00 | 131.10 | 104.88 |
| 1528820 | | GUESS, MARGARET | 07/06/04 | 2770 | MEDICARE | 25.00 | 0.00 | 0.00 |
| 1528564 | | HANDER, ELMA | 06/15/04 | 2770 | MEDICARE | 165.00 | 75.90 | 60.72 |
| 1528597 | | HANDER, ELMO | 06/15/04 | 2770 | MEDICARE | 165.00 | 75.90 | 60.72 |
| 1528819 | | HANDER, ELMO | 06/16/04 | 2770 | MEDICARE | 3652.55 *467* 1680.17 *807* 1344.14 | | |
| 1528818 | | HENDERSON, JIMMIE | 07/06/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528817 | | HOFFMAN, JAMES | 03/24/04 | 2770 | MEDICARE | 579.00 | 0.00 | 0.00 |
| 1528816 | | HUNT, ORVILLE | 06/29/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528814 | | IRVING, PRENTISS | 07/07/04 | 2770 | MEDICARE | 110.00 | 50.60 | 40.48 |
| 1528815 | | IRVING, PRENTISS | 07/05/04 | 2770 | MEDICARE | 254.00 | 116.84 | 93.47 |
| 1528813 | | JAMES, IMOGENE | 06/29/04 | 2770 | MEDICARE | 65.00 | 0.00 | 0.00 |
| 1528565 | | JENKINS, JO ANN | 07/05/04 | 2770 | MEDICARE | 77.00 | 35.42 | 28.34 |
| 1528811 | | JENKINS, PHYLLIS | 07/09/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528812 | | JENKINS, PHYLLIS | 07/07/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528810 | | JONES, FARRAH | 06/21/04 | 2770 | MEDICARE | 110.00 | 50.60 | 40.48 |
| 1528598 | | KELLEY, MARION | 06/04/04 | 2770 | MEDICARE | 160.00 | 73.60 | 58.88 |
| 1528807 | | KELLEY, TOMMYE | 07/06/04 | 2770 | MEDICARE | 149.00 | 68.54 | 54.83 |
| 1528808 | | KELLEY, TOMMYE | 06/22/04 | 2770 | MEDICARE | 80.00 | 36.80 | 29.44 |
| 1528809 | | KELLEY, MARION | 06/04/04 | 2770 | MEDICARE | 6749.40 | 3104.72 | 2483.78 |
| 1533918 | | KELLEY, MARION | 06/09/04 | 2770 | MEDICARE | 16730.35 | 7695.96 | 6156.77 |
| 1528806 | | KENNEDY, ELLEN | 06/28/04 | 2770 | MEDICARE | 110.00 | 50.60 | 40.48 |
| 1528566 | | KILPATRICK, ROSA | 06/21/04 | 2770 | MEDICARE | 60.00 | 0.00 | 0.00 |
| 1528829 | | KILPATRICK, ROSA | 06/21/04 | 2770 | MEDICARE | 250.00 | 115.00 | 92.00 |
| 1528599 | | KIMBROUGH, GRACIE | 06/16/04 | 2770 | MEDICARE | 135.00 | 62.10 | 49.68 |
| 1528792 | | KIMBROUGH, GRACIE | 06/16/04 | 2770 | MEDICARE | 3457.85 | 1590.61 | 1272.49 |
| 1528790 | | KIRKWOOD, HENRY | 07/06/04 | 2770 | MEDICARE | 250.00 | 119.60 | 95.68 |
| 1528791 | | KIRKWOOD, HENRY | 07/02/04 | 2770 | MEDICARE | 220.00 | 101.20 | 80.96 |
| 1528789 | | LOLLAR, T.N. | 07/09/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528827 | | LOLLAR, T.N. | 07/13/04 | 2770 | MEDICARE | 300.00 | 138.00 | 110.40 |
| 1528828 | | LOLLAR, CHRISTINE | 07/13/04 | 2770 | MEDICARE | 95.00 | 43.70 | 34.96 |
| 1528826 | | LUCAS, LEWIS | 07/13/04 | 2770 | MEDICARE | 110.00 | 50.60 | 40.48 |

```
08/05/04  08:10:28 am                    MEDICAL TRACKING SERVICES, INC.                           PAGE  12
REPORT P180                                CLAIMS APPRAISAL REPORT                               V 3.5NX 12/93
                                               AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                  DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                         Provider ID: 27600
ACKERMAN, MS 39735
```

|          |      |                     | Date of |          |               | Gross Claim |         |         |
|----------|------|---------------------|---------|----------|---------------|-------------|---------|---------|
| Claim No | Type | Patient Name        | Service | Payor ID | Payor         | Amount      | ENR     | Advance |
| 1528567  |      | MARSHALL, PRISCILLA | 06/15/04 | 2770    | MEDICARE      | 135.00      | 62.10   | 49.68   |
| 1528825  |      | MARSHALL, PRISCILLA | 06/15/04 | 2770    | MEDICARE      | 2081.55     | 957.51  | 766.01  |
| 1528568  |      | MARTIN, CHARLES     | 07/11/04 | 2770    | MEDICARE      | 165.00      | 75.90   | 60.72   |
| 1528824  |      | MARTIN, CHARLES     | 07/11/04 | 2770    | MEDICARE      | 1318.00     | 606.28  | 485.02  |
| 1528788  |      | MCBRIDE, ROSA       | 06/25/04 | 2770    | MEDICARE      | 214.00      | 98.44   | 78.75   |
| 1528569  |      | MCCRARY, SARAH      | 07/12/04 | 2770    | MEDICARE      | 40.00       | 0.00    | 0.00    |
| 1528823  |      | MCCRARY, SARAH      | 07/12/04 | 2770    | MEDICARE      | 140.00      | 64.40   | 51.52   |
| 1528600  |      | MCDANIEL, MARGARITE | 07/10/04 | 2770    | MEDICARE      | 105.00      | 48.30   | 38.64   |
| 1528787  |      | MCDANIEL, MARGARITE | 07/10/04 | 2770    | MEDICARE      | 220.50      | 101.43  | 81.14   |
| 1528601  |      | MCGAUGH, OPAL       | 07/08/04 | 2770    | MEDICARE      | 30.00       | 0.00    | 0.00    |
| 1528786  |      | MCGAUGH, OPAL       | 07/08/04 | 2770    | MEDICARE      | 120.00      | 55.20   | 44.16   |
| 1528785  |      | MELTON, ANNIE       | 07/07/04 | 2770    | MEDICARE      | 564.00      | 259.44  | 207.55  |
| 1528570  |      | MILES, MARY         | 07/09/04 | 2770    | MEDICARE      | 165.00      | 75.90   | 60.72   |
| 1528602  |      | MILES, MARY         | 06/14/04 | 2770    | MEDICARE      | 160.00      | 73.60   | 58.88   |
| 1528603  |      | MILES, MARY         | 07/03/04 | 2770    | MEDICARE      | 26.00       | 0.00    | 0.00    |
| 1528782  |      | MILES, MARY         | 07/03/04 | 2770    | MEDICARE      | 2898.75     | 1333.43 | 1066.74 |
| 1528783  |      | MILES, MARY         | 06/14/04 | 2770    | MEDICARE      | 5115.85     | 2353.29 | 1882.63 |
| 1528784  |      | MILES, MARY         | 07/09/04 | 2770    | MEDICARE      | 1670.75     | 768.55  | 614.84  |
| 1528571  |      | MILLER, JAMES       | 07/11/04 | 2770    | MEDICARE      | 180.00      | 82.80   | 66.24   |
| 1528822  |      | MILLER, JAMES       | 07/11/04 | 2770    | MEDICARE      | 2055.50     | 945.53  | 756.42  |
| 1528572  |      | MOORE, AURICE       | 06/22/04 | 2770    | MEDICARE      | 140.00      | 64.40   | 51.52   |
| 1528821  |      | MOORE, AURICE       | 06/22/04 | 2770    | MEDICARE      | 386.00      | 177.56  | 142.05  |
| 1528781  |      | MORGAN, MARTHA      | 07/07/04 | 2770    | MEDICARE      | 419.00      | 192.74  | 154.19  |
| 1528847  |      | NELLONS, JENNIE     | 07/12/04 | 2770    | MEDICARE      | 65.00       | 0.00    | 0.00    |
| 1528604  |      | NOWELL, AARON       | 07/01/04 | 2770    | MEDICARE      | 133.50      | 61.41   | 49.13   |
| 1528778  |      | NOWELL, AARON       | 07/07/04 | 2770    | MEDICARE      | 110.00      | 50.60   | 40.48   |
| 1528779  |      | NOWELL, AARON       | 07/02/04 | 2770    | MEDICARE      | 223.50      | 102.81  | 82.25   |
| 1528780  |      | NOWELL, AARON       | 06/24/04 | 2770    | MEDICARE      | 354.00      | 162.84  | 130.27  |
| 1528846  |      | NUNN, JUSTINE       | 07/13/04 | 2770    | MEDICARE      | 65.00       | 0.00    | 0.00    |
| 1528573  |      | PATTERSON, OMA      | 07/04/04 | 2770    | MEDICARE      | 120.00      | 55.20   | 44.16   |
| 1528605  |      | PATTERSON, OMA      | 06/21/04 | 2770    | MEDICARE      | 52.00       | 0.00    | 0.00    |
| 1528777  |      | PATTERSON, OMA      | 06/21/04 | 2770    | MEDICARE      | 205.00      | 94.30   | 75.44   |
| 1528844  |      | PATTERSON, OMA      | 07/13/04 | 2770    | MEDICARE      | 110.00      | 50.60   | 40.48   |
| 1528845  |      | PATTERSON, OMA      | 07/04/04 | 2770    | MEDICARE      | 1454.20     | 668.93  | 535.14  |
| 1528606  |      | PERRY, IMOGENE      | 04/28/04 | 2770    | MEDICARE      | 50.00       | 0.00    | 0.00    |
| 1528775  |      | PERRY, IMOGENE      | 04/28/04 | 2770    | MEDICARE      | 7703.38     | 3543.55 | 2834.84 |
| 1528776  |      | PERRY, IMOGENE      | 06/29/04 | 2770    | MEDICARE      | 110.00      | 50.60   | 40.48   |
| 1528607  |      | PORTER, NOVERTIS    | 05/19/04 | 2770    | MEDICARE      | 195.00      | 89.70   | 71.76   |
| 1528774  |      | PORTER, NOVERTIS    | 05/19/04 | 2770    | MEDICARE      | 5386.60     | 2477.84 | 1982.27 |
| 1528608  |      | POTTS, CHARLIE      | 06/18/04 | 2770    | MEDICARE      | 30.00       | 0.00    | 0.00    |
| 1528773  |      | POTTS, CHARLIE      | 06/18/04 | 2770    | MEDICARE      | 315.00      | 144.90  | 115.92  |
| 1528609  |      | POWELL, TED         | 06/19/04 | 2770    | MEDICARE      | 435.00      | 200.10  | 160.08  |
| 1528772  |      | POWELL, TED         | 06/19/04 | 2770    | MEDICARE      | 9535.90     | 4386.51 | 3509.21 |
| 1528610  |      | POWER, WILLIAM      | 06/25/04 | 2770    | MEDICARE      | 30.00       | 0.00    | 0.00    |
| 1528771  |      | POWER, WILLIAM      | 06/25/04 | 2770    | MEDICARE      | 120.00      | 55.20   | 44.16   |
| 1528769  |      | RAY, WILLIAM        | 06/10/04 | 2770    | MEDICARE      | 404.00      | 185.84  | 148.67  |
| 1528770  |      | RAY, VONNIE         | 07/06/04 | 2770    | MEDICARE      | 110.00      | 50.60   | 40.48   |
| 1528574  |      | RHODES, MAE         | 06/21/04 | 2770    | MEDICARE      | 60.00       | 0.00    | -0.00   |
| 1528768  |      | ROBINSON, NEVA      | 07/08/04 | 2770    | MEDICARE      | 484.00      | 222.64  | 178.11  |

```
08/05/04  08:10:28 am                     MEDICAL TRACKING SERVICES, INC.                           PAGE  13
REPORT P180                                CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                               AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                  DETAIL
BRANDYWINE HEALTH SERVICES OF MISS, INC.                                         Provider ID: 27600
ACKERMAN, MS 39735
```

| Claim No | Type | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|---|---|---|---|---|---|---|---|---|
| 1528767 | | SANGSTER, ROSIE | 07/09/04 | 2770 | MEDICARE | 539.00 | 247.94 | 198.35 |
| 1528611 | | SMITH, LOUISE | 06/23/04 | 2770 | MEDICARE | 145.00 | 66.70 | 53.36 |
| 1528765 | | SMITH, LOUISE | 06/23/04 | 2770 | MEDICARE | 2478.70 | 1140.20 | 912.16 |
| 1528766 | | SMITH, CHRISTINA | 04/14/04 | 2770 | MEDICARE | 255.00 | 117.30 | 93.84 |
| 1528843 | | SMITH, LOUISE | 03/25/04 | 2770 | MEDICARE | 65.00 | 0.00 | 0.00 |
| 1528764 | | SUBER, LILLIAN | 06/24/04 | 2770 | MEDICARE | 259.00 | 119.14 | 95.31 |
| 1528575 | | SYKES, GEORGIA | 04/07/04 | 2770 | MEDICARE | 60.00 | 0.00 | 0.00 |
| 1528612 | | TAYLOR, INEZ | 06/30/04 | 2770 | MEDICARE | 77.00 | 35.42 | 28.34 |
| 1528763 | | TAYLOR, INEZ | 06/30/04 | 2770 | MEDICARE | 300.00 | 138.00 | 110.40 |
| 1528762 | | TOWNSEND, JERRY | 06/28/04 | 2770 | MEDICARE | 189.00 | 86.94 | 69.55 |
| 1533919 | | TURNIPSEED, ISODORA | 04/21/04 | 2770 | MEDICARE | 27737.75 | 12759.37 | 10207.50 |
| 1528613 | | UPCHURCH, TERRY | 07/01/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528614 | | UPCHURCH, TERRY | 07/08/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528615 | | UPCHURCH SR, TERRY | 06/25/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528616 | | UPCHURCH SR, TERRY | 07/03/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528617 | | UPCHURCH SR, TERRY | 07/06/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528757 | | UPCHURCH SR, TERRY | 07/08/04 | 2770 | MEDICARE | 271.00 | 124.66 | 99.73 |
| 1528758 | | UPCHURCH SR, TERRY | 07/06/04 | 2770 | MEDICARE | 235.00 | 108.10 | 86.48 |
| 1528759 | | UPCHURCH SR, TERRY | 07/03/04 | 2770 | MEDICARE | 406.00 | 186.76 | 149.41 |
| 1528760 | | UPCHURCH SR, TERRY | 07/01/04 | 2770 | MEDICARE | 233.00 | 107.18 | 85.74 |
| 1528761 | | UPCHURCH SR, TERRY | 06/25/04 | 2770 | MEDICARE | 233.00 | 107.18 | 85.74 |
| 1528618 | | VAUGHN, JAMES | 06/13/04 | 2770 | MEDICARE | 195.00 | 89.70 | 71.76 |
| 1528755 | | VAUGHN, JAMES | 07/02/04 | 2770 | MEDICARE | 309.00 | 142.14 | 113.71 |
| 1528756 | | VAUGHN, JAMES | 06/13/04 | 2770 | MEDICARE | 6866.55 | 3158.61 | 2526.89 |
| 1528754 | | WATKINS, WALTER | 06/14/04 | 2770 | MEDICARE | 480.00 | 220.80 | 176.64 |
| 1528619 | | WEAVER, VERA | 07/08/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528753 | | WEAVER, VERA | 07/08/04 | 2770 | MEDICARE | 707.00 | 325.22 | 260.18 |
| 1528752 | | WEED, BOBBIE | 07/06/04 | 2770 | MEDICARE | 25.00 | 0.00 | 0.00 |
| 1528620 | | WEEKS, MYRTIE | 07/09/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528621 | | WEEKS, MYRTIE | 07/04/04 | 2770 | MEDICARE | 120.00 | 55.20 | 44.16 |
| 1528750 | | WEEKS, MYRTIEA | 07/04/04 | 2770 | MEDICARE | 795.50 | 365.93 | 292.74 |
| 1528751 | | WEEKS, MYRTIEA | 07/09/04 | 2770 | MEDICARE | 281.00 | 129.26 | 103.41 |
| 1528749 | | WELCH, BOBBY | 06/25/04 | 2770 | MEDICARE | 379.00 | 174.34 | 139.47 |
| 1528748 | | WOMACK, MAVIS | 06/28/04 | 2770 | MEDICARE | 40.00 | 0.00 | 0.00 |
| 1528576 | | WOOD, EDITH | 06/21/04 | 2770 | MEDICARE | 160.00 | 73.60 | 58.88 |
| 1528746 | | WOOD, RONNY | 07/01/04 | 2770 | MEDICARE | 110.00 | 50.60 | 40.48 |
| 1528747 | | WOOD, EDITH | 07/07/04 | 2770 | MEDICARE | 210.00 | 96.60 | 77.28 |
| 1528842 | | WOOD, RONNY | 07/13/04 | 2770 | MEDICARE | 110.00 | 50.60 | 40.48 |
| 1528745 | | WOODARD, J.T. | 07/10/04 | 2770 | MEDICARE | 214.00 | 98.44 | 78.75 |
| 1528622 | | WORRELL, VERNA | 07/01/04 | 2770 | MEDICARE | 25.00 | 0.00 | 0.00 |
| 1528743 | | WORRELL, VERNA | 07/07/04 | 2770 | MEDICARE | 75.00 | 34.50 | 27.60 |
| 1528744 | | WORRELL, VERNA | 07/01/04 | 2770 | MEDICARE | 100.00 | 46.00 | 36.80 |
| 1529048 | | MADDOX, GARNER | 04/28/04 | 3380 | PHYSICIAN MUTUAL | 190.00 | 87.40 | 69.92 |
| 1529047 | | MCCALISTER, GORDON | 06/30/04 | 3520 | PRIVATE HEALTH CARE SYSTEM | 439.00 | 201.94 | 161.55 |
| 1529038 | | ADAMS, ALLEN | 06/19/04 | 3930 | TRICARE | 819.00 | 376.74 | 301.39 |
| 1529111 | | ANDERSON, GLENDA | 04/11/04 | 3930 | TRICARE | 250.00 | 115.00 | 92.00 |
| 1529112 | | ANDERSON, GLENDA | 04/13/04 | 3930 | TRICARE | 9.00 | 0.00 | 0.00 |
| 1529115 | | ANDERSON, GLENDA | 04/13/04 | 3930 | TRICARE | 9.00 | 0.00 | 0.00 |
| 1529116 | | ANDERSON, GLENDA | 04/11/04 | 3930 | TRICARE | 250.00 | 0.00 | 0.00 |

```
08/05/04  08:10:29 am                    MEDICAL TRACKING SERVICES, INC.                          PAGE  14
REPORT P180                              CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                             AS OF 08/05/04
                         FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                 DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                          Provider ID: 27600
ACKERMAN, MS 39735
```

|                  |      |                      | Date of |          |                               | Gross Claim |         |         |
|------------------|------|----------------------|---------|----------|-------------------------------|-------------|---------|---------|
| Claim No         | Type | Patient Name         | Service | Payor ID | Payor                         | Amount      | ENR     | Advance |
| 1529039          |      | ASHFORD, DAISY       | 05/19/04| 3930     | TRICARE                       | 605.00      | 278.30  | 222.64  |
| 1529031          |      | DOBBS, AMANDA        | 06/13/04| 3930     | TRICARE                       | 501.00      | 230.46  | 184.37  |
| 1529113          |      | DOBBS, AMANDA        | 06/24/04| 3930     | TRICARE                       | 62.00       | 0.00    | 0.00    |
| 1529114          |      | DOBBS, AMANDA        | 06/11/04| 3930     | TRICARE                       | 50.00       | 0.00    | 0.00    |
| 1529041          |      | HUNT, XAVIER         | 06/01/04| 3930     | TRICARE                       | 443.00      | 203.78  | 163.02  |
| 1529042          |      | HUNT, XAVIER         | 07/06/04| 3930     | TRICARE                       | 868.00      | 399.28  | 319.42  |
| 1529040          |      | WILROY, JACOB        | 04/06/04| 3930     | TRICARE                       | 340.00      | 0.00    | 0.00    |
| 1529035          |      | JOHNS, BONNIE        | 06/28/04| 3990     | UNITED AMERICAN INSURANCE CO. | 1289.60     | 593.22  | 474.58  |
| 1529058          |      | HENDERSON, JAN       | 06/03/04| 4320     | GOLDEN RULE                   | 150.00      | 69.00   | 55.20   |
| 1529134          |      | BROWN, CARLOS        | 05/13/04| 5210     | BLUE CROSS OF CALIFORNIA      | 120.00      | 55.20   | 44.16   |
| 1529361          |      | BROWN, CARLOS        | 05/13/04| 5210     | BLUE CROSS OF CALIFORNIA      | 318.00      | 146.28  | 117.02  |
| 1529362          |      | HARDISTY, DEBRA      | 04/23/04| 5210     | BLUE CROSS OF CALIFORNIA      | 659.00      | 303.14  | 242.51  |
| 1529135          |      | PARISH, JIMMIE       | 06/12/04| 5210     | BLUE CROSS OF CALIFORNIA      | 30.00       | 0.00    | 0.00    |
| 1529360          |      | PARISH, JIMMIE       | 06/12/04| 5210     | BLUE CROSS OF CALIFORNIA      | 895.00      | 411.70  | 329.36  |
| 1529039          |      | MCCORKLE, JOE        | 06/15/04| 8840     | GEHA                          | 1074.00     | 494.04  | 395.23  |
| 1529090          |      | ANDERSON, DOROTHY    | 06/14/04| 16910    | HEALTH COMP INS               | 65.00       | 0.00    | 0.00    |
| 1529091          |      | ANDERSON, DOROTHY    | 06/28/04| 16910    | HEALTH COMP INS               | 40.00       | 0.00    | 0.00    |
| 1529092          |      | ANDERSON, DOROTHY    | 06/28/04| 16910    | HEALTH COMP INS               | 40.00       | 0.00    | 0.00    |
| 1529093          |      | ANDERSON, DOROTHY    | 06/14/04| 16910    | HEALTH COMP INS               | 65.00       | 0.00    | 0.00    |
| 1529050          |      | WELCH, SHELLY        | 04/09/04| 16910    | HEALTH COMP INS               | 120.00      | 55.20   | 44.16   |
| 1529051          |      | WELCH, SHELLY        | 07/09/04| 16910    | HEALTH COMP INS               | 480.00      | 220.80  | 176.64  |
| 1529052          |      | WELCH, SHELLY        | 07/08/04| 16910    | HEALTH COMP INS               | 74.00       | 34.04   | 27.23   |
| 1529365          |      | BISHOP, SARA         | 06/11/04| 40360    | BENEFIT PLANNER INC.          | 430.00      | 197.80  | 158.24  |
| 1529364          |      | NOWELL, AMY          | 03/28/04| 40360    | BENEFIT PLANNER INC.          | 1028.50     | 0.00    | 0.00    |
| 1529071          |      | PORTER, ALVIN        | 05/04/04| 41630    | AMERICAN FIDELITY             | 480.00      | 220.80  | 176.64  |
| 1529141          |      | PEARSON, RACHEL      | 04/07/04| 46360    | BLUE CROSS OF KANSAS          | 190.00      | 0.00    | 0.00    |
| 1529341          |      | PEARSON, RACHEL      | 04/08/04| 46360    | BLUE CROSS OF KANSAS          | 2971.90     | 1367.07 | 1093.66 |
| 1529076          |      | TOOMBS, LAIKEN       | 06/03/04| 48450    | WAUSAU BENEFITS               | 265.00      | 121.90  | 97.52   |
| 1529102          |      | BLACK, GERALDINE     | 06/08/04| 48850    | UNITED HEALTHCARE             | 40.00       | 0.00    | 0.00    |
| 1529103          |      | BLACK, GERALDINE     | 06/08/04| 48850    | UNITED HEALTHCARE             | 40.00       | 0.00    | 0.00    |
| 1529104          |      | GANDY, CEDRIC        | 05/24/04| 48850    | UNITED HEALTHCARE             | 85.00       | 39.10   | 31.28   |
| 1529032          |      | NEIGHBORS, KATHALEENE| 06/29/04| 48850    | UNITED HEALTHCARE             | 427.50      | 196.65  | 157.32  |
| 1529034          |      | ROBERSON, KENNETH    | 07/07/04| 48850    | UNITED HEALTHCARE             | 328.50      | 151.11  | 120.89  |
| 1529033          |      | STEPHENSON, HUGH     | 04/26/04| 48850    | UNITED HEALTHCARE             | 190.00      | 87.40   | 69.92   |
| 1529043          |      | HEMPHILL, MINNIE     | 07/06/04| 54390    | TOTAL BENEFIT SERVICES        | 280.00      | 128.80  | 103.04  |
| 1529044          |      | HEMPHILL, MINNIE     | 07/03/04| 54390    | TOTAL BENEFIT SERVICES        | 418.50      | 192.51  | 154.01  |
| 1529117          |      | HEMPHILL, MINNIE     | 07/03/04| 54390    | TOTAL BENEFIT SERVICES        | 118.50      | 54.51   | 43.61   |
| 1529037          |      | MCKINNEY, JARMEN     | 06/05/04| 55410    | TRUSTMARK INSURANCE           | 379.30      | 174.48  | 139.58  |
| 1529057          |      | EARVIN, KIMBERLY     | 05/04/04| 62720    | GREAT WEST HEALTHCARE         | 349.00      | 160.54  | 128.43  |
| 1529030          |      | CHAMBERS, MARY       | 06/15/04| 63800    | NPPN                          | 257.00      | 118.22  | 94.58   |
| 1529105          |      | CHAMBERS, MARY       | 06/14/04| 63800    | NPPN                          | 50.00       | 0.00    | 0.00    |
| 1529106          |      | CHAMBERS, MARY       | 07/07/04| 63800    | NPPN                          | 50.00       | 0.00    | 0.00    |
| 1529107          |      | CHAMBERS, MARY       | 06/14/04| 63800    | NPPN                          | 50.00       | 0.00    | 0.00    |
| 1529108          |      | CHAMBERS, MARY       | 07/07/04| 63800    | NPPN                          | 50.00       | 0.00    | 0.00    |
| 1529067          |      | THERESE, ALIES       | 06/01/04| 68540    | ANTHEM BLUE CROSS             | 284.00      | 130.64  | 104.51  |
| 1529068          |      | CAIN, RICHARD        | 07/05/04| 70290    | AMERICAN LIFECARE             | 373.00      | 171.58  | 137.26  |
| 1529069          |      | SCOGGINS, CHARLES    | 06/01/04| 70290    | AMERICAN LIFECARE             | 214.00      | 98.44   | 78.75   |
| 1529070          |      | SCOGGINS, CHARLES    | 04/14/04| 70290    | AMERICAN LIFECARE             | 105.00      | 48.30   | 38.64   |
| 1529064          |      | WALL, SUSAN          | 05/15/04| 72800    | CONNECTICUT GENERAL LIFE      | 493.50      | 227.01  | 181.61  |

```
08/05/04  08:10:30 am                    MEDICAL TRACKING SERVICES, INC.                          PAGE  15
REPORT P180                                CLAIMS APPRAISAL REPORT                                V 3.5NX 12/93
                                               AS OF 08/05/04
                               FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                   DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                        Provider ID: 27600
ACKERMAN, MS 39735

                                 Date of                            Gross Claim
Claim No    Type Patient Name    Service  Payor ID    Payor          Amount      ENR        Advance
```

| Claim No | Type | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|---|---|---|---|---|---|---|---|---|
| 1533891 | | ATTERBERRY, WHITNEY | 07/01/04 | 79990 | MEDICAID-SNF | 2067.30 | 1757.21 | 1405.77 |
| 1533893 | | BALLARD, MARY | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533894 | | BRELAND, NELLIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533895 | | BROOKS, BETTY | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533896 | | BROWN, SWANCY | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533897 | | CARTER, LILLIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533898 | | COLEMAN, LIZZIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533899 | | CORK, MATTIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533900 | | DEAN, HESTER | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533901 | | DUBOSE, MARY | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533902 | | DURHAM, BEULAH | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533892 | | EARVING, MALTY | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533904 | | EDWARDS, ERCELL | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533905 | | EDWARDS, WILLIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533906 | | EMERSON, TERESA | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533889 | | EVANS, KEITH | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533907 | | EVERETT, MAGGIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533908 | | FULGHAM, CORA | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533909 | | FULGHAM, LAWRENCE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533910 | | FULGHAM, NOAH | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533911 | | FULLER, OMA | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533912 | | GUESS, MARGARET | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 *957* | 3631.56 *807* | 2905.25 |
| 1533913 | | GUINN, RUBY | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533914 | | JUNKIN, NANCY | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533903 | | KILPATRICK, ROSA | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533879 | | LIVINGSTON, BURA | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533869 | | LUCAS, LEWIS | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533870 | | MARTIN, DELOIS | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533871 | | MARTIN, JUDY | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533872 | | MILLER, ANJANETTE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533873 | | NOWELL, AARON | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533890 | | PATTERSON, OMA | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533874 | | POPE, JACKIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533875 | | RAY, MATTIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533876 | | RAY, VONNIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533877 | | RAY, HOWARD | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533878 | | SHELTON, MAGGIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533888 | | SMITH, LOUISE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533880 | | STARNES, BARBARA | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533881 | | STEVENSON, LEON | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533882 | | TAYLOR, WHITNEY | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533883 | | VAUGHN, CLIFFORD | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533884 | | VAUGHN, JAMES | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533885 | | WEED, BOBBIE | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533886 | | WOOD, EDITH | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533887 | | WOODWARD, ROBERT | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1533888 | | WORRELL, VERNA | 07/01/04 | 79990 | MEDICAID-SNF | 4272.42 | 3631.56 | 2905.25 |
| 1529131 | | COLLINS, SUSAN | 07/20/04 | 81470 | GREAT WEST CARE HEALTH PLAN | 90.00 | 41.40 | 33.12 |
| 1529363 | | BARNWELL, CASSANDRA | 06/14/04 | 83820 | BENESCRIPT | 569.50 | 261.97 | 209.58 |

```
08/05/04  03:10:31 am                    MEDICAL TRACKING SERVICES, INC.                              PAGE 16
REPORT P180                               CLAIMS APPRAISAL REPORT                                   V 3.5NX 12/93
                                              AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                 DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                              Provider ID: 27600
ACKERMAN, MS 39735
```

|  |  | Date of |  |  | Gross Claim |  |  |
|---|---|---|---|---|---|---|---|
| Claim No | Type | Patient Name | Service | Payor ID | Payor | Amount | ENR | Advance |

| Claim No | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|---|---|---|---|---|---|---|---|
| 1529063 | MURPHY, SYLVIA | 07/05/04 | 84600 | COLONIAL | 652.15 | 299.99 | 239.99 |
| 1529055 | ADAMS, DONNA | 05/26/04 | 85600 | HARRINGTON BENEFIT SERVICE | 421.50 | 193.89 | 155.11 |
| 1529096 | CALDERON, PENELOPHE | 06/10/04 | 85600 | HARRINGTON BENEFIT SERVICE | 40.00 | 0.00 | 0.00 |
| 1529093 | CALDERON, PENELOPHE | 06/10/04 | 85600 | HARRINGTON BENEFIT SERVICE | 40.00 | 0.00 | 0.00 |
| 1529094 | COMPTON, ADRIAN | 04/29/04 | 85600 | HARRINGTON BENEFIT SERVICE | 85.00 | 39.10 | 31.28 |
| 1529095 | COMPTON, ADRIAN | 05/04/04 | 85600 | HARRINGTON BENEFIT SERVICE | 50.00 | 0.00 | 0.00 |
| 1529099 | COMPTON, ADRIAN | 04/29/04 | 85600 | HARRINGTON BENEFIT SERVICE | 85.00 | 0.00 | 0.00 |
| 1529100 | COMPTON, ADRIAN | 05/04/04 | 85600 | HARRINGTON BENEFIT SERVICE | 50.00 | 0.00 | 0.00 |
| 1529097 | FLEMING, MARC | 07/19/04 | 85600 | HARRINGTON BENEFIT SERVICE | 50.00 | 0.00 | 0.00 |
| 1529101 | LANDON, NATHAN | 07/20/04 | 85600 | HARRINGTON BENEFIT SERVICE | 50.00 | 0.00 | 0.00 |
| 1529054 | WILLARD, SHANTILLA | 06/14/04 | 85600 | HARRINGTON BENEFIT SERVICE | 309.00 | 142.14 | 113.71 |
| 1529075 | MCCULLOCH, LINDA | 07/01/04 | 88110 | ACCLAIN | 192.70 | 88.64 | 70.91 |
| 1529066 | CHAMBERS, ERIC | 05/24/04 | 88120 | LIFE OF AMERICA | 214.00 | 98.44 | 78.75 |
| 1529223 | COLLINS, SUSAN | 06/24/04 | 88130 | MISSISSIPPI HEATLH PARTNE | 441.50 | 203.09 | 162.47 |
| 1529314 | ANDERSON, C.B | 06/01/04 | 88150 | BLUE CROSS 230 | 201.00 | 92.46 | 73.97 |
| 1529163 | ARMSTRONG, CASEY | 04/21/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529315 | ARMSTRONG, CASEY | 04/25/04 | 88150 | BLUE CROSS 230 | 1296.55 | 596.41 | 477.13 |
| 1529164 | ARTERBERRY, MELVIN | 04/11/04 | 88150 | BLUE CROSS 230 | 170.00 | 78.20 | 62.56 |
| 1529316 | ARTERBERRY, MELVIN | 04/11/04 | 88150 | BLUE CROSS 230 | 400.00 | 184.00 | 147.20 |
| 1529165 | BARKSDALE, ROMA | 04/11/04 | 88150 | BLUE CROSS 230 | 105.00 | 48.30 | 38.64 |
| 1529216 | BARKSDALE, ERIC | 06/23/04 | 88150 | BLUE CROSS 230 | 50.00 | 0.00 | 0.00 |
| 1529218 | BARKSDALE, ERIC | 06/23/04 | 88150 | BLUE CROSS 230 | 50.00 | 0.00 | 0.00 |
| 1529317 | BARKSDALE, ROMA | 03/29/04 | 88150 | BLUE CROSS 230 | 391.00 | 0.00 | 0.00 |
| 1529318 | BARKSDALE, ROMA | 04/11/04 | 88150 | BLUE CROSS 230 | 205.00 | 94.30 | 75.44 |
| 1529166 | BAXTER, HEATHER | 04/25/04 | 88150 | BLUE CROSS 230 | 105.00 | 48.30 | 38.64 |
| 1529319 | BAXTER, HEATHER | 04/25/04 | 88150 | BLUE CROSS 230 | 164.25 | 75.56 | 60.45 |
| 1529167 | BLAKE, ANITA | 07/04/04 | 88150 | BLUE CROSS 230 | 160.00 | 73.60 | 58.88 |
| 1529320 | BLAKE, ANITA | 07/04/04 | 88150 | BLUE CROSS 230 | 5687.85 | 2616.41 | 2093.13 |
| 1529246 | BOWIE, ROBERT | 05/25/04 | 88150 | BLUE CROSS 230 | 254.00 | 116.84 | 93.47 |
| 1529168 | BOYD, MYRA | 04/11/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529244 | BOYD, MYRA | 04/16/04 | 88150 | BLUE CROSS 230 | 1112.00 | 511.52 | 409.22 |
| 1529245 | BOYD, MYRA | 04/11/04 | 88150 | BLUE CROSS 230 | 225.00 | 103.50 | 82.80 |
| 1529169 | BRADLEY, DOMINIQUE | 04/28/04 | 88150 | BLUE CROSS 230 | 25.00 | 0.00 | 0.00 |
| 1529243 | BRADLEY, DOMINIQUE | 04/28/04 | 88150 | BLUE CROSS 230 | 95.00 | 43.70 | 34.96 |
| 1529249 | BROCK, RICKY | 05/06/04 | 88150 | BLUE CROSS 230 | 180.00 | 82.80 | 66.24 |
| 1529248 | BROOKS, LINDA | 05/06/04 | 88150 | BLUE CROSS 230 | 215.00 | 98.90 | 79.12 |
| 1529253 | BROWN, JAMES | 06/19/04 | 88150 | BLUE CROSS 230 | 5599.25 | 2575.66 | 2060.53 |
| 1529173 | BUSBY, TONY | 04/28/04 | 88150 | BLUE CROSS 230 | 30.00 | 0.00 | 0.00 |
| 1529174 | BUSBY, JANET | 04/01/04 | 88150 | BLUE CROSS 230 | 120.00 | 0.00 | 0.00 |
| 1529240 | BUSBY, TONY | 04/29/04 | 88150 | BLUE CROSS 230 | 2756.65 | 1268.06 | 1014.45 |
| 1529241 | BUSBY, TONY | 05/03/04 | 88150 | BLUE CROSS 230 | 373.65 | 171.88 | 137.50 |
| 1529242 | BUSBY, TONY | 04/28/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529247 | BUSBY, JANET | 04/01/04 | 88150 | BLUE CROSS 230 | 375.00 | 0.00 | 0.00 |
| 1529172 | CARLISLE, VIRGINIA | 04/28/04 | 88150 | BLUE CROSS 230 | 60.00 | 0.00 | 0.00 |
| 1529215 | CARLISLE, VIRGINIA | 06/11/04 | 88150 | BLUE CROSS 230 | 40.00 | 0.00 | 0.00 |
| 1529217 | CARLISLE, VIRGINIA | 06/11/04 | 88150 | BLUE CROSS 230 | 40.00 | 0.00 | 0.00 |
| 1529239 | CARLISLE, VIRGINIA | 04/28/04 | 88150 | BLUE CROSS 230 | 230.00 | 105.80 | 84.64 |
| 1529162 | CARTER, JOEL | 06/12/03 | 88150 | BLUE CROSS 230 | 120.00 | 0.00 | 0.00 |
| 1529294 | CARTER, LOGAN | 04/03/04 | 88150 | BLUE CROSS 230 | 272.00 | 0.00 | 0.00 |

```
08/05/04  08:10:32 am                      MEDICAL TRACKING SERVICES, INC.                              PAGE  17
REPORT P180                                  CLAIMS APPRAISAL REPORT                                   V 3.5NX 12/93
                                                  AS OF 08/05/04
                             FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                     DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                          Provider ID: 27600
ACKERMAN, MS 39735

                                  Date of                              Gross Claim
Claim No    Type Patient Name     Service  Payor ID   Payor             Amount         ENR        Advance
----------  ---- --------------   -------- --------   ------------    ------------  -----------  -----------
```

| Claim No | Type | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|---|---|---|---|---|---|---|---|---|
| 1529171 | | CHANDLER, ERIN | 04/19/04 | 88150 | BLUE CROSS 230 | 25.00 | 0.00 | 0.00 |
| 1529238 | | CHANDLER, ERIN | 04/19/04 | 88150 | BLUE CROSS 230 | 100.00 | 46.00 | 36.80 |
| 1529206 | | COLEMAN, TYSON | 06/14/04 | 88150 | BLUE CROSS 230 | 65.00 | 0.00 | 0.00 |
| 1529214 | | COLEMAN, TYSON | 06/14/04 | 88150 | BLUE CROSS 230 | 65.00 | 0.00 | 0.00 |
| 1529213 | | CORK, WILLIE | 06/21/04 | 88150 | BLUE CROSS 230 | 65.00 | 0.00 | 0.00 |
| 1529219 | | CORK, WILLIE | 06/21/04 | 88150 | BLUE CROSS 230 | 65.00 | 0.00 | 0.00 |
| 1529237 | | CORK, WILLIE | 06/21/04 | 88150 | BLUE CROSS 230 | 110.00 | 50.60 | 40.48 |
| 1529177 | | DANTZLER, TASHELIA | 04/20/04 | 88150 | BLUE CROSS 230 | 150.00 | 69.00 | 55.20 |
| 1529236 | | DATZLER, TASHELIA | 04/20/04 | 88150 | BLUE CROSS 230 | 469.00 | 215.74 | 172.59 |
| 1529176 | | DOTSON, SANDRA | 04/17/04 | 88150 | BLUE CROSS 230 | 105.00 | 48.30 | 38.64 |
| 1529235 | | DOTSON, SANDRA | 04/17/04 | 88150 | BLUE CROSS 230 | 250.00 | 115.00 | 92.00 |
| 1529175 | | DUCKWORTH, CATHY | 05/13/04 | 88150 | BLUE CROSS 230 | 80.00 | 36.80 | 29.44 |
| 1529234 | | DUCKWORTH, CATHY | 05/13/04 | 88150 | BLUE CROSS 230 | 295.00 | 135.70 | 108.56 |
| 1529180 | | ESTES, PRINCESS | 05/23/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529233 | | ESTES, PRINCESS | 05/23/04 | 88150 | BLUE CROSS 230 | 165.00 | 75.90 | 60.72 |
| 1529179 | | EVANS, VERONICA | 06/18/04 | 88150 | BLUE CROSS 230 | 105.00 | 48.30 | 38.64 |
| 1529232 | | EVANS, VERONICA | 06/18/04 | 88150 | BLUE CROSS 230 | 121.00 | 55.66 | 44.53 |
| 1529173 | | FAIR, COLDONIA | 06/07/04 | 88150 | BLUE CROSS 230 | 165.00 | 75.90 | 60.72 |
| 1529230 | | FAIR, COLDONIA | 07/01/04 | 88150 | BLUE CROSS 230 | 284.00 | 130.64 | 104.51 |
| 1529231 | | FAIR, COLDONIA | 06/07/04 | 88150 | BLUE CROSS 230 | 695.00 | 319.70 | 255.76 |
| 1529182 | | FANCHER, DAVID | 04/19/04 | 88150 | BLUE CROSS 230 | 30.00 | 0.00 | 0.00 |
| 1529183 | | FANCHER, DAVID | 04/12/04 | 88150 | BLUE CROSS 230 | 30.00 | 0.00 | 0.00 |
| 1529228 | | FANCHER, DAVID | 04/19/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529229 | | FANCHER, DAVID | 04/12/04 | 88150 | BLUE CROSS 230 | 185.00 | 85.10 | 68.08 |
| 1529181 | | FORRESTER, CLAYTON | 04/26/04 | 88150 | BLUE CROSS 230 | 27.00 | 0.00 | 0.00 |
| 1529212 | | FORRESTER, CLAYTON | 06/21/04 | 88150 | BLUE CROSS 230 | 40.00 | 0.00 | 0.00 |
| 1529227 | | FORRESTER, CLAYTON | 04/26/04 | 88150 | BLUE CROSS 230 | 100.00 | 46.00 | 36.80 |
| 1529226 | | GAMBLE, RETHA | 07/06/04 | 88150 | BLUE CROSS 230 | 309.00 | 142.14 | 113.71 |
| 1529189 | | GRAY, MARSHALL | 06/22/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529301 | | GRAY, MARSHALL | 06/22/04 | 88150 | BLUE CROSS 230 | 180.00 | 82.80 | 66.24 |
| 1529188 | | HATCHETT, KYRELL | 04/28/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529302 | | HATCHETT, KYRELL | 04/28/04 | 88150 | BLUE CROSS 230 | 108.00 | 49.68 | 39.74 |
| 1529303 | | HAYNES, MARY | 03/23/04 | 88150 | BLUE CROSS 230 | 40.00 | 0.00 | 0.00 |
| 1529304 | | HAYNES, MARY | 03/30/04 | 88150 | BLUE CROSS 230 | 40.00 | 0.00 | 0.00 |
| 1529305 | | HAYNES, MARY | 05/04/04 | 88150 | BLUE CROSS 230 | 150.00 | 69.00 | 55.20 |
| 1529306 | | HAYNES, MARY | 05/11/04 | 88150 | BLUE CROSS 230 | 40.00 | 0.00 | 0.00 |
| 1529307 | | HAYNES, MARY | 05/18/04 | 88150 | BLUE CROSS 230 | 40.00 | 0.00 | 0.00 |
| 1529309 | | HAYNES, MARY | 07/07/04 | 88150 | BLUE CROSS 230 | 40.00 | 0.00 | 0.00 |
| 1529187 | | HENSON, MARTY | 04/25/04 | 88150 | BLUE CROSS 230 | 80.00 | 36.80 | 29.44 |
| 1529308 | | HENSON, MARTY | 04/25/04 | 88150 | BLUE CROSS 230 | 170.25 | 78.32 | 62.66 |
| 1529186 | | HUNT, ROSE | 03/27/04 | 88150 | BLUE CROSS 230 | 120.00 | 0.00 | 0.00 |
| 1529310 | | HUNT, ROSE | 03/27/04 | 88150 | BLUE CROSS 230 | 374.00 | 0.00 | 0.00 |
| 1529185 | | JENSEN, CARMEN | 04/09/04 | 88150 | BLUE CROSS 230 | 130.00 | 59.80 | 47.84 |
| 1529311 | | JENSEN, CARMEN | 04/09/04 | 88150 | BLUE CROSS 230 | 260.00 | 119.60 | 95.68 |
| 1529312 | | JONES, MELISSA | 04/29/04 | 88150 | BLUE CROSS 230 | 175.00 | 80.50 | 64.40 |
| 1529313 | | JONES, MELISSA | 06/04/04 | 88150 | BLUE CROSS 230 | 259.00 | 119.14 | 95.31 |
| 1529184 | | JORDAN, NELSONIA | 04/09/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529250 | | KILGORE, JESSE | 06/11/04 | 88150 | BLUE CROSS 230 | 699.00 | 321.54 | 257.23 |
| 1529196 | | LAINE, SALLIE | 04/10/04 | 88150 | BLUE CROSS 230 | 105.00 | 48.30 | 38.64 |

```
08/05/04  08:10:33 am                    MEDICAL TRACKING SERVICES, INC.                          PAGE  18
REPORT P180                               CLAIMS APPRAISAL REPORT                                 V 3.5NX 12/93
                                                AS OF 08/05/04
                          FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                   DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                             Provider ID: 27600
ACKERMAN, MS 39735
```

| Claim No | Type | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|---|---|---|---|---|---|---|---|---|
| 1529292 | | LAINE, SALLIE | 04/10/04 | 88150 | BLUE CROSS 230 | 70.00 | 32.20 | 25.76 |
| 1529195 | | LANGFORD, JOHN | 05/01/04 | 88150 | BLUE CROSS 230 | 135.00 | 62.10 | 49.68 |
| 1529291 | | LANGFORD, JOHN | 05/01/04 | 88150 | BLUE CROSS 230 | 1379.00 | 634.34 | 507.47 |
| 1529191 | | LEE, TEKELIA | 03/31/04 | 88150 | BLUE CROSS 230 | 120.00 | 0.00 | 0.00 |
| 1529192 | | LEE, SHEILA | 04/21/04 | 88150 | BLUE CROSS 230 | 105.00 | 48.30 | 38.64 |
| 1529193 | | LEE, SHEILA | 04/11/04 | 88150 | BLUE CROSS 230 | 105.00 | 48.30 | 38.64 |
| 1529194 | | LEE, SAMUEL JR | 04/20/04 | 88150 | BLUE CROSS 230 | 184.00 | 84.64 | 67.71 |
| 1529287 | | LEE, TEKELIA | 03/31/04 | 88150 | BLUE CROSS 230 | 336.00 | 0.00 | 0.00 |
| 1529288 | | LEE, SHEILA | 04/21/04 | 88150 | BLUE CROSS 230 | 383.25 | 176.30 | 141.04 |
| 1529289 | | LEE, SHEILA | 04/11/04 | 88150 | BLUE CROSS 230 | 181.00 | 83.26 | 66.61 |
| 1529290 | | LEE, SAMUEL JR | 04/20/04 | 88150 | BLUE CROSS 230 | 780.00 | 358.80 | 287.04 |
| 1529295 | | LEE, TYSON | 07/11/04 | 88150 | BLUE CROSS 230 | 165.00 | 75.90 | 60.72 |
| 1529286 | | LITTRELL, TAMMY | 06/26/04 | 88150 | BLUE CROSS 230 | 95.00 | 43.70 | 34.96 |
| 1529190 | | MCDANIEL, JEFFERY | 04/06/04 | 88150 | BLUE CROSS 230 | 145.00 | 0.00 | 0.00 |
| 1529285 | | MCDANIEL, CAMMIE | 06/22/04 | 88150 | BLUE CROSS 230 | 95.00 | 43.70 | 34.96 |
| 1529198 | | MCINTIRE, CHRISTOPHE | 04/16/04 | 88150 | BLUE CROSS 230 | 60.00 | 0.00 | 0.00 |
| 1529284 | | MCINTIRE, CHRISTOPHE | 04/16/04 | 88150 | BLUE CROSS 230 | 404.00 | 185.84 | 148.67 |
| 1529197 | | MCMINN, PENNEY | 04/12/04 | 88150 | BLUE CROSS 230 | 25.00 | 0.00 | 0.00 |
| 1529283 | | MCMINN, PENNEY | 04/12/04 | 88150 | BLUE CROSS 230 | 100.00 | 46.00 | 36.80 |
| 1529282 | | MILLER, MARKTRECE | 04/16/04 | 88150 | BLUE CROSS 230 | 205.00 | 94.30 | 75.44 |
| 1529281 | | MONGEON, TRACI | 06/25/04 | 88150 | BLUE CROSS 230 | 95.00 | 43.70 | 34.96 |
| 1529199 | | MOORE, CALYX | 04/08/04 | 88150 | BLUE CROSS 230 | 334.00 | 153.64 | 122.91 |
| 1529200 | | NOWELL, AMY | 07/10/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529280 | | NOWELL, AMY | 07/10/04 | 88150 | BLUE CROSS 230 | 442.00 | 203.32 | 162.66 |
| 1529201 | | PAJLK, JUSTIN | 05/11/04 | 88150 | BLUE CROSS 230 | 105.00 | 48.30 | 38.64 |
| 1529279 | | PAJLK, JUSTIN | 05/11/04 | 88150 | BLUE CROSS 230 | 163.75 | 75.33 | 60.26 |
| 1529277 | | PETERSON, SHEILA | 04/27/04 | 88150 | BLUE CROSS 230 | 509.00 | 234.14 | 187.31 |
| 1529278 | | PETERSON, SHEILA | 05/05/04 | 88150 | BLUE CROSS 230 | 95.00 | 43.70 | 34.96 |
| 1529276 | | PORTER, HAZEL | 04/26/04 | 88150 | BLUE CROSS 230 | 309.00 | 142.14 | 113.71 |
| 1529275 | | REED, DAVID | 07/02/04 | 88150 | BLUE CROSS 230 | 70.00 | 32.20 | 25.76 |
| 1529205 | | RHODES, MARSHALL | 06/23/04 | 88150 | BLUE CROSS 230 | 30.00 | 0.00 | 0.00 |
| 1529274 | | RHODES, MARSHALL | 06/23/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529296 | | RHODES, KEVIN | 07/12/04 | 88150 | BLUE CROSS 230 | 214.00 | 98.44 | 78.75 |
| 1529273 | | RICHARDSON, ROBBIE | 04/29/04 | 88150 | BLUE CROSS 230 | 189.00 | 86.94 | 69.55 |
| 1529272 | | RIVES, BETTY | 06/04/04 | 88150 | BLUE CROSS 230 | 378.00 | 173.88 | 139.10 |
| 1529203 | | ROBINSON, GWENDOLYN | 04/07/04 | 88150 | BLUE CROSS 230 | 130.00 | 0.00 | 0.00 |
| 1529204 | | ROBINSON, GARY | 06/24/04 | 88150 | BLUE CROSS 230 | 25.00 | 0.00 | 0.00 |
| 1529270 | | ROBINSON, GWENDOLYN | 04/07/04 | 88150 | BLUE CROSS 230 | 267.00 | 0.00 | 0.00 |
| 1529271 | | ROBINSON, GRAY | 06/24/04 | 88150 | BLUE CROSS 230 | 1426.40 | 656.14 | 524.91 |
| 1529268 | | ROOKS, GEORGE | 07/06/04 | 88150 | BLUE CROSS 230 | 110.00 | 50.60 | 40.48 |
| 1529269 | | ROOKS, GEORGE | 06/24/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529267 | | SELLERS, JED | 04/08/04 | 88150 | BLUE CROSS 230 | 175.00 | 80.50 | 64.40 |
| 1529158 | | SMITH, SHAKETA | 06/05/03 | 88150 | BLUE CROSS 230 | 120.00 | 0.00 | 0.00 |
| 1529159 | | SMITH, MICHEAL | 07/12/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529160 | | SMITH, MICHEAL | 07/10/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529161 | | SMITH, SUSAN | 08/17/03 | 88150 | BLUE CROSS 230 | 105.00 | 0.00 | 0.00 |
| 1529170 | | SMITH, ANTAVIUS | 02/02/03 | 88150 | BLUE CROSS 230 | 105.00 | 0.00 | 0.00 |
| 1529297 | | SMITH, MICHAEL | 07/12/04 | 88150 | BLUE CROSS 230 | 160.00 | 73.60 | 58.88 |
| 1529202 | | STEADMAN, TERESA | 04/09/04 | 88150 | BLUE CROSS 230 | 147.00 | 67.62 | 54.10 |

```
08/05/04  03:10:34 am                    MEDICAL TRACKING SERVICES, INC.                         PAGE  19
REPORT P180                               CLAIMS APPRAISAL REPORT                              V 3.5NX 12/93
                                             AS OF 08/05/04
                         FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                          Provider ID: 27600
ACKERMAN, MS 39735
```

| Claim No | Type | Patient Name | Date of Service | Payor ID | Payor | Gross Claim Amount | ENR | Advance |
|----------|------|--------------|---------|----------|-------|--------|-----|---------|
| 1529266 | | STEADMAN, TERESA | 04/09/04 | 88150 | BLUE CROSS 230 | 260.50 | 119.83 | 95.86 |
| 1529298 | | STEADMAN, TERESA | 07/11/04 | 88150 | BLUE CROSS 230 | 319.00 | 146.74 | 117.39 |
| 1529265 | | TAYLOR, WHITNEY | 04/14/04 | 88150 | BLUE CROSS 230 | 75.00 | 34.50 | 27.60 |
| 1529263 | | TRIPLETT, SHARON | 04/28/04 | 88150 | BLUE CROSS 230 | 309.00 | 142.14 | 113.71 |
| 1529264 | | TRIPLETT, MARTICE | 05/12/04 | 88150 | BLUE CROSS 230 | 162.00 | 74.52 | 59.62 |
| 1529262 | | WHITE, ALTHEA | 04/11/04 | 88150 | BLUE CROSS 230 | 30.00 | 0.00 | 0.00 |
| 1529211 | | WHITTINGTON, SHANNON | 03/29/04 | 88150 | BLUE CROSS 230 | 150.00 | 0.00 | 0.00 |
| 1529261 | | WHITTINGTON, SHANNON | 03/29/04 | 88150 | BLUE CROSS 230 | 907.50 | 0.00 | 0.00 |
| 1529210 | | WILLIAMS, JERRY | 04/21/04 | 88150 | BLUE CROSS 230 | 30.00 | 0.00 | 0.00 |
| 1529260 | | WILLIAMS, JERRY | 04/21/04 | 88150 | BLUE CROSS 230 | 230.00 | 105.80 | 84.64 |
| 1529259 | | WINTERS, PAMELA | 05/01/04 | 88150 | BLUE CROSS 230 | 394.00 | 181.24 | 144.99 |
| 1529209 | | WISE, AVIS | 06/20/04 | 88150 | BLUE CROSS 230 | 120.00 | 55.20 | 44.16 |
| 1529255 | | WISE, GREGORY | 05/11/04 | 88150 | BLUE CROSS 230 | 404.00 | 185.84 | 148.67 |
| 1529256 | | WISE, AVIS | 06/25/04 | 88150 | BLUE CROSS 230 | 205.00 | 94.30 | 75.44 |
| 1529257 | | WISE, AVIS | 06/20/04 | 88150 | BLUE CROSS 230 | 588.00 | 270.48 | 216.38 |
| 1529258 | | WISE, AVIS | 04/21/04 | 88150 | BLUE CROSS 230 | 309.00 | 142.14 | 113.71 |
| 1529299 | | WISE, AVIS | 06/28/04 | 88150 | BLUE CROSS 230 | 255.00 | 117.30 | 93.84 |
| 1529208 | | WOODARD, BILLY | 06/25/04 | 88150 | BLUE CROSS 230 | 27.00 | 0.00 | 0.00 |
| 1529254 | | WOODARD, BILLY | 06/25/04 | 88150 | BLUE CROSS 230 | 100.00 | 46.00 | 36.80 |
| 1529207 | | WORKS, ALEXA | 06/23/04 | 88150 | BLUE CROSS 230 | 135.00 | 62.10 | 49.68 |
| 1529253 | | WORKS, ALEXA | 03/22/04 | 88150 | BLUE CROSS 230 | 374.00 | 0.00 | 0.00 |
| 1529300 | | WORTHY, BERTHA | 12/31/03 | 88150 | BLUE CROSS 230 | 295.50 | 0.00 | 0.00 |
| 1529251 | | WRAGGS, DOUGLAS | 07/02/04 | 88150 | BLUE CROSS 230 | 175.00 | 80.50 | 64.40 |
| 1529252 | | WRAGGS, DOUGLAS | 06/25/04 | 88150 | BLUE CROSS 230 | 385.00 | 177.10 | 141.68 |
| 1529140 | | VOWELL, BELINDA | 04/29/04 | 88160 | BLUE CROSS OF NEW YORK | 80.00 | 36.80 | 29.44 |
| 1529339 | | VOWELL, BELINDA | 05/13/04 | 88160 | BLUE CROSS OF NEW YORK | 65.00 | 0.00 | 0.00 |
| 1529340 | | VOWELL, BELINDA | 04/29/04 | 88160 | BLUE CROSS OF NEW YORK | 779.00 | 358.34 | 286.67 |
| 1529137 | | BAXTER, BRUCE | 05/22/04 | 88170 | BLUE CROSS OF N. DAKO | 50.00 | 0.00 | 0.00 |
| 1529138 | | BAXTER, BRUCE | 05/22/04 | 88170 | BLUE CROSS OF N. DAKO | 50.00 | 0.00 | 0.00 |
| 1529135 | | COLLIER, JAMES | 06/22/04 | 88170 | BLUE CROSS OF N. DAKO | 50.00 | 0.00 | 0.00 |
| 1529136 | | COLLIER, JAMES | 06/22/04 | 88170 | BLUE CROSS OF N. DAKO | 50.00 | 0.00 | 0.00 |
| 1529139 | | FAIR, JACKIE | 06/06/04 | 88170 | BLUE CROSS OF N. DAKO | 105.00 | 48.30 | 38.64 |
| 1529336 | | FAIR, JACKIE | 06/06/04 | 88170 | BLUE CROSS OF N. DAKO | 222.00 | 102.12 | 81.70 |
| 1529338 | | JACKSON, JAMES | 05/03/04 | 88170 | BLUE CROSS OF N. DAKO | 270.00 | 124.20 | 99.36 |
| 1529337 | | KEENAM, JAMES | 07/12/04 | 88170 | BLUE CROSS OF N. DAKO | 180.00 | 82.80 | 66.24 |
| 1529335 | | KENNEDY, IVY | 06/01/04 | 88170 | BLUE CROSS OF N. DAKO | 288.00 | 132.48 | 105.98 |
| 1529334 | | MCELROY, JENNIFER | 06/11/04 | 88170 | BLUE CROSS OF N. DAKO | 110.00 | 50.60 | 40.48 |
| 1529333 | | SANDERS, JENNIFER | 07/02/04 | 88170 | BLUE CROSS OF N. DAKO | 105.00 | 48.30 | 38.64 |
| 1529133 | | ASHFORD-SMITH, PATRICIA | 05/12/04 | 88180 | BLUE CROSS OF TENN | 25.00 | 0.00 | 0.00 |
| 1529331 | | ASHFORD-SMITH, PATRICIA | 05/12/04 | 88180 | BLUE CROSS OF TENN | 130.00 | 59.80 | 47.84 |
| 1529332 | | ASHFORD-SMITH, PATRICIA | 05/13/04 | 88180 | BLUE CROSS OF TENN | 330.00 | 151.80 | 121.44 |
| 1529134 | | COLEMAN, BRENDA | 06/05/04 | 88180 | BLUE CROSS OF TENN | 120.00 | 55.20 | 44.16 |
| 1529329 | | COLEMAN, BRENDA | 06/05/04 | 88180 | BLUE CROSS OF TENN | 452.00 | 207.92 | 166.34 |
| 1529330 | | GOSS, MICHAEL | 05/17/04 | 88180 | BLUE CROSS OF TENN | 45.00 | 0.00 | 0.00 |
| 1529132 | | FRANKS, JIMMY | 06/02/04 | 88190 | CAREMARK, INC | 40.00 | 0.00 | 0.00 |
| 1529120 | | CARSON, ROBERT | 07/20/04 | 88200 | FLEXSTEEL INDS | 40.00 | 0.00 | 0.00 |
| 1529061 | | HAYNES, MARY | 06/15/04 | 88200 | FLEXSTEEL INDS | 40.00 | 0.00 | 0.00 |
| 1529118 | | BEARD, DOROTHY | 05/08/04 | 88210 | FOX EVERETT INC | 50.00 | 0.00 | -8.00 |
| 1529119 | | BEARD, DOROTHY | 05/08/04 | 88210 | FOX EVERETT INC | 50.00 | 0.00 | -0.00 |

```
08/05/04  C3:10:35 am                    MEDICAL TRACKING SERVICES, INC.                        PAGE  20
REPORT P180                                CLAIMS APPRAISAL REPORT                            V 3.5NX 12/93
                                                AS OF 08/05/04
                              FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                    DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                              Provider ID: 27600
ACKERMAN, MS 39735

                                  Date of                                  Gross Claim
Claim No    Type Patient Name     Service  Payor ID  Payor                    Amount        ENR        Advance
-----------  ---- ---------------- -------- -------- ----------------------- ------------ ------------ ------------
1529157     DOSS, LEEOLA          06/10/04  88220 MS BAND OF CHOCTAW INDIAN      40.00       0.00         0.00
1529224     GATES, CARLA          06/18/04  88220 MS BAND OF CHOCTAW INDIAN     175.00      80.50        64.40
1529155     JORDAN, JEANIE        07/20/04  88220 MS BAND OF CHOCTAW INDIAN      65.00       0.00         0.00
1529225     LANE, ADRIAN          03/31/04  88220 MS BAND OF CHOCTAW INDIAN     518.00       0.00         0.00
1529046     ABBOTT, LETITIA       06/24/04  88230 PROFESSIONAL BENEFIT ADM      110.00      50.60        40.48
1529109     ABBOTT, LETITIA       06/24/04  88230 PROFESSIONAL BENEFIT ADM       55.00       0.00         0.00
1529110     ABBOTT, LETITIA       06/24/04  88230 PROFESSIONAL BENEFIT ADM       55.00       0.00         0.00
1529027     BLACK, FRANK          07/06/04  88240 STATE OF MS                   125.00      57.50        46.00
1529128     BLACK, FRANK          07/06/04  88240 STATE OF MS                    25.00       0.00         0.00
1529122     BLAKE, DEBORAH        04/14/04  88240 STATE OF MS                    50.00       0.00         0.00
1529125     BLAKE, DEBORAH        04/14/04  88240 STATE OF MS                    50.00       0.00         0.00
1529026     BOWLES, ROBERT        07/10/04  88240 STATE OF MS                   260.00     119.60        95.68
1529127     BOWLES, ROBERT        07/10/04  88240 STATE OF MS                   145.00      66.70        53.36
1529123     BROOKS, RONALD        05/06/04  88240 STATE OF MS                    25.00       0.00         0.00
1529124     BROOKS, RONALD        05/06/04  88240 STATE OF MS                    25.00       0.00         0.00
1529025     BUSBY, JANET          06/29/04  88240 STATE OF MS                   165.00      75.90        60.72
1529121     GAMILL, WILLIA        06/15/04  88240 STATE OF MS                    50.00       0.00         0.00
1529130     NEWMAN, MILLIE        07/12/04  88240 STATE OF MS                   120.00      55.20        44.16
1529024     PADEN, BETTYIE        06/19/04  88240 STATE OF MS                  3131.00    1440.26      1152.21
1529126     PADEN, BETTYIE        06/19/04  88240 STATE OF MS                   280.00     128.80       103.04
1529129     SWINDLE, VICTORIA     08/05/03  88240 STATE OF MS                   105.00       0.00         0.00
1529089     WEBB, JAMES           07/21/04  88250 HILL BROTHERS CONSTRUCTION     50.00       0.00         0.00
1529028     BROOKS, TARA          06/11/04  88260 MS PUBLIC ENTITY EMPLOYEE      50.00       0.00         0.00
1529029     BROOKS, TARA          06/11/04  88260 MS PUBLIC ENTITY EMPLOYEE      50.00       0.00         0.00
1529321     CROWDER, DARREN       06/04/04  88280 BLUE CROSS 230 CHIPS          320.00     147.20       117.76
1529323     JORDAN, NELSONIA      04/09/04  88280 BLUE CROSS 230 CHIPS          347.00     159.62       127.70
1529328     MCDANIEL, JEFFERY     04/06/04  88280 BLUE CROSS 230 CHIPS          247.50       0.00         0.00
1529326     MOORE, CALYX          04/08/04  88280 BLUE CROSS 230 CHIPS          359.65     165.44       132.35
1529325     MOSS, SARAH           06/25/04  88280 BLUE CROSS 230 CHIPS          414.00     190.44       152.35
1529327     PATTERSON, JUASITA    04/27/04  88280 BLUE CROSS 230 CHIPS           65.00       0.00         0.00
1529322     STACY, MARISSA        07/13/04  88280 BLUE CROSS 230 CHIPS          343.00     157.78       126.22
1529324     WOODARD, PORTIA       04/27/04  88280 BLUE CROSS 230 CHIPS           65.00       0.00         0.00
1529060     KINARD, MARIA         05/15/04  88290 GARAN/UNITED OF OMAHA         338.00     155.48       124.38
1529049     MCCORKLEY, QUENTIN    05/17/04  88300 HEARTLAND HEALTH PLAN         470.00     216.20       172.96
1529023     MCGEE, SHANTIA        06/23/04  88310 STARBRIDGE                    287.00     132.02       105.62
1529022     HOWARD, BETTY         06/09/04  88320 ST PAUL MERCURY INSURANCE     550.00     253.00       202.40
1529021     KELLEY, RODNEY        06/23/04  88330 SOUTHWIRE COMPANY              65.00       0.00         0.00
1529045     IDOM, SULLA           06/15/04  88340 TAYLOR MACHINE WORKS          285.00     131.10       104.88
1529036     MITCHELL, DALVIA      03/26/04  88350 UNION NATIONAL                416.00       0.00         0.00
1529220     AEVERETTE, ROBERT     05/07/04  88360 MEADOWBROOK INS GROUP         893.10     410.83       328.66
1529053     ALAMANZA, GERMAN      05/07/04  88370 HARTFORD INS CO               447.50     205.85       164.68
1529221     JONES, JAMES          06/01/04  88380 MICS CLAIMS                   385.00       0.00         0.00
1529222     PRUITT, JENNIFER      06/11/04  88380 MICS CLAIMS                   109.00       0.00         0.00
1529056     INGRAM, JOHN          06/17/04  88390 INSUREX BENEFITS ADM INC      150.00      69.00        55.20
1529145     BAGWELL, JOHNNY       06/18/04  93500 BLUE CROSS OF ILLINOIS        310.00     142.60       114.08
1529359     BAGWELL, JOHNNY       06/18/04  93500 BLUE CROSS OF ILLINOIS        332.55     152.97       122.38
1529152     BRADLEY, LIANELL      05/20/04  93500 BLUE CROSS OF ILLINOIS         62.00       0.00         0.00
1529153     BRADLEY, LIANELL      05/20/04  93500 BLUE CROSS OF ILLINOIS         62.00       0.00         0.00
1529351     CARTER, ROBERT        05/25/04  93500 BLUE CROSS OF ILLINOIS        584.00     268.64       214.91
```

```
08/05/04  08:10:36 am                        MEDICAL TRACKING SERVICES, INC.                          PAGE  21
REPORT P180                                   CLAIMS APPRAISAL REPORT                               V 3.5NX 12/93
                                                   AS OF 08/05/04
                               FOR PROVIDER 27600 BRANDYWINE HEALTH SERVICES OF MISS, INC.
                                                      DETAIL

BRANDYWINE HEALTH SERVICES OF MISS, INC.                                            Provider ID: 27600
ACKERMAN, MS 39735

                              Date of                                  Gross Claim
Claim No    Type Patient Name  Service  Payor ID   Payor                 Amount        ENR       Advance
----------- ---- ------------------ -------- ------------ ----------------------- ----------- ----------- ----------
   1529146       EAKIN, ZACKERY     05/28/04  93500 BLUE CROSS OF ILLINOIS      30.00      0.00       0.00
   1529350       EAKIN, ZACKERY     05/28/04  93500 BLUE CROSS OF ILLINOIS     185.00     85.10      68.08
   1529147       GATTI, GERALD      06/05/04  93500 BLUE CROSS OF ILLINOIS      22.00      0.00       0.00
   1529349       GATTI, GERALD      06/05/04  93500 BLUE CROSS OF ILLINOIS      80.00     36.80      29.44
   1529354       GLASS, CHARLEAN    07/09/04  93500 BLUE CROSS OF ILLINOIS     211.00     97.06      77.65
   1529355       GLASS, FOSTER      03/23/04  93500 BLUE CROSS OF ILLINOIS     219.00      0.00       0.00
   1529356       GLASS, FOSTER      04/22/04  93500 BLUE CROSS OF ILLINOIS     110.00     50.60      40.48
   1529357       JOHNSON, BETTY     05/03/04  93500 BLUE CROSS OF ILLINOIS     349.00    160.54     128.43
   1529148       KEETON, JOHNNY     04/09/04  93500 BLUE CROSS OF ILLINOIS     120.00     55.20      44.16
   1529358       KEETON, JOHNNY     04/09/04  93500 BLUE CROSS OF ILLINOIS     289.00    132.94     106.35
   1529347       KILGORE, JENNIFER  05/28/04  93500 BLUE CROSS OF ILLINOIS      30.00      0.00       0.00
   1529348       KILGORE, JENNIFER  06/01/04  93500 BLUE CROSS OF ILLINOIS      85.00     39.10      31.28
   1529149       MILLER, MARQUELIUS 05/08/04  93500 BLUE CROSS OF ILLINOIS     145.00     66.70      53.36
   1529346       MILLER, MARQUELIUS 05/08/04  93500 BLUE CROSS OF ILLINOIS     425.75    195.85     156.68
   1529142       MCSLEY, RODNEY     06/25/04  93500 BLUE CROSS OF ILLINOIS     162.00      0.00       0.00
   1529150       MCSLEY, RODNEY     06/25/04  93500 BLUE CROSS OF ILLINOIS     162.00      0.00       0.00
   1529344       MCSLEY, RODNEY     06/25/04  93500 BLUE CROSS OF ILLINOIS     503.00    231.38     185.10
   1529345       MCSLEY, JANALVIN   06/17/04  93500 BLUE CROSS OF ILLINOIS      65.00      0.00       0.00
   1529143       SMITH, ANTHONY     02/22/03  93500 BLUE CROSS OF ILLINOIS     120.00      0.00       0.00
   1529144       SMITH, SHAKETA     12/24/03  93500 BLUE CROSS OF ILLINOIS      25.00      0.00       0.00
   1529151       SMITH, SHONTEZ     06/18/04  93500 BLUE CROSS OF ILLINOIS     120.00     55.20      44.16
   1529342       SMITH, ANTHONY     05/10/04  93500 BLUE CROSS OF ILLINOIS      65.00      0.00       0.00
   1529343       SMITH, SHONTEZ     06/18/04  93500 BLUE CROSS OF ILLINOIS     387.50    178.25     142.60
   1529352       SMITH, ANTHONY     05/10/04  93500 BLUE CROSS OF ILLINOIS      65.00      0.00       0.00
   1529353       SMITH, SHONTEZ     02/17/04  93500 BLUE CROSS OF ILLINOIS     360.00      0.00       0.00
   1529062       PEACOCK, SCOTT     03/25/04  94520 CORESOURCE             280.00      0.00       0.00
                                 ===========================================================================
                                              # of Claims                                      80%
                              Totals:            1,006              559461.62  318957.38   255165.90

                                              # Not Appr.
                                                  384               34453.50
```

# PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (the "Agreement ") is made and entered into as ___10th___ day of ___A̶ȗs̶t___, 2004  by and between MCC Special Purpose Corporation VIII, (the "Buyer"), a Nevada corporation its address being 3770 Howard Hughes Parkway, Suite 301, Las Vegas, NV 89109  Medical Capital Corporation (the "Administrator"), a Nevada Corporation its  office address being 2100 South State College Blvd, Anaheim, CA 92806 and Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation, ( the "Provider" ),  its  Federal I.D. number  being 82-0543869  and its  address being 148 West Cherry St., Ackerman, MS 39735 and its telecopy  number being  662-285-2516.

## RECITALS

WHEREAS, the Provider is engaged in the business of providing medical services in Mississippi.

WHEREAS, Buyer desires to purchase from the Provider, and the Provider desires to sell to Buyer from time to time, the accounts receivable of the Provider described in <u>Exhibit A</u> attached hereto, and with respect to purchases subsequent to the Closing Date (as defined in Section 1.3 hereof) the accounts receivable described in <u>Schedule 1</u> to the applicable Purchase Supplement, (being amounts due for each individual procedure, treatment, medical service or supply coded as a line item appearing on a billing form such as the HCFA 1500 or the UB 92) (collectively the "Accounts" and individually an "Account"), on the terms and subject to the conditions hereinafter set forth; and

WHEREAS, those capitalized terms which are not defined in any other provision hereof shall have the meaning given them in Section 9 of this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing premises and of the mutual covenants contained herein, and other good and valuable consideration, the parties hereto agree as follows:

1.     <u>Agreement to Sell and Agreement to Purchase.</u>

    1.1     <u>Assets to be Conveyed.</u>  On the terms and subject to the conditions set forth in this Agreement, effective upon the Closing (as hereinafter defined), the Provider hereby conveys, transfers, assigns, sells and delivers to Buyer and Buyer hereby acquires, accepts and purchases from the Provider, all of the following (collectively, the "Assets"):

    (a)     the Accounts; and

    (b)     all tangible evidence of each Account, reconciliations, reports and any and all other documentation of any kind relating to such Accounts in the possession of or under the control of the Provider (collectively, the "Account Records").  Provider will, prior to closing, transmit electronically to Buyer  the Account billing, in the face amount of the bill ("Billing Forms") sent to each patient and third party payor in connection with each Account, in such computer form and format as requested by Buyer.

    1.2     <u>Further Assurances.</u>  From time to time on and after the Closing (as hereinafter defined), the Provider shall immediately execute and deliver to Buyer such instruments of sale, transfer, conveyance, assignment and delivery consents, assurances, powers of attorney and other instruments as may be requested by Buyer in order to vest in Buyer all right, title and interest of the Provider in and to the Assets and otherwise in order to carry out the purpose and intent of this Agreement.

1

**1.3    Closing.** Each closing for the purchase and sale of the Accounts and other Assets hereunder, including, without limitation, any subsequent purchases pursuant to Section 1.4 hereof (each a "Purchase" and collectively the "Purchases") shall take place at the offices of Medical Capital Corporation, being 2100 South State College Blvd, Anaheim, CA 92806, with an initial closing at 10:00 A.M. local time, on ___8 - 10 - 04___ ,or at such other time and place as the parties hereto shall mutually agree (each a "Closing" or a "Closing Date"). The Accounts to be initially sold and purchased hereunder are as identified in Exhibit A attached hereto, and the Accounts to be sold and purchased from time to time after the initial Closing Date shall be as identified in Schedule 1 to Purchase Supplements attached hereto. In addition, Provider shall deliver to Buyer the documents set forth in Section 7.2(d) of this Agreement with respect to such additional Accounts.

**1.4    Additional Purchase of Accounts.** Buyer intends to acquire additional Accounts from Provider after the initial Closing Date. Provider agrees to sell to Buyer Accounts for a period of one year after the initial Closing Date. Such sales of Accounts to Buyer shall be governed by the terms of this Agreement and the Purchase Price therefor shall be calculated and paid in the manner set forth in Section 2.1 of this Agreement. The Provider agrees to sell and the Buyer intends to purchase Accounts on a weekly basis.

**1.5    The Reserve Account** The Administrator will establish a reserve account. This reserve account will be owned, maintained, managed, and under the control of the Administrator. During the collection process, the reserve account will be credited with the deferred purchase price of the Accounts. The Administrator may make withdrawals from the reserve account to offset any monies which the Provider owes to the Buyer, or may owe to the Buyer in the future, as a result of the Buyers' purchase of Accounts from the Provider.

(a)    The Administrator will furnish the Provider regular accounting of the reserve account. Such accounting will be delivered to the provider no later than the 15th day of each month, for the preceding monthly period, beginning no later than 90 days following the initial purchase date.

(b)    If the Provider is not in default of any provisions of the Purchase Agreement, the Administrator will pay the Provider as additional payment for the accounts, an amount equal to all funds in the reserve account exceeding 25 per cent of the outstanding balance of the adjusted rate amount of the Accounts. This payment will be made no later than the 15th day of each month, for the preceding monthly period, beginning no later than 90 days following the initial purchase date.

(c)    At such time as all additional purchases have been completed, all accounts collected, and the Provider is not in default of any provision of the purchase agreement, any amounts remaining in the reserve account will be paid to the Provider.

(d)    Any default of Section 5.5 B, or any other section(s) herein this Agreement will result in an immediate surrender of all funds in the reserve account and applied to the benefit of the Administrator.

**2.    Consideration to be Paid by Buyer.**

**2.1    Purchase Price for the Assets.** Subject to Section 2.2 below, the purchase price for each Purchase (the "Purchase Price") shall be calculated and paid as follows:

(a)    On the Closing Date for each Purchase, a percentage (the "Advance Rate Amount") equal to of the Adjusted Value of each of the Accounts included in such Purchase as set forth in Exhibit A hereto for the initial Purchase and in Schedule 1 to the applicable Purchase Supplement for subsequent Purchases.

(b)     In addition to the Advance Rate Amount payable as of the Closing Date for each Purchase, subject to Sections 2.1(c), (d) and (e) hereof, Buyer shall deposit a deferred purchase price in the reserve account (the "Deferred Purchase Price") with respect to each of the Accounts included in any related Purchase in an amount equal to a percentage of the Adjusted Value of such Account, as set forth in Exhibit A hereto for the initial Purchase and in Schedule 1 to the applicable Purchase Supplement for subsequent Purchases.

(c)     The Deferred Purchase Price with respect to an Account shall be deposited in the reserve account by Buyer after allocations to the reserve account and on the earlier of (i) the date on which Buyer shall have received aggregate collections in respect of all Accounts included in any Purchase hereunder in excess of an amount equal to the aggregate Adjusted Value of such Accounts less the aggregate amount of the Deferred Purchase Price for such Accounts or (ii) each of the Accounts included in the related Purchase has been collected in full by Buyer or otherwise settled by Buyer with the related Payor in full conformity with Provider's covenants, representations and warranties set forth herein. Buyer shall remit to the reserve account on the 15th day of each month after the month in which the Deferred Purchase Price becomes payable (the "Payment Date") in payment of such Deferred Purchase Price, the portion of such excess amount, if any, collected during the calendar month preceding such Payment Date until the earlier of (i) the date such Deferred Purchase Price shall have been paid in full and (ii) the date all such related Accounts have been collected by Buyer in full or written-off Buyer's books as uncollectible. Notwithstanding the above, Buyer, may, at its option, pay the Deferred Purchase Price by transferring and assigning the Accounts with respect to which the Deferred Purchase Price is payable to the Provider, in which case the Provider shall bear all costs and risks of collection of such Accounts. Buyer shall automatically deduct from the Deferred Purchase Price otherwise payable with respect to the Accounts included in any Purchase, the Adjusted Value of any Account included in any Purchase on the date it becomes classified, by Buyer, as uncollectible and any other amounts payable by Provider to Buyer hereunder.

(d)     Notwithstanding the provisions set forth in Sections 2.1(b) and 2.1(c) hereof, in the event Buyer determines that a breach of any covenant, representation or warranty of the Provider hereunder has occurred with respect to an Account (an "Ineligible Account") and the Provider fails to substitute such Ineligible Account with a "Substitute Account" (as defined in and pursuant to Section 2.2 hereof), or the Provider fails to pay the deficiency amounts payable to Buyer pursuant to Section 2.2 hereof, then the Buyer shall offset the amount of the Deferred Purchase Price otherwise payable on the Accounts to the Provider by the amount of the related shortfall in the collections of the Adjusted Value on such Ineligible Accounts, and by all other amounts payable to Buyer hereunder.

(e)     Notwithstanding the provisions set forth in Sections 2.1(b) and 2.1(c) hereof, in the event the Buyer determines that the Provider has breached any of its representations, warranties or covenants set forth herein, until Provider has cured such breach to Buyer's satisfaction, Buyer shall have no obligation to apply to the reserve account the Deferred Purchase Price.

(f)     In the event that Buyer determines Provider has breached any of its representations, warranties or covenants contained in this Agreement, the Provider shall, upon demand by Buyer, repurchase from Buyer all of the Accounts for a price equal to the Adjusted Face Value of such Accounts, less collections actually received by Buyer on such Accounts, plus all other amounts payable to Buyer hereunder.

(g)     Buyer will send on or before the 15th day of each month a collection activity report, as prepared by its collection agent, with regard to the Accounts for the preceding month's collection activities which shall reflect the collection status of the Accounts, a status report on the amount of the accrued reserve account and any adjustments made thereto on account of Ineligible Accounts.

## 2.2     Repurchase Obligation; Substitution of Accounts; Security Interest; Purchase Price Adjustment.

(a)     If (i) any recapture or set-off by any person, entity or governmental payor against any Account occurs after the Closing Date, or (ii) Provider breaches any representation or warranty or covenant with respect to

any Account set forth in this Agreement or in any Exhibit hereto, or in any Purchase Supplement or any document delivered in connection herewith (A) the Provider shall give written notice of such dispute, denial, refusal, notice of set-off or recapture or other claim affecting the Account or Accounts or breach of such representation, warranty or covenant to the Buyer along with copies of any correspondence in connection therewith, immediately, but in no event later than three (3) days following the date Provider learns of the dispute, denial, refusal, notice of set-off or recapture or other claim affecting the Accounts or a breach of such representation or warranty or covenant and (B) such Account, together with the Account Records relating thereto (collectively, the "Excluded Assets") shall, immediately upon demand by Buyer, be repurchased by Provider at a repurchase price equal to the Gross Face Value of such Accounts less any amount actually collected by Buyer with respect to such Excluded Assets or, at Buyer's option, substituted with another Eligible Account (a "Substitute Account") as provided herein. If any Excluded Assets are required to be substituted pursuant to this Section 2.2, additional current (i.e., not older than 30 days from the Billing Date) accounts receivable (collectively, the "Substitute Accounts"), together with all Account Records relating to such additional accounts receivable (collectively, the "Substitute Assets"), shall be substituted promptly by the Provider for such Excluded Assets until the Gross Face Value and Adjusted Value of such Substitute Assets is at least equal to the Gross Face Value and Adjusted Value of the Excluded Assets; provided, however, that all Substitute Assets must be approved in writing by the Buyer prior to the substitution and acceptance of such Assets by the Buyer hereunder. Any proposed Substitute Assets not approved by the Buyer shall be retained by the Provider, and the Provider shall offer to the Buyer additional proposed Substitute Assets until the Gross Face Value and Adjusted Value of the Substitute Assets accepted by the Buyer is at least equal to the Gross Face Value and Adjusted Value of the Excluded Assets.

(b)       Should the amount collected (within 120 days of the Billing Date) on any Account (including Substitute Assets) purchased by Buyer be less than the amount of its Adjusted Value, then (whether or not Provider has delivered Substitute Accounts for such delinquent Accounts), unless such nonpayment is due to the bankruptcy, insolvency or financial inability of the Payor to pay such Account as demonstrated by the Provider to the satisfaction of Buyer, Provider shall remit to Buyer the amount of such difference between the Adjusted Value of the Account and the amount actually collected on such Account by Buyer as the repurchase price of such Accounts. The amount of said repurchase price shall be paid within four (4) business days of Provider's receipt of notice from Purchaser notifying Provider of said deficiency. The amount of said repurchase price shall be paid by delivery of a certified or bank check or, at Buyer's option, by the delivery of the repurchase price in Substitute Assets approved by the Buyer. In addition, in the event that any Accounts are not paid in full within 120 days of their respective Billing Dates and the Provider fails to repurchase such Accounts, the Buyer shall deduct, from the Advance Rate Amount and the Deferred Purchase Price otherwise payable for all Accounts with respect to any Purchase, an amount equal to the Adjusted Value of such uncollected Account less the Deferred Purchase Price thereof.

(c)       The Provider shall pay or reimburse Buyer, upon demand, for all costs and expenses paid or incurred by Buyer in connection with its review and approval of Substitute Assets pursuant to this Section 2.2.

(d)       It is the express intent of the parties that the transfer of the Accounts by the Provider to Buyer hereunder and pursuant to any Purchase Supplement be treated, and the parties hereby agree to so treat such transfers, as a sale of such Accounts, and not as a secured financing, between the Provider and Buyer for tax, accounting and all other purposes. However, in the alternative, in the event that any court of competent jurisdiction over the matter should determine that any Purchase is deemed to be a financing and not a true sale notwithstanding the express intent of the parties hereto that it be deemed a true sale, the Provider shall be obligated to pay Buyer an amount equal to the Adjusted Value of each Account on the 120th day following the respective date or service (i.e. the date the services or product was rendered).of such Account and the Provider hereby expressly grants to the Buyer a first lien upon and perfected security interest in all of the Accounts and other Assets described in Exhibit A hereto and in Schedule 1 to each Purchase Supplement, both presently and hereafter acquired by purchase or as Substitute Accounts, including all proceeds therefrom, and all funds due to the Provider from any other source whatsoever, relating to such Accounts or Substitute Accounts to secure performance of the Provider's obligations pursuant to this Agreement, including without limitation Provider's obligation to provide Substitute Assets and pay Buyer cash in lieu of Substitute Assets as provided in the first paragraph of this Section 2.2. Provider shall execute

such financing statements and other documentation as Buyer may request from time to time in order to perfect and protect Buyer's security interest in the Accounts and other Assets.

(e)     All Substitute Accounts and Substitute Assets approved by the Buyer in accordance with this Section 2.2 shall, without further action by the parties hereto, be deemed "Accounts" and "Assets", respectively and as such shall be subject to all of the terms and conditions of this Agreement including, without limitation, all Provider's representations, warranties and covenants and Buyer's security interest therein. Notwithstanding anything herein to the contrary, if, for any reason, the Adjusted Value of the Substitute Assets is not at least equal to the Adjusted Value of the Excluded Assets, the Purchase Price shall be subject to post-Closing downward adjustment to compensate for such discrepancy. The amount of such adjustment shall be paid by the Provider to the Buyer by delivery of a certified or bank check or other form of cash equivalent requested by the Buyer within five (5) business days following such request.

**2.3     Payment of Purchase Price**. On the Closing Date for each Purchase, Buyer shall pay to the Provider the Advance Rate Amount by wire transfer in immediately available funds into an account designated by Provider in writing or by certified check.

**2.4     Additional Security**. As additional security for the Provider's performance of its representations, warranties, covenants and agreements set forth in this Agreement, the Provider hereby grants to the Buyer a first lien upon and perfected security interest in all accounts receivable of the Provider (other than the Accounts) both presently existing and hereafter created, including all proceeds therefrom, and all funds due to the Provider from any other source whatsoever relating to such accounts. Provider shall execute such financing statements and other documentation as Buyer may request from time to time in order to perfect and protect Buyer's security interest in such accounts. Upon the breach by Provider of any of its representations, warranties or covenants hereunder as determined by Buyer, Provider hereby (I) authorizes Buyer to instruct the Payors to make payment on such accounts directly to the Buyer and (ii) consents to the appointment of a receiver to take control of and to collect and liquidate for the benefit of Buyer all collateral pledged hereunder.

**3.     Liabilities Not Assumed by Buyer**. Provider covenants, represents and warrants that the Buyer shall not be deemed by anything contained in this Agreement to have assumed liabilities relating to, or arising out of, the Assets, including, without limitation, the following (hereinafter collectively referred to as "Retained Liabilities"):

(a)     Any liability of the Provider to any person or entity, the existence of which constitutes a breach of any covenant, agreement, representation or warranty of the Provider contained in this Agreement;

(b)     Any liability of the Provider for any federal, state, municipal, local or foreign taxes, assessments, additions to tax, interest, penalties, deficiencies, duties, fees and other government charges or impositions of each and every kind or description, whether measured by properties, assets, wages, payroll, purchases, value added, payments, sales, use, business, capital stock, surplus or income with respect to ownership of the Assets up to and including the related Closing Date with respect to such Assets;

(c)     Any liability or obligation (contingent or otherwise) of the Provider to any person or entity arising out of any litigation, claim, arbitration or other proceeding;

(d)     Any liabilities or obligations of any kind whatsoever relating to any action or inaction by any person or entity, including, without limitation, any of the Provider's officers, directors, shareholders, employees, agents, representatives or independent contractors (collectively, "Agents"), relating in any way to the services rendered by any of them in connection with the Accounts or the servicing of any of the Accounts in the case of such servicing up to and including the Closing Date;

5

(e)      Any  liability  or obligation (contingent or otherwise) of the Provider arising out of defects in or mislabeling of, or damages to persons or property arising out of defects or mislabeling of, products (including, without limitation, prescription medications) manufactured, sold, or prescribed by the Provider in connection with any of the Accounts;

(f)      Any liability or obligation of the Provider to compensate any person or entity, including, without limitation, any agent, licensor, supplier, distributor or customer of the Provider, in respect of any services rendered or products manufactured, sold or prescribed in connection with the Accounts; and

(g)      Any recapture, set-off, or other claim made by any third party payor against the Accounts.

**4.      Representations and Warranties of the Provider**.  The Provider represents and warrants to Buyer as follows:

**4.1      Organization and Good Standing**.  The Provider is a corporation or a professional association duly organized, validly existing and in good standing under the laws of the state of its incorporation or organization, with full power to carry on its business as it is now operated and to own the Assets and convey good and marketable title and ownership of the Assets to Buyer. The Provider is qualified to do business and is in good standing in each jurisdiction in which the nature of its business or the character of its properties makes such qualification necessary.

**4.2      Proper Authority**.  The Provider has all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereby.  This Agreement and all other Agreements and instruments to be executed by the Provider in connection herewith have been (or upon execution will have been) duly executed and delivered by the Provider, have been effectively authorized by all necessary action, corporate or otherwise, and constitute (or upon execution will constitute) legal, valid and binding obligations of the Provider in accordance with their respective terms.

**4.3      Ownership of Assets**.  The Provider is the lawful owner of each of the Assets, and all Assets are free and clear of all liens, mortgages, pledges, security interests, restrictions, prior assignments, encumbrances and claims of any kind or nature whatsoever (collectively, "Liens").   The execution and delivery to Buyer of this Agreement and, if applicable, the instruments of transfer of ownership contemplated by this Agreement will vest good and marketable title to the Assets in Buyer free and clear of all Liens and shall constitute a true sale of the Accounts under applicable law (including for tax and accounting purposes) and not a secured financing.  Without limiting the generality of the forgoing, none of the Assets is subject to any contract, agreement or understanding (other than this Agreement), whether oral or written, or any indenture or other instrument to which the Provider is a party or by which it is bound (collectively, "Contracts") which subjects the Assets to any Lien or conveyance of any interest therein.

**4.4      Agreement Not In Breach of Other Instruments**.  The execution and delivery of this Agreement by the Provider and the consummation of the transactions contemplated hereby will not result in a breach of any of the terms and provisions of, or constitute a default under, or conflict with, any Contract, the Articles or Certificate of Incorporation or Bylaws of the Provider, any judgment, decree, order or award of any court, governmental body or arbitrator or any federal, state, municipal, local or foreign laws, statute, ordinance, rule or regulation (collectively, "Laws") applicable to the Provider.

**4.5      Litigation**.  There are no claims, disputes, actions, proceedings or investigations of any nature pending or, to the best knowledge of the Provider, threatened, against or involving the Provider or any of its Agents that relate in any way to any of the Assets or to the services rendered in connection therewith (the "Services"). Further, there are no injunctions, writs, restraining orders or other orders of any nature against Provider that adversely affect Provider's performance of the agreements and transactions contemplated in this Agreement, and there are no proceedings or investigations pending or threatened which adversely affect the payment or enforceability of the Accounts.

6

**4.6      Regulatory Approvals.**   All consents, approvals, authorizations and other requirements prescribed by any law, rule or regulation which must be obtained or satisfied by the Provider and which are necessary for the execution, delivery and performance by the Provider of this Agreement, the documents to be executed and delivered by the Provider in connection herewith and for the rendering of the Services by the Provider have been obtained and satisfied.

**4.7      Compliance With Law.**  With respect to the Assets and the Services, neither the Provider nor any of its agents has violated, and on the date hereof does not violate, in any respect, any law, rule or regulation.  Neither the Provider nor any of its agents has received any notice of any such violation.

(a)      The Provider shall  maintain compliance, in the context of this Purchase Agreement,  with the laws governing the sale and assignment of Medicare and Medicaid claims  under the Medicare program pursuant  to 42 U.S.C. &1395 et seq., and regulations adopted under the authority thereof and  the Medicaid program adopted by any state pursuant to 42 U.S.C. &1396 et seq., and regulations adopted under the authority thereof, and every intermediary, carrier and administrator of any such programs.

**4.8      Disclosure.**  The information provided and to be provided by the Provider to the Buyer under or in connection with this Agreement, each Purchase Supplement and in any Exhibit or Schedule hereto and thereto, or in any other writing hereto does not and will not contain any untrue statement of a material fact or omits or will omit to state a material fact required to be stated herein or therein or necessary to make the statements and facts contained herein or therein, in light of the circumstances in which they are made not false or misleading.  Copies of all documents heretofore or hereafter delivered or made available to Buyer pursuant hereto were or will be complete and accurate records of such documents.

**4.9      No Prior Collections on Accounts.**  No monies have been collected to date in respect of any Account by or on behalf of the Provider or any other person or entity, or, if any monies have been collected with respect to the Accounts, such funds have been turned over to Buyer.  The Provider, after due investigation, knows of no reason why each Account should not be collected in full within 120 days of its Billing Date in the ordinary course of business by or on behalf of Buyer or its assignee.  No other person or entity participated in the rendering of such Services or is entitled to any payment whatsoever in respect of such Services.  All Services were rendered in full in the ordinary course of business, in accordance with the prevailing standards of the practice of medicine in the County in which the Provider operates, and the amounts charged for such Services as set forth in the Accounts represent the standard amounts billed by the Provider for the same or similar services in the ordinary course of business at the date on which such Services were rendered.  All Services were rendered and all paperwork in respect of the Accounts was completed in accordance with all applicable Laws, including, without limitation and to the extent applicable, all Laws governing the Medicare programs and all rules of the relevant insurance companies who are the respective Payors of the Accounts.  Each Account is the legal, valid and binding obligation of the respective Payor enforceable in accordance with its terms and is not subject to any dispute, offset, counterclaim or encumbrance of any kind.

**4.10      Sale of Accounts Conveys Valid Enforceable Claims Against Payors.**  Each and every step has been taken by Provider pursuant to the terms of this Agreement or otherwise to assign to Buyer, Provider's rights to collect and enforce payment of the Account payable by the Payor and the assignment thereof shall transfer fully enforceable rights to Buyer against each Payor of the respective Account to collect the full amount of each of the Accounts from such Payor.  Each Account is in accordance with and does not contravene any laws, rules or regulations applicable thereto, or contract between the Provider and the Payor applicable thereto, and no party to an Account or related contract is in violation of any such law, rule or regulation.

**4.11      Solvency.**  Provider is not insolvent and will not be rendered insolvent as a result of the sale and transfer of the Assets pursuant to this Agreement or as a result of the transaction contemplated by this Agreement. For purposes hereof, the Provider's tangible assets are in excess of the total amount of its liabilities; (i) including for

purposes of this definition all liabilities, whether or not reflected on a balance sheet prepared in accordance with generally accepted accounting principles, and whether direct or indirect, fixed or contingent, secured or unsecured, disputed or undisputed; (ii) Provider is able to pay its debts and obligations in the ordinary course as they mature; and (iii) Provider has sufficient funding to carry on its business as presently conducted by it.

    **4.12    Representations, Warranties and Covenants of Provider Relating to the Purchase of Accounts from Provider.** In addition to the other representations, warranties and covenants of Provider set forth herein, Provider does hereby represent, warrant, and covenant with regard to each of the Accounts identified in Exhibit A attached hereto and in Schedule 1 to any Purchase Supplement delivered pursuant to Section 1.4 hereof that, with regard to each of the Accounts identified therein:

      (a)    the services stated in the Accounts were actually provided;

      (b)    the health care fees charged are customary, reasonable and are payable at such rate under the terms of the related patient's health care insurance coverage with an approved Payor;

      (c)    the private medical insurance coverage by the responsible Payor was effective at the time of treatment;

      (d)    the Provider has pre-verified insurance coverage by the Payor prior to admittance of a patient;

      (e)    the claim for payment has been submitted to the responsible Payor within the last 90 days and has been acknowledged by such Payor;

      (f)    all supporting documentation necessary to verify a claim have been submitted to the Payor by the Provider;

      (g)    that the contracted patient co-payment amounts on the Accounts and their related Adjusted Value are as stated in Exhibit A or Schedule 1 to the Purchase Supplement to this Agreement; and

      (h)    the Provider acknowledges that in the event of insolvency of the Payor of any of the Accounts hereunder, that the Provider hereby covenants and agrees to repurchase such Accounts, up to a maximum of ten percent (10%) by Adjusted Value of the subject Accounts, pursuant to and in full compliance with Section 2.2 of this Purchase Agreement.

      (i)    the accounts are free of fraud and are considered collectible from third parties, other than the patient or their guarantor.

      (j)    the accounts contain accurate billing and are free of errors.

    **4.13    Sale of Accounts to be Reflected on Provider's Books and Records.** Provider will reflect on all of its books, records, tax filings and financial statements, and in all its dealings with the Payors of such Accounts, that it has sold the Accounts and related Assets to Buyer and shall treat and characterize all Purchases as sales of the Accounts and related Assets for accounting and tax purposes. The Provider hereby affirms that it has valid business reasons for selling the Accounts to the Buyer as contemplated by this Agreement rather than obtaining a loan with the Accounts being utilized as collateral therefor.

    **4.14    Receivables are Accounts.** Each of the Accounts complies with the definition of "Eligible Account" as set forth in Section 9.1 hereof.

    **4.15    Provider's Tax Returns.** Provider has filed on a timely basis all federal, state and local tax returns required in the conduct of its operations.

**4.16    Provider's Pension and Profit Sharing Plans**.  All Provider (and any of Provider's consolidated subsidiaries) pension or profit sharing plans have been fully funded in accordance with Provider's applicable obligations.

**4.17    Provider's Principal Place of Business**.  Provider's principal place of business and chief executive office are located at the address set forth in the first paragraph of this Agreement, and have been located at such address for the past four months.  Except as otherwise disclosed to Buyer in writing on or prior to the date of this Agreement, Provider conducts business only in the County set forth in the recitals to this Agreement.

**4.18    Identity of Provider**.  The full and correct legal name of the Provider is as set forth in the first paragraph of this Agreement, Provider has not changed its name in the last six years, and Provider does not have any trade names, fictitious names, assumed names or "doing business as" names except as have previously been disclosed in writing to the Buyer.

**4.19    No Adverse Change**.  No event has occurred which adversely affects Provider's operations, including its ability to perform the transactions contemplated by this Agreement.

**4.20    Financing Statements**.  There are no financing statements now on file in any public office governing any property of any kind, real or personal, in which Provider is named in or has signed as the debtor, except the financing statement or statements filed or to be filed in respect of this Agreement or those statements now on file that have been disclosed in writing by Provider to Buyer.  Provider will not execute any financing statement in favor of any other person or entity, excepting Buyer, for the term of this Agreement.

**4.21    No Set-Offs**.  There are no set-offs, allowances, discounts, deductions, counterclaims, or disputes with respect to any Account, either at the time it is accepted by Buyer for purchase or any time prior to the date it is to be paid.  "Dispute," as used in the last preceding sentence, shall mean any claim by Payor against Provider, of any kind whatsoever, valid or invalid, that is asserted by the Payor as a basis for refusing to pay an Account either in whole or in part.

**4.22    No Change of Address**.  Provider shall not change its mailing address, chief executive office, principal place of business or place where such records are maintained without 30 days prior written notice to Buyer.

**4.23    No Other Pledges**.  Provider will not transfer, pledge or give a security interest in any of the Accounts to anyone other than Buyer.

**5.      Certain Understandings and Agreements of the Parties**.

**5.1    Access and Cooperation**.  From and after the date hereof (i) Buyer and any other authorized agents and appointed representatives of Buyer including its Servicer shall have reasonable access during normal business hours to all Account records and any and all other documentation relating to the Accounts, including, without limitation, patient records and information, and (ii) the Provider shall promptly furnish or cause to be furnished to Buyer all information (including turning over originals or copies of such information) requested by Buyer or any of its agents relating to the Assets.  Upon a breach by Provider of any of its representations, warranties or covenants hereunder, all costs, fees and expenses incurred by Buyer in conducting any such review or audit shall be paid by Provider to Buyer, upon demand.  After the Closing Date for each Purchase the Provider shall continue to cooperate fully with Buyer and Buyer's agents in any and all matters related to any Assets, including, without limitation, matters relating to the collection of any Account.  It is further understood and agreed that Buyer and its agents shall have the right at any time to communicate with and seek the assistance of Payors, patients and relatives or guardians of patients of the Provider for the purpose of facilitating the servicing and collection of the Accounts.

9

5.2   **Handling of Accounts**. From and after the date hereof the Assets shall be handled by or on behalf of the Provider in the ordinary course of the business, and no act shall be done or omitted to be done by or on behalf of the Provider, which act or omission could jeopardize collection of payment on any Account by Buyer; provided, however, that no Accounts shall re-billed by or on behalf of the Provider or any other person or entity without the prior written consent of Buyer and the Provider shall make all appropriate entries in its computer or other billing system for billing or re-billing of Accounts which require that all payments be forwarded directly from the Payors of such Accounts to Buyer's Lock-Box Account described in Section 5.5(b) hereof. Provider (or its agents) shall be responsible for billing, re-billing, and collecting all amounts with respect to the Accounts following the Closing Date for a Purchase related thereto and Buyer shall refer all inquiries concerning the Accounts from the Buyer of such Accounts to Provider.

5.3   **Future Encumbrances**. It is understood and agreed that the Provider shall not, at any time, for any reason or under any circumstances, cause or permit any of the Assets to become subject to any Liens other than the lien of Buyer or its assigns in the Accounts. It is further understood and agreed that, as of the Closing Date for each Purchase, the Provider shall have no right, title or interest in or to the Assets related thereto, and shall not, at any time, for any reason or under any circumstances, hold itself out to third parties as having any right, title or interest in or to such Assets. Without limiting the generality of the foregoing, the Provider shall not, at any time, for any reason or under any circumstances, bill any person or entity, including, without limitation, any governmental agency, in connection with the collection, in whole or in part, of any Account, except pursuant to the written request of the Buyer.

5.4   **Cooperation in Litigation**. Provider shall fully cooperate with Buyer in the defense or prosecution of any litigation or proceeding which may be instituted hereafter against Buyer or Buyer's assigns on account of enforcement of Buyer's ownership of the Assets and the enforcement of payment from the related Payor thereof, and Provider shall indemnify Buyer or their respective agents or assigns for any loss or expense including their reasonable attorneys fees incurred by such parties relating to or arising out of the Provider's billing, administration or handling of the Assets prior to or after the Closing Date related thereto.

5.5   **Power of Attorney and Pay-Over of Receivables**.

(a)   The Provider hereby authorizes Buyer and its collection agent to open any and all mail or other correspondence in respect of any of the Assets addressed to the Provider or to any agent of the Provider (if delivered to Buyer if received on or after the Closing Date for the related Purchase thereof), and hereby grants to Buyer and its collection agent a power of attorney which is irrevocable and coupled with an interest to do any and all of the following:

(i)   to endorse and cash any checks or instruments in respect of any of the Assets ("Funds") made payable or endorsed to the Provider or its order, whether received by Buyer or received by any other party and delivered over to Buyer pursuant to Section 5.5(b) below;

(ii)   receive, open and dispose of any mail addressed to Provider and put Buyer's address on any statements mailed to Payors;

(iii)   pay, settle, compromise, prosecute or defend any action, claim, conditional waiver and release, or proceeding relating to Accounts;

(iv)   upon the occurrence of a default, notify in the name of Provider the U.S. Post Office to change the address for delivery of mail addressed to Provider to such address as Buyer may designate. Buyer shall turn over to Provider all such mail not relating to the Accounts;

10

    (v)    execute and file on behalf of Provider any financing statement deemed necessary or appropriate by Buyer to protect its interest in and to the Accounts or Assets, or under any provision of this Agreement; and

    (vi)    to do all things necessary and proper in order to carry out this Agreement.

    (b)    The Provider agrees that it will (i) hold in trust for the sole and exclusive benefit of Buyer, (ii) segregate from other funds of Provider, (iii) forward within one business day of receipt thereof to the lock box account of the Buyer maintained by it with City National Bank (the "Lock Box Account") and (iv) cause its agents to forward immediately to Buyer's Lock Box Account at the address stated herein, any Funds received by the Provider or its agents after the date hereof in payment or partial payment of any Accounts (including any Medicare payments with regard to Medicare Accounts, if any, which the Provider will continue to receive notwithstanding their sale and assignment to Buyer). The Provider further agrees that, at Buyer's or its collection agent's request, the Provider shall render to such party a full and complete accounting of all Funds received in payment or partial payment of any Accounts by or on behalf of the Provider or any other person or entity other than Buyer, of which the Provider, after due investigation, is aware. Unless otherwise notified in writing by Buyer, Buyer's Lock Box Account is:

    Brandywine Health Services of Mississippi, aka Choctaw County Medical Center
    P.O. Box 54297
    Los Angeles, CA 90051-0297

    With each remittance of Funds to the Lock Box Account, the Provider shall include a report identifying the related Account and the related Payor.

    (c)    Buyer and Provider each acknowledge that the Payor(s) of the Accounts may in the normal course of business prior to receiving official notification, by the Buyer's Servicer (Medical Tracking Services, Inc.), of Buyer's purchase of the Accounts, forward to the Provider payment or partial payment on the Accounts.

    (d)    Buyer and Provider also each acknowledge that the Payor(s) of the Accounts may inadvertently, even after receiving official notification of Buyer's purchase of the Accounts, forward to the Provider payment or partial payment on the Accounts. Provider agrees to provide Buyer with a daily accounting of all Funds received on all accounts receivable of Provider including the Accounts, during the period commencing the date of the execution of this Agreement and to forward all payments received to the buyers lock box within one day following receipt of such payments.

    (e)    Provider agrees that in connection with the purchase of the Accounts by Buyer, the Provider shall indicate in its computer files that the Accounts have been sold to the Buyer and will be identified by account number, patient name, Payor name and the unpaid balance of each Account as of such date.

    (f)    Provider shall cause in house to continue to bill and service all Accounts in accordance with procedures outlined in the Servicing Contract and as follows:

    (i)    Payors are initially billed by electronic submission;

    (ii)    Within 60 days, either the payment or EOB (Explanation of Benefits) status is received on the Accounts. Those accounts not paid, or where there is no EOB status report within 60 days, will be rebilled by in-house. If Provider/ billing party receives a status report on an account requesting additional information, Provider will provide such information immediately. Subsequently, if an Account is not paid or status for claim is not received within an additional thirty day period, the Account will be billed by in-house a final time;

    (iii)    During the billing and rebilling period, Provider will provide Buyer with a weekly status report on all Accounts outstanding; and

(iv)     All bills shall indicate conspicuously on their face and in BOX 33 of HCFA 1500 forms that the Accounts represented thereby have been transferred to Buyer and should be paid directly to the Buyer's Lock Box Account.

5.6     **Confidentiality.** The Provider hereby covenants and agrees that it shall not disclose any information or materials communicated to or obtained by it with respect to any of the Accounts, whether or not that information is or has been directly or indirectly communicated or obtained, including, without limitation, the terms of this Agreement (including the exhibits and any schedules hereto) (the "Confidential Materials"), to any third party, unless specifically authorized in writing by Buyer to do so; provided, however, that the Provider may disclose certain Confidential Materials to its officers, directors and employees as is reasonably necessary for compliance with the terms of this Agreement. If Buyer gives the Provider written authorization to make any disclosures of Confidential Materials, the Provider shall do so only within the limits and to the extent of that authorization. Furthermore, the Provider shall take all actions necessary to prevent disclosure of any Confidential Materials to any third party. In the event that the Provider, or anyone whom the Provider supplies any information contained in such Confidential Materials under the terms of a subpoena, order, civil investigation demand or similar process issued by a court of competent jurisdiction or by a governmental body, the Provider agrees to (a) notify Buyer immediately of the existence, terms and circumstances surrounding such request, (b) consult with Buyer on the advisability of taking legally available steps to resist or narrow such request, and (c) if disclosure of such information is required, furnish only that portion of the Confidential Materials which, in the opinion of the disclosing party's counsel, such disclosing party is legally compelled to disclose and advise Buyer as far in advance of such disclosure as is possible so that Buyer may seek an appropriate protective order or other reliable assurance that confidential treatment will be accorded such Confidential Materials. Without limiting the generality of the foregoing, the Provider shall not oppose actions by Buyer or Medical Capital Corporation to obtain an appropriate protective order or other reliable assurance that confidential treatment would be accorded such Confidential Materials.

5.7     **No Proceedings.** Provider hereby agrees that it will not institute against Buyer or join any other person or entity in instituting against Buyer, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceeding, or other proceeding under any federal or state bankruptcy or similar law.

6.     **Indemnification and Claims.**

6.1     **Indemnification by the Provider.** The Provider shall forthwith on demand indemnify and hold harmless Buyer and its officers, directors, shareholders, assigns and agents (each an "Indemnified Party") from and against any and all claims, losses, damages, liabilities and expenses (including, without limitation, settlement costs and any legal, accounting and other expenses for enforcing Buyer's rights and remedies hereunder, or for investigating, prosecuting or defending any actions or threatened actions) awarded or incurred by any of them arising out of or relating to this Agreement or the transactions contemplated hereby or the use of proceeds therefrom, together with interest on cash disbursements in connection therewith at the rate of eighteen percent (18%) per annum from the date cash disbursements were made or incurred by any Indemnified Party until paid in full by the Provider, including without limitation relating to each and all of the following:

(a)     Any breach or alleged of any representation or warranty made by the Provider in this Agreement or any Exhibit to this Agreement, in any Purchase Supplement or in any document delivered in connection herewith;

(b)     Any breach or alleged breach of any covenant, agreement or obligation of the Provider contained in this Agreement, any Purchase Supplement, any Exhibit to this Agreement or document provided in connection herewith, or any other instrument contemplated by this Agreement;

12

(c)      Any misrepresentation or alleged misrepresentation contained in any statement or certificate furnished by the Provider pursuant to this Agreement, or any Purchase Supplement or in connection with the transactions contemplated by this Agreement;

(d)      Any Retained Liabilities or other claims against, or liabilities or obligations of, the Provider not specifically assumed by Buyer pursuant to this Agreement; and

(e)      The failure to obtain the protections afforded by compliance with the notification requirements of the Bulk Sales Laws in force in the jurisdictions contemplated by this Agreement.

**6.2      Claims for Indemnification**.  Whenever any claim shall arise for indemnification hereunder, the Buyer shall promptly notify Provider of the claim and, when known, the facts constituting the basis for such claim. In the event of any claim for indemnification hereunder resulting from or in connection with any claim or legal proceedings by a third party, the notice to the Provider shall specify, if known, the amount or an estimate of the amount of the liability arising therefrom. The Buyer shall not settle or compromise any claim by a third party for which it is entitled to indemnification hereunder, without the prior written consent of the Provider (which shall not be unreasonably withheld) unless the Provider shall have failed to pay indemnification obligations as they accrue or in the event that suit shall have been instituted against it and the indemnifying party shall not have taken control of such suit after notification thereof as provided in Section 6.3 of this Agreement.

**6.3      Defense by Indemnifying Party**.  In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any claim or legal proceeding by a person who is not a party to this Agreement against the Buyer, the Provider at its sole cost and expense may, upon written notice to the Buyer, assume the defense of any such claim or legal proceeding if it acknowledges to the Buyer in writing its obligations to indemnify the Buyer or any other Indemnified Party with respect to all elements of such claim. The Buyer shall be entitled to participate in the defense of any such action, with its counsel and at its own expense. If the Provider does not assume the defense of any such claim or litigation resulting therefrom, (a) the Buyer or such Indemnified Party, as the case may be, may defend against such claim or litigation, in such manner as it may deem appropriate, including but not limited to, settling such claim or litigation, after giving notice of the same to the Provider, on such terms as the Buyer or such Indemnified Party, as the case may be, may deem appropriate, and (b) the Provider shall be entitled to participate in (but not control) the defense of such action, with its counsel and at its own expense. If the Buyer or such Indemnified Party defended such third party claim or the amount or nature of any such settlement, the Provider shall have the burden to prove by a preponderance of the evidence that the Buyer did not defend or settle such third party claim in a reasonably prudent manner.

**6.4      Manner of Indemnification**.  All indemnification hereunder by the Provider shall be effected by payment of cash or delivery of a certified or official bank check in the amount of the indemnification liability and shall be payable upon demand by the Indemnified Party.

**7.      Conditions to Closing**.

**7.1      Conditions to Obligations of Each Party**.  The obligation of each party hereto to consummate each Purchase contemplated hereby shall be subject to the fulfillment, at or prior to the Closing Date for such Purchase, of the following conditions:

(a)      **No Action or Proceedings**.  No claim, action, suit, investigation, or other proceeding shall be pending or threatened before any court or governmental agency which presents a substantial risk of the restraint or prohibition of the transactions contemplated by this Agreement or the obtaining of material damages or other relief in connection therewith.

(b)  **Compliance with Law.**  There shall have been obtained all permits, approvals, and consents of all governmental bodies or agencies which counsel for either party hereto may reasonably deem necessary or appropriate so that consummation of the transactions contemplated by this Agreement will be in compliance with applicable laws.

7.2  **Conditions to Obligations of Buyer.**  The obligations of Buyer to consummate any Purchase contemplated hereby shall be subject to the fulfillment, at or prior to the Closing Date for such Purchase, of the following additional conditions:

(a)  **Representations and Warranties True.**  The information set forth in Exhibit A or, as applicable, any Purchase Supplement and all schedules and exhibits attached thereto is true and accurate in all material respects as it relates to the Accounts. The representations and warranties of the Provider contained in this Agreement, or in any other document of such party delivered pursuant hereto shall be true and correct in all material respects on the Closing Date for such Purchase, and on such Closing Date the Provider shall have delivered to Buyer a certificate to such effect signed by the President or any Vice President and the Secretary or any Assistant Secretary of the Provider.

(b)  **Performance of the Provider.**  Each of the obligations of the Provider to be performed by it on or before the Closing Date for any Purchase pursuant to the terms of this Agreement shall have been duly performed in all material respects on or before such Closing Date, and at the Closing related thereto, the Provider shall have delivered to Buyer a certificate to such effect signed by the President or any Vice President and the Secretary or any Assistant Secretary of the Provider.

(c)  **Authority.**  All actions required to be taken by, or on the part of, the Provider to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby shall have been duly and validly taken by the Board of Directors of the Provider.

(d)  **Delivery of Documentation.**  Buyer shall have received the following documentation:

(1)  in the case of the initial Closing Date, copies, certified by the Secretary or any Assistant Secretary of the Provider, of resolutions of the Board of Directors of the Provider or the Executive Committee thereof and the resolutions of the shareholders of such party (if required) authorizing the execution, delivery and performance of this Agreement and all other Agreements, documents and instruments relating hereto and the consummation of the transactions contemplated hereby; in the form as attached hereto as "Exhibit B",

(2)  in the case of the initial Closing Date, Form UCC-1 financing statement(s) executed by the Provider, evidencing the security interest in all accounts receivable of the Provider (other than the Accounts being purchased) as provided in Section 2.4 hereof, in form and substance satisfactory to Buyer and duly filed with the appropriate governmental authority;

(3)  in the case of each Purchase, Form UCC-1 financing statement(s) executed by the Provider, evidencing the sale of the Accounts from the Provider to the Buyer as provided in Section 2.2 hereof, in form and substance satisfactory to counsel for Buyer and duly filed with the appropriate governmental authority;

(4)  bill of sale and assignment in the form as attached hereto as "Exhibit C", and powers of attorney, in form and substance attached hereto as "Exhibit D" or reasonably satisfactory to counsel for Buyer, with respect to the Assets to be purchased on such Closing Date;

(5)  such further instruments of sale, transfer, conveyance, assignment or delivery covering the Assets or any portion thereof as Buyer may require to assure the full and effective sale, transfer, conveyance, assignment or delivery of the Assets to Buyer;

14

(6)      a receipt evidencing the Provider's receipt of the Purchase Price for such Purchase in the form attached hereto as "Exhibit "E" defined in Section 2.1 hereof;

(7)      evidence that each Payor of the Accounts has received written notice from the Provider to the effect that the Accounts have been transferred to Buyer and all payments on the Accounts are to be sent directly to Buyer's Lock-Box Account; and

(8)      a Certificate of Custodian of Records for the Accounts, naming the Buyer or Buyer's Administrator as custodian of the medical records related to the Accounts in a form attached hereto as "Exhibit F";

(9)      such other closing documents as Buyer may reasonably request.

(e)    **No Adverse Changes**.  Since the date of this Agreement and the Closing Date for such Purchase there shall not have occurred any damage, destruction or loss with respect to any of the related Assets, whether or not covered by insurance, nor shall there have occurred any other event or condition which has made or which reasonably may be expected to have a material and adverse effect on the value of such Assets.

## 8.    **Miscellaneous**.

**8.1**    **Notices**.  All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed given (i) if delivered personally or (ii) three (3) days after mailed by certified or registered mail, postage prepaid, return receipt requested, or (iii) upon receipt if sent by prepaid telegram, telex or telecopy, in each case to the parties, their successors in interest or their assignees at the following addresses or telecopy numbers, or at such other addresses or telecopy numbers as the parties may designate by written notice in the manner aforesaid:

If to Buyer to:    MCC Special Purpose Corporation VIII
3770 Howard Hughes Parkway, Suite 301, Las Vegas, NV 89109
Fax no: (775) 825-5313

and; Buyer's Administrator:
Medical Capital Corporation
2100 South State College Blvd, Anaheim, CA 92806
Fax No.:  (714) 935-3114

If to the Provider, to the address or telecopy number set forth in the first paragraph of this Agreement.

**8.2**    **Assignability and Parties in Interest**.  The parties hereto acknowledge and agree that this Agreement, including all rights and obligations contained herein, may be sold, assigned or otherwise transferred, in whole or in part, by Buyer in its sole and absolute discretion without the consent of the Provider.  This Agreement is not assignable by the Provider.  This Agreement shall inure to the benefit of and be binding upon Buyer and the Provider, and their respective permitted successors and assigns.  This Agreement shall not benefit or create any right or cause of action in any or on behalf of any person or entity other than the parties hereto and their respective permitted successors and assigns, assignable by the Provider.  This Agreement shall not benefit or create any right or cause of action in any or on behalf of any person or entity other than the parties hereto and their respective permitted successors and assigns.

**8.3**    **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one and the same Agreement.

**8.4**    **Severability**.  Any provision of this Agreement which is invalid, illegal, or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality, or unenforceability,

without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal, or unenforceable in any other jurisdiction.

    **8.5**    **Due Diligence Investigation**.  All representations and warranties contained herein which are made to the best knowledge of a party shall require that such party make reasonable investigation and inquiry with respect thereto to ascertain the correctness and validity thereof.  No investigation or inquiry made by or on behalf of Buyer shall in any way affect or lessen the representations, warranties and covenants made and entered into by the Provider hereunder.

    **8.6**    **Origination Fee; Expenses of Transaction and Enforcement**.  The Provider shall pay to Buyer, on each Closing Date, an origination fee (the "Origination Fee") specified in Exhibit A hereto and, if applicable, Schedule 1 to any Purchase Supplement.  The Provider shall be responsible for paying all sales and transfer taxes, together with all other transfer or recordation fees and expenses including any legal fees and costs associated therewith, arising out of the transfer of the Assets to Buyer pursuant to the terms of this Agreement.

    **8.7**    **Construction**.  This Agreement shall, in all cases, be construed simply, according to its fair meaning, and not strictly for or against either party.  Any section and paragraph headings contained in this Agreement are for convenience of the reference only and shall not affect the construction or interpretation of this Agreement.

    **8.8**    **Survival of Representations and Warranties**.  All representations, warranties, covenants and indemnities made by the parties in this Agreement or in any instrument or document furnished in connection herewith shall survive the initial Closing and any subsequent Closing for the sale of Accounts to Buyer.

    **8.9**    **Governing Law; Submission to Process**.  PROVIDER HEREBY IRREVOCABLY SUBMITS ITSELF TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS SITTING IN THE STATE OF NEVADA AND AGREES AND CONSENTS THAT SERVICE OF PROCESS MAY BE MADE UPON IT IN ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE PURCHASE OF ACCOUNTS OR ANY OTHER RELATIONSHIP BETWEEN PROVIDER AND BUYER BY ANY MEANS ALLOWED UNDER NEVADA OR FEDERAL LAW. ANY LEGAL PROCEEDING ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, THE PURCHASE OF ACCOUNTS OR ANY OTHER RELATIONSHIP BETWEEN PROVIDER AND BUYER SHALL BE BROUGHT AND LITIGATED EXCLUSIVELY IN ANY ONE OF THE UNITED STATES DISTRICT COURTS SITTING IN THE STATE OF NEVADA TO THE EXTENT IT HAS SUBJECT MATTER JURISDICTION, AND OTHERWISE IN ANY COURT OF THE STATE OF NEVADA HAVING JURISDICTION. NOTWITHSTANDING THE FOREGOING, BUYER RESERVES THE RIGHT, IN ITS SOLE AND ABSOLUTE DISCRETION, TO COMMENCE LEGAL ACTION AGAINST THE PROVIDER AND /OR GUARANTOR IN ANY OTHER JURISDICTION IN WHICH THE PROVIDER AND/OR GUARANTOR ARE DOING BUSINESS. THE PARTIES HERETO HEREBY WAIVE AND AGREE NOT TO ASSERT, BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, THAT ANY SUCH PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR THAT THE VENUE THEREOF IS IMPROPER."

Initials of Provider

    **8.10**    **Waiver of Jury Trial, Punitive and Consequential Damages, etc.**  EACH OF PROVIDER AND BUYER HEREBY (A) IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY OR ASSOCIATED HEREWITH; (B) IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR DAMAGES OTHER THAN, OR IN ADDITION TO,

16

ACTUAL DAMAGES; (c) CERTIFIES THAT NO PARTY HERETO NOR ANY REPRESENTATIVE OR AGENT OR COUNSEL FOR ANY PARTY HERETO HAS REPRESENTED, EXPRESSLY OR OTHERWISE, OR IMPLIED THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS; AND (D) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY, AMONG OTHER THINGS, BY THE MUTUAL WAIVERS AND CERTIFICATIONS CONTAINED IN THIS SECTION 8.10. PROVIDER AUTHORIZES ANY ATTORNEY TO APPEAR FOR PROVIDER, IN ANY COURT OF RECORD, WITHOUT PRIOR NOTICE OR DEMAND FOR PAYMENT, TO WAIVE THE ISSUANCE AND SERVICE OF PROCESS, AND TO CONFESS JUDGMENT AGAINST PROVIDER IN FAVOR OF BUYER, OR ANY OTHER PARTY THEN ENTITLED TO ENFORCE THE TERMS OF THIS AGREEMENT FOR SUCH AMOUNT, INCLUDING PRINCIPAL, INTEREST, REASONABLE ATTORNEYS' FEES, AND COSTS, AS PROVIDER MAY BE LIABLE TO BUYER BY REASON OF THIS AGREEMENT.

Initials of Provider

**8.11   Complete Agreement.**  THIS AGREEMENT, ANY PURCHASE SUPPLEMENT, THE EXHIBITS AND SCHEDULES HERETO AND THE DOCUMENTS DELIVERED OR TO BE DELIVERED PURSUANT TO THIS AGREEMENT SET FORTH THE ENTIRE UNDERSTANDING AND AGREEMENT OF THE PARTIES HERETO WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  NO MODIFICATION OR AMENDMENT OF OR SUPPLEMENT TO THIS AGREEMENT OR SUCH OTHER DOCUMENTS SHALL BE VALID OR EFFECTIVE UNLESS THE SAME IS IN WRITING AND SIGNED BY THE PARTY AGAINST WHOM IT IS SOUGHT TO BE ENFORCED.

**8.12   Equitable Relief.**  In the event Provider commits any act or omission which (i) prevents or unreasonably interferes with: (a) Buyer's exercise of the rights and privileges arising under the power of attorney granted in Section 5.5 of this Agreement; or (b) Buyer's perfection of or levy upon the ownership or security interest granted in the Accounts, including any seizure of any Account, or (ii) constitutes a breach of any of its representations, warranties or covenants hereunder, such conduct will cause immediate, severe, incalculable and irreparable harm and injury, and shall constitute sufficient grounds to entitle Buyer to an injunction, writ of possession, or other applicable relief in equity, and to make such application for such relief in any court of competent jurisdiction, without any prior notice to Provider.

**8.13   Cumulative Rights.**  All rights, remedies and powers granted to Buyer in this Agreement, or in any other instrument or agreement given by Provider to Buyer, are cumulative and may be exercised singularly or concurrently with such other rights as Buyer may have.  These rights may be exercised from time to time as to all or any part of the Accounts purchased hereunder as Buyer in its discretion may determine.  Buyer may not waive its rights and remedies unless the waiver is in writing and signed by Buyer.  A waiver by Buyer of a right or remedy under this Agreement on one occasion is not a waiver of the right or remedy on any subsequent occasion.

**8.14   Attorney's Fees.**  Provider agrees to reimburse Buyer upon demand for all attorney's fees, court costs and other expenses incurred by Buyer in enforcing this Agreement and protecting or enforcing its interest in the Accounts or the Assets, in collecting the Accounts or the Assets, or in the representation of Buyer in connection with any bankruptcy case or insolvency proceeding involving Provider, the Assets, any Payor, or any Account.  At the time this Agreement is executed, Provider will reimburse Buyer for all of its attorneys fees and disbursements, Adjustments, and out-of-pocket expenses incurred in connection with the negotiation, preparation and execution of this Agreement.

**8.15   Interest.**  If any obligation of the Provider hereunder is not paid when due, such obligation shall bear interest at a per annum rate equal to 18 percent until the earlier of (i) payment in full of such obligation to Buyer or (ii) entry of a final judgment therefor, at which time the principal amount of any money judgment

17

remaining unsatisfied shall accrue interest at the highest rate allowed by applicable law. Provider and Buyer intend to contract in strict compliance with applicable usury law from time to time in effect. In furtherance thereof such parties stipulate and agree that none of the terms and provisions contained in this Agreement shall ever be construed to provide for interest in excess of the maximum amount of interest permitted to be charged by applicable law from time to time in effect. Neither Provider nor any present or future guarantors, endorsers, or other persons hereafter becoming liable for payment of any obligation hereunder shall ever be liable for unearned interest thereon or shall ever be required to pay interest thereon in excess of the maximum amount that may be lawfully charged under applicable law from time to time in effect and the provisions of this Section 8.15 shall control over all other.

9.     **Definitions**.  When used herein, the following terms shall have the meanings set forth below:

9.1     "Eligible Account" means:

(a)     the obligor of which is a United States resident.

(b)     that is a valid and binding obligation of the obligor thereof enforceable against such obligor in accordance with its terms and is not subject to any dispute, offset, counterclaim or defense whatsoever;

(c)     that is denominated and payable in U.S. dollars in the United States;

(d)     that constitutes an "account" as defined in the Uniform Commercial Code as in effect in the jurisdiction governing the perfection of Buyer's ownership interest, or in the alternative, security interest therein;

(e)     as to which Buyer's security interest therein will be perfected as a valid ownership interest free and clear of all adverse claims or, in the alternative, as a first priority security interest under the applicable law upon consummation of the Purchase thereof by Buyer;

(f)     the payment of which is a direct obligation of a Payor;

(g)     with regard to which each of the representations and warranties of Provider set forth in Section 4.12 hereof is true and correct; and

(h)     the claim for payment has been submitted to the responsible Payor within 90 days prior to the applicable Closing Date and has been acknowledged by such Payor and is due and payable within 120 days of its Billing Date.

9.2     "Adjusted Value" means the Gross Face Value of an Account minus contractual adjustments, if any, and minus the contracted amount of the Patient Co-Payment, if any, as certified by the Provider prior to its acquisition from the Provider.

9.3     "Billing Date" means the day on which Provider submitted a claim or bill to a Payor for payment and collection of an Account.

9.4     "Gross Face Value" means the total billing amount of each Account inclusive of the amount of the Patient Co-Payment and the amount payable by a Payor.

9.5     "Patient Co-Payment" means the amount payable by the patient for the services provided by Provider and not payable by a Payor with regard to each Account.

9.6     "Payor" means Medicare, Medicaid, Champus, any other division of a state or the federal government, an insurance company, Health Maintenance Organization, Accredited Hospital, Skilled Nursing Facility, or Fortune 500 company. All of the preceding entities must be acceptable to the buyer's financial criteria.

18

9.7     "Payment Period" means that period commencing on the 1st day of each month through the last day of that month.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

Provider:                                                          Corporate Seal
Brandywine Health Services of Mississippi,
Inc., aka Choctaw County Medical Center

By: _____

Jeffrey A. Morse
President

Notary statement: This person appeared before this _____ 2nd _____ day of _____ Aug. _____, 2004 and signed this document as above in the county of _____ Worcester _____, State of _____ Maryland _____. My Notary Public stamp is affixed below.

Notary Public Stamp & Authority

Commission Expires 8/1/08

Buyer:                                              Buyer's Administrator:
MCC Special Purpose Corporation VIII               Medical Capital Corporation

By: _____           By: _____

Joseph J. Lampariello                               Joseph J. Lampariello
Chief Operating Officer                             Special Agent

19

9.7    "Payment Period" means that period commencing on the 1st day of each month through the last day of that month.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

Provider:                                                                        Corporate Seal
Brandywine Health Services of Mississippi,
Inc., aka Choctaw County Medical Center

By: _____
    Jeffrey A. Morse
    President

Notary statement: This person appeared before this _____ 2nd _____ day of __ Aug. __, 2004 and signed this document as above in the county of __ Worcester __, State of __ Manforc __. My Notary Public stamp is affixed below.

_____
Notary Public Stamp & Authority
Commission Expires 8/1/08

Buyer:                                                Buyer's Administrator:
MCC Special Purpose Corporation VIII                  Medical Capital Corporation

By: _____                           By: _____
    Joseph J. Lampariello                                 Joseph J. Lampariello
    Chief Operating Officer                               Special Agent

19

9.7    "Payment Period" means that period commencing on the 1st day of each month through the last day of that month.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**Provider:**                                                                          Corporate Seal
**Brandywine Health Services of Mississippi,**
**Inc., aka Choctaw County Medical Center**

By _[signature]_
      Jeffrey A. Morse
      President

Notary statement:This person appeared before this _____ day of _____, 2004 and signed this document as above  in the county of _____, State of _____. My Notary Public stamp is affixed below.


Notary Public Stamp & Authority




**Buyer:**                                                    **Buyer's Administrator:**
**MCC Special Purpose Corporation VIII**                      **Medical Capital Corporation**


By: _____                                          By: _____
      Joseph J. Lampariello                                        Joseph J. Lampariello
      **Chief Operating Officer**                                  **Special Agent**

## GUARANTY

The undersigned hereby personally, absolutely and unconditionally guarantee(s), jointly and severally, the payment and performance of Provider's representations, warranties and covenants under this Agreement and any Purchase Supplement, and agree(s) to pay to Buyer upon demand all losses, damages and expenses of Buyer resulting from and/or incurred in connection with any breach by Provider thereof.  The undersigned shall be primarily liable for such obligations and Buyer may invoke the benefits of this guaranty without pursuing any remedies against Provider, without the necessity of joining all guarantors in any action hereon, and without proceeding against any collateral for such obligation.

SIGNED:

Jeffrey A. Morse

## EXHIBIT A

### INITIAL ACCOUNTS RECEIVABLE

See "Schedule 1" attached hereto and made a part hereof

| | | |
|---|---|---|
| Aggregate Gross Face Value................................. | $559,461.62 | |
| Aggregate Adjusted Value................................. | $318,957.38 | |
| Advance Rate Amount................................. | $255,165.90 | 80 % |
| Deferred Purchase Price................................. | $46,503.99 | 14.58 % |
| Discount to Buyer................................. | $17,287.49 | 5.42 % |
| Origination Fee................................. | $9,568.72 | 3 % |


Jeffrey A. Morse
President

# EXHIBIT A

## INITIAL ACCOUNTS RECEIVABLE

See **"Schedule 1"** attached hereto and made a part hereof

| | | |
|---|---|---|
| Aggregate Gross Face Value...................................... | $_____ | |
| Aggregate Adjusted Value...................................... | $_____ | |
| Advance Rate Amount........................................ | $_____ | 80 % |
| Deferred Purchase Price........................................ | $_____ | 14.58 % |
| Discount to Buyer.. .................................... | $_____ | 5.42 % |
| Origination Fee...... .................................... | $_____ | 3 % |

Form of Exhibit A

To be completed after Due Diligence Audit and prior to first Purchase

Jeffrey A. Morse
President

21

Exhibit A
**Schedule 1**
**List of Accounts Receivable**

Exhibit B

**SECRETARY'S CERTIFICATE**

**I, the undersigned,** as Secretary of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi corporation, ("Corporation"), hereby certifies that:

(1)      Attached hereto as Item 1 (one)   is a true, correct and complete copy of the Articles of Incorporation of the Corporation as the same exist as of the date hereof; and

(2)      Attached hereto as Item 2 (two)   is a true, correct and complete copy of the By-Laws of the Corporation and  all amendments thereto as the same exist as of the date hereof; and

(3)      The named person(s) set forth in Item 3 (three)  attached hereto are duly elected, qualified and acting Authorized Persons of the Corporation, holding the respective offices set forth opposite their names, and signatures set forth opposite their names are true, correct and authentic and genuine signatures of such person(s) on the date hereof; and

(4)      Attached hereto as Item 4 (four)  is a true, correct and complete copy of resolutions duly and validly adopted  by the Board of Directors of the Corporation and such resolutions have not been amended, modified or revoked in any respect and are in full force and effect on the date hereof.

The described Corporation is used in this Certificate and Items attached hereto, as the Provider as described in the Purchase Agreement of which this Secretary's Certificate is an exhibit.

**In witness whereof,** the undersigned has executed this Secretary's Certificate as of this  2nd  day of August , 2004.

_Janet B. Morse_

Print Name: Janet B. Morse

23

**Exhibit B, Item 1.**

**Articles of Incorporation**

**F0001 – Page 1 of 2**

# OFFICE OF THE MISSISSIPPI SECRETARY OF STATE
## P.O. BOX 136, JACKSON, MS 39205-0136    (601) 359-1333
### Articles of Incorporation

The undersigned, pursuant to Section 79-4-2.02 (if a profit corporation) or Section 79-11-137 (if a nonprofit corporation) of the Mississippi Code of 1972, hereby executes the following document and sets forth:

**1. Type of Corporation**

[X] Profit          [ ] Nonprofit

**2. Name of the Corporation**

Brandywine Health Services of Mississippi, Inc.

**3. The future effective date is (Complete if applicable)**

**4. FOR NONPROFITS ONLY:** The period of duration is [ ] years or [X] perpetual

**5. FOR PROFITS ONLY:** The Number (and Classes) if any of shares the corporation is authorized to issue is (are) as follows:

| Classes | # of Shares Authorized | If more than one (1) class of shares is authorized, the preferences, limitations, and relative rights of each class are as follows: | |
|---|---|---|---|
| 1 | 10,000 | | (See Attached) |
| | | | |

**6. Name and Street Address of the Registered Agent and Registered Office is**

| | |
|---|---|
| Name | Tadd Parsons |
| Physical Address | 324 East Cavers Avenue |
| P.O. Box | Post Office Drawer 6 |
| City, State, ZIP5, ZIP4 | Wiggins    MS    39577 |

**7. The name and complete address of each incorporator are as follows**

| | |
|---|---|
| Name | Danny J. Spreitler |
| Street | 416 Howard Street |

FILED
05/15/2002
ERIC CLARK
Secretary of State
State of Mississippi

Rev. 01/96

**F0001 - Page 2 of 2**

**OFFICE OF THE MISSISSIPPI SECRETARY OF STATE**
P.O. BOX 136, JACKSON, MS 39205-0136   (601) 359-1333
**Articles of Incorporation**

| City, State, ZIP5, ZIP4 | Wiggins | | MS | 39577 |
| --- | --- | --- | --- | --- |

| Name | |
| --- | --- |
| Street | |

| City, State, ZIP5, ZIP4 | | | |
| --- | --- | --- | --- |

| Name | |
| --- | --- |
| Street | |

| City, State, ZIP5, ZIP4 | | | |
| --- | --- | --- | --- |

| Name | |
| --- | --- |
| Street | |

| City, State, ZIP5, ZIP4 | | | |
| --- | --- | --- | --- |

**8. Other Provisions** ☐   See Attached

**9. Incorporators' Signatures (please keep writing within blocks)**

| | |
| --- | --- |
| | |
| | |

Rev. 01/96

**Exhibit B, Item 2.**

**By-Laws of the Corporation**

25

# BYLAWS
## OF
### BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.

### ARTICLE I. OFFICES

The principal office of the corporation in the State of Mississippi shall be located in the City of Meridian, County of Lauderdale. The corporation may have such other offices either within or without the State of Mississippi, as the Board of Directors may designate or as the business of the corporation may require from time to time.

### ARTICLE II. SHAREHOLDERS

SECTION I.  Annual Meeting. The annual meeting of the Shareholders shall be held on the 12th day in the month of January in each year, beginning with the year 2003, at the hour of 10:00 a .m., for the purpose of electing Directors and for the transaction of such other business as may come before the meeting. If the day fixed for the annual meeting shall be a legal holiday in the State of Mississippi, such meeting shall be held on the next succeeding business day. If the election of Directors shall not be held on the day designated herein for any annual meeting of the shareholders, or at any adjournment thereof, the Board of Directors shall cause the election to be held at a special meeting of the Shareholders as soon thereafter as conveniently may be held.

SECTION II. Special Meetings. Special meetings of the shareholders, for any purpose or purposes, unless otherwise prescribed by statute, may be called by the President or by the Board of Directors, and shall be called by the President at the request of the holders of not less than five (5%) percent of all the outstanding shares of the corporation entitled to vote at the meeting.

SECTION III. Place of Meeting. The Board of Directors may designate any place, either within or without the State of Mississippi unless otherwise prescribed by statute, as the place of meeting for any annual meeting or for any special meeting called by the Board of Directors. A

Waiver of Notice signed by all Shareholders entitled to vote at a meeting may designate any place, either within or without the State of Mississippi, unless otherwise prescribed by statute, as the place for the holding of such meeting. If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal office of the corporation in the State of Mississippi.

SECTION IV. Notice of Meeting. Written notice stating the place, day and hour of the meeting and, in case of special meeting, the purpose or purposes for which the meeting is called, shall, unless otherwise prescribed by statute, be delivered not less than five nor more than ten days before the date of the meeting, either personally or by mail, by or at the direction of the President, or the Secretary, or the persons calling the meeting, to each Shareholder of record entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail, addressed to the Shareholder at his address as it appears on the stock transfer books of the corporation, with postage thereon prepaid.

SECTION V. Closing of Transfer Books or Fixing of Record Date. For the purpose of determining Shareholders entitled to notice of or to vote at any meeting of Shareholders or any adjournment thereof, or Shareholders entitled to receive payment of any dividend, or in order to make a determination of Shareholders for any other proper purpose, the Board of Directors of the Corporation may provide that the stock transfer books shall be closed for a stated period but not to exceed, in any case, five days. If the stock transfer books shall be closed for the purpose of determining Shareholders entitled to notice of or to vote at a meeting of shareholders, such books shall be closed for at least 10 days immediately preceding such meeting. In lieu of closing the stock transfer books, the Board of Directors may fix in advance a date as the record date for any such determination of shareholders, such date in any case to be not more than ten days and case of a

2

meeting of shareholders, not less than five days prior to the date on which the particular action, requiring such determination of shareholders, is to be taken. If the stock transfer books are not closed and no record date is fixed for the determination of Shareholders entitled to notice of or to vote at a meeting of shareholders, or Shareholders entitled to receive payment of a dividend, the date on which notice of the meeting is mailed or the date on which the resolution of the Board of Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of shareholders. When a determination of Shareholders entitled to vote any meeting of Shareholders has been made as provided in this section, such determination shall apply to any adjournment thereof.

SECTION VI. Voting Lists. The officer or agent having charge of the stock transfer books for shares of the corporation shall make a complete list of the Shareholders entitled to vote at each meeting of Shareholders or any adjournment thereof, arranged in alphabetical order, with the address of and the number of shares held by each. Such list shall be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any Shareholder during the whole time of the meeting for the purposes thereof.

SECTION VII. Quorum. A majority of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, shall constitute a quorum at the meeting of shareholders. If less than a majority of the outstanding shares are represented at a meeting, a majority of the shares so represented may adjourn the meeting from time to time without further notice. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed. The Shareholders present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the

3

withdrawal of enough Shareholders to leave less than a quorum.

SECTION VIII. Proxies. At all meetings of shareholders, a Shareholder may vote in person or by proxy executed in writing by the Shareholder or by his duly authorized attorney in fact. Such proxy shall be filed with the secretary of the corporation before or at the time of the meeting. No proxy shall be valid after two (2) months from the date of its execution, unless otherwise provided in the proxy.

SECTION IX. Voting of Shares. Subject to the provisions of Section 12 of this Article II, each outstanding share entitled to vote shall be entitled to one (1) vote upon each matter submitted to a vote at a meeting of shareholders.

SECTION X. Voting of Shares by Certain Holders. Shares standing in the name of another corporation may be voted by such officer, agent or proxy as the Bylaws of such corporation may prescribe, or, in the absence of such provision, as the Board of Directors of such corporation may determine.

Shares held by an administrator, executor, guardian or conservator may be voted by him, either in person or by proxy, without a transfer of such shares into his name. Shares standing in the name of a trustee may be voted by him, either in person or by proxy, but no trustee shall be entitled to vote shares held by him without transfer of such shares into his name.

Shares standing in the name of a receiver may be voted by such receiver, and shares held by or under the control of a receiver may be voted by such receiver without the transfer thereof into his name if authority so to do be contained in an appropriate order of the Court by which such receiver was appointed.

A Shareholder whose shares are pledged shall be entitled to vote such shares until the shares

4

have been transferred into the name of the pledgee, and thereafter the pledgee shall be entitled to vote the shares so transferred.

Shares of its own stock belonging to the Corporation shall not be voted, directly or indirectly, at any meeting, and shall not be counted in determining the total number of outstanding shares at any given time.

SECTION XI. Informal Action by Shareholders. Unless otherwise provided by law, any action required to be taken at a meeting of the shareholders, or any other action which may be taken at a meeting of the shareholders, may be taken without a meeting if a consent in writing, set forth the action so taken, shall be signed by all of the Shareholders entitled to vote with respect to the subject matter thereof.

SECTION XII. Cumulative Voting. Unless otherwise provided by law, at each election for Directors every Shareholder entitled to vote at such election shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are Directors to be elected and for whose election he has a right to vote, or to cumulate his votes by giving on candidate as many votes as the number of such Directors multiplied by the number of his shares shall equal, or by distributing such votes on the same principle among any number of candidates.

### ARTICLE III. BOARD OF DIRECTORS

SECTION I. General Powers. The business and affairs of the corporation shall be managed by its Board of Directors.

SECTION II. Number, Tenure and Qualifications. The number of Directors of the corporation shall be three. Each Director shall hold office until the next annual meeting of Shareholders and until his successor shall have been elected and qualified.

5

SECTION III. Regular Meetings. A regular meeting of the Board of Directors shall be held without other notice than this by-law immediately after, and at the same place as, the annual meeting of shareholders. The Board of Directors may provide, by resolution, the time and place for the holding of additional regular meetings without other notice than such resolution.

SECTION IV. Special Meetings. Special meetings of the Board of Directors may be called by or at the request of the President or any two directors. The person or persons authorized to call special meetings of the Board of Directors may fix the place for holding any special meeting of the Board of Directors called by them.

SECTION V. Notice. Notice of any special meeting shall be given at least ten (10) days previously thereto by written notice delivered personally or mailed to each Director at his business address or by telegram. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail to addressed, with postage thereon prepaid. If notice be given by telegram, such notice shall be deemed to be delivered when the telegram is delivered to the telegraph company. Any Director may waive notice of any meeting. The attendance of a Director at a meeting shall constitute a Waiver of Notice of such meeting, except where a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

SECTION VI. Quorum. A majority of the number of Directors fixed by Section 2 of this Article III shall constitute a quorum for the transaction of business of any meeting of the Board of Directors, but if less than such majority is present at a meeting, a majority of the Directors present may adjourn the meeting from time to time without further notice.

SECTION VII. Manner of Acting. The act of the majority of the Directors present at a

6

meeting at which a quorum is present shall be the act of the Board of Directors.

SECTION VIII. Action Without a Meeting. Any action that may be taken by the Board of Directors at a meeting may be taken without a meeting if a consent in writing, setting forth the action so to be taken, shall be signed before such action by all of the Directors.

SECTION IX. Vacancies. Any vacancy occurring in the Board of Directors may be filled by the affirmative vote of a majority of the remaining Directors though less than a quorum of the Board of Directors, unless otherwise provided by law. A Director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office. Any directorship to be filled by reason of the Board of Directors for a term of office continuing only until the next election of Directors by the shareholders.

SECTION X. Compensation. By resolution of the Board of Directors, each Director may be paid his expenses, if any, if attendance at each meeting of the Board of Directors, and may be paid a stated salary as Director or a fixed sum for attendance each meeting of the Board of Directors or both. No such payment shall preclude any Director from serving the corporation in any other capacity and receiving compensation therefor.

SECTION XI. Presumption of Assent. A Director of the corporation who is present at a meeting of the Board of Directors at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the Secretary of the corporation immediately after the adjournment of the meeting. Such right to dissent shall not apply to a Director who voted in favor of such action.

7

## ARTICLE IV.  OFFICERS

SECTION I. Number. The officers of the corporation shall be a President, a Vice-President, a Secretary and a Treasurer, each of whom shall be elected by the Board of Directors. Such other officers and assistant officers as may be deemed necessary may be elected or appointed by the Board of Directors.

SECTION II. Election and Term of Office. The officers of the corporation to be elected by the Board of Directors shall be elected annually by the Board of Directors at the first meeting of the Board of Directors held after each annual meeting of the shareholders. If the election of officers shall not be held at such meeting, such election shall be held as soon thereafter as conveniently may be. Each officer shall hold office until his successor shall have been duly elected and shall have qualified or until his death or until he shall resign or shall have been removed in the manner hereinafter provided.

SECTION III. Removal. Any officer or agent may be removed by the Board of Directors whenever in its judgment, the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer or agent shall not of itself create contract rights.

SECTION IV. Vacancies. A vacancy in any office because of death, resignation, removal, disqualification or otherwise, may be filled by the Board of Directors for the unexpired portion of the term.

SECTION V. President. The President shall be the principal executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation. He shall, when present, preside at all

8

meetings of the Shareholders and of the Board of Directors. He may sign, with the Secretary or any other proper officer of the corporation thereunto authorized by the Board of Directors, certificates for shares of the corporation, any deeds, mortgages, bonds, contracts, or other instruments which the Board of Directors has authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or by these Bylaws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed; and in general shall perform all duties incident to the office of President and such other duties as may be prescribed by the Board of Directors from time to time.

SECTION VI. Vice-President. In the absence of the President or in event of his death, inability or refusal to act, the Vice-President shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice-President shall perform such other duties as from time to time may be assigned to him by the president or by the Board of Directors.

SECTION VII. Secretary. The secretary shall: (a) keep the minutes of the proceedings of the Shareholders and of the Board of Directors in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents the execution of which on behalf of the corporation under its seal is duly authorized; (d) keep a register of the post office address of each Shareholder which shall be furnished to the Secretary by such shareholder; (e) sign with the President, certificates for shares of the corporation, the issuance of which shall have been authorized by resolution of the Board of Directors; (f) have general charge of the stock transfer books of the

9

corporation; and (g) in general, perform all duties incident to the office of Secretary and such other duties incident to the office of Secretary and such other duties as from time to time may be assigned to him by the President or by the Board of Directors.

SECTION VIII. Treasurer. The Treasurer shall: (a) have charge and custody of and be responsible for all funds and securities of the corporation; (b) receive and give receipts for monies due and payable to the corporation from any source whatsoever, and deposit all such monies in the name of the corporation in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of Article V of these Bylaws; and (c) in general, perform all of the duties as from time to time may be assigned to him by the President or by the Board of Directors. If required by the Board of Directors, the Treasurer shall give a bond for the faithful discharge of his duties in such sum and with such surety or sureties as the Board of Directors shall determine.

SECTION IX. Salaries. The salaries of the officers shall be fixed from time to time by the Board of Directors and no officer shall be prevented from receiving such salary by reason of the fact that he is also a Director of the corporation.

## ARTICLE V. CONTRACTS, LOANS, CHECKS AND DEPOSITS

SECTION I. Contracts. The Board of Directors may authorize any officer or officers, agent or agents, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.

SECTION II. Loans. No loans shall be contracted on behalf of the corporation and no evidences of indebtedness shall be issued in its name unless authorized by a resolution of the Board of Directors. Such authority may be general or confined to specific instances.

SECTION III. Checks, Drafts, etc. All checks, drafts or other orders for the payment of

10

money, notes or other evidences of indebtedness issued in the name of the corporation, shall be signed by such officer or officers, agent or agents of the corporation and in such manner as shall from time to time be determined by resolution of the Board of Directors.

SECTION IV. Deposits. All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the Board of Directors may select.

## ARTICLE VI. CERTIFICATES FOR SHARE AND THEIR TRANSFER

SECTION I. Certificates for Shares. Certificates representing shares of the corporation shall be in such form as shall be determined by the Board of Directors. Such certificates shall be signed by the President and by the Secretary or by such other officers authorized by law and by the Board of Directors so to do, and sealed with the corporate seal. All certificates for shares shall be consecutively numbered or otherwise identified. The name and address of the person to whom the shares represented thereby are issued, with the number of shares and date of issue, shall be entered on the stock transfer books of the corporation. All certificates surrendered to the corporation for transfer shall be cancelled and no new certificate shall be issued until the former certificate for a like number of shares shall have been surrendered and cancelled, except that in case of a lost, destroyed or mutilated certificate a new one may be issued therefor upon such terms and indemnity to the corporation as the Board of Directors may prescribe.

SECTION II. Transfer of Shares. Transfer of shares of the corporation shall be made only on the stock transfer books of the corporation by the holder of record thereof or by his legal representative, who shall furnish proper evidence of authority by power of attorney duly executed and filed with the Secretary of the corporation, and on surrender for cancellation of the certificate

11

for such shares. The person in whose name shares stand on the books of the corporation shall be deemed by the corporation to be the owner thereof for all purposes.

## ARTICLE VII. FISCAL YEAR

The fiscal year of the corporation shall begin on the 1st day of January and end on the 31st day of December in each year.

## ARTICLE VIII. DIVIDENDS

The Board of Directors may from time to time declare, and the corporation may pay, dividends on its outstanding shares in the manner and upon the terms and conditions provided by law and its articles of incorporation.

## ARTICLE IX. CORPORATE SEAL

The Board of Directors shall provide a corporate seal which shall be circular in form and shall have inscribed thereon the name of the corporation and the state of incorporation and the words "Corporate Seal".

## ARTICLE X. WAIVER OF NOTICE

Unless otherwise provided by law, whenever any notice is required to be given to any Shareholder or Director of the corporation under the provisions of these Bylaws or under the provisions of the Articles of Incorporation or under the provisions of the Business Corporation Act, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

## ARTICLE XI. AMENDMENTS

These Bylaws may be altered, amended or repealed and new Bylaws may be adopted by the Board of Directors at any regular or special meeting of the Board of Directors.

**Exhibit B, Item 3.**

**Authorized Officers**
**SAMPLES OF SIGNATURES**

| TITLE | NAME | SIGNATURE |
|---|---|---|
| President | Jeffrey A. Morse | *[signature]* |
| Vice-President | | |
| Treasurer | | |
| Secretary | | |

26

**Exhibit B, Item 4.**

RESOLUTIONS OF THE BOARD OF DIRECTORS
OF
**Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center**

RESOLVED, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center (the "Provider") is authorized to execute, enter into, and deliver and perform according to the terms there of the following documents (the "Transaction Documents"):

1.      Purchase Agreement by and between MCC Special Purpose Corporation VIII (the "Buyer") and Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center (as the "Provider" therein) evidencing the sale of certain accounts from the Provider to the Buyer.

2.      The Bill of Sale to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(4) of the aforedescribed Purchase Agreement.

3.      The Assignment to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(4) of the aforedescribed Purchase Agreement.

4.      The Blanket Form UCC-1 financing statement to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(2) of the aforedescribed Purchase Agreement.

5.      The Form UCC-1 financing statement to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(3) of the aforedescribed Purchase Agreement.

RESOLVED, that the President or any Senior Vice President or any Vice President or Secretary or any Assistant Secretary of the Provider and each of them be, and they each hereby are, authorized, for and on behalf of the Provider, to execute and deliver the above identified documents substantially in the form identified above, which are hereby approved, with such changes therein, additions thereto and deletions therefrom as the officer of the Provider executing such documents may approve, and the execution and delivery of such documents by such officer of the Provider shall constitute conclusive evidence of such officer's approval therefor.

RESOLVED, that the officers of the Provider be, and each hereby is authorized, for and on behalf of the Provider, to execute and deliver such other documents, agreements or instruments and to take such other action as they, or any of them, may deem necessary or advisable to carry out the purpose of the foregoing resolutions.

I, Janet B. Morse   Secretary of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, do hereby certify that:

(1)      The foregoing is a true and correct copy of resolutions adopted by the Board of Directors of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, on August 2, 2004.

(2)      The resolutions adopted by the Board of Directors have not been amended or rescinded and the same are, on the date of this Certificate, in full force and effect.

IN WITNESS WHEREOF, the undersigned has executed this Certificate and affixed the seal of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, on August 2, 2004.

By: Janet B. Morse
Print Name: Janet B. Morse
Its: **Secretary**

Corporate Seal

27

**Exhibit B, Item 4.**

RESOLUTIONS OF THE BOARD OF DIRECTORS
OF
**Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center**

RESOLVED, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center (the "Provider") is authorized to execute, enter into, and deliver and perform according to the terms there of the following documents (the "Transaction Documents"):

    1.    Purchase Agreement by and between MCC Special Purpose Corporation VIII (the "Buyer") and Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center (as the "Provider" therein) evidencing the sale of certain accounts from the Provider to the Buyer.

    2.    The Bill of Sale to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(4) of the aforedescribed Purchase Agreement.

    3.    The Assignment to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(4) of the aforedescribed Purchase Agreement.

    4.    The Blanket Form UCC-1 financing statement to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(2) of the aforedescribed Purchase Agreement.

    5.    The Form UCC-1 financing statement to be given by the Provider in favor of the Buyer pursuant to the terms of paragraph 7.2(d)(3) of the aforedescribed Purchase Agreement.

RESOLVED, that the President or any Senior Vice President or any Vice President or Secretary or any Assistant Secretary of the Provider and each of them be, and they each hereby are, authorized, for and on behalf of the Provider, to execute and deliver the above identified documents in the form identified above, which are hereby approved, with such changes therein, additions thereto and deletions therefrom as the officer of the Provider executing such documents may approve, and the execution and delivery of such documents by such officer of the Provider shall constitute conclusive evidence of such officer's approval therefor.

RESOLVED, that the officers of the Provider be, and each hereby is, authorized, for and on behalf of the Provider, to execute and deliver such other documents, agreements or instruments and to take such other action as they, or any of them, may deem necessary or advisable to carry out the purpose of the foregoing resolutions.

I, _Janet B. Morse_ Secretary of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, do hereby certify that:

    (1)    The foregoing is a true and correct copy of resolutions adopted by the Board of Directors of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, on _August 3_, 2004.

    (2)    The resolutions adopted by the Board of Directors have not been amended or rescinded and the same are, on the date of this Certificate, in full force and effect.

IN WITNESS WHEREOF, the undersigned has executed this Certificate and affixed the seal of Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, on _____, 2004.

By: _Janet K. Morse_
Print Name: _Janet B Morse_
Its: Secretary

Corporate Seal

27

**Exhibit C**

## ASSIGNMENT OF RECEIVABLES

For value received, the undersigned, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation., ("Assignor"), hereby assigns, transfers, and conveys without recourse to MCC Special Purpose Corporation VIII ("Assignee") all of its right, title and interest, whether now held or hereafter obtained, in and to the medical accounts receivable described in Exhibit "A" of the Purchase Agreement dated the _____ of _____, 2004 and hereby incorporated by reference and any substitutions thereof pursuant to Section 2.2 of the Purchase Agreement (the "Receivables"), and Assignor hereby warrants and represents that;

1. Assignor is the sole owner of the Receivables listed in Exhibit "A, Schedule 1", attached thereto" to the Purchase Agreement and is entitled to receive from such Receivable and has good right to sell, assign, transfer and set over the same and to grant to, and confer upon, Assignee the rights, interests, powers and authorities herein granted and conferred.

2. Assignor has not made any assignment other than this Assignment of the rights of Assignor with respect to said Receivables.

3. Borrower has neither performed and act or omitted to perform any act which might prevent the Assignee from, or limit Assignee in acting under any of the provisions of this Assignment.

4. All Receivables currently provide for all proceeds thereof to be paid directly to the Assignor.

5. To the best of the knowledge of Assignor, there exists no circumstances under which other persons or entities may have any claim against said Receivables.

6. This Assignment includes any and all tapes, claim forms, claim documentation, computer runs, servicing reports, printouts, and any and all medical records of any kind relating to the Receivables, including a guaranty of access by Assignor, with respect to the Receivables, to such additional medical records and information as may be necessary or appropriate to process and collect the Receivables.

7. This Assignment also includes any collateral collections accounts, trust accounts, and lock box accounts, and any funds contained therein, relating to the Receivables.

8. This Assignment includes any other document or instrument representing security for payment of the Receivables, or any guaranty of payment of performance relating to the Receivables, which documents or instruments were assigned or transferred to Assignor in connection with the Receivables.

The Assignor further covenants and represents that it has not taken any action, and to the best of its knowledge no event has occurred which would result in (a) the creation of any security interests, liens, encumbrances, or claims against any of the Receivables or any defect in Assignor's title to any of the Receivables, (b) the creation of any defense, counterclaim, or off set available to any party obligated on any of the Receivables, (c) any compromise, discount, waiver, or other agreement on the part of Assignor that would affect the amount, maturity, interest rate, or any other material term or condition of any of the Receivables, or (d) Assignor having any reason to believe that any party obligated on the Receivables is unable or unwilling to pay any portion thereof, as such amount becomes due.

This assignment is effective immediately upon faxed confirmation from MCC Special Purpose Corporation VIII bank that the funds said receivables has been received and credited to Assignor's account.

IN WITNESS WHEREOF, the Assignor has executed this _____ day of _____, 2004.

BY: _____
    Jeffrey A. Morse
    President

28

Exhibit D

## BILL OF SALE

STATE OF:   Mississippi
COUNTY OF:  Choctaw

**KNOW ALL MEN BY THESE PRESENT:**

That for $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation., hereinafter referred to as (Assignor) does hereby assign, grant, bargain, deliver, transfer, sell and convey unto MCC Special Purpose Corporation VIII, a Nevada Corporation (Assignee) all its rights, title and interest in and to those certain medical accounts receivable and claims identified in Exhibit "A", of the Purchase Agreement which is attached hereto and incorporated herein by this reference.

In connection with this assignment, Assignor warrants as follows:

1.  That it is the owner of such medical accounts receivable and claims and that such accounts and claims have not previously been sold, assigned, transferred, pledged, encumbered to or in favor of any other person or entity.

2.  That none of the accounts receivable or claims listed on Exhibit "A" hereto are the subject to any asserted defense or right, and that Assignor does not know of any facts or circumstances which would give right to, or form the basis of, any defense of payment of offset.

3.  The Health Care Service which forms the basis of the medical accounts receivable and claims, Exhibit "A", were actually rendered to a patient as set forth in the information furnished by Assignor to Assignee.  With respect to the medical accounts receivable and claims, Exhibit "A", the amounts of each claim are recently due and payable by the Patients insurance carrier to Assignor.

Signed on this _____ day of _____, 2004.

Assignee
**MCC Special Purpose Corporation VIII**

By: _____
**Joseph J. Lampariello**
**Chief Operating Officer**

Assignor
**Brandywine Health Services of Mississippi, Inc.,**
**aka Choctaw County Medical Center**

By: _____
Jeffrey A. Morse
President

29

Exhibit D

## BILL OF SALE

**STATE OF:**     Mississippi
**COUNTY OF:**   Choctaw

### KNOW ALL MEN BY THESE PRESENT:

That for $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation., hereinafter referred to as (Assignor) does hereby assign, grant, bargain, deliver, transfer, sell and convey unto MCC Special Purpose Corporation VIII, a Nevada Corporation (Assignee) all its rights, title and interest in and to those certain medical accounts receivable and claims identified in Exhibit "A", of the Purchase Agreement which is attached hereto and incorporated herein by this reference.

In connection with this assignment, Assignor warrants as follows:

1. That it is the owner of such medical accounts receivable and claims and that such accounts and claims have not previously been sold, assigned, transferred, pledged, encumbered to or in favor of any other person or entity.

2. That none of the accounts receivable or claims listed on Exhibit "A" hereto are the subject to any asserted defense or right, and that Assignor does not know of any facts or circumstances which would give right to, or form the basis of, any defense of payment of offset.

3. The Health Care Service which forms the basis of the medical accounts receivable and claims, Exhibit "A", were actually rendered to a patient as set forth in the information furnished by Assignor to Assignee. With respect to the medical accounts receivable and claims, Exhibit "A", the amounts of each claim are recently due and payable by the Patients insurance carrier to Assignor.

Signed on this _____ day of _____, 2004.

**Assignee**
**MCC Special Purpose Corporation VIII**


by:_____
    Joseph J. Lampariello
    **Chief Operating Officer**

**Assignor**
**Brandywine Health Services of Mississippi, Inc.,**
**aka Choctaw County Medical Center**


by:_____
    Jeffrey A. Morse
    President

**Exhibit E**
**SPECIFIC POWER OF ATTORNEY**

*Know all men by these presents:* That **Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center** (Provider) hereby makes, constitutes and appoints Medical Capital Corporation, and its agent(s) as true and lawful attorney for me and in my name, place and stead and for my use and benefit in transaction of the following activities:

     (a)     Accept delivery of, and inspect all mail and correspondence relating to and pursuant to the collection of all funds and payments due to me pursuant to our agreements;

     (b)     To deposit all checks and payments made payable to me, for professional services rendered in the course of our agreement, into a trust account established for that purpose;

     (c)     To take all steps necessary, including but not limited to, signing insurance claim forms on my behalf, in order to effectively submit and process all insurance claims accruing to me due to professional services rendered in the course of our agreement;

Provider grants to said attorney full power and authority to do and perform each and every act necessary or appropriate for the above purposes as fully as the undersigned might or could do if personally present, and the undersigned does hereby ratify all actions of said attorney which said attorney shall lawfully do or cause to be done by virtue of this *Specific Power of Attorney.*

My said attorney is empowered hereby to determine, in his sole discretion, the time when, the manner and purpose for which any power herein conferred upon him shall be exercised as well as the conditions, provisions, and covenants of any instruments or documents which may be executed by him pursuant thereto.

Executed this _____2nd_____ day of _____Aug._____, 2004.

     **Provider**
     **Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center**

     _Jeffrey A. Morse_
     Jeffrey A. Morse
     Title: President

Notary statement: This person appeared before this _2nd_ day of _Aug._, 2004 and signed this document as above in the county of _Worcester_, State of _Maryland_. My Notary Public stamp is affixed below.

_____
Witnesseth

Commission Expires 8/1/08

30

**Exhibit F**
**Instructions for Disbursement of Purchase Price**

MCC Special Purpose Corporation VIII is hereby instructed on _____, to deliver the sum of $_____ (_____Dollars), in the form of wire transfer of funds to:

> Brandywine Health Services of Mississippi, Inc.
> AKA Choctaw County Medical Center
>
> Actual Account Name

### In the care of the following bank:

Bank Name: _Union Planters Bank_

Bank Branch Address: _111 Main St_
Street Address

_Ackerman      MS      39735_
City      State      Zip Code

Bank Branch Phone Number: _662-285-6278_

ABA: _084000084_

Account Number: _9001034519_

Name of Bank Officer to contact: _Kenny Clark - VP_

Telephone number of Bank Officer _662-285-6278_

**Provider**
**Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center**

_[signature]_
Jeffrey A. Morse
President

31

**Exhibit G**
**DECLARATION OF CUSTODIAN OF RECORDS**

I, Jeffrey A. Morse,  have appointed Medical Capital Corporation, and or its agents, as Custodian of Records, in regard to the medical and patient files as attached hereto relating to the Purchase Agreement by and between Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center  and MCC Special Purpose Corporation VIII as identified in the Purchase Agreement.

Medical Capital Corporation and or its agent(s), shall keep in its possession, safeguard, maintain and present upon demand to authorized parties, individuals, physicians or other parties authorized by and upon written permission of the patient, or in the case of a minor, upon written permission of the minor's guardian, parent, or upon court order, each individual medical file, records, notes and other documentation relating to the files and accounts as described in the Purchase agreement as attached hereto.

Medical Capital Corporation, or its agent(s) shall safeguard said patient files and records in respect to each patient's confidentiality and regard to those applicable laws and professional codes.


Jeffrey A. Morse

**Medical Capital Corporation**


By:
Joseph J. Lampariello
**Special Agent**



WITNESSETH:


_____
name:

32

**Exhibit G**
**DECLARATION OF CUSTODIAN OF RECORDS**

I, Jeffrey A. Morse,  have appointed Medical Capital Corporation, and or its agents, as Custodian of Records, in regard to the medical and patient files as attached hereto relating to the Purchase Agreement by and between Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center  and MCC Special Purpose Corporation VIII as identified in the Purchase Agreement.

Medical Capital Corporation and or its agent(s), shall keep in its possession, safeguard, maintain and present upon demand to authorized parties, individuals, physicians or other parties authorized by and upon written permission of the patient, or in the case of a minor, upon written permission of the minor's guardian, parent, or upon court order, each individual medical file, records, notes and other documentation relating to the files and accounts as described in the Purchase agreement as attached hereto.

Medical Capital Corporation, or its agent(s) shall safeguard said patient files and records in respect to each patient's confidentiality and regard to those applicable laws and professional codes.


Jeffrey A. Morse

**Medical Capital Corporation**


By:_____
    **Joseph J. Lampariello**
    **Special Agent**



WITNESSETH:


_____
name:

32



**Medical Capital**

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement is made and executed by and between Medical Capital Corporation, its agents and affiliates as pursuant to the purchase agreement ("Purchase Agreement") by and between Buyer and Seller, as described therein, dated _August 10, 2004_ , hereinafter "BUYER", and Brandywine Health Services of Misssissippi, Inc., aka Choctaw County Medical Center, hereinafter "SELLER".

**Whereas,** Seller submits summary medical claim information to Buyer and or its wholly owned affiliates, pursuant to its Purchase Agreement and whereas Seller will have to disclose certain information to BUYER pursuant to its existing Purchase Agreement with BUYER for processing patient medical and billing information; and such information may constitute Protected Health Information ("PHI") **and,**

**Whereas,** may be considered as a "Covered Entity" under certain provisions of the Health Insurance Portability and Accountability Act and the current Privacy Standards, and Seller has an obligation on behalf of its clients to comply with the Privacy Standards pursuant to the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 (HIPAA) and its subsequent amendments.

**Now therefore,** in consideration of the mutual agreements herein contained, Buyer and Seller agree as follows:

**I.    DEFINTIONS**

1.1    Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms are used in 45 CFR §160.103 and §164.501.

1.2    **Business Associate** – a person or entity that with respect to a plan (1) performs or assists in the performance of a function or activity involving the use or disclosure of Individually Identifiable Health Information; or (2) provides legal, actuarial, accounting, consulting data aggregation management, administrative, accreditation, or financial services to health plans, where the provision of such service involves the disclosure of Individually Identifiable Health Information from the health plan, or from another Business Associate of the health plan.

1.3    **CFR** – Code of Federal Regulations.

1.4    **Data aggregation** – the combining of protected health information by BUYER and SELLER with the protected health information received by SELLER or other of its Business Associates on behalf of another health plan, to perform data analyses that relate to the health care operations of the respective health plans.

1.5    **Designated Record Set** – A group of records maintained by or for the health plan, including: (i) the medical records and billing records about individuals maintained by or for a covered health care provider; or (ii) the enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan: used, in whole or part, by or for the health plan to make decisions about individuals pertaining to treatment, payment and health care operations of the health plan.

1.6 **Disclosure** – The release, transfer, provision of access to, or divulging in any other manner of information outside the entity holding the information.

1.7 **Individual** – The person who is the subject of protected health information. This definition shall include a person who qualifies as a personal representative in accordance with the Privacy Rule.

1.8 **Individually Identifiable Health Information** – Information that: (1) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) related to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (3) that identifies the individual, or with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

1.9 **Privacy Rule** – The Standards for Privacy of Individually Identifiable Health Information at 45 CFR part 160 and part 164, subparts A and E.

1.10 **Protected Health Information (PHI)** – Individually Identifiable Health Information that is: (i) transmitted by electronic media; (ii) maintained in electronic media; or (iii) transmitted or maintained in any other form or medium. This definition does not include education records covered by the Family Educational Right and Privacy Act.

1.11 **Required by Law** – A mandate contained in law that compels BUYER, SELLER, or an involved health plan to make a use or disclosure of PHI and that is enforceable in a court of law. Required by law includes, but is not limited to, court orders and court-ordered warrants; subpoenas or summons issued by a court or grand jury, a governmental or tribal inspector general, or an administrative body authorized to require the production of information; a civil or an authorized investigative demand; Medicare conditions of participation with respect to health care providers participating in the program; and statues or regulations that require the production of information, including statutes or regulations that require such information if payment is sought under a government program providing public benefits.

1.12 **Secretary** – The Secretary of the Department of Health and Human Services or his/her designee.

1.13 **U.S.C.** – United States Code.

1.14 **Use** – With respect to individually identifiable health information, the sharing, employment, application, utilization, examination or analysis of such information within an entity that maintains such information.

## II.     USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION

2.1 BUYER shall not use or disclose PHI in any manner that would violate the Privacy Rule if such use or disclosure were done by the health plan.

2.2 BUYER shall limit its use of protected health information (PHI) to the following purposes:

2.2.1 To perform its duties as specified in the existing Purchase Agreement; or

2.2.2 For the proper management and administration of BUYER's business; or

2.2.3 As permitted by law; or

2.2.4     To provide data aggregation services to SELLER.

2.3     BUYER shall limit disclosure of PHI to the following circumstances:

2.3.1     To SELLER and its authorized representatives; or

2.3.2     in compliance with a valid authorization; or

2.3.3     as Required by Law; or

2.3.4     as permitted by law.

2.4     When using or disclosing PHI, or when requesting PHI, BUYER shall make reasonable efforts to limit PHI to the minimum necessary to accomplish the intended purpose of the use, disclosure or request.

2.5     Business Associate shall not use, or further disclose PHI other than as permitted or required by this Agreement or as permitted or Required By Law.

## III.    DUTIES OF SELLER

3.1     SELLER shall provide BUYER with written notice of SELLER's privacy policy(ies), as well as any changes to such policy(ies).

3.2     SELLER shall notify BUYER of any restrictions with respect to the use or disclosure of PHI that an individual has requested and to which an involved health plan has agreed, in accordance with 45 CFR § 164.522.

3.3     SELLER shall notify BUYER of an Individual's request for an accounting of disclosures of PHI in a timely manner, so as to enable BUYER to supply the requested information within a time sufficient for SELLER to comply with the individual's request.

## IV.    INDEMNIFICATION

4.1     Each party shall hold harmless and will not indemnify any of the other parties related to this Agreement for any claims, losses, liabilities, costs and other expenses incurred as a result of, or arising directly or indirectly out of or in connection with: (i) any misrepresentation, breach of warranty or non-fulfillment of any undertaking on the part of any party under this Agreement; and (ii) any claims, demands, awards, judgments, actions and proceedings made by any person or organization arising out of or in any way connected with the party's performance under this Agreement.

## V.    MISCELLANEOUS

5.1     BUYER shall use appropriate safeguards to prevent use or disclosure by BUYER of PHI other than as provided for by this Agreement or as permitted or required by Law.

5.2     BUYER shall report to SELLER any use or disclosure by BUYER of PHI not provided for by this Agreement of which it becomes aware.

5.3.1    BUYER shall ensure that any agent or subcontractor of BUYER, to whom it provides PHI created or received by BUYER on behalf of SELLER or an involved health plan, agrees to the same restrictions and conditions that apply through this Agreement.

5.4    BUYER, at the request SELLER shall provide access as directed by SELLER to an Individual in order to meet the requirements under 45 CFR §164.524 granting the Individual access to his/her PHI that Business Associate maintains in a designated record set. If the Individual requests access to PHI directly from BUYER, BUYER shall provide the requested information directly to SELLER, which in turn will provide the requested information to the requesting Individual. This Section shall not be construed to allow the Individual access to psychotherapy notes or other categories of information to which access is not authorized under the Privacy Rule.    Any authorization or denial of access to PHI shall be decided solely by SELLER.

5.6    BUYER will review any requests by SELLER to make any amendment(s) to PHI in a Designated Record Set maintained by BUYER that SELLER directs or agrees to pursuant to 45 CFR §164.526, at the request of the Individual, and in the time and manner designated by the Individual. BUYER shall provide the requested information to SELLER to furnish directly to the Individual.

5.7    BUYER shall make internal practices, books and records relating to its use and disclosure of PHI received from, or created or received by BUYER from SELLER available to SELLER . A reasonable time notice must be given to BUYER for such inspection. Any and all costs related to such inspection are to be borne by SELLER, or another Covered Entity making the request. If the Covered Entity deems that BUYER is in violation of any term of this agreement, BUYER shall promptly review the alleged violation and advise the Certified Entity if any changes are to be made.

5.8    In the event it is felt that BUYER has breached a material term of this Agreement, SELLER shall immediately notify BUYER of such alleged breach in writing. BUYER will provide SELLER a report of fact-finding on the alleged breach and if it is mutually determined that there is a breach; BUYER will cure such breach within fifteen (15) days of the mutual determination.

5.9    BUYER and SELLER acknowledge that state and federal laws relating to Protected Health Information (PHI) are constantly changing and evolving and that amendment to this agreement may be required in the future to ensure compliance with such new laws.

5.10    If the Purchase Agreement is terminated by either BUYER or SELLER, BUYER shall return, or provide proof of proper destruction all PHI material and data received from, or created by SELLER.

5.11    The respective rights and obligations of this Agreement shall survive the termination of the Purchase Agreement between BUYER and SELLER.

5.12    The effective date of the Agreement is _August 10, 2004_

**IN WITNESS WHEREOF,** we have hereunto set our hands and seals as duly authorized agents or officers and have executed this Business Associate Agreement.

MEDICAL CAPITAL CORPORATION for and on behalf of **BUYER**

By _____

Print Name      Joseph J. Lampariello

Its               Chief Operating Officer


Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center for and on behalf of **SELLER**

By _____

Print Name      JEFFREY A. Morse

Its               Brandywine Health Services of MS Inc

**IN WITNESS WHEREOF**, we have hereunto set our hands and seals as duly authorized agents or officers and have executed this Business Associate Agreement.

MEDICAL CAPITAL CORPORATION for and on behalf of **BUYER**

By

Print Name          Joseph J. Lampariello

Its                 Chief Operating Officer

Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center for and on behalf of **SELLER**

By                  _Jeffery A. Morse_

Print Name          _Jeffrey A. Morse_

Its                 _Brandywine Health Services of MS Inc_

**ORIGINAL**

1   AFFT        DISTRICT COURT                    CLARK COUNTY,        STATE OF NEVADA

2   CASE NO.: A490478              DEPT NO.: IV        DOCKET NO.: 01455-0163

3   Beckley Singleton, Chtd.    ATTORNEYS FOR: Plaintiff

4   Ike Lawrence Epstein Esq      STATE BAR NO.: 4534

5   530 Las Vegas Blvd. South

6   Las Vegas, NV 89101

7        *MCC Special Purpose Corporation VIII*        Plaintiff    Date:

8                          vs                                       Time:

9   *Brandywine Health Services of Mississippi, Inc., et al*    Defendant   AFFIDAVIT OF SERVICE

10

11   Vaenell Warren _____, being duly sworn deposes and says: That at all times herein affiant was

12   and is a citizen of the United States, over 18 years of age and not a party to or interested in the proceeding in which this

13   affidavit is made. The affiant received __1__ copy(ies) of the

14   Summons & Complaint

15

16

17

18

19   on the 19ᵗʰ day of August, 2004 and served the same on the 19ᵗʰ day of August, 2004

20   at 10:00 am by:

21   1. delivering and leaving a copy with the defendant, Richhard/ Barry

22   at 5087/(Cchsttituition/Aveil/Meridiaddd/MMS/(BR/8/02

23   2. serving the defendant, _____ by personally delivering and leaving a copy

24   with _____, a person of suitable age and discretion residing at the defendant's usual

25   place of abode located at _____

26   3. serving the defendant, Brandywine Health Services of Mississippi, Inc., a/d/a Choctaw County by personally delivering and leaving a copy
     Medical Center

27   at   505 Constitution Avenue, Meridian, MS 39302-2009 _____

28   a. with _____ as _____ an agent lawfully designated

29   by statute to accept service of process;

30   b. with Resident Agent, Richard Barry, pursuant to NRS 14.020 as a person of suitable age and

31   and discretion at the above address, which address is the address of the resident agent as shown on the current

32   certificate of designation filed with the Secretary of State.

33   SUBSCRIBED AND SWORN to before me on this

34   19 day of Aug. 2004

35                                                                  **Legal Process Service**
                                                                    626 S. Eighth Street
36   _____                                                Las Vegas, Nevada 89101
     Notary Public                                                  WorkOrderNo 0408650

_Affiant_

AMANDA RAE KEITH, JONES COUNTY
NOTARY
My Commission Expires
February 17 2006
PUBLIC  MS
★

1
AACC
ALVERSON, TAYLOR, MORTENSEN,
2
NELSON & SANDERS
ERIC TAYLOR, ESQ., NV Bar No. 2275
3
STACY R. SMITH, ESQ., NV Bar No. 7919
SARAH A. SMEGAL, ESQ., NV Bar No. 8669
4
7401 West Charleston Boulevard
Las Vegas, NV 89117-1401
5
Attorneys for Brandywine Health Services
of Mississippi, Inc. and Jeffrey A. Morse

6

SEP 13  4 57 PM '04

FILED

7
**DISTRICT COURT**

8
**CLARK COUNTY, NEVADA**

9
MCC SPECIAL PURPOSE CORPORATION VIII,
a Nevada corporation,

CASE NO.  A490478
DEPT NO.  IV

10

Plaintiff,

11

12
vs.

13
BRANDYWINE HEALTH SERVICES OF MISSISSIPPI,
INC., aka Choctaw County Medical Center, a Mississippi
corporation, JEFFREY A. MORSE, an individual, and
14
DOES 1-10,

15

Defendants.

16
BRANDYWINE HEALTH SERVICES OF
MISSISSIPPI, INC., aka Choctaw County Medical
17
Center, a Mississippi corporation, JEFFREY A.
MORSE, an individual, and DOES 1-10,

18

19
Counter-claimants,

20
vs.

21
MCC SPECIAL PURPOSE CORPORATION VIII,
a Nevada corporation,

22
Counter-defendant.

23
**ANSWER and COUNTERCLAIM of DEFENDANTS BRANDYWINE HEALTH**
**SERVICES OF MISSISSIPPI, INC., aka CHOCTAW COUNTY MEDICAL CENTER,**
24
**a Mississippi Corporation, and JEFFREY A. MORSE, an Individual**

25
COME NOW, Defendants BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.,

26
aka CHOCTAW COUNTY MEDICAL CENTER, a Mississippi Corporation, and JEFFREY A.

27
MORSE, an Individual ("Answering Defendants"), by and through their counsel, Alverson, Taylor,

28
Mortensen, Nelson & Sanders, and answer the Complaint on file herein as follows:

*(left margin vertical text)* ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

## ANSWER

### Jurisdiction and Venue

1.    Answering paragraphs 1 and 2, these Answering Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, therefore, deny the same.

2.    Answering paragraph 3, these Answering Defendants admit the allegations contained therein.

3.    Answering paragraph 4, these Answering Defendants admit that Defendant Jeffrey A. Morse is an Officer, Director, and Shareholder of Defendant Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation ("Brandywine Health"), but deny that Defendant Jeffrey A. Morse is and was an individual residing in the State of Mississippi.

4.    Answering paragraph 5, these Answering Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, therefore, deny the same.

5.    Answering paragraphs 6 and 7, these Answering Defendants deny the allegations contained therein.

### Facts Common to All Claims

6.    Answering paragraph 8, these Answering Defendants repeat and reallege their answers to paragraphs 1 through 7 as though fully set forth herein, and hereby incorporate the same by this reference.

7.    Answering paragraph 9, these Answering Defendants deny the allegations contained therein.

8.    Answering paragraph 10, these Answering Defendants admit that Plaintiff MCC Special Purpose Corporation VIII ("Plaintiff") and Brandywine Health entered into a written Purchase Agreement.  These Answering Defendants neither admit nor deny that the Purchase Agreement states as characterized by Plaintiff, but affirmatively allege that the Purchase Agreement

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

speaks for itself. As to all remaining allegations in paragraph 10, these Answering Defendants deny the allegations contained therein.

9.      Answering paragraph 11, these Answering Defendants admit that under the terms of the Purchase Agreement, Medical Capital Corporation ("MedCap") was appointed the Administrator. As to all remaining allegations in paragraph 11, these Answering Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, therefore, deny the same.

10.     Answering paragraph 12, these Answering Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, therefore, deny the same.

11.     Answering paragraph 13, these Answering Defendants admit that Defendant Jeffrey Morse executed and delivered a Guaranty to Plaintiff. These Answering Defendants lack information sufficient to form a belief as to the truth or falsity of the allegation that execution and delivery of the Guaranty by Defendant Jeffrey Morse was a material inducement to Plaintiff to enter into the Purchase Agreement. As to all remaining allegations in paragraph 13, these Answering Defendants deny the allegations contained therein.

12.     Answering paragraph 14, these Answering Defendants admit that the subject accounts receivable had an aggregate gross face value of $559,461.62 and a contractually agreed upon value of $318,957.38 (the "aggregate adjusted value"). As to all remaining allegations in paragraph 14, these Answering Defendants deny the allegations contained therein.

13.     Answering paragraph 15, these Answering Defendants neither admit nor deny that the Purchase Agreement states as characterized by Plaintiff, but affirmatively allege that the Purchase Agreement speaks for itself.

14.     Answering paragraphs 16 and 17, these Answering Defendants deny the allegations contained therein.

15.     Answering paragraph 18, these Answering Defendants neither admit nor deny that the Purchase Agreement states as characterized by Plaintiff, but affirmatively allege that the Purchase Agreement speaks for itself.

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

3

## FIRST CAUSE OF ACTION
### (Breach of Contract Against All Defendants)

16.    Answering paragraph 19, these Answering Defendants repeat and reallege their answers to paragraphs 1 through 18 as though fully set forth herein, and hereby incorporate the same by this reference.

17.    Answering paragraph 20, these Answering Defendants admit the allegations contained therein.

18.    Answering paragraph 21, these Answering Defendants neither admit nor deny that the Guaranty states as characterized by Plaintiff, but affirmatively allege that the Guaranty speaks for itself.

19.    Answering paragraph 22, these Answering Defendants admit that the accounts receivable had an aggregate gross face value of $559,461.62 and a contractually agreed upon or aggregate adjusted value of $318,957.38.  As to all remaining allegations in paragraph 22, these Answering Defendants deny the allegations contained therein.

20.    Answering paragraphs 23 through 26, inclusive, these Answering Defendants deny the allegations contained therein.

21.    Answering paragraph 27, these Answering Defendants neither admit nor deny that the Purchase Agreement states as characterized by Plaintiff, but affirmatively allege that the Purchase Agreement speaks for itself.

22.    Answering paragraphs 28 and 29, these Answering Defendants deny the allegations contained therein.

## SECOND CAUSE OF ACTION
### (Breach of Guaranty Against Jeffrey A. Morse)

23.    Answering paragraph 30, these Answering Defendants repeat and reallege their answers to paragraphs 1 through 29, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

///

///

4

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

24.     Answering paragraph 31, these Answering Defendants neither admit nor deny that the Guaranty states as characterized by Plaintiff, but affirmatively allege that the Guaranty speaks for itself.

25.     Answering paragraphs 32 through 34, inclusive, these Answering Defendants deny the allegations contained therein.

**THIRD CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants)**

26.     Answering paragraph 35, these Answering Defendants repeat and reallege their answers to paragraphs 1 through 34, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

27.     Answering paragraph 36, these Answering Defendants admit that Plaintiff and Defendant Brandywine Health are parties to the Purchase Agreement and that Defendant Jeffrey A. Morse executed the Guaranty in favor of Plaintiff.  As to all remaining allegations of paragraph 36, these Answering Defendants deny the allegations contained therein.

28.     Answering paragraph 37, these Answering Defendants admit the allegations contained therein.

29.     Answering paragraphs 38 through 41, inclusive, these Answering Defendants deny the allegations contained therein.

**FOURTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty Against All Defendants)**

30.     Answering paragraph 42, these Answering Defendants repeat and reallege their answers to paragraphs 1 through 41, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

31.     Answering paragraphs 43 through 46, inclusive, these Answering Defendants deny the allegations contained therein.

///

///

///

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

## FIFTH CAUSE OF ACTION
### (Fraud Against All Defendants)

32.     Answering paragraph 47, these Answering Defendants repeat and reallege their answers to paragraphs 1 through 46, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

33.     Answering paragraphs 48 through 53, inclusive, these Answering Defendants deny the allegations contained therein.

## SIXTH CAUSE OF ACTION
### (Intentional Interference With Prospective Economic Advantage Against All Defendants)

34.     Answering paragraph 54, these Answering Defendants repeat and reallege their answers to paragraphs 1 through 53, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

35.     Answering paragraphs 55 through 60, inclusive, these Answering Defendants deny the allegations contained therein.

## SEVENTH CAUSE OF ACTION
### (Conversion Against All Defendants)

36.     Answering paragraph 61, these Answering Defendants repeat and reallege their answers to paragraphs 1 through 60, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

37.     Answering paragraphs 62 through 69, inclusive, these Answering Defendants deny the allegations contained therein.

## EIGHTH CAUSE OF ACTION
### (Declaratory Judgment)

38.     Answering paragraph 70, these Answering Defendants repeat and reallege their answers to paragraphs 1 through 69, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

39.     Answering paragraph 71, these Answering Defendants deny the allegations contained therein.

6

40.    Answering paragraph 72, these Answering Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations contained therein and, therefore, deny the same.

41.    Answering paragraphs 73 through 75, inclusive, these Answering Defendants deny the allegations contained therein.

### First Affirmative Defense

Plaintiff has failed to state a claim against the Answering Defendants upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims against the Answering Defendants are barred in whole or in part by the doctrines of estoppel, waiver, and unclean hands.

### Third Affirmative Defense

Plaintiff's damages, if any, were caused in whole or in part, or were contributed to, by reason of Plaintiff's own negligent and/or fraudulent actions.

### Fourth Affirmative Defense

These Answering Defendants affirmatively allege that in its Complaint, Plaintiff failed to name a party necessary for full and adequate relief essential in this action.

### Fifth Affirmative Defense

These Answering Defendants acted in good faith at all times relevant to this action.

### Sixth Affirmative Defense

Any duty to perform owed by these Answering Defendants to Plaintiff was excused by the actions of Plaintiff.

### Seventh Affirmative Defense

Any duty to perform owed by these Answering Defendants to Plaintiff was excused by Plaintiff's failure to satisfy a constructive condition precedent of the Purchase Agreement.

### Eighth Affirmative Defense

Any duty to perform owed by these Answering Defendants to Plaintiff was excused by Plaintiff's breach of the Purchase Agreement.

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

7

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

### Ninth Affirmative Defense

Any damages suffered by Plaintiff were caused in whole or in part or were contributed to by reason of Plaintiff's breach of the Purchase Agreement and/or Plaintiff's failure to satisfy a constructive condition precedent of the Purchase Agreement.

### Tenth Affirmative Defense

These Answering Defendants affirmatively allege that the Purchase Agreement and/or Guaranty upon which Plaintiff bases its Complaint are unenforceable by reason of Plaintiff's fraudulent acts.

### Eleventh Affirmative Defense

These Answering Defendants affirmatively allege that the Purchase Agreement attached to the Complaint as Exhibit A and incorporated therein is not a true and correct copy of the complete contract.

### Twelfth Affirmative Defense

These Answering Defendants affirmatively allege that the Purchase Agreement is a contract of adhesion.

### Thirteenth Affirmative Defense

These Answering Defendants affirmatively allege that the Purchase Agreement is unconscionable, is of an oppressive nature, was the result of unfair surprise, and is against public policy.

### Fourteenth Affirmative Defense

These Answering Defendants affirmatively allege that the Purchase Agreement is a usury contract.

### Fifteenth Affirmative Defense

These Answering Defendants affirmatively allege that the Purchase Agreement is a result of mutual mistakes of material fact and is, therefore, unenforceable.

///

///

///

**Sixteenth Affirmative Defense**

These Answering Defendants affirmatively allege that Plaintiff is estopped from denying the enforceability of any and all oral representations of Plaintiff, its representatives, employees, and/or agents relating to the accounts receivable to be sold to Plaintiff at any time under the Purchase Agreement based upon the doctrine of promissory estoppel.

**Seventeenth Affirmative Defense**

These Answering Defendants affirmatively allege that Defendant Jeffrey Morse's letter of August 12, 2004 to Jared Ricci of MedCap operated as a complete rescission of the Purchase Agreement.

**Eighteenth Affirmative Defense**

Pursuant to NRCP 11, all possible affirmative defenses may not have been alleged herein to the extent that sufficient facts are not available after reasonable inquiry upon the filing of this Answer; Answering Defendants, therefore, reserve the right to amend this Answer to allege additional Affirmative Defenses as subsequent investigation warrants.

WHEREFORE, these Answering Defendants pray that Plaintiff take nothing for its Complaint, including that Plaintiff be denied an award for its causes of action and/or prayers for relief as set forth in the Complaint. Furthermore, these Answering Defendants hereby request reimbursement of their attorney's fees and costs incurred in defending against Plaintiff's Complaint and for such further relief as this Court deems just and appropriate.

**<u>COUNTER-CLAIM</u>**

COME NOW, Counter-claimants BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC., aka CHOCTAW COUNTY MEDICAL CENTER, a Mississippi Corporation, and JEFFREY A. MORSE, an Individual ("Counter-claimants"), by and through their counsel, Alverson, Taylor, Mortensen, Nelson & Sanders, and bring this Counter-claim against Counter-defendant MCC Special Purpose Corporation VIII ("Counter-defendant"), alleging as follows:

///

///

///

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

## General Allegations

1.     Counter-claimant Brandywine Health Services of Mississippi, aka Choctaw County Medical Center ("Brandywine Health"), is and was at all times relevant to this action a corporation duly organized and existing under the laws of the State of Mississippi with its principal place of business located in Ackerman, Mississippi.

2.     Counter-claimant Jeffrey A. Morse ("Mr. Morse") is and was at all times relevant to this action an individual residing in the State of Maryland, and is an Officer, Director, and Shareholder of Brandywine Health.

3.     Upon information and belief, Counter-defendant is and was at all times relevant to this action a corporation duly organized and existing under the laws of the State of Nevada with its principal place of business located in Las Vegas, Nevada.

4.     Upon information and belief, Medical Capital Corporation ("MedCap") is and was at all times relevant to this action a corporation duly organized and existing under the laws of the State of Nevada with its principal place of business located in Las Vegas, Nevada.

5.     Upon information and belief, Joseph J. Lampariello is an Officer of Counter-defendant and of MedCap.

6.     Upon information and belief, Alan J. Meister is an Officer of Counter-defendant and of MedCap.

7.     That the true names and capacities, whether individual, corporation, association or otherwise, of Counter-defendants Does I through X, inclusive, are unknown to Counter-claimants at this time, and, therefore, Counter-claimants sue these Counter-defendants by such fictitious names. Counter-claimants are informed and believe and, on that basis, allege that each of the fictitiously named Counter-defendants are responsible in some manner for the events and happenings referred to as herein alleged.

8.     Upon information and belief, in performing each of the acts herein alleged, Counter-defendant, MedCap, and Does I through X were each the agents, employees, representatives, and/or servants of the others, and were acting within the scope and course of such relationship.

9.      Pursuant to the terms of the Purchase Agreement, "[a]ny legal proceeding arising out of or in any way related to [the] Purchase Agreement...shall be brought and litigated exclusively in any one of the United States District Courts sitting in the State of Nevada to the extent it has subject matter jurisdiction, and otherwise in any court of the State of Nevada having jurisdiction." Purchase Agreement, Section 8.9.

10.     Based upon paragraph 32 of the Complaint on file herein, Counter-defendant claims damages in an amount that exceeds Seventy-five Thousand Dollars ($75,000.00).

## Factual Allegations

11.     On or about June 2004, Brandywine Health sought information regarding the sale of its accounts receivable at a reduced price in order to generate a lump sum payment immediately upon sale that would be used to satisfy outstanding debts.  This type of transaction is also known as "accounts receivable funding."  The lump sum payment received immediately upon transfer of the accounts receivable is known as "front money."

12.     Counter-claimants contacted John Cassillas ("Mr. Cassillas") to discuss possible accounts receivable funding.  Mr. Cassillas held himself out as an expert in accounts receivable funding and collection processes.

13.     Mr. Cassillas offered two options to Counter-claimants: funding through a group of banks called Osage MedFund that would need three months to create a funding proposal or funding through MedCap, which represented that it could implement a funding system in three weeks. Counter-claimants decided to obtain funding through MedCap.

14.     On information and belief, Mr. Cassillas contacted MedCap with Mr. Morse's contact information.

15.     On or about June 21, 2004, Herb Endres of MedCap contacted Mr. Morse to discuss accounts receivable funding.

16.     Ten years prior to the transaction in dispute with MedCap and Counter-defendant, Mr. Morse had one experience with accounts receivable funding, but the funding was through a bank and was much different than the process Mr. Morse encountered in this transaction.

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

11

17. Brandywine Health gave MedCap permission to begin its on-site due diligence with regard to Brandywine Health's accounts receivable.

18. According to Jared Ricci ("Mr. Ricci") of MedCap, the due diligence was performed in order to determine whether the methods behind generation of the accounts receivable were credible.

19. On or about July 19, 2004, Jill Case ("Ms. Case") of MedCap arrived at Brandywine Health in Ackerman, Mississippi and began MedCap's due diligence.

20. On or about July 23, 2004, Ms. Case and Mr. Ricci contacted Mr. Morse in order to discuss the value of the accounts receivable that MedCap and Counter-defendant would purchase.

21. The value of Brandywine Health's total accounts receivable was approximately Two Million Five Hundred Thousand Dollars ($2,500,000.00). Brandywine Health generates accounts receivable through its acute care services, nursing home, swing beds, and professional fees.

22. Despite the value of Brandywine Health's accounts receivable as set forth in paragraph 21, Ms. Case and Mr. Ricci told Mr. Morse that Brandywine Health would only receive Two Hundred Fifty Thousand Dollars ($250,000.00) from MedCap and Counter-defendant for the sale of its accounts receivable.

23. Although MedCap and Counter-defendant proposed to purchase only a portion of Brandywine Health's accounts receivable, under the terms of the Purchase Agreement, all payments received by Brandywine Health were to be forwarded to a bank account referred to as a "Lock Box Account" in the Purchase Agreement in Section 5.5(b). Any payments not applicable to the accounts receivable purchased by Counter-defendant would then be returned to Brandywine Health.

24. Mr. Morse explained to Ms. Case and Mr. Ricci that Two Hundred Fifty Thousand Dollars ($250,000.00) was not sufficient front money to satisfy Brandywine Health's outstanding taxes and bills.

25. Mr. Morse also complained that MedCap and Counter-defendant's system of collecting all payments Brandywine Health receives, rather than just collecting the payments applicable to the accounts receivable purchased by Counter-defendant, would result in a monthly deficit for Brandywine Health of approximately Three Hundred Thousand Dollars ($300,000.00).

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

26.     In addition, Mr. Morse complained that although Brandywine Health would only receive Two Hundred Fifty Thousand Dollars ($250,000.00), MedCap and Counter-defendant would recover approximately Six Hundred Fifty Thousand Dollars ($650,000.00) through collection of the accounts receivable.

27.     Mr. Morse refused to complete the transaction on the terms proposed by Ms. Case and Mr. Ricci.

28.     After Mr. Morse's rejection, Mr. Ricci offered to include the swing bed, nursing home, and professional fee accounts receivable in order to increase the front money to at least Six Hundred Thousand Dollars ($600,000.00), and offered weekly pay outs to Brandywine Health.

29.     Mr. Morse relied on the oral representations of Mr. Ricci, made on behalf of MedCap and Counter-defendant, in accepting the terms as set forth in paragraph 28.

30.     On or about July 29, 2004, Brandywine Health received a terms sheet only showing funding of Two Hundred Fifty Five Thousand Dollars ($255,000.00) to Brandywine Health.

31.     Mr. Morse complained that the funding amount was to be at least Six Hundred Thousand Dollars ($600,000.00).

32.     Mr. Morse was told to send additional documentation concerning the swing beds, nursing home, and professional fees, and was told that Brandywine Health would receive the additional money.

33.     Upon information and belief, in order to determine the front money that Brandywine Health would receive, Counter-defendant reduced the Aggregate Gross Face Value of the accounts receivable by forty-three percent (43%).

34.     The Aggregate Gross Face Value is the total billing amount of each account receivable including patient co-payments.

35.     The result of the forty-three percent (43%) reduction is the contractual Aggregate Adjusted Value of the accounts.  Brandywine Health then receives eighty percent (80%) of the Aggregate Adjusted Value as front money.

///

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

36.    Brandywine Health would normally only reduce the Aggregate Gross Face Value of the accounts receivable by twenty-nine percent (29%). That reduction accounts for the expected loss on the accounts receivable.

37.    Counter-defendant represented to Counter-claimants that the increased reduction from twenty-nine percent (29%) to forty-three percent (43%) was to provide Counter-defendant with an additional safety margin.

38.    The net receivable for the accounts receivable of the swing beds, nursing home, and professional fees would result in at least Four Hundred Thousand Dollars ($400,000.00) in additional front money to Brandywine according to Brandywine's understanding of the forty-three percent (43%) used by MedCap and Counter-defendant. This result was satisfactory to Counter-claimants, and they relied upon the oral representations of MedCap and Counter-defendant and believed the terms were part of the parties' agreement.

39.    On or about August 2, 2004, Mr. Morse executed a document entitled Purchase Agreement. Exhibit A to the Purchase Agreement, entitled Initial Accounts Receivable, was to include a listing of the accounts receivable to be purchased under the Agreement.

40.    The accounts receivable from Brandywine Health's hospital, swing beds, nursing home, and professional fees were omitted from Exhibit A to the Purchase Agreement.

41.    Mr. Morse questioned the omission and was told that MedCap and Counter-defendant would "take care of it."

42.    Mr. Morse relied on the oral representations of MedCap and Counter-defendant concerning the additional accounts receivable and front money in executing the Purchase Agreement.

43.    Based upon the oral representations of MedCap and Counter-defendant, it was Mr. Morse's understanding that the terms previously agreed upon were still in effect, and that Exhibit A to the Purchase Agreement would include the accounts receivable from Brandywine Health's hospital, swing beds, nursing home, and professional fees.

///

///

///

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

44.     On or about August 10, 2004, the Closing Date of the Purchase Agreement, Brandywine Health's accounting department notified Mr. Morse that Brandywine Health had received an electronic deposit from Counter-defendant in the amount of Two Hundred Forty-five Thousand Five Hundred Ninety-seven Dollars and 18/100 ($245,597.18) ("initial funds").

45.     Counter-claimants believed the initial funds of Two Hundred Forty-five Thousand Five Hundred Ninety-seven Dollars and 18/100 ($245,597.18) would be followed by additional transfers to reach the front money amount of approximately Six Hundred Thousand Dollars ($600,000.00) to which Counter-claimants had agreed.

46.     Counter-claimants applied the initial funds to back taxes owed.  No additional funds were received.

47.     Counter-claimants would not have executed the Purchase Agreement or used the initial disbursement of funds to satisfy back taxes owed if they had known that the additional accounts receivable of the nursing home , swing beds, and professional fees were not included in the Purchase Agreement, and that Brandywine Health would not receive additional funds beyond the initial disbursement.

48.     On or about August 12, 2004, MedCap contacted Brandywine Health to discuss the Lock Box Account.

49.     Brandywine Health was then informed that no additional transfers of front money would be made, and that none were promised.

50.     As a result, Mr. Morse sent a letter to Mr. Ricci of MedCap dated August 12, 2004.

51.     In the August 12, 2004 letter, Mr. Morse stated that an initial payment in the amount of Two Hundred Forty-five Thousand Five Hundred Ninety-seven Dollars and 18/100 ($245,597.18) was not the amount to which Mr. Morse had agreed and would not be enough to satisfy all outstanding taxes and bills as Mr. Morse had previously explained.

52.     Mr. Morse also stated in his August 12, 2004 letter to Mr. Ricci that Brandywine Health expected additional funding of at least Four Hundred Thousand Dollars ($400,000.00), and that MedCap and Counter-defendant had incorrectly excluded the accounts receivable of the nursing home, swing beds, and professional fees.

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

15

53.    In the same August 12, 2004 letter, Mr. Morse also expressed concern over the Lock Box Account referred to in paragraph 23. As Mr. Morse had previously explained to MedCap and Counter-defendant, the Lock Box Account collection process, whereby any and all payments Brandywine Health received wold be deposited into the Lock Box Account, would result in Brandywine Health being unable to pay its bills in a timely manner.

54.    Mr. Morse complained that the Lock Box Account collection process was too slow as Brandywine Health would have to wait for MedCap and Counter-defendant to separate the payments and return all payments to Brandywine Health not applicable to the accounts receivable purchased by Counter-defendant.

55.    Mr. Morse requested an invoice from MedCap for the Two Hundred Forty-five Thousand Five Hundred Ninety-seven Dollars and 18/100 ($245,597.18) transfer, which Mr. Morse stated would be paid by Brandywine Health within thirty days of receipt of the invoice.

56.    Four days after Mr. Morse's August 12, 2004 letter, Counter-defendant brought suit against Counter-claimants.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Counter-defendant)

57.    Counter-claimants repeat and reallege their allegations contained in paragraphs 1 through 56, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

58.    According to the oral representations and promises of MedCap, Counter-defendant, and their agents, representatives, and/or employees, the accounts receivable of the nursing home, swing beds, and professional fees were to be included in the accounts receivable sold to Counter-defendant under the Purchase Agreement, and Brandywine Health was to receive front money of at least Six Hundred Thousand Dollars ($600,000.00).

59.    Counter-claimants reasonably relied upon the oral promises of MedCap, Counter-defendant, and their agents, representatives, and/or employees in proceeding with the negotiation and execution of the Purchase Agreement.

///

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

60.    Counter-claimants' reliance on the oral promises of MedCap, Counter-defendant, and their agents, representatives, and/or employees was foreseeable and detrimental.

61.    Mr. Morse told MedCap, Counter-defendant, and their agents, representatives, and/or employees more than once that Counter-claimants would not agree to a contract that excluded the accounts receivable of the nursing home, swing beds, and professional fees and did not provide for additional front money as a result of the inclusion of the additional accounts receivable.

62.    The enforcement of the oral promises of MedCap, Counter-defendant, and their agents, representatives, and/or employees is necessary to avoid injustice.

63.    Counter-defendant's omission of the additional accounts receivable of the nursing home, swing beds, and professional fees from Exhibit A to the Purchase Agreement and failure to disburse additional front money of at least Four Hundred Thousand Dollars ($400,000.00) on the Closing Date were breaches of the Purchase Agreement and the enforceable oral promises made by MedCap, Counter-defendant, and their agents, representatives, and/or employees.

64.    Pursuant to Section 2.3 of the Purchase Agreement, Counter-defendant was to pay Counter-claimants the Advance Rate Amount under the Purchase Agreement on the Closing Date of August 10, 2004.

65.    The Advance Rate Amount under the Purchase Agreement according to Exhibit A to the Purchase Agreement was Two Hundred Fifty-five Thousand One Hundred Sixty-five Dollars and 90/100 ($255,165.90).

66.    On the Closing Date of August 10, 2004, Counter-defendant only paid Counter-claimants Two Hundred Forty-five Thousand Five Hundred Ninety-seven Dollars and 18/100 ($245,597.18).

67.    Counter-defendant's failure and/or refusal to pay Counter-claimants the contractually agreed upon Advance Rate Amount was a breach of the Purchase Agreement.

68.    As a direct, proximate, and foreseeable result of Counter-defendant's breaches of the Purchase Agreement and enforceable oral promises, Counter-claimants have suffered damages in an amount to be determined at trial.

///

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

17

69.     Counter-claimants have been forced to retain the services of an attorney to prosecute this Counter-claim and are entitled to an award of attorney's fees and costs.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing

### Against Counter-defendant)

70.     Counter-claimants repeat and reallege their allegations contained in paragraphs 1 through 69, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

71.     Counter-claimants and Counter-defendant are parties to the Purchase Agreement, which is a contract.

72.     A covenant of good faith and fair dealing was and is implied in the Purchase Agreement between Counter-claimants and Counter-defendant.

73.     Counter-defendant breached the covenant of good faith and fair dealing by performing in a manner that was unfaithful to the purpose of the contract.

74.     Counter-claimants' justified expectations were thus wrongfully denied.

75.     As a direct, proximate, and foreseeable result of Counter-defendant's breaches of the covenant of good faith and fair dealing, Counter-claimants have suffered damages in an amount to be determined at trial.

76.     Counter-claimants have been forced to retain the services of an attorney to prosecute this Counter-claim and are entitled to an award of attorney's fees and costs.

## THIRD CAUSE OF ACTION

### (Rescission Against Counter-defendant)

77.     Counter-claimants repeat and reallege their allegations contained in paragraphs 1 through 76, inclusive, as though fully set forth herein, and hereby incorporate the same by this reference.

///

///

///

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

78.     Counter-defendant's breach of the implied covenant of good faith and fair dealing, breach of the enforceable oral promises of Counter-defendant's and/or its agents, representatives, and/or employees, and breach of the terms of the Purchase Agreement are material breaches either individually or collectively.

79.     The material breaches of Counter-defendant entitle Counter-claimants to rescission of the Purchase Agreement, including the attached exhibits.

80.     Counter-defendant's and/or its agents, representatives, and/or employees used deceit and fraud to obtain Counter-claimants' execution of a Purchase Agreement containing terms that were not agreed upon by the parties and omitting other terms required by Counter-claimants, despite Counter-defendant's and/or its agents, representatives, and/or employees' knowledge of Counter-claimants' refusal to execute a Purchase Agreement containing such terms while omitting others. Counter-defendant's and/or its agents, representatives, and/or employees also practiced deceit and fraud after the Closing Date in denying its promises to include the additional terms required by Counter-claimants and disburse a total sum of approximately Six Hundred Fifty Thousand Dollars ($650,000.00) in front money to Counter-claimants.

81.     The deceit and fraud of Counter-defendant's and/or its agents, representatives, and/or employees entitle Counter-claimants to rescission of the Purchase Agreement, including the attached exhibits.

82.     The identification of the accounts receivable to be bought and sold under the Purchase Agreement was a vital fact upon which the Purchase Agreement was based.

83.     At the time of contracting, Counter-claimants and Counter-defendant shared a misconception about which accounts receivable were to be included under the Purchase Agreement.

84.     The mutual mistake of the parties entitle Counter-claimants to rescission of the Purchase Agreement, including the attached exhibits.

85.     If the Purchase Agreement and its supporting documentation are not rescinded, Counter-claimants are damaged in an amount to be determined at trial as a direct, proximate, and foreseeable result of the non-rescission.

///

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

86.     Counter-claimants have been forced to retain the services of an attorney to prosecute this Counter-claim and are entitled to an award of attorney's fees and costs.

WHEREFORE, Brandywine Health Services of Mississippi, Inc., aka Choctaw County Medical Center, a Mississippi Corporation, and Jeffrey A. Morse, an Individual, pray for judgment against MCC Special Purpose Corporation VIII as follows:

1.     For actual and compensatory damages against MCC Special Purpose Corporation VIII in an amount to be determined at trial together with interest, penalties, and costs;

2.     For rescission of the Purchase Agreement, including the attached exhibits;

3.     For reasonable attorney's fees;

4.     For costs of suit incurred herein; and

5.     For such other relief as this Court may deem just and reasonable.

DATED this 13th day of September, 2004.

ALVERSON, TAYLOR, MORTENSEN,
NELSON & SANDERS

ERIC TAYLOR, ESQ., NV Bar No. 2275
STACY R. SMITH, ESQ., NV Bar No. 7919
SARAH A. SMEGAL, ESQ., NV Bar No. 8669
7401 West Charleston Boulevard
Las Vegas, NV 89117-1401
Attorneys for Brandywine Health Services
of Mississippi, Inc. and Jeffrey A. Morse

///
///
///
///
///
///
///
///
///

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

20

## CERTIFICATE OF SERVICE BY FACSIMILE TRANSMISSION

I hereby certify, that on the *13th* day of September, 2004, service of the foregoing *ANSWER and COUNTERCLAIM of DEFENDANTS BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC., aka CHOCTAW COUNTY MEDICAL CENTER, a Mississippi Corporation, and JEFFREY A. MORSE, an Individual,* was made by facsimile transmission only, pursuant to the amendment to the Eighth Judicial District Court Rule 7.26, by faxing a true and correct copy of the same as follows:

Ike Lawrence Epstein, Esq.
Eric D. Hone, Esq.
Beckley Singleton, Chartered
Attorneys for Plaintiff
FAX: 385-9447

An employee of ALVERSON, TAYLOR,
MORTENSEN, NELSON & SANDERS

ALVERSON, TAYLOR, MORTENSEN, NELSON & SANDERS
LAWYERS
7401 WEST CHARLESTON BOULEVARD
LAS VEGAS, NEVADA 89117-1401
(702) 384-7000

21